COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
SUPERIOR COURT
DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.

04-2592

CAROLYN MIREK,

    Plaintiff

v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA and
BERKSHIRE LIFE INSURANCE COMPANY,

    Defendants

## COMPLAINT

1. The plaintiff Carolyn Mirek is a resident of South Windsor, Connecticut.

2. The defendant, The Guardian Life Insurance Company of America, (hereinafter "Guardian") is an insurance company writing disability policies, among other insurance products, incorporated in a state other than Massachusetts, doing business within the Commonwealth of Massachusetts, located in Boston, Suffolk County, and doing insurance business in the Commonwealth.

3. The defendant, Berkshire Life Insurance Company, (hereinafter "Berkshire") is a wholly-owned subsidiary of Guardian, with a principal place of business located in Pittsfield, Massachusetts.

COUNT I
Breach of Contract

4. In 1993, the defendant Guardian issued an "own occupation" disability insurance policy to the plaintiff which provided for the payment of monthly indemnity of twenty-five hundred ($2,500) dollars, providing for cost-of-living adjustments and for automatic increases in the monthly indemnity totaling eight hundred fifty ($850) dollars.

5. The policy defined for her the term "total disability" as meaning,

> because of sickness or injury, you are not able to perform the major duties of your occupation. Your occupation means the regular occupation (or occupations if more than one) in which you are engaged at the time you become disabled.
>
> You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation. If your occupation is limited to a single recognized specialty in medicine, dentistry or law, we will deem your specialty to be your occupation.

6. At all times material hereto, the plaintiff's specialty in dentistry was that of a dental hygienist.

7. While the policy was in full force and effect and all premiums paid, the plaintiff became so allergic to latex that she became unable to perform the major duties of her occupation and thus totally disabled within the meaning of the policy.

8. Upon information and belief, the defendant Berkshire had the responsibility of administering and processing the plaintiff's claim on behalf of the defendant Guardian.

9. The defendant Guardian or the defendant Berkshire, or both defendants, wrongfully, and in breach of the contract of insurance, denied the plaintiff's claim.

10. As a result of the defendants' breach of contract, the plaintiff has been deprived of the benefits to which she is entitled under the contract of insurance including monthly benefits and waiver of the premiums.

11. By their conduct, the defendants have repudiated the insurance contract with the plaintiff and, as a result, there is an anticipatory breach of the contract.

12. By their conduct, the defendants have committed a breach of the implied covenant and good faith and fair dealing in the insurance contract.

13. As a result of defendants' conduct, plaintiff has suffered and continues to suffer harm and damages. As a result of the defendants' conduct, the plaintiff has been caused great anxiety and stress because of the financial pressures that she has suffered, and has and will be forced to pay substantial and otherwise unnecessary attorney's fees and expenses to conduct litigation to obtain benefits which the defendants owe her, and has been otherwise damaged.

WHEREFORE, the plaintiff demands judgment in an amount that will fully and adequately compensate her for the loss of benefits, reimbursement of her premiums, plus costs and interest and compensation for loss of use of the benefits, the present value of future benefits, and attorney's fees and costs and punitive damages.

COUNT II
Unfair and Deceptive Practices, (CUPTA), Conn. Gen. Stat. §42-110b et seq.,
and Unfair Insurance Practices (CUIPA), Conn. Gen. Stat. §38a-816

14. Plaintiff repeats and realleges paragraphs 1 through 13 of this Complaint as if fully set forth herein.

15. The breach of contract set forth in Count I resulted from the reckless, willful and intentional breach of the defendants' contract and constituted, unfair claim settlement practices as defined in Conn. Gen. Stat. §38A-816(6), and unfair and deceptive practices.

16. In addition, the defendants committed the following unfair and deceptive practices and unfair claim settlement practices, among others:

   a. Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim;

   b. Failing to honor the contractual obligation to pay monthly all benefits due for disability after the policyholder established that she had a severe latex allergy that made her disabled from working in her occupation as a dental hygienist;

   c. Failing to conduct a meaningful investigation of the claim;

   d. Denying the claim based on stated reasoning that is nonsensical or unsupportable;

   e. Relying on a physician who apparently is not board-certified in a relevant specialty, that is, allergy or occupational medicine, to deny the claim, and, a physician who never examined the policyholder;

   f. Refusing to pay the claim without conducting a reasonable investigation based on all available information

   g. Failing to affirm or deny coverage of the claim within a reasonable period of time

   h. Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear.

