# BENEFIT PROVISIONS

## Total Disability Benefit

When you are totally disabled, as defined in the schedule page, we will pay the monthly indemnity as follows:
- You must become totally disabled while this policy is in force.
- You must remain so disabled for the length of the elimination period. No indemnity is payable during that period.
- After that, monthly indemnity will be payable at the end of each month while you are totally disabled.
- Monthly indemnity will stop at the end of the benefit period or, if earlier, on the date you are no longer totally disabled.

We will not increase the rate of monthly indemnity because you are totally disabled from more than one cause at the same time.

### Fractional Month
We will pay benefits at the rate of 1/30 of the monthly indemnity for each day for which we are liable when you are disabled for less than a full month.

### Waiver of Elimination Period
We will waive the elimination period if you become disabled within five years after the end of a prior period of disability which lasted more than six months and for which we paid benefits.

### Recurrent Periods of Disability
We will consider recurrent periods of disability to be one continuous period of disability if they result from the same cause or causes and are not separated by a recovery of more than:
- 12 months if the benefit period is to age 65 or longer and recurrence occurs before age 60; or
- 6 months in all other instances, including recurrence at or after age 60.

If a recurrent period of disability arises from a different cause, we will consider your loss to be a separate and unrelated period of disability.

## Capital Sum Benefit

The capital sum is shown in the schedule page. This lump sum is in addition to any other indemnity payable under this policy.

If you suffer a capital loss and survive it for 30 days, we will pay the capital sum for each such loss. But we will not pay for more than two such losses in your lifetime.

### Capital Loss
A capital loss means the entire loss of the sight in one eye, with no possible recovery; or the complete loss of a hand or foot by severance through or above the wrist or ankle. Such loss must occur while this policy is in force and must result from sickness or injury.

If this policy has terminated, we will pay for a capital loss which results from an injury sustained while this policy was in force and which occurs within 90 days after the date of that injury.

## Presumptive Total Disability Benefit

We will always consider you to be totally disabled, even if you are at work, if sickness or injury results in your total and complete loss of:

- the sight of both eyes; or
- the hearing of both ears; or
- the power of speech; or
- the use of any two limbs.

We will waive the unexpired part of the elimination period from the date of loss. We will pay the monthly indemnity each month while such loss continues from the date of loss to the end of the benefit period. You must give us satisfactory proof of loss. But you do not have to be under the continuing care of a physician.

## Rehabilitation Benefit

If you enroll in a rehabilitation program while you are totally disabled, we will pay a benefit to meet some of the costs you may incur. All of the following conditions apply:

- We must agree to the program in writing before you enroll.
- The program must be a formal plan of retraining that will help you to return to work in your occupation.
- It must be directed by an organization or individual who is licensed or accredited to provide vocational training or education to persons who are totally disabled.
- We will pay only those costs which are not otherwise covered by health care insurance, workers' compensation, or any public fund or program. But we will not pay more than the maximum rehabilitation benefit shown in the schedule page.

## Transplant and Cosmetic Surgery Benefit

If you are totally disabled because of:

- the transplant of a part of your body to another person, or
- cosmetic surgery to improve your appearance or correct a disfigurement,

we will deem you to be disabled as the result of sickness.

## Waiver of Premium Benefit

If you are totally disabled for at least 90 days (or the length of the elimination period, if shorter), we will refund any premiums due and paid during that period. Then we will waive any later premium that falls due while you are continuously so disabled or within 90 days after you recover.

On each waiver, we will renew this policy for another term of the same length as that in effect when claim began. If that term was less than twelve months and you are still disabled and eligible for waiver on a policy anniversary, we will then change the term to twelve months.

You have the right to resume payment of premiums when you recover and the waiver of premium benefit ends. At that time, you can change the term back to its original length if you wish.

This waiver of premium benefit will also apply if monthly indemnity is payable because you have met the requirements of any of the provisions called Waiver of Elimination Period, Recurrent Periods of Disability or Presumptive Total Disability Benefit.

Nothing in this provision will change the conditions for renewal after age 65 that require you to be at work full time.

# CLAIM PROVISIONS

### Notice of Claim

You must give us notice of claim within 30 days after any loss which is covered by this policy occurs or starts, or as soon after that as is reasonably possible. Notice, with sufficient information to identify you, will be deemed notice to us if given to us at our home office, 201 Park Avenue South, New York, New York 10003, or to an authorized Guardian agent.

### Claim Forms

When we get your notice of claim, we will send claim forms for filing proof of loss. If we do not send you such forms within 15 days after your notice, you may submit a written statement within the time fixed in this policy for filing proof of loss, which proves the nature and extent of the loss for which claim is made.

### Time for Filing Proof of Loss

We are liable for benefits at the end of each month while you are disabled beyond the elimination period until the benefit period ends or, if earlier, the date you recover.

