# JAGER SMITH P.C.
COUNSELORS AT LAW

ONE FINANCIAL CENTER
BOSTON, MASSACHUSETTS 02111
telephone 617 951 0500
facsimile 617 951 2414
www.jagersmith.com

**JUN 1 6 2004**

JOANNE D'ALCOMO
jdalcomo@jagersmith.com

June 14, 2004

CERTIFIED MAIL

James W. Zilinski
President and Chief Executive Officer
Berkshire Life Insurance Company of America
700 South Street
Pittsfield, MA 01201-8285

Re: Demand letter pursuant to Mass. Gen. Laws ch. 93A, §9 concerning policyholder Carolyn Mirek, policy number G723670

Dear Mr. Zilinski:

I represent policyholder Carolyn Mirek. This is a demand letter pursuant to Massachusetts General Laws Chapter 93A, Section 9, the Massachusetts Unfair and Deceptive Practices Act, on behalf of Ms. Mirek. Berkshire Life Insurance Company of America denied Ms. Mirek's claim for disability benefits made pursuant to a policy issued by Guardian Life Insurance Company of America.

Ms. Mirek has a severe latex allergy that has disabled her from returning to work in her occupation as dental hygienist. She has asthma, and her board-certified allergist has concluded that her asthma is triggered by exposure to latex. Her latex allergy is so severe that she risks having an anaphylactic reaction if she is exposed to latex; her physician has concluded that anaphylactic reactions that she has experienced to food were apparently caused by latex gloves used by food handlers. This is a known result of severe latex allergy.

Nevertheless, Berkshire, after many months of indecision on her claim, denied her claim for disability benefits under the policy. The company relied on a physician who, as far as I have been able to determine, is not even board-certified in allergy and who did only a paper review of the records. Even more significant, the Berkshire letter dated August 7, 2002 purportedly explaining the basis for Berkshire's decision that Ms. Mirek was not disabled from performing her occupation due to a latex allergy did not make any sense – at least from a medical point of view. In explaining the basis for its denial, Berkshire wrote that "Latex allergy is not a distinct disease but a multifactorial medical entity commonly referred to as Chronic Inflammatory Airway Disease." This pivotal statement which purports to explain Berkshire's reasoning to the policyholder – an explanation to which the policyholder is entitled – is simply gibberish. Latex

JS PCDocs #46125\1

James W. Zilinski
President and Chief Executive Officer
June 14, 2004
Page 2

allergy is a well-recognized diagnosis. Latex allergy simply is <u>not</u> commonly referred to as "Chronic Inflammatory Airway Disease."

The letter of August 7, 2002 also stated that skin testing that Ms. Mirek underwent showed not only reactions to latex, but to ragweed pollen and banana -- as if the latter two were inconsistent with a severe latex allergy. In fact, it is well-established in the medical literature that individuals who are latex allergic also tend to test positive for allergies to banana and certain other foods, such as avocado, potato and tomato. Moreover, the fact that she has a history of allergy to ragweed pollen does not contradict or somehow demonstrate an inconsistency with a severe latex allergy. Rather, as those familiar with latex allergy know, it is not uncommon for individuals who have a severe latex allergy to be atopic, that is, tending to be allergic. Therefore, in another significant respect, the denial letter makes no sense.

In addition, Berkshire has taken the position that Ms. Mirek's work selling dental supplies somehow was inconsistent with her claim for disability benefits due to a latex allergy. It is not inconsistent – it is simply an effort by Ms. Mirek to minimize any exposure to latex yet at the same time earn a living for her family by using the knowledge that she gained by working in the dental field for so long. It is well-established that the best treatment for a latex allergy is avoidance; however, it is also well-established that latex is in many facets of day-to-day life, particularly in restaurants, hospitals and other medical facilities. Ms. Mirek recognizes that she cannot remove latex from all aspects of her life. She is trying to carve out a living for herself and her family the best she can with the limitations that she has. At the same time, however, she <u>should be</u> protected from the loss of income that she has suffered from being unable to work as a dental hygienist where she would be exposed to latex hour after hour, day after day in the medical areas of a dental office. That type of exposure is a very different matter – and poses a far greater risk -- than the potential for exposure in a quick business meeting in a dentist's office. Moreover, she has been put in the position of having to try to find some way to earn income because the disability income on which she counted – from Guardian's policy – has not materialized.

In acting on Ms. Mirek's claim, Berkshire Life Insurance Company of America committed a series of unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, §2 and Mass. Gen. Laws ch. 176D, §3. The conduct which constitutes violations, and which constitutes unfair claims settlement practices, includes:

1. Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim (Mass. Gen. Laws ch. 176D, §3(9)(n));

2. Aiding and abetting Guardian in failing to honor its contractual obligation to pay monthly all benefits due for disability after the policyholder established that she had a severe latex allergy that made her disabled from working in her occupation as a dental hygienist;

James W. Zilinski
President and Chief Executive Officer
June 14, 2004
Page 3

3. Failing to conduct a meaningful investigation of the claim;

4. Denying the claim based on stated reasoning that is nonsensical or unsupportable;

5. Relying on a physician who apparently is not board-certified in a relevant specialty, that is, allergy or occupational medicine, to deny the claim, and, a physician who never examined the policyholder;

6. Refusing to pay the claim without conducting a reasonable investigation based on all available information (Mass. Gen. Laws ch. 176D, §3(9)(d));

7. Failing to affirm or deny coverage of the claim within a reasonable period of time (Mass. Gen. Laws ch. 176D, §3(9)(e));

8. Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear (Mass. Gen. Laws ch. 176D, §3(9)(f)).

As a result of these unfair and deceptive acts and practices, I am seeking, on Ms. Mirek's behalf, the benefits to which she is entitled, plus Massachusetts' statutory prejudgment interest rate of 12% (non-compounded) on each payment from the time that each payment was due, to compensate her for loss of use of the benefits. In addition, I am seeking a refund of all the premiums that she has paid when the premium waiver should have been in effect, plus the statutory prejudgment interest rate of 12% (non-compounded) on each premium payment from the time that it was paid. In addition, I am seeking payment of her current benefits going forward, month to month.

The failure to pay benefits to which Ms. Mirek is entitled also has caused Ms. Mirek financial stress and emotional distress, and continues to cause her emotional distress because, in part, she has paid for a policy for more than 10 years that has turned out to be worthless. She has suffered emotional distress by the fact that she has been deprived of the income protection that she hoped she would never need, but which she did need when she was forced -- because of her medical condition -- to leave the occupation that she had worked in for so many years. Therefore, to compensate her for this emotional distress, which exacerbated the loss that she suffered in leaving her profession, I am seeking $75,000.

As Berkshire is no doubt aware, the failure to provide a reasonable offer in response to this demand letter under Chapter 93A may subject Berkshire to multiple damages and payment of attorneys' fees under the statute.

I invite you, in addition to responding to this letter, to have a member of your staff contact me so that a resolution of this matter may be reached.

James W. Zilinski
President and Chief Executive Officer
June 14, 2004
Page 4

    Thank you.

                                       Sincerely,

                                        Joanne D'Alcomo

JDA/cl

EXHIBIT E



**Berkshire**

Berkshire Life
Insurance Company of America

July 9, 2004

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Joanne D'Alcomo, Esq.
Jager Smith P.C.
Counselors at Law
One Financial Center
Boston, MA 02111

Re:  Carolyn Mirek – Policy Number G72360
     Demand letter pursuant to Mass. Gen. Laws ch. 93A § 9

Dear Attorney D'Alcomo:

I am writing in response to your correspondence dated June 14, 2004 regarding the above referenced matter.

Berkshire Life Insurance Company of America ("Berkshire") on behalf of itself and its parent company The Guardian Life Insurance Company of America ("Guardian") contend that no unfair or deceptive acts have occurred relative to the handling of Carolyn Mirek's claim for benefits under Policy No. G723670 (the "Policy").

Guardian's records indicate that on or about February 18, 2002 Ms. Mirek submitted initial claim forms seeking benefits under the Policy for total disability from her occupation as a dental hygienist from December 27, 2001 due to bilateral carpal tunnel syndrome and latex allergy. The records further reflect that a comprehensive claims investigation promptly ensued. That investigation included the review of claim forms and physician statements, an in-person field interview with Ms. Mirek and her husband, numerous telephone conversations with Ms. Mirek, as well as a review of any and all materials Ms. Mirek provided in support of her claim. Two different physicians including a specialist in Allergy and Immunology evaluated Ms. Mirek's medical records. Based

700 South Street • Pittsfield, Massachusetts 01201-8285 • Telephone: 413-499-4321 • Facsimile: 413-395-5990

Berkshire Life Insurance Company of America, Pittsfield, MA, is a wholly owned subsidiary of and an administrator for The Guardian Life Insurance Company of America, New York, NY

Joanne D'Alcomo, Esq.
Jager Smith P.C.
July 9, 2004
Page 2

upon the aforementioned investigation Berkshire reached a reasonable and good faith conclusion to deny Ms. Mirek's claim for total disability benefits under the Policy.

Approximately four months after the submission of initial claim forms Berkshire informed Ms. Mirek that she had not presented a compensable claim for total disability benefits under the Policy because the documentation she provided and that was obtained during the investigation did not substantiate a finding that she was unable to perform the major duties of her occupation. Ms. Mirek was invited to submit additional documentation in support of her claim for total disability benefits and Ms. Mirek chose not to accept that invitation. Nevertheless, further claims review and medical review confirmed the finding that benefits were not payable based on the proof of loss information presented. In short, the notion that Ms. Mirek's claim for insurance benefits was handled unfairly is preposterous. There was a substantial and professional review of Ms. Mirek's claim and the results of the claim investigation were communicated to Ms. Mirek in a timely manner.

Please note that, in our opinion, the inherent presumption in your letter that Massachusetts law governs this dispute is simply incorrect. The Policy is a Connecticut contract between a New York insurer and a Connecticut insured. The Policy was written, marketed and sold by a Connecticut licensed insurer pursuant to Connecticut insurance law, a Connecticut licensed producer delivered the Policy to Ms. Mirek in Connecticut and Ms. Mirek paid premiums in Connecticut. The claim itself was evaluated by claims analysts in Pennsylvania. Under such circumstances, Massachusetts' functional choice of law approach strongly favors a finding that Connecticut law governs. See e.g. Reicher v. Berkshire, 360 F3d 1, (1st. Cir. 2004).

On behalf of Guardian and Berkshire, we respectfully but strongly disagree with your characterizations of the handling of this matter. We have not engaged in any unfair or deceptive acts or practices. We also respectfully disagree with your opinion that Massachusetts law governs as to this insurance policy dispute. We deny that any violations of M.G.L. ch. 93A have occurred as you have alleged. In adopting this position we reserve all of our rights and defenses including those not specifically enumerated herein.

Very truly yours

Edward K. Kimball
Attorney

EXHIBIT F

CERTIFICATE

Pursuant to Massachusetts General Laws Chapter 175, Section 19B, the Division of Insurance hereby certifies that, effective on the later to occur of (a) July 1, 2001, (b) the filing with the Office of the Secretary of State of the Commonwealth of Massachusetts of the written authorization to merge by the Massachusetts Division of Insurance, (c) the issuance by the Superintendent of the New York Insurance Department of the approval of the merger, and (d) the filing of the Amended and Restated Plan of Merger, dated as of August 31, 2000, and amended as of April 2, 2001, and this certificate with the County Clerk for New York County, Berkshire Life Insurance Company ("Berkshire"), a Massachusetts insurance company, shall merge with and into The Guardian Life Insurance Company of America ("The Guardian"), a New York domiciled life insurance company, pursuant to an Amended and Restated Agreement and Plan of Merger, dated as of August 31, 2000, and amended as of April 2, 2001 ("merger"). As a result of the merger, the corporate existence of Berkshire shall cease, and The Guardian, as the surviving corporation, shall succeed to all of the authority, privileges, immunities, powers, licenses, permits, and franchises of Berkshire, and shall be subject to all of the duties, liabilities, and obligations of Berkshire, and all property, real, personal and mixed, of Berkshire and all choses in action and every other interest of or belonging to Berkshire, shall vest in The Guardian and shall be deemed to have been transferred to and vested in The Guardian without any other deed or transfer, and simultaneously therewith The Guardian shall be deemed to have assumed all of the debts, duties, liabilities, and obligations of Berkshire.

IN WITNESS WHEREOF, We have hereunto set our hands and affixed the seal of this Division at the City of Boston, Commonwealth of Massachusetts this 26th day of June, A.D. 2001.

_____          _____
Michael T. Caljouw                        Richard A. Cody
Presiding Officer                         Presiding Officer