UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

——————————————————————

| | |
|---|---|
| CAROLYN MIREK, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE GUARDIAN LIFE INSURANCE | ) Civil Action |
| COMPANY OF AMERICA and | ) No. 04-30166-KPN |
| BERKSHIRE LIFE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendants | ) |
| | ) |

——————————————————————

## OPPOSITION OF PLAINTIFF TO MOTION TO DISMISS

### I. Introduction

In her Amended Complaint, Plaintiff Carolyn Mirek seeks damages from Defendants Guardian Life Insurance Company of America and Berkshire Life Insurance Company for their failure to pay benefits due her under a policy of disability insurance. Plaintiff also seeks damages under the Massachusetts Unfair and Deceptive Practices Act, G.L. c. 93A, or, alternatively under the Connecticut Unfair Practices Act ("CUPTA") for unfair claims settlement practices.

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint. Defendants argue that Counts III and IV, asserting claims under G. L. c. 93A, fail to state a claim because – so they argue – Massachusetts' choice-of-law rules require the application of Connecticut and not Massachusetts law.[1]

——————————————

[1] Defendants' further argument that the entire Amended Complaint must be dismissed as to Berkshire Life Insurance Company is moot. There was an inadvertent misnomer of this
(footnote continued on next page)

Plaintiff opposes the Motion to Dismiss for the reason that it cannot be said that the Plaintiff could not prove any set of facts that would support the application of Massachusetts law to at least those counts of her Amended Complaint asserting unfair claims settlement practices.

## II. Statement of Facts[2]

The Guardian Life Insurance Company of America ("Guardian") is an insurance company that does business within Massachusetts, but which is incorporated elsewhere.[3] Amended Complaint ¶ 2. Berkshire Life Insurance Company of America ("Berkshire") is a wholly owned subsidiary of Guardian and maintains a principal place of business in Pittsfield, Massachusetts. Id. ¶ 3.

---

defendant. The parties agreed that the Amended Complaint may be further amended to correctly name Berkshire Life Insurance Company of America as a defendant instead of Berkshire Life Insurance Company, and the Court allowed the Motion to Amend on October 15, 2004.

[2] The Statement of Facts is drawn from the allegations of the Amended Complaint, as supplemented by correspondence between Mirek and the Defendants concerning the Defendants' claims settlement practices. Although consideration of materials extraneous to the pleading under attack is ordinarily not permitted under Fed. R. Civ. P. 12(b)(6) without converting such a motion to one for summary judgment, there are exceptions to that rule. See e.g., Watterston v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ( "...[C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties...for documents central to plaintiffs' claims...or for documents sufficiently referred to in the complaint."). See also Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (Where "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." ).

[3] The policy does not indicate Guardian's state of incorporation. It only reflects a New York address.

During 1993, Guardian issued to Plaintiff Carolyn Mirek ("Mirek") a policy of disability insurance. Id. ¶ 4.[4] The policy does not contain a choice-of-law clause. Mirek, a Connecticut resident, was employed as a dental hygienist. Id. ¶¶1,6. Mirek developed an allergy to latex during the time that the policy was in effect, and Mirek became unable to perform the major duties of her occupation. Id.

Mirek made a claim for benefits under the Guardian policy, and Guardian and/or Berkshire denied that claim. Id. ¶9. Upon information and belief, Berkshire was responsible for administering and processing Mirek's claim on behalf of Guardian. Id. ¶8.

The plaintiff expects to show that each communication from the Defendants to Mirek concerning her claim for disability benefits originated and was sent from Berkshire's principal office in Pittsfield, Massachusetts. For example, after Mirek submitted her initial claim for benefits, Berkshire – which is alleged to have processed and handled the claim for defendant Guardian – wrote to Mirek on April 29, 2002, from its Pittsfield, Massachusetts, office stating that it required additional time to complete its investigation. See Exhibit A attached hereto. On June 10, 2002, Berkshire announced its decision to deny Mirek's claim in a letter written and sent from its Pittsfield, Massachusetts, office. See Exhibit B attached hereto. On August 7, 2002, Berkshire issued a second letter of denial from its Pittsfield, Massachusetts, office. See Exhibit C attached hereto. On October 2, 2002, Berkshire wrote to Mirek from its Pittsfield, Massachusetts, office explaining that it was evaluating additional information in connection with her claim. See Exhibit D attached hereto. On November 21, 2002,

---

[4] Mirek was then not married, and was named "Carolyn Streeter."

Berkshire issued an affirmation of denial of benefits, also from its Pittsfield, Massachusetts, office. See Exhibit E attached hereto.

Similarly, Mirek communicated with the Defendants by writing to Berkshire at its Pittsfield, Massachusetts, office. On June 29, 2002, Mirek submitted a "Claimant's Statement" to Berkshire at its Pittsfield, Massachusetts, office. See Exhibit F attached hereto. Mirek's physician, Robert M. Bedard, M.D., submitted an "Attending Physician's Statement" to Berkshire at its Pittsfield, Massachusetts, office. See Exhibit G attached hereto. On June 14, 2004, Mirek mailed her G. L. c. 93A demand letter to Berkshire at its Pittsfield, Massachusetts, office. See Exhibit H attached hereto. As with the earlier communications concerning Mirek's claim, Defendants responded to Mirek's c. 93A demand with a letter from Berkshire's office in Pittsfield, Massachusetts, office on July 8, 2004. See Exhibit I attached hereto.

Berkshire has also represented on its website that its address is in Pittsfield, Massachusetts. See Exhibit J attached hereto.

### III. Argument

### A.     The Standard Governing a Motion to Dismiss is a Rigorous One, and the Defendants Bear a Heavy Burden

A motion to dismiss for failure to state a claim must be denied unless "it clearly appears according to the facts alleged that the plaintiff cannot recover on any viable theory." Pomerleau v. West Springfield Public Schools, 362 F.3d 143, 145 (1st Cir. 2004). In deciding a motion to dismiss, a district court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Citibank v. Grupo Cupey, Inc., 382 F.3d

29, 31 (1st Cir. 2004). "A dismissal on the pleadings will be upheld only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims which would entitle it to relief." Asociacion de Educacion Privada de Puerto Rico, Inc. v. Echevarria-Vargas, 385 F.3d 81, 85 (1st Cir. 2004). Analyzed against these standards, the Defendants' Motion to Dismiss must be denied.

**B.**    **It Cannot Be Said That the Plaintiff Could Not Prove Any Set of Facts to Support the Application of Massachusetts Law**

**1.**    **Massachusetts Has the Most Substantial Relationship to this Case**

A federal district court sitting in Massachusetts in a diversity case such as this is required to apply Massachusetts' choice-of-law rules. Cochran v. Quest Software, Inc., 328 F. 3d 1, 6 (1st Cir. 2003). Massachusetts applies the law of the state that has the most significant relationship to the litigation. Id.; see also Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 473 N.E.2d 662, 668-669 (1985).

The liability of the Defendants will turn on the issues of (a) whether they broke their agreement under the Policy to pay disability benefits and (b) whether they engaged in unfair claims settlement practices. Assuming, as this Court must, that these events occurred, the rudimentary record that is available to supplement the allegations of the Amended Complaint at the outset of this case (where no discovery has been undertaken) suggests that these actions occurred (or were at least initiated) at Berkshire's principal place of business in Pittsfield, Massachusetts. The facts that (a) Mirek is a Connecticut resident and (b) the defendant Guardian may be incorporated in some unnamed state (although it conducts business in Massachusetts) are of no particular moment because the question here is whether Massachusetts has the most significant relationship to the

Plaintiff's claim against Berkshire for unfair claims settlement practices.[5] Given that all communications concerning Mirek's claim appear to have been directed at, issued from, or at least funneled through Berkshire's Pittsfield office, it cannot be said that Mirek could not prove any set of facts necessary to establish that Massachusetts law should be applied to her claim for unfair claims settlement practices.

### 2. Massachusetts, not Connecticut, Has the Most Substantial Relationship to the Claims Settlement Practices at Issue

It is possible for the substantive law of more than one state to apply in a single case that presents more than one issue. In such a situation, one state may be deemed to have the most significant relationship to one issue, and the law of another state may be deemed to have the most significant relationship to another issue. The conflicts-of-law doctrine that permits the application of the substantive law of more than one state in a single case is known as depecage. See, e.g., Putnam Resources v. Pateman, 958 F.2d 448, 465 (1st Cir. 1992) (Explaining depecage as "the framework under which different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states."). Thus, even if the law of some state other than Massachusetts is determined to control Mirek's breach of contract claim, the law of Massachusetts can still control the unfair claims settlement practices issues alleged in the Amended Complaint if a conflicts-of-law analysis suggests that Massachusetts has the most significant relationship to that issue. See, e.g., Computer Systems Engineering, Inc. v. Quantel Corp. , 740 F.2d 59, 64 n.6, 7, 70 (1st Cir. 1984) (California law applied to contract claims; Massachusetts law applied to fraud and c. 93A claims); see also First

---

[5] The Defendants' motion rests on many facts, nearly all of which are unsupported in the record before the Court.

Security Bank, N.A. v. Northwest Airlines, Inc., 2001 WL 92175 *3-4 (D. Mass. 2001) (Choice-of-law clause in contract that required application of Minnesota law did not preclude application of Massachusetts law to determine viability of defense under G.L. c. 93A).

In this case, *all* of the communications concerning Mirek's claim appear to have been to and from Berkshire at its principal place of business in Pittsfield, Massachusetts. See Exhibits A through I attached hereto. Moreover, Guardian also conducted business in Massachusetts. Amended Complaint ¶2; see also Exhibit J attached hereto. These assertions of fact must be taken as true and all reasonable inferences that can be drawn must be drawn in favor of the plaintiff for the purpose of deciding this motion to dismiss. Citibank v. Grupo Cupey, Inc., 382 F.3d 29, 31 (1st Cir. 2004). Therefore, it cannot be said that Mirek will not be able to prove any set of facts to establish the application of Massachusetts law to her statutory claim for *unfair claims settlement practices* regardless of which state's law governs her *contract* claim.

### 3. The Authorities Upon Which Defendants Rely Are Inapposite

Defendants cite Reicher v. Berkshire Life Insurance Company of America, 360 F.3d 1 (1st Cir. 2004), in support of their argument that G.L. c. 93A cannot apply to a Massachusetts non-resident's claim for unfair insurance practices where the policy was not issued by a Massachusetts insurer. See Motion to Dismiss, at 11-13. The holding in Reicher is not nearly so sweeping, and it should not be applied here in any event because of the absence in this case of a key distinguishing factor.

In Reicher, the insureds, who were Maryland residents, brought an action against Berkshire and Guardian under G.L. c. 93A for unfair claims settlement practices in

connection with the denial of benefits under various policies of disability insurance. The First Circuit affirmed the dismissal of the c. 93A claims on the basis that Maryland, and not Massachusetts, law applied to that case. The key – and as the Court put it, "perhaps most compelling," reason – for making that choice-of-law ruling was that Maryland had enacted a statute that "expressly states that health insurance policies delivered in Maryland, including disability insurance policies, may not be covered by the laws of any state other than Maryland." Id., at 6 (citing Md. Code Ann., Ins. § 12-209 (2002)). The First Circuit went on to observe that "[t]he statute explicitly represents the public policies of protecting insurance consumers from the application of out-of-state laws and promoting a uniform, predictable system of adjudication of disputes for Maryland citizens." Id.[6]

Defendants have not made any argument here that Connecticut has enacted any legislation similar to the Maryland statute that prohibits the application of the law of any state other than Connecticut in connection with a dispute over a disability policy issued to a resident of that state. This Court should not follow Reicher for that reason.

Similarly, Thomas v. Metropolitan Life Insurance Co., 40 F.3d 505 (1st Cir. 1994), (a case arising out of a group health insurance plan) does not speak to the choice-of-law issue presented in this case as the Defendants suggest. Motion to Dismiss, at 9. In fact, on a summary judgment record – in marked contrast to this scant record on a motion to dismiss – the Court simply noted that the insured "has failed to point to sufficient evidence supporting her claims to avoid summary judgment." Id. Although the court

---

[6] In addition, Maryland law does not permit a private right of action for unfair claims settlement practices, requiring instead that such issues be resolved through an administrative process. Id., at 4-5.

found it to be "questionable" whether c. 93A could apply in the context of that case, which, as explained above, a group health insurance plan, it did not rule out the possibility either. Id., at 511.

Finally, Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1 (1st Cir. 1994), is also unavailing. Contrary to the Defendants' suggestion that Crellin is "similar to the facts" presented here, Motion to Dismiss at 5-6, that case involved a different issue and arises in a different procedural context. There, the First Circuit affirmed a judgment entered after a bench trial (and a fully developed factual record that is absent here) and held that "when a chapter 93A claim and the requested remedy are highly analogous to a tort claim and remedy, the chapter 93A claim should be considered as a tort for choice-of law purposes." Id., at 11. Because the substantive allegations of the plaintiff's unfair trade practices claim in that case suggested that the defendant had "manufactured evidence in an attempt to justify its nonperformance" of a lending agreement, the court concluded that those allegations were akin to a claim for fraudulent misrepresentation. Id. Because fraudulent misrepresentation is a tort, the court then proceeded to apply Rhode Island's conflicts analysis for claims sounding in tort to determine whether the law of Rhode Island or Massachusetts would govern the claim. Id.

The court concluded in Crellin that Rhode Island had a more significant interest than Massachusetts in the resolution of that claim based upon the following considerations: (1) most, if not all, of the tortious conduct that was the subject of the c. 93A claim occurred in Rhode Island; (2) the plaintiff was a Rhode Island corporation conducting business in Rhode Island; (3) the defendant (although incorporated in Massachusetts) conducted business in Rhode Island and negotiated the underlying

transaction in Rhode Island, and (4) the case was brought in a Rhode Island forum. Id. at 12. In other words, almost all of the possible contacts were with the state of Rhode Island.

Unlike Crellin, in this case the contacts are not concentrated in a single state. Rather, the most significant contacts at issue here, i.e., those involving Mirek's claim for disability benefits and the conduct of the defendants in the handling of the claim and denial of the claim, all occurred in Massachusetts and thus clearly point to the application of Massachusetts law at least with respect to the issues of unfair claims settlement practices. See Exhibits A through J.

### C. Even if This Were a Close Case in Choice-of-Law Terms, Massachusetts' 93A Statute Would be Applicable

In choice-of-law decisions that are "close cases," Massachusetts courts are influenced by which state's law is "the better rule of law." See Travenol Laboratories, Inc. v. Zotal, Ltd., 394 Mass. 95, 100, 474 N.E. 2d 1070, 1074 (1985). Clearly, since the Massachusetts legislature adopted Ch. 93A many years ago[7], Massachusetts' position on policyholders' remedies for unfair claims settlement practice is well-established and would be regarded by a Massachusetts court as the "better rule." This is particularly true where, as here, the defendant Berkshire, a wholly owned subsidiary of Guardian, operates out of Massachusetts, handled the processing of the claim in Massachusetts and thus reasonably could expect to have its subject to Massachusetts law.

---

[7] Chapter 93A was first enacted in 1967, and the statute that defines certain unfair claims settlement practices, G.L. 176D, also cited in the Amended Complaint, was enacted in 1977.

## IV. Conclusion

For the reasons stated, the Defendants' Motion to Dismiss should be denied.

Respectfully Submitted,

PLAINTIFF CAROLYN MIREK
By her attorneys,

Joanne D'Alcomo
BBO# 544177
Howard P. Blatchford, Jr.
BBO# 045580
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

Dated: November 3, 2004

## CERTIFICATE OF SERVICE

I, Joanne D'Alcomo, hereby certify that on this date I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, to Edward K. Kimball, Esq. 700 South Street, Pittsfield, MA 01201.

Date of Service:        November 3, 2004

Joanne D'Alcomo

JS PCDocs #485991

11

A



**Berkshire**

**Berkshire Life
Insurance Company of America**

April 29, 2002

Carolyn Mirek
48 Sele Drive
South Windsor, CT 06074

Re:   Policy #G723670
      Claim # 391131

Dear Ms. Mirek:

We are writing you regarding your claim for disability benefits under the above policy.

We have now received the Progress report completed by Dr. Bedard. Unfortunately, we find that we need additional time to complete our investigation.  We are requesting additional information from your physicians in order to render a decision on your claim. We will notify you as soon as this information has been received.

In the interim, should you have any questions, please do not hesitate to contact me at 1(800) 933-3302 or (610) 807-8738.

Sincerely,

Kevin J. Kvederas
Disability Claims Specialist
Claims Management Services

cc:  File

FAX - 413-443-7542

B



**Berkshire**

**Berkshire Life
Insurance Company of America**

June 10, 2002

Carolyn Mirek
48 Sele Drive
South Windsor, CT  06074

                Re: Policy#: G723670
                Claim#: 391131

Dear Ms. Mirek:

We are writing you regarding your claim for disability benefits under the above policy.

Under your policy, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation.

On the claim form initially submitted, you indicated that you are unable to work as a Dental Hygienist due to Carpal Tunnel Syndrome as well as a latex allergy. You indicated on the claimants statement, that the latex allergy was severe and "life threatening".

However, the information we received from Dr. Watson and Dr. Bedard does not substantiate total disability from either the Carpal Tunnel syndrome or the latex allergy. Further, your current occupation selling dental supplies requires you to visit dental offices and exposes you to latex on a daily basis. This is inconsistent with your claimed inability to tolerate any exposure to latex.

We also requested additional information from Dr. Watson, the surgeon who operated on you for Carpal Tunnel sydrome. The medical records received from Dr. Watson's office indicate that the right wrist was operated on September 15, 2000 and the left wrist was operated on March 16, 2001. In response to our request for detailed information regarding your Carpal Tunnel syndrome, Dr. Watson's office telephoned us indicating that were no longer disabled as of April 26, 2001. This is consistent with Dr. Watson's evaluation of March 7, 2002, stating you only have a 2% permanent disability of each hand.

Therefore, based on the information received to date, we are unable to provide disability benefits at this time. However, we are in the process of having the latex test results reviewed by an Allergist and will notify you upon receipt of the evaluation. In the interim, should you have any additional information of which we are unaware, please submit it for our review.

700 South Street  •  Pittsfield, Massachusetts 01201-8285  •  Telephone: 413-499-4321

Berkshire Life Insurance Company of America, Pittsfield, MA, is a wholly-owned subsidiary of The Guardian Life Insurance Company of America, New York, NY

Page 2

If you should require any additional information or assistance, please do not hesitate to contact me at 1(800) 933-3302 or (610) 807-8738.

Sincerely,

Kevin T. Kvederas
Disability Claims Specialist
Claims Management Services

Cc: File

C



ALL-STATE LEGAL 800-222-0510   ECS-1   RECYCLED



**Berkshire**

**Berkshire Life**
**Insurance Company of America**

August 7, 2002

Carolyn Mirek
48 Sele Drive
South Windsor, CT  06074

Re: Policy#: G723670
Claim#:  391131

Dear Ms. Mirek:

We are writing you regarding your claim for disability benefits under the above policy.

Under your policy, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation. You have submitted a claim for total disability since you claim that you are unable to work as a Dental Hygienist due to Carpal Tunnel Syndrome as well as a latex allergy beginning December 27, 2001.

Pursuant to our letter of June 10, 2002, the information we received from Dr. Watson and Dr. Bedard does not substantiate total disability from either the Carpal Tunnel syndrome or the latex allergy. However, we forwarded copies of your medical records to Dr. Harold Axe, an Allergist and Immunologist, for further evaluation of your claimed disability due to latex allergy.

Dr. Axe indicated that the Allergy Skin Testing you had in June 1999, apparently showed significant reactions to latex, but also to Ragweed pollen and fresh banana. He further states that Latex allergy is not a distinct disease but a multifactorial medical entity commonly referred to as Chronic Inflammatory Airway Disease. Allergy testing is not indicative of the degree to which these factors contribute, if any, to the overall expression of the chronic airway inflammation.

Dr. Axe indicated that in the most recent medical report from Dr. Bedard dated October 22, 1999, he described your condition by stating that, " Ms. Mirek is doing quite well" and that you had an excellent September without symptoms of sneezing or runny nose. Dr. Axe indicated that from the medical records that he was provided, there is no information to support a worsening of your condition. Dr Axe goes on to say that if your condition has deteriorated so much in the past 2 ½ years since June 1999, regardless of what degree Latex may have contributed to such deterioration, then an even more aggressive course of medical management is certainly indicated. In summary, Dr. Axe states that he sees no basis for a work restriction or work limitation based on Latex allergy.

700 South Street  •  Pittsfield, Massachusetts 01201-8285  •  Telephone: 413-499-4321

Berkshire Life Insurance Company of America, Pittsfield, MA, is a wholly-owned subsidiary of The Guardian Life Insurance Company of America, New York, NY

Page 2

In addition, we understand that subsequent to leaving your previous occupation as a Dental Hygienist on December 27, 2001, you were continuously employed at Barton Cyker Dental Supply from January 2, 2002 through the present time. Your duties there include selling dental supplies which requires you to visit dental offices and exposes you to latex on a daily basis. As we previously indicated in our letter of June 10, 2002, this refutes your claimed inability to tolerate any exposure to latex.

Therefore, based on this information we must affirm our prior determination and find that no disability benefits are payable. Of course, if there is any additional information of which we are unaware, please submit it for our review.

If you should have any questions, please do not hesitate to contact me at 1(800) 933-3302 or (610) 807-8738.

Sincerely,

Kevin T. Kvederas
Disability Claims Specialist
Claims Management Services

Cc: File