17. As a result of defendants' conduct, plaintiff has suffered and continues to suffer harm and damages. As a result of the defendants' conduct, the plaintiff has been caused great anxiety and stress because of the financial pressures that she has suffered, and has and will be forced to pay substantial and otherwise unnecessary attorney's fees and expenses to conduct litigation to obtain benefits which the defendants owe her, and has been otherwise damaged.

WHEREFORE, the plaintiff demands judgment in an amount that will fully and adequately compensate her for the loss of benefits, for her emotional distress, reimbursement of

her premiums, the present value of future benefits, interest and compensation for loss of use of the benefits and loss of the waiver of premiums, attorneys' fees and costs and punitive damages.

WHEREFORE, the plaintiff, Carolyn Mirek, seeks the following relief:

A. Damages in an amount to be determined by the court as adequate compensation for her losses;

B. Punitive damages and attorney's fees and costs in pursuing this action;

C. Such other forms of relief and damages as this Court deems just and proper.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

I HEREBY ATTEST AND CERTIFY ON
Sept. 7, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

Asst. Clerk.

PLAINTIFF CAROLYN MIREK
By her Attorneys,

Joanne D'Alcomo
BBO #544177
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

JS PCDocs #45971/1                                4

EXHIBIT B

3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
SUPERIOR COURT
DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 04-2592-B

CAROLYN MIREK,

    Plaintiff

v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA and
BERKSHIRE LIFE INSURANCE COMPANY,

    Defendants

## AMENDED COMPLAINT

No responsive pleading having been filed, plaintiff hereby amends her complaint as follows, as a matter of right, pursuant to Massachusetts Rule of Civil Procedure 15(a):

1. The plaintiff Carolyn Mirek is a resident of South Windsor, Connecticut.

2. The defendant, The Guardian Life Insurance Company of America, (hereinafter "Guardian") is an insurance company writing disability policies, among other insurance products, incorporated in a state other than Massachusetts, doing business within the Commonwealth of Massachusetts and in Suffolk County.

3. The defendant, Berkshire Life Insurance Company, (hereinafter "Berkshire") is a wholly-owned subsidiary of Guardian, with a principal place of business located in Pittsfield, Massachusetts.

### COUNT I
### Breach of Contract

4. In 1993, the defendant Guardian issued an "own occupation" disability insurance policy to the plaintiff which provided for the payment of monthly indemnity of twenty-five hundred ($2,500) dollars, providing for cost-of-living adjustments and for automatic increases in the monthly indemnity totaling eight hundred fifty ($850) dollars.

5. The policy defined for her the term "total disability" as meaning,

> because of sickness or injury, you are not able to perform the major duties of your occupation. Your occupation means the regular occupation (or occupations if more than one) in which you are engaged at the time you become disabled.
>
> You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation. If your occupation is limited to a single recognized specialty in medicine, dentistry or law, we will deem your specialty to be your occupation.

6. At all times material hereto, the plaintiff's specialty in dentistry was that of a dental hygienist.

7. While the policy was in full force and effect and all premiums paid, the plaintiff became so allergic to latex that she became unable to perform the major duties of her occupation and thus totally disabled within the meaning of the policy.

8. Upon information and belief, the defendant Berkshire had the responsibility of administering and processing the plaintiff's claim on behalf of the defendant Guardian.

9. The defendant Guardian or the defendant Berkshire, or both defendants, wrongfully, and in breach of the contract of insurance, denied the plaintiff's claim.

10. As a result of the defendants' breach of contract, the plaintiff has been deprived of the benefits to which she is entitled under the contract of insurance including monthly benefits and waiver of the premiums.

11. By their conduct, the defendants have repudiated the insurance contract with the plaintiff. As a result of defendants' conduct, there is an anticipatory breach of the contract.

12. By their conduct, the defendants have committed a breach of the implied covenant and good faith and fair dealing in the insurance contract.

13. As a result of defendants' conduct, plaintiff has suffered and continues to suffer harm and damages. As a result of the defendants' conduct, the plaintiff has been caused great anxiety and stress because of the financial pressures that she has suffered, and has and will be forced to pay substantial and otherwise unnecessary attorney's fees and expenses to conduct litigation to obtain benefits which the defendants owe her, and has been otherwise damaged.

WHEREFORE, the plaintiff demands judgment in an amount that will fully and adequately compensate her for the loss of benefits, reimbursement of her premiums, plus costs

and interest and compensation for loss of use of the benefits, the present value of future benefits, and attorney's fees and costs and other damages.

### COUNT II
Unfair and Deceptive Practices, (CUPTA), Conn. Gen. Stat. §42-110b et seq., and Unfair Insurance Practices (CUIPA), Conn. Gen. Stat. §38a-816

14. Plaintiff repeats and realleges paragraphs 1 through 13 of this Complaint as if fully set forth herein.

15. The breach of contract set forth in Count I resulted from the reckless, willful and intentional breach of the defendants' contract and constituted, unfair claim settlement practices as defined in Conn. Gen. Stat. §38A-816(6), and unfair and deceptive practices.

16. In addition, the defendants committed the following unfair and deceptive practices and unfair claim settlement practices, among others:

    a. Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim;

    b. Failing to honor the contractual obligation to pay monthly all benefits due for disability after the policyholder established that she had a severe latex allergy that made her disabled from working in her occupation as a dental hygienist;

    c. Failing to conduct a meaningful investigation of the claim;

    d. Denying the claim based on stated reasoning that is nonsensical or unsupportable;

    e. Relying on a physician who apparently is not board-certified in a relevant specialty, that is, allergy or occupational medicine, to deny the claim, and, a physician who never examined the policyholder;

    f. Refusing to pay the claim without conducting a reasonable investigation based on all available information

    g. Failing to affirm or deny coverage of the claim within a reasonable period of time

    h. Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear.

17. As a result of defendants' conduct, plaintiff has suffered and continues to suffer harm and damages. As a result of the defendants' conduct, the plaintiff has been caused great anxiety and stress because of the financial pressures that she has suffered, and has and will be forced to pay substantial and otherwise unnecessary attorney's fees and expenses to conduct litigation to obtain benefits which the defendants owe her, and has been otherwise damaged.

JS PCDocs #46712\1

3

WHEREFORE, the plaintiff demands judgment in an amount that will fully and adequately compensate her for the loss of benefits, for her emotional distress, reimbursement of her premiums, the present value of future benefits, interest and compensation for loss of use of the benefits and loss of the waiver of premiums, attorneys' fees and costs and punitive damages.

COUNT III – Berkshire Life Insurance Company
Unfair and Deceptive Practices, Mass. Gen. Laws ch. 93A

18. Plaintiff repeats and realleges paragraphs 1 through 17 of this Complaint as if fully set forth herein.

19. The breach of contract set forth in Count I resulted from the reckless, willful and intentional breach of the defendant Berkshire Life Insurance Company's contract and constituted, unfair claim settlement practices as defined in Mass. Gen. Laws ch. 176D, and unfair and deceptive practices.

20. In addition, the defendant Berkshire Life Insurance Company committed the following unfair and deceptive practices and unfair settlement practices, among others:

   a. Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim (Mass. Gen. Laws ch. 176D, §3(9)(n));

   b. Aiding and abetting Guardian in failing to honor its contractual obligation to pay monthly all benefits due for disability after the policyholder established that she had a severe latex allergy that made her disabled from working in her occupation as a dental hygienist;

   c. Failing to conduct a meaningful investigation of the claim;

   d. Denying the claim based on stated reasoning that is nonsensical or unsupportable;

   e. Relying on a physician who apparently is not board-certified in a relevant specialty, that is, allergy or occupational medicine, to deny the claim, and, a physician who never examined the policyholder;

   f. Refusing to pay the claim without conducting a reasonable investigation based on all available information (Mass. Gen. Laws ch. 176D, §3(9)(d));

   g. Failing to affirm or deny coverage of the claim within a reasonable period of time (Mass. Gen. Laws ch. 176D, §3(9)(e));

      h. Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear (Mass. Gen. Laws ch. 176D, §3(9)(f)).

21. As a result of defendant Berkshire Life Insurance Company's conduct, plaintiff has suffered and continues to suffer harm and damages. As a result of the defendant Berkshire Life Insurance Company's conduct, the plaintiff has been caused great anxiety and stress because of the financial pressures that she has suffered, and has and will be forced to pay substantial and otherwise unnecessary attorney's fees and expenses to conduct litigation to obtain benefits which the defendants owe her, and has been otherwise damaged.

22. By letter dated June 14, 2004, the plaintiff made demand upon defendant Berkshire Life Insurance Company. Although the defendant Berkshire Life Insurance Company responded within 30 days, a reasonable settlement offer was not made.

WHEREFORE, the plaintiff demands judgment in an amount that will fully and adequately compensate her for the loss of benefits, for her emotional distress, reimbursement of her premiums, the present value of future benefits, interest and compensation for loss of use of the benefits and loss of the waiver of premiums, attorneys' fees and costs and multiple damages.

COUNT IV – The Guardian Life Insurance Company of America
Unfair and Deceptive Practices, Mass. Gen. Laws ch. 93A

23. Plaintiff repeats and realleges paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24. The breach of contract set forth in Count I resulted from the reckless, willful and intentional breach of the defendant Guardian Life Insurance Company of America's contract and constituted, unfair claim settlement practices as defined in Mass. Gen. Laws ch. 176D, and unfair and deceptive practices.

25. In addition, the defendant Guardian Life Insurance Company of America committed the following unfair and deceptive practices and unfair settlement practices, among others:

   a. Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim (Mass. Gen. Laws ch. 176D, §3(9)(n));

   b. Failing to honor its contractual obligation to pay monthly all benefits due for disability after the policyholder established that she had a severe latex allergy that made her disabled from working in her occupation as a dental hygienist;

   c. Failing to conduct a meaningful investigation of the claim;

   d. Denying the claim based on stated reasoning that is nonsensical or unsupportable;

  e. Relying on a physician who apparently is not board-certified in a relevant specialty, that is, allergy or occupational medicine, to deny the claim, and, a physician who never examined the policyholder;

  f. Refusing to pay the claim without conducting a reasonable investigation based on all available information (Mass. Gen. Laws ch. 176D, §3(9)(d));

  g. Failing to affirm or deny coverage of the claim within a reasonable period of time (Mass. Gen. Laws ch. 176D, §3(9)(e));

  h. Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear (Mass. Gen. Laws ch. 176D, §3(9)(f)).

26. As a result of defendant Guardian Life Insurance Company of America's conduct, plaintiff has suffered and continues to suffer harm and damages. As a result of the defendant The Guardian Life Insurance Company of America's conduct, the plaintiff has been caused great anxiety and stress because of the financial pressures that she has suffered, and has and will be forced to pay substantial and otherwise unnecessary attorney's fees and expenses to conduct litigation to obtain benefits which the defendants owe her, and has been otherwise damaged.

27. By letter dated June 14, 2004, the plaintiff made demand upon defendant The Guardian Life Insurance Company of America. Although The Guardian Life Insurance Company of America responded within 30 days, a reasonable settlement offer was not made.

WHEREFORE, the plaintiff demands judgment in an amount that will fully and adequately compensate her for the loss of benefits, for her emotional distress, reimbursement of her premiums, the present value of future benefits, interest and compensation for loss of use of the benefits and loss of the waiver of premiums, attorneys' fees and costs and multiple damages.

WHEREFORE, the plaintiff, Carolyn Mirek, seeks the following relief:

  A. Damages in an amount to be determined by the court as adequate compensation for her losses;

  B. Punitive damages and attorney's fees and costs in pursuing this action as permitted by Connecticut law;

  C. Multiple damages and attorney's fees as permitted by Massachusetts law;

  D. Such other forms of relief and damages as this Court deems just and proper.

THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES AND CLAIMS SO TRIABLE.

PLAINTIFF CAROLYN MIREK
By her Attorneys,

I HEREBY ATTEST AND CERTIFY ON
Sept. 7, 2004 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____
Asst. Clerk.

Joanne D'Alcomo
BBO #544177
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

JS PCDocs #46712\1

7

**EXHIBIT C**

Noncancellable and guaranteed renewable to age 65
Conditionally renewable after age 65—Premiums can change
Case 3:04-cv-30166-RGS  Document 6-2   Filed 09/30/2004   Page 14 of 20



## The Guardian®

**The Guardian Life Insurance Company of America**

201 Park Avenue South
New York, NY 10003

A Mutual Company
Established 1860

DUPLICATE POLICY

THIS POLICY MEETS CONNECTICUT'S MINIMUM STANDARDS FOR DISABILITY INCOME COVERAGE. IT ALSO CONTAINS ADDITIONAL BENEFITS WHICH DO NOT MEET MINIMUM STANDARDS. PLEASE READ THE ATTACHED OUTLINE OF COVERAGE WHICH EXPLAINS THE BENEFITS IN DETAIL.

AHS-772

Guardian hereby furnishes insurance to the extent set out in this policy. All of the provisions on this and the pages which follow are part of this policy.

*Herbert N. Grolnick*
Secretary

*Arthur V. Ferrara*
President

**You** means the person insured. **We** or **Guardian** means The Guardian Life Insurance Company of America.

### NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

You may renew this policy at the end of each term until you are age 65. During that time, we cannot change the premium or cancel this policy.

### CONDITIONAL RIGHT TO RENEW AFTER AGE 65— PREMIUMS CAN CHANGE

After you are age 65, you may renew this policy at the end of each term as long as you are at work full time. There is no age limit. But you must be at work at least thirty hours each week for at least ten months each year.

Your premium will be at our rates then in effect for persons of your age and class of risk. We have the right to change such premiums on a class basis on any policy anniversary.

### NOTICE OF TEN DAY RIGHT TO REVIEW POLICY

You have ten days to review this policy from the date you receive it. Within that time, you can deliver or mail it to our home office or to any Guardian agent or agency for a prompt refund of all premiums. This policy will then be void from the start.

### Disability Income Policy

Participating

Form No. NC101

**This policy is a legal contract between
you and Guardian. READ IT WITH CARE.**

# INDEX

The major provisions of this policy appear on the following pages:

| | |
|---|---|
| Renewal provisions | Pages one and seven |
| Exclusions and limitations | Page three |
| Definitions | Page three |
| Benefit provisions | Pages four and five |
| Claim provisions | Page six |
| General provisions | Page eight |

| | Page | | Page |
|---|---|---|---|
| cumulation period | three | Misstatement of age | six |
| e | seven | Monthly indemnity | three |
| nefit period | three | Notice of claim | six |
| pital sum benefit | four | Payment of claims | six |
| nsideration | | Policy anniversary | seven |
| idends (participation) | eight | Presumptive total disability | five |
| ective date | eight | Recurrent disability | four |
| ction of directors | eight | Rehabilitation benefit | five |
| ire contract | eight | Reinstatement | seven |
| mination period | three | Sickness | three |
| ce period | seven | Termination | seven |
| ontestable | eight | Total disability defined | schedule page |
| ry | three | Total disability benefit | four |
| al actions | six | Transplant and cosmetic surgery benefit | five |
| dical care requirement | three | Waiver of premium benefit | five |
| tary suspension | seven | | |

Additional benefits, if any, are shown in the schedule page
and are described in the rider forms attached to this policy.

S C H E D U L E   P A G E

INSURED- CAROLYN T STREETER                    POLICY NUMBER-  G-723670

OWNER- CAROLYN T STREETER                      DATE OF ISSUE-  03/19/93

LOSS PAYEE- CAROLYN T STREETER

                                               TERM-  1 MONTH

OCCUPATION CLASS- 4    DATE OF BIRTH- 09/21/63    AGE AT ISSUE-  29

PREMIUM DISCOUNT CLASS- NONSMOKER

ANNUAL PREMIUM FOR:

    - BASIC BENEFITS                                  -    $949.25.
    - RESIDUAL DISABILITY RIDER (RSDL-01E)            -    $157.25.
    - COST OF LIVING ADJUSTMENT RIDER (COLA-01F)      -    $293.00.
    - FUTURE INCREASE OPTION RIDER (FIO -01K)         -    $109.60.
    - AUTOMATIC INCREASE RIDER (AIR -01L)             -     $27.25.

                          TOTAL ANNUAL PREMIUM -    $1,536.35.
                                 TERM PREMIUM -      $131.87.

          --- DEFINITION OF TOTAL DISABILITY ---

TOTAL DISABILITY MEANS THAT, BECAUSE OF SICKNESS OR INJURY, YOU ARE
NOT ABLE TO PERFORM THE MAJOR DUTIES OF YOUR OCCUPATION.

YOUR OCCUPATION MEANS THE REGULAR OCCUPATION (OR OCCUPATIONS, IF MORE
THAN ONE) IN WHICH YOU ARE ENGAGED AT THE TIME YOU BECOME DISABLED.

YOU WILL BE TOTALLY DISABLED EVEN IF YOU ARE AT WORK IN SOME OTHER
CAPACITY SO LONG AS YOU ARE NOT ABLE TO WORK IN YOUR OCCUPATION.

IF YOUR OCCUPATION IS LIMITED TO A SINGLE RECOGNIZED SPECIALTY IN
MEDICINE, DENTISTRY OR LAW, WE WILL DEEM YOUR SPECIALTY TO BE YOUR
OCCUPATION.

          --- ELIMINATION AND ACCUMULATION PERIODS ---

ELIMINATION PERIOD- 3 MONTHS        ACCUMULATION PERIOD-   7 MONTHS


SP101                      -03/18/93-                 SCHEDULE PAGE 1

                                                      CONTINUED......

POLICY NUMBER - G-723670

--- BENEFIT PERIOD ---

```
TO AGE 65 IF DISABILITY BEGINS BEFORE AGE 60
60 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 60 BUT BEFORE AGE 61
48 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 61 BUT BEFORE AGE 62
42 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 62 BUT BEFORE AGE 63
36 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 63 BUT BEFORE AGE 64
30 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 64 BUT BEFORE AGE 65
24 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 65 BUT BEFORE AGE 75
12 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 75
```



SP101                    -03/18/93-                    SCHEDULE PAGE 2

CONTINUED......

POLICY NUMBER - G-723670

```
        --- TABLE OF BASIC BENEFITS ---

  - MONTHLY INDEMNITY                            $2,500.

  - MAXIMUM REHABILITATION BENEFIT              $30,000.

  - CAPITAL SUM                                 $30,000.



        --- TABLE OF OPTIONAL BENEFITS ---

THE RENEWAL PROVISION OF EACH OPTIONAL RIDER MAY DIFFER
FROM THAT OF THIS POLICY.  SEE EACH RIDER FOR DETAILS.

  - RESIDUAL DISABILITY (FORM RSDL-01E)

  - COST OF LIVING ADJUSTMENT (FORM COLA-01F)

        MAXIMUM INCREASE PER CENT -  06 PER CENT

  - FUTURE INCREASE OPTION (FORM FIO -01K)

        TOTAL INCREASE OPTION      -$2,000.

  - AUTOMATIC INCREASE RIDER (FORM AIR -01L)

        SEE TABLE OF INCREASES ON FOLLOWING PAGE


        --- BENEFITS AND PREMIUMS AFTER AGE 65 ---

IF YOU RENEW THIS POLICY WHEN YOU ARE AGE 65, WE WILL ISSUE A
NEW SCHEDULE PAGE AT THAT TIME.  BENEFITS WILL BE LIMITED TO
THOSE SHOWN IN THE TABLE OF BASIC BENEFITS ABOVE.

PREMIUMS FOR THIS POLICY MAY INCREASE ON RENEWAL AT OR AFTER
AGE 65 AND WILL BE AT OUR RATES THEN IN EFFECT FOR PERSONS OF
YOUR AGE AND CLASS OF RISK.
```

SP101                      -03/18/93-                    SCHEDULE PAGE 3

CONTINUED .....

TABLE OF INCREASES                                POLICY NUMBER - G-723670


THIS TABLE SHOWS THE ANNUAL INCREASES THAT WILL OCCUR UNDER THE TERMS
OF AUTOMATIC INCREASE RIDER FORM AIR-01L.


THE MONTHLY INDEMNITY AND THE ANNUAL PREMIUM FOR THIS POLICY WILL
AUTOMATICALLY INCREASE BY THE FOLLOWING AMOUNTS ON EACH INCREASE
DATE:

| INCREASE DATE | INCREASE IN MONTHLY INDEMNITY | INCREASE IN ANNUAL PREMIUM FOR THIS POLICY |
|---|---|---|
| 03/19/94 | $150 | $83.59 |
| 03/19/95 | $160 | $90.79 |
| 03/19/96 | $170 | $98.50 |
| 03/19/97 | $180 | $106.78 |
| 03/19/98 | $190 | $115.57 |
| TOTAL OF ALL INCREASES: | $850 | $495.23 |


EACH INCREASE IN MONTHLY INDEMNITY IS SUBJECT TO TIMELY PAYMENT OF
THE NEW PREMIUM DUE.

THE MAXIMUM REHABILITATION BENEFIT AND THE CAPITAL SUM INCREASE EACH
YEAR BY 12 TIMES THE AMOUNT OF INCREASE IN THE MONTHLY INDEMNITY.

IF YOU DO NOT ACCEPT AN INCREASE, YOUR REFUSAL REDUCES THE AMOUNTS
OF MONTHLY INDEMNITY AND CHANGES THE PREMIUMS FOR THE SUBSEQUENT
YEARS IN THIS TABLE. YOUR REFUSAL IN NO WAY EXTENDS THE LAST
INCREASE DATE SHOWN.


SP101                         -03/18/93-                   SCHEDULE PAGE 4

## EXCLUSIONS AND LIMITATIONS

**Preexisting Condition Limitation**

We will not cover any loss that begins in the first two years after the date of issue from a preexisting condition.

A *preexisting* condition means a physical or mental condition:
- which was misrepresented or not disclosed in your application; and
- for which you received a physician's advice or treatment within two years before the date of issue; or
- which caused symptoms within one year before the date of issue for which a prudent person would usually seek medical advice or treatment.

**Medical Care Requirement**

We will not pay benefits under this policy for any period of disability during which you are not under the care of a physician.

We will waive the medical care requirement during any claim under this policy upon reasonable proof that your sickness or injury no longer requires regular care of a physician under prevailing medical standards. Such waiver will not restrict our rights under the provision of this policy called "Physical examinations."

## DEFINITIONS

**Accumulation Period**

The accumulation period is shown in the schedule page. It is a period of consecutive months that begins on the first day that you are disabled and during which the elimination period must be satisfied.

**Benefit Period**

The benefit period is shown in the schedule page. It is the longest period of time for which we will pay indemnity for continuous disability from the same cause.

**Elimination Period**

The elimination period is shown in the schedule page. It is the number of days for which we will not pay benefits at the start of a claim. You must be disabled, from the same or a different cause, on all of these days. The days need not be consecutive but they must occur within the accumulation period.

**Injury**

Injury means accidental bodily injury which occurs while this policy is in force.

**Loss Payee**

You are the loss payee unless some other person is named in the schedule page. We will pay all benefits to the loss payee.

**Monthly Indemnity**

The monthly indemnity is shown in the schedule page. It is the amount we will pay for each month of total disability.

**Owner**

You are the owner unless some other person is named in the schedule page. The owner has the right to renew this policy; to request a change in benefits; to change the loss payee; to receive dividends, if any are declared; and to vote for our directors.

**Physician**

Physician means a legally qualified physician other than yourself, who is not a loss payee or owner under this policy.

**Sickness**

Sickness means a sickness or disease, including pregnancy, which is first diagnosed and treated while this policy is in force.