You must give us proof of loss at our home office or at any agency office:
- for loss from disability within 90 days after the end of the period for which we are liable; and
- for any other loss within 90 days after the date of loss.

If you cannot reasonably give us proof within such time, we will not deny or reduce claim if you give us proof as soon as possible. But we will not pay benefits in any case if proof is delayed for more than one year, unless you have lacked legal capacity.

### Time of Payment of Claims

Subject to due written proof of loss, we will pay all accrued indemnity for disability each month. Any amounts unpaid when our liability ends will be paid immediately after we receive due written proof of loss.

We will pay benefits for any other covered loss immediately after we receive due written proof of loss.

### Payment of Claims

We will pay all benefits of this policy to the loss payee.

If you are the loss payee, any accrued benefits unpaid at your death will be paid to your estate.

If any benefit of this policy becomes payable to your estate or to a minor or incompetent person, we may pay such benefit, up to $1,000, to any of your relatives by blood or marriage who we believe has a right to it. Any payment made in good faith under this provision will fully discharge Guardian to the extent of such payment.

### Physical Examination

We shall have the right and opportunity to have you medically examined at our expense when and as often as we may reasonably require while you claim to be disabled under this policy.

### Legal Actions

No one can bring an action at law or in equity under this policy until 60 days after written proof has been furnished as required by this policy. In no case can an action be brought against Guardian more than three years after written proof must be furnished.

### Misstatement of Age

If your age has been misstated, the benefits will be what the premium paid would have bought at the correct age. If we would not have issued this policy at your correct age, there will be no insurance and we will owe only a refund of all premiums paid for the period not covered by this policy.

# RESIDUAL DISABILITY RIDER

This rider is part of this policy and subject to all its conditions. It provides indemnity when you are at work at reduced earnings as a result of sickness or injury.

Under the terms of this rider, we will determine whether you are residually disabled based solely on your ability to earn income as a result of sickness or injury. We will compute benefits solely in relation to earned income that you receive on a cash basis except as provided in the definition of current income.

**Premium and Renewal**

The premium for this rider is shown on the schedule page. You may not renew this rider after you are age 65.

## Amendments to This Policy

**Elimination Period**

The elimination period will begin on the date you become sick or injured. You may be totally or residually disabled on each day after that to satisfy the elimination period under the benefit provisions of this policy or rider.

**Waiver of Premium**
You may be totally or residually disabled to meet the conditions for waiver of premium of this policy.

## Definitions

**Residual disability** means that you are at work and are not totally disabled under the terms of this policy; but, because of sickness or injury, you are not able to earn at a rate of at least 80% of your prior income.

**Residual indemnity** is a reduced amount of the monthly indemnity for this policy. We derive it as follows:

$$\text{residual indemnity} = \frac{\text{loss of income}}{\text{prior income}} \times \text{monthly indemnity}$$

If you have a social insurance substitute rider, we will add the SIS benefit to the monthly indemnity in this equation in each month when the SIS benefit is payable.

**Income** means the compensation which you receive for work or personal services, after business expenses, but before any other deductions, as reported for federal income tax purposes. It includes salaries, wages, fees, commissions, bonuses, business profits or other payments for your personal services, including pension and profit sharing contributions. It does not include passive or unearned income from dividends, interest, rentals or royalties. It is not Adjusted Gross Income.

*Prior income* means your average personal monthly income for the calendar tax year with the highest earnings in the three years just prior to the date on which you became disabled.

*Current income* means all income which you receive on a cash basis in each month while you are residually disabled. But we will not include income received for services rendered prior to the start of the period of disability in your current income.

*Loss of income* means the difference between your prior income and your current income.

**Expenses** mean the regular business expenses which you may deduct from gross earned income for federal tax purposes.

*Prior expenses* mean your average monthly expenses for the same tax year on which your prior income is based.

*Current expenses* mean your expenses in each month while you are residually disabled.

During a claim under this rider, the current expenses you deduct from gross earned income may not exceed your prior expenses, except as adjusted by this rider.

Form No. RSDL-01E

Form No. RSDL-01E

### Adjustment of Prior Expenses

While you are disabled under this rider, we will adjust your prior expenses to reflect any increase in fixed expenses that you then incur under the terms of a lease or other contract which was in effect at the start of claim.

### Adjustment of Prior Income and Expenses Due to Inflation

At the end of each twelve months in a continuous claim before you are age 65, we will adjust your prior income and prior expenses to reflect changes in the cost of living since the start of claim.

**Review date** means the recurrence each year of the date on which you were first disabled in the same claim.

**CPI-U** means the Consumer Price Index for All Urban Consumers, or any later replacement of it, as published by the federal Department of Labor.

**Index month** means the calendar month that fell ninety days before the date on which you were first disabled in the same claim.

On each review date in the same claim, we will adjust your prior income and prior expenses for use in the next twelve months by the actual percentage change in the CPI-U since the index month. We will make no change that would reduce those amounts below what they were at the start of claim.

### Residual Disability Benefit

When you are residually disabled, we will pay the residual indemnity each month as follows:

- You must become totally or residually disabled before you are age 65 while this policy is in force.
- You must remain so disabled for the length of the elimination period. No indemnity is payable during that period.
- After that, residual indemnity will be payable at the end of each month while you are residually disabled.

### Computation of Residual Disability Benefit

For the first six months while you are residually disabled, the exact rate of your current income will apply, except as stated below. After that, we will compute your residual indemnity for each six month period on the average of your current income for the preceding six months. But we may agree to a shorter or longer period of averaging.

During the first six months for which residual disability benefits are payable, we will deem your loss of income to be 65% of prior income or the actual percentage of loss, if greater.

After the first six months, loss of income will be computed at the actual percentage rate of loss.

However, at all times, if loss of income is more than 75% of prior income, we will deem such loss to be 100%.

### Termination of Residual Indemnity

Residual indemnity will stop when the first of the following events occurs:

- you become totally disabled; or
- your loss of income is less than 20% of prior income or, if lower, the residual indemnity becomes less than $500 a month; or
- the benefit period ends; or
- you become age 65 in any claim which began before age 60.

### Proof of Loss

We can require any proof which we consider necessary to establish your current and prior incomes. We have the right to examine all relevant records, including your personal, business and corporate federal tax returns, as often as we may reasonably require.

During claim under this rider, we can require that your accounting practices be the same as those which were in effect at the time you first became disabled.

**The Guardian** Life Insurance Company of America

*[signature]*
Secretary

# COST OF LIVING ADJUSTMENT RIDER

This rider is part of this policy and subject to all its conditions.

**Premium and Renewal**

The premium for this rider is shown in the schedule page. You may not renew this rider after you are age 65.

**Definitions**

*Review date* means the recurrence each year of the date on which you were first disabled in the same claim.

*CPI-U* means the Consumer Price Index for All Urban Consumers, or any later replacement for it, as published by the federal Department of Labor. That index shows the rate of change in the cost of living in the United States.

*Index month* means the calendar month that fell ninety days before the date on which you were first disabled in the same claim.

*Monthly indemnity* means the monthly indemnity of this policy in effect on the date that claim begins. We base all benefits for disability on the monthly indemnity.

**Social Insurance Substitute**

If you have a social insurance substitute rider, we will adjust the SIS benefit under the same conditions which apply to the monthly indemnity. But this will not change the conditions for payment of the SIS benefit.

## Cost of Living Adjustments

At the end of each twelve months in a continuous claim before you are age 65, we will adjust your monthly indemnity for the next twelve months to reflect any changes in the cost of living since the start of claim.

On each review date, we will compare the CPI-U for the index month with the CPI-U for the same month in the year then ended. If the CPI-U has gone up or down since the index month, we will adjust the month indemnity for the next twelve months by the percentage change in the CPI-U.

Your adjusted indemnity may go up or down from year to year as the CPI-U rises or falls in relation to the index month. But the adjusted indemnity will never be:

- more than the amount we would pay if the CPI-U had risen each year exactly by the maximum increase per cent shown for this rider in the schedule page.
- less than the monthly indemnity.

**When Adjustment Ends**

We will adjust the monthly indemnity on each review date until the first of the following events occurs:

- you are no longer disabled; or
- the benefit period ends; or
- you become age 65.

Form No. COLA-O1F

Form No. COLA-OIF

We will make no further changes up or down in the monthly indemnity after you are age 65, except as follows. If you are then disabled in a claim which began at or after age 60, we will continue to make adjustments until the benefit period ends or, if earlier, you are no longer disabled.

## Adjusted Indemnity When Claim Ends

### Monthly Indemnity Before Age 65

If your claim ends before you are age 65, we will then deem the monthly indemnity of this policy to be the increased amount, if any, created by this rider on the last review date before claim ended.

The increased indemnity will take effect without an extra premium charge on the date claim ended. We will base all benefits on that amount in any later claim which begins after such date before you are age 65.

This provision will apply at the end of each claim in which this rider operates to increase the monthly indemnity until you are age 65.

We will increase the SIS benefit, if any, in the same way. But this will not change any of the conditions of the social insurance substitute rider for benefit payment or renewal.

### Monthly Indemnity at Age 65

At the time you first renew this policy when you are age 65, you may choose one of the following amounts of monthly indemnity for all claims that begin after that date:

- the monthly indemnity shown in the schedule page; or
- the increased indemnity, if any, last created by this rider.

If you are disabled at age 65, you can make this choice at the time you first renew this policy after you recover.

We will base your premium after that on the amount of monthly indemnity you select. You must meet all the conditions in the provision on the first page of this policy for renewal after age 65.

**The Guardian** Life Insurance Company of America

*[signature]*
Secretary

# FUTURE INCREASE OPTION RIDER

This rider is part of this policy and subject to all its conditions.

**Premium and Renewal**

This rider will expire and no further premium will be due for it after you are age 55 or, if earlier, after you use your last option.

The premium for this rider on the date of issue is shown in the schedule page. Each time you use an option, we will reduce that premium in proportion to the amount of insurance you have bought.

**Increase Option**

This rider gives you the right to buy more disability income insurance in future years in spite of any change in your health or occupation. We call the added insurance an increase option.

The increase option will be added to this policy or, at our choice, will be issued on a separate policy form which is most like this policy then in use in the place where you live.

The total increase option is shown in the schedule page. This is the maximum amount of monthly indemnity which you may buy under this rider on all option dates combined. Your option date each year is the policy anniversary.

Until you are age 45, you may buy all or part of the total increase option on any one option date. On and after age 45, you may buy up to one third of the total increase option on any option date.

**Conditions and Limitations**

All of the following conditions apply on any option date:

- You must apply in writing and pay the required premium for the increase option at least 30 days before the option date on which such increase will take effect.

- You do not have to give evidence of good health. But you must give us details of your income, employment and other insurance in force.

- The increase option must have the same elimination period and benefit period as this policy.

- We will not issue an increase option with less than $200 monthly indemnity.

- You may use a part of your total increase option to purchase a social insurance substitute benefit if we then offer such a benefit to new insureds.

- The monthly indemnity of the increase option, including any SIS benefit, may not exceed our published income rules for new insureds. These rules limit the total insurance which we will issue in relation to earned income. We will use the rules that applied on the date of issue of this policy, unless more liberal rules are then in effect.

- The increase option may include any residual disability benefit or cost of living benefit that is part of this policy if we are then offering such benefits to new insureds.

- The increase option may not include an automatic increase rider or a future increase option rider.

- Premiums for the increase option will be at our rates for your age and class of risk on the option date. In no case will your class of risk under the increase option be less favorable than under this policy.

- We may exclude any condition under the increase option which has been specifically excluded under this policy. We may also apply any special class rating which applies to this policy.

Form No. FIO-O1K

Form No. F1O-O1K

### Disability on an Option Date

The following conditions will apply to the increase option if you are disabled under this policy on an option date.

- Your earned income for purposes of the increase option will be deemed to be your rate of earnings when you first became disabled under this policy.

- The increase option will take effect immediately for the disability that exists on the option date. We will deem that you were first disabled on the date of issue of the increase option. You will then have to satisfy all conditions of the policy for payment of benefits, including any elimination period.

- If the premiums of this policy are waived on an option date, we will waive the premium of the increase option under the same conditions which apply to this policy.

**The Guardian** Life Insurance Company of America

*[signature]*
*Secretary*

# AUTOMATIC INCREASE RIDER

This rider is a part of this policy and subject to all its conditions.

**Automatic Increases**

The monthly indemnity will increase automatically each year as shown in the table of increases in the schedule page, despite any change in your health, income or occupation.

The increased monthly indemnity will apply only to a period of disability that starts on or after the increase date. It must be a separate period of disability, as defined in the provision called "recurrent periods of disability."

Premiums for the increased indemnity will be at our rates for this policy at your age on the increase date. If we are then waiving the premiums of this policy, we will also waive the premiums for the increased indemnity. When you resume paying premiums for this policy, they will include the premiums for the increased indemnity.

You may refuse an increase by giving us written notice within 31 days after the date on which it was to take effect. Your refusal will not forfeit any remaining scheduled automatic increases. But it will reduce the number of increases to which you are entitled by one.

**Rider Premium and Renewal**

The premium for this rider is shown in the schedule page. This rider will expire and no further premiums will be due for it as of the date on which the last automatic increase occurs.

If you have not reached age 60 on that date, you may ask us to extend this rider for more automatic increases. You must apply in writing within a period of 60 days before and 31 days after such date. You must meet our published rules that are then in effect for extension of this rider.

The premium for extension of this rider will be at our rates for your age on the date we approve an extension. At that time, we will issue a revised schedule page with a new table of increases.

**The Guardian** Life Insurance Company of America

*Hubert N. Grolnick*
*Secretary*

Form No. AIR-01L

# CONNECTICUT STATUTORY RIDER

This rider is a part of this policy.

The definition of "Physician" in this policy is deleted and replaced by the following:

**Physician**

Physician means a person, other than yourself, who is licensed to practice the healing arts, who is acting within the scope of his or her license, and who is not a loss payee or owner under this policy.

The provision called "Time limit on certain defenses" is deleted and replaced by the following:

**Incontestable**

This policy shall be incontestable, except for nonpayment of premium, after it has been in force for two years from the date of issue.

**The Guardian** Life Insurance Company of America

*Secretary*

Form No. AR613

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
201 Park Avenue South, New York, New York 10003

APPLICATION FOR DISABILITY INCOME INSURANCE

CA 51286

COMPLETE ONLY IN THE PRESENCE OF THE INSURED
("Insured" or "you" means the proposed insured.)

PRINT all entries in ink.

## PART I—PERSONAL AND FINANCIAL INFORMATION OF INSURED

1. (a) Insured _Carolyn_ _T._ _Streeter_     (b) Male ☐ Female ☑
       First       Middle Initial    Last

   (c) Birthdate _9/21/63_   (d) State of birth: (country if not USA) _DE_

   (e) Social Security Number _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_

   *If the owner or loss payee of this policy is other than the insured, complete the following:*

   (f) _____  Soc. Sec. or Tax ID No. _____
              Owner

   (g) _____  Soc. Sec. or Tax ID No. _____
              Loss payee

2. (a) RESIDENCE ADDRESS OF INSURED

   Street _39 Loon Place_

   City _South Windsor_   State _CT_  Zip _06074_

   (b) BUSINESS ADDRESS OF INSURED

   Employer _Brian Mark, DMD_

   Street _479 Buckland Road_

   City _South Windsor_   State _CT_  Zip _06074_

   (c) Send Premium Notices to:   ☑ Residence   ☐ Business   ☐ List Bill Account

   *If insured's residence or business address has changed within two years, complete the following:*

   (d) Former residence address _56 Bramblebrae, South Windsor, CT 06074_

   (e) Former business address _Jeffrey Altman, DDS - 1011 Main Street, East Hartford, CT 06108_

Form No. AP2-91

Page one

Form No. AP2-91                                                                                                  Page two

## 3. OCCUPATION OF INSURED

(a) Occupation _Dental Hygienist_    Job Title _____

(b) Nature of Business _DENTISTRY_

(c) Describe, in order of importance, all major duties of your occupation.

| Description of duties | % of time devoted to this activity |
|---|---|
| Scaling, Root Planing, Prophylaxis, Denim/Chrome Exposing Radiographs | 90% |
| Patient Education | 5% |
| Documentation | 5% |

(d) Are you now at work at least 30 hours a week in this occupation? ☒ Yes  ☐ No   9/1/0

(e) Number of years in this occupation _10_ with this employer _10_

(f) Former occupation, if changed within two years _____

(g) Do you have any other part or full time jobs? ☒ Yes ☐ No. If yes, describe _Mary Kay Cosmetics - Part Time Sales Rep._

(h) If an owner, percentage owned ____% Years owned ____ Number of employees ____

Type of business entity:  ____ Sole Proprietor  ____ Partnership  ____ S Corp  ____ C Corp
                                                                             Other (Describe) _____

## 4. DISABILITY INCOME COVERAGE OF THE INSURED

(a) List all personal and business disability income insurance now in force or applied for in all companies, including The Guardian.

If NONE, check here: ____

Code type of insurance:  IND = Individual   G = Group   A = Association
Identify:                 I = Inforce       P = Pending or Date of Eligibility

| Insurer | Type: Disability Income, Overhead, Buyout | Type: Monthly IND, G or A | Benefit Indemnity Period | Benefit Date of I, P or Eligibility | Reduced by Social Sick/Acc Security Eligibility | Check if Employer Pays Premium |
|---|---|---|---|---|---|---|
| Smith Life Assurance | IND-DI | IND | 2500 | 65/65 | I | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

(b) Will you become eligible for group disability income insurance in the next six months? ☐ Yes ☒ No
    If yes, show amount $_____ and benefit period _____

(c) What part of the premium for this policy will your employer pay? $____ or ____%  ☒ None
    How much of this premium will be included in your taxable income? $____ or ____%  ☒ None

(d) Do you pay Social Security taxes (FICA or Schedule SE)? ☒ Yes ☐ No
    If no, explain: _____

5. **PERSONAL FINANCIAL INFORMATION OF THE INSURED**

   (a) *Earned income* means the compensation which you receive for work or personal services, **after business expenses,** but before any other deductions, as reported for federal income tax purposes on IRS Form 1040.

   Earned income does not include *passive or unearned income* from dividends, interest, rentals or royalties. It is not Adjusted Gross Income.

   Fill in the amounts that are (or will be) shown on your federal income tax forms and supporting schedules. Do not enter any amounts that are not reported to the IRS.

   |  | Current Year Estimated Jan 1 - Dec 31 19_93_ | Most Recent Calendar Year Jan 1 - Dec 31 19_92_ | Two Calendar Years Ago Jan 1 - Dec 31 19_91_ |
   |---|---|---|---|
   | (b) **EARNED INCOME** |  |  |  |
   | 1. Salary or Wages from Form W2 | $43,000 | $42,000 | $42,000 |
   | 2. Sole Proprietor Net Profit from 1040 Schedule C |  |  |  |
   | 3. Share of Partnership or S Corp Non-passive Income from 1040 Schedule E |  |  |  |
   | 4. Pension Plan Contributions or Elective Deferred Compensation which would cease if the insured were disabled |  |  |  |
   | 5. Bonus, Commission or Other Earned Income from this occupation (explain in Remarks below) |  |  |  |
   | 6. Other Earned Income from any other full or part time work (explain in Remarks below) | $3000 | $2000 | $1500 |
   | **TOTAL EARNED INCOME** (Add above amounts) | $46,000 | $45,000 | $43,500 |

   (c) **UNEARNED INCOME,** including passive income, if it exceeds $20,000 in either of the last two years. If not applicable, so state.

   (d) **NET WORTH** Is your net worth greater than $4,000,000?   ☐ Yes   ☒ No

   If yes, describe your net worth in detail. Show current value less indebtedness.

   Cash, savings, stocks and bonds $_____     Personal property  $_____

   Business                        $_____     Personal residence $_____

   Other real estate               $_____     Other              $_____

   (e) *Explain* any fluctuations in income that exceed 20% of the prior year or any special circumstances that may affect your earned income in the Remarks section.

   (f) Remarks

   6. ABOVE - Sales Rep. for Mary Kay Cosmetics

Form No. AP2-91                                                                                   Page three

**6. REPLACEMENT**

Will the new Guardian policy replace any disability income insurance?  ☒ Yes  ☐ No

*When issuing any insurance as a result of this application, The Guardian will rely on the fact that the insured can and will permanently terminate the coverage listed below by the next premium due date following delivery of The Guardian policy. The Guardian may contact any listed insurer after the date shown to confirm that the coverage has been permanently terminated.*

| Insurance Company | Type: Disability Income, Overhead, Buyout | Group or Association Name | Policy Number | Amount to be Replaced | Next Premium Due Date and Mode |
|---|---|---|---|---|---|
| SMA Life | DI | | 563/939 | 2500 | Monthly |
| | | | | | |
| | | | | | |

---

**PART IIA—HEALTH AND PERSONAL HISTORY OF THE INSURED**
(Complete even if medical examination is required)

7. (a) What are the names and addresses of your personal physicians?
Dr. Joseph Guredino, 445 Main St., Minchester, CT 06040
_____
_____
If none, so state.

(b) When and for what reason was each physician last seen?
July 1993 - Allergies
_____
_____

8. (a) Height 5 ft 3½ in   (b) Weight 125 lbs

(c) Has there been a weight loss of more than 15 pounds in the past year?  ☐ Yes  ☒ No
If yes, give reason: _____

9. Have you smoked cigarettes in the last twelve months?  ☐ Yes  ☒ No

Form No. AP2-91                                                                                                 Page four

10. Within the past 10 years, have you had or been treated for:

|   | Yes | No |
|---|---|---|
| (a) high blood pressure, chest pain, or disorder of the heart or circulatory system? | ☐ | ☒ |
| (b) diabetes, cancer, tumor, or disorder of the glands, bone, blood, or skin? | ☐ | ☒ |
| (c) disorder of the breasts, reproductive organs, kidneys or urinary system? | ☐ | ☒ |
| (d) hernia, or disorder of the liver, gall bladder, stomach, intestines or rectum? | ☐ | ☒ |
| (e) arthritis, rheumatism, or disorder of the joints, limbs, muscles, back, neck or spine? | ☐ | ☒ |
| (f) allergy, asthma, sinusitis, emphysema, or disorder of the lungs or respiratory system? | ☒ | ☐ |
| (g) epilepsy, stroke, dizziness, chronic headache, or disorder of the brain or spinal cord? | ☐ | ☒ |
| (h) disorder of the eyes, ears, nose or throat? | ☐ | ☒ |
| (i) emotional, mental or nervous stress or disorder? | ☐ | ☒ |

11. Have you ever used drugs other than as prescribed by a physician, or been advised to have counseling or treatment for alcohol or drug use?   ☐ Yes  ☒ No

12. Within the past 10 years, have you been diagnosed by or received treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or any disorder of the immune system?   ☐ Yes  ☒ No

13. Are you currently taking prescribed medication?   ☐ Yes  ☒ No

14. Do you have any loss of hearing or sight, an amputation of any kind, or any physical deformity, impairment or handicap?   ☐ Yes  ☒ No

15. Are you now pregnant? If yes, give expected date of delivery.   ☐ Yes  ☒ No

16. Within the past five years, have you had a physical examination or check-up of any kind; been advised to have surgery or any diagnostic tests, except HIV tests, that were not performed; or consulted a physician or other qualified practitioner for any condition not listed in this part?   ☐ Yes  ☒ No

17. Within the past twelve months, have you had **symptoms** of any condition listed in this part for which you **have not** sought medical attention or advice?   ☐ Yes  ☒ No

Explain in full all "yes" answers to questions 10 through 17. *Show question number.* Give diagnosis, dates, length of disability, degree of recovery, and names and addresses of all physicians, practitioners, or hospitals.

⑩ f.  Allergies to grasses, weeds + pollen

18. Do you sky dive, or operate an aircraft, glider or balloon?   ☐ Yes  ☒ No

Do you scuba dive, or race automobiles, motorcycles or boats?   ☐ Yes  ☒ No

*If you answer "yes" to any of these activities, complete supplemental application AP2-91 AVO.*

Form No. AP2-91                                                                                                           Page five

## PART III—REPRESENTATIONS OF INSURED AND OWNER

☒ No money has been paid as a deposit for disability income insurance with this application.

☐ $_____ has been paid as a deposit for proposed disability income insurance in the amount of $_____ per month in exchange for the receipt providing conditional coverage.

☐ Additional disability income insurance has been applied for in the amount of $_____ but no deposit has been paid for this amount of insurance.

**Request for special dating when a deposit has been paid**

I, the insured, request that the insurance applied for take effect on _____. In making this request, I understand that I may be waiving certain rights and guarantees under the conditional receipt given in exchange for my premium deposit.

I have read my answers to the foregoing questions. I declare that they were taken in the presence of the agent and are complete and true to the best of my knowledge and belief.

I understand and agree as follows:

1. This application (pages one through six), any supplement to it, and Part II, if required, shall form a part of any policy issued. The Guardian will rely on all written statements in these pages if it issues a policy to me.
2. An agent cannot: a) accept any person for insurance; nor
   b) waive a complete answer to any part of this application; nor
   c) make contracts; nor
   d) waive any other rights or requirements of The Guardian.
3. No information acquired by any representative of The Guardian shall bind The Guardian unless it shall have been set out in writing in this application.
4. No waiver or change in the terms of the policy applied for will be valid unless it is set out in writing and signed by the president, a vice president or a secretary of The Guardian in the home office.
5. If a premium has been paid for insurance in exchange for the conditional receipt bearing the same number as this application, insurance will be in force as set out in the terms of such receipt.
6. Except as provided in the conditional receipt, no insurance shall take effect unless and until:
   a) the policy has been delivered to and accepted by me;
   b) the full first premium has been paid during my lifetime; and
   there has been no change in my health, income level, status of employment or occupation from that shown in my application.

Signed at _Saco in N.H 040_, this _15_ day of _January_ 19_93_.

X _[signature]_
Signature of insured

*1. owner is a business entity,
signature and title of authorized person

_____
Signature of owner if other than insured

_____
Title

I certify that I have taken this application in the presence of the insured; and that I have truly and accurately recorded on this application the information supplied by the insured.

_[signature]_
Signature of licensed agent

Form No. AP2-91                                                     Page six

# AMENDMENT TO APPLICATION
## to
# The Guardian Life Insurance Company of America

Proposed Insured     CAROLYN T STREETER     Date of application being amended     02/15/93

Policy Number     G723670     issued by the Company differs from the policy applied for as indicated by the items checked below:

- ☐ Plan changed from _____ to _____
- ☐ Amount changed from $ _____ to $ _____
- ☐ Policy issued without benefit checked:
    - ☐ Accidental Death
    - ☐ Disability Premium Waiver
    - ☐ Disability Income
    - ☐ Combined Waiver of Premium
    - ☐ Guaranteed Issue Option
    - ☐
- ☐ Policy issued with higher than standard premiums applicable to _____ class of risks.
- ☐ Policy issued with permanent extra premium
- ☐ Policy issued with temporary extra premium
- ☐ Policy issued with special ☐ war limitations, ☐ aviation limitations, see rider(s) attached to policy.
- ☐ Policy issued with a non-effective Conditional Receipt.
- ☐
- ☐
- ☒ Policy issued with the following statements substituted for the answers to the corresponding questions in the application:

Question No.
5 (C) UNEARNED INCOME, INCLUDING PASSIVE INCOME, IF IT EXCEEDS $20,000 IN EITHER OF THE LAST TWO YEARS. IF NOT APPLICABLE, SO STATE. N/A  N/A

*RECEIVED IN D.P.
NEW BUSINESS PAYMENTS
APR 1 1993*

THE UNDERSIGNED HEREBY ACCEPT the policy referred to above, REPRESENT that any statements substituted above as answers to corresponding questions in the application amended hereby are true and complete to the best of the knowledge and belief of the undersigned, AND AGREE that the application upon which this policy has been issued is hereby amended to request the policy as issued.

IT IS CERTIFIED that the policy referred to above had attached to it an exact copy of this amendment.

DATE __3/25__, 19_93_     X _Carolyn T Streeter_
                                 Signature of Proposed Insured
                                 (or Applicant if Juvenile or Junior Guardian Insurance)

_____

Signature of Applicant-Owner
(If other than Proposed Insured)

P89-67

## PROVISIONS RELATING TO PREMIUM AND RENEWAL

### Age
When we refer to a specific age—such as age 65—we mean your age as of the policy anniversary that first occurs on or after the birthday on which you attain that age.

### Policy Anniversary
A policy anniversary is the recurrence each year of the date of issue.

### Premium and Grace Period
The term premium is shown in the schedule page. Premiums are due on the first day of each term. You have a grace period of 31 days in which to pay each premium due after the first one.

This policy stays in force during the grace period. If you have not paid the premium by the end of the grace period, this policy will lapse at 12:01 AM the next day.

If you die, we will refund to your estate that part of any premium which applies to the period after your date of death.

### Termination of This Policy At or After Age 65
If you are not at work full time at the end of any term when you are age 65 or older, except by reason of total disability, this policy will terminate.

Termination will not prejudice any claim for total disability:

- which begins while this policy is in force; or
- which begins within 31 days after the date of termination as the result of an accident that occurred while this policy is in force.

If we accept any premium after you are age 65, this policy will stay in force to the end of the term which that premium covers.

### Reinstatement
If this policy has lapsed at the end of the grace period, you can still keep it in force by paying the first overdue premium within 45 days of the time it was due.

After that, you can reinstate this policy under the following conditions:

- You must complete an application.
- You must pay all overdue premiums, for which we will issue a conditional receipt.
- We will place this policy back in force on the date we approve your application. But if we have not approved or refused your application in writing within 45 days after we have given a receipt, this policy will be reinstated on that 45th day. If we refuse to place this policy back in force, we will refund your premium.

In any case, this policy will be reinstated on the date that we or our agent accept a premium and do not ask for an application. The reinstated policy will cover only loss that begins after the date of reinstatement. In all other respects, you and we will have the same rights under this policy as before it lapsed, subject to any provisions endorsed on or attached to it in connection with reinstatement.

### Suspension During Military Service
We will suspend this policy on the date you go on active duty in the military service of any country or international authority. Such duty will not include temporary active duty by reservists for military training that lasts 90 days or less. We will refund that part of any premium paid for the period of such suspension.

If your active duty does not last longer than five years, you can place this policy back in force without evidence of good health or earned income as of the date of your discharge. To do so, you must apply in writing and pay the premium, both within 90 days after active duty ends.

We will base your premium on your age and class of risk when this policy was first issued. If you were disabled on or before the date of discharge, you must have recovered for at least six months before we will cover a later disability from the same cause.

### Term Changes
On any premium due date, you can change the term to twelve months or six months or three months. But we will not allow any change which would result in a premium not being due on a policy anniversary.

# GENERAL CONTRACT PROVISIONS

**Consideration**

We have issued this policy in consideration of the representations in your application and payment of the first term premium. A copy of your application is attached and is a part of this policy.

**Effective Date of Insurance**

Insurance takes effect on the date of issue for the term shown in the schedule page. Each term of this policy starts and ends at 12:01 AM standard time in the place where you live.

*Preliminary term:* If the schedule page shows a preliminary term and premium, this policy will be in force from the start of that period to the date of issue. All of your rights under this policy will begin on the first day of that term instead of on the date of issue. But this will not change the policy anniversary.

**Entire Contract; Changes**

This policy, with its riders and attached papers, if any, is the entire contract of insurance. No change in this policy will be valid unless it has been endorsed on or attached to this policy in writing by the president, a vice president, or the secretary of Guardian.

No agent has authority to change this policy or waive any of its provisions.

**Time Limit on Certain Defenses**

(a) After two years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability, as defined in this policy, that starts after the end of such two year period.

(b) No claim for loss incurred or disability, as defined in this policy, that starts two years from the date of issue of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the date of issue.

**Conformity with State Laws**

Any provision of this policy which, on the date of issue, is in conflict with the laws of the state in which you reside on such date is hereby amended to conform to the minimum requirements of such laws.

# PROVISIONS RELATING TO MUTUAL INSURANCE

**Participation**

This policy will be entitled to participate in the divisible surplus of Guardian. Dividends will be paid in such manner, under such conditions, and to such extent as our board of directors may from time to time determine.

**Election of Directors**

The annual election of directors is held at our home office on the second Wednesday in December. Owners of Guardian policies may vote for directors according to the insurance law of the State of New York. For details, write to the Secretary, 201 Park Avenue South, New York, New York 10003.

Page eight