Exhibit F

# Facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Berkshire Life Insurance Company of America | **Fax:** | |
| **From:** | CAROLYN MIREK | **Date:** | 2/19/02 |
| **Re:** | DISABILITY CLAIM #391131   POLICY #G723670 | | |
| **Pages: 11** | | | |
| **CC:** | | | |

X Urgent        For Review        ☐ Please Comment        Please Reply        ☐ Please Recycle

1.  Enclosed please find the 6 pages of consecutively numbered claims forms, 3 narrative pages describing my disabilities, and 2 of 3 Workers' Compensation Claims-the other will be sent soon.

2.  If you have any further questions please give me a call.

Thank you.

Sincerely,

Carolyn T. Mirek

CONFIDENTIAL

CLAIMS FEB 2 0 2002

**Berkshire Life Insurance Company of America**
700 South Street
Pittsfield, Massachusetts 01201

*Berkshire Life Insurance Company of America*
*is a subsidiary of and Administrator for*
*The Guardian Life Insurance Company of America, NY, NY*

## AUTHORIZATION TO OBTAIN INFORMATION
For Assistance, Call Toll Free 1-888-275-7473

_____

Carolyn T. Mirek
Name of Insured

Social Security Number

G723670
Policy Number(s)

## Permission to Obtain and Disclose Information

**I AUTHORIZE** any physician, medical practitioner, hospital, clinic, healthcare or other medical or medically related facility, healthcare provider, pharmacy, therapist, benefit plan administrator, business associate, insurer or reinsurer, consumer reporting agency subject to the Fair Credit Reporting Act, insurance support organization, insurance agent, employer, financial institution, Governmental Agency including The Social Security Administration, The Veteran's Administration or any other organization or person having any knowledge of me or my health to give Berkshire Life Insurance Company of America or its employees and agents, or its authorized representatives any information in its possession about me. This information includes, but is not limited to, medical information as to cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions with respect to my physical or mental condition or treatment of me. This may include (but is not limited to) HIV infection, any disorder of the immune system, including acquired immune deficiency syndrome (AIDS), mental illness or use of alcohol or drugs. This information also includes non-medical information concerning me, my occupation, employment history, driving history, earnings or finances or information otherwise needed to determine policy claim benefits that may be due me.

**I AUTHORIZE** the Social Security Administration to release information or records about me to the company or authorized representative. This information is to be released in order to properly adjudicate my claim or continue my eligibility for benefits. Please release detailed earnings for up to the last ten years and/or summary record of total earnings and/or information from master benefit records regarding award, denial or continuing benefits.

**I AGREE** the information obtained with this authorization may be used by Berkshire Life Insurance Company of America to determine policy claim benefits with respect to me. A photocopy of this form is as valid as the original, and I may request one. This form will be in force for the term of coverage of the policy or up to 24 months from the date shown below.

**I UNDERSTAND** that this authorization is part of the policy's Proofs of Loss requirement and if I revoke or fail to sign this authorization or alter its content in any way, it may affect the handling of my claim, including the denial of benefits under my policy. Any information obtained will not be released by Berkshire Life Insurance Company of America to any person or organization except to: reinsuring companies, other persons or insurance support organizations performing business or legal services in connection with my claim or application for insurance or as may be otherwise lawfully required or as I may further authorize.

**I UNDERSTAND** some states require that I be informed that: "Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which is a crime and subject to criminal prosecution, substantial civil penalty and the stated value of the claim for each violation."

I declare that all answers, statements and information made or given by me, or at my direction, in connection with this claim are and have been complete and true.

_Carolyn T. Mirek_ _____    1/14/02 _____
Authorizing Signature                                            Date

_____
Relationship, if other than Insured

2884-6-2001

**Berkshire Life Insurance Company of America**
700 South Street
Pittsfield, Massachusetts 01201

*Berkshire Life Insurance Company of America
is a subsidiary of and Administrator for
The Guardian Life Insurance Company of America, NY, NY*

## DISABILITY CLAIMANT'S STATEMENT
For Assistance, Call Toll Free 1-888-275-7473

Please answer every question and complete the authorization. An incomplete form or authorization could delay the processing of your claim.

Carolyn T. Mirek
**Name of Insured**

**Date of Birth**

☐ Single
☒ Married

Height **5'3"**   Weight **130**

**Present Residence Address:** No. and Street

**Mailing Address (if different)**

G723670

**City**   **State**   **Zip Code**   **Telephone**   **Policy #(s)**   **Social Security #**

---

### 1. Nature of Disability (Complete A or B)

**A.** ☒ **Injury**

Date and Time of Injury _May 10, 2000_

Place Injury Occurred (Name and Address) _Dr. Robert Burstein's office_

Description of Accident and Resulting Injuries _Bilateral Carpal Tunnel Syndrome - Extreme pain in (R) hand occurring during clinical scaling/root planing_

Names of witnesses _Robert N. Burstein, DDS, Sandra O'Connor, Jolanta Baginski_

Was a report filed? ☒ Yes ☐ No   If "Yes," please provide copy of report.

Any other injuries in past five years? ☐ Yes ☐ No   If "Yes," please provide date(s) and nature of injury(ies).

**B.** ☒ **Sickness**

Nature of Sickness _Life threatening Latex allergy (see Attached statement_

Date of First Symptoms _Initial symptoms 1995 - Continually worsened to Dec 2001._

Any other sickness in past 5 years? ☐ Yes ☒ No   If "Yes," please provide date(s) and nature of sickness.

Have you ever had the same or similar illness? ☐ Yes ☒ No

---

### 2. Period of Disability

**A.** I was totally unable to work in my occupation due to disability from _12/27/01_ (date/time)
to _present_ (date/time).

**B.** I was partially unable to work in my occupation due to disability from _N/A_ (date/time)
to _____ (date/time).

**C.** Describe loss due to disability (i.e., time from work, specific duties of occupation, income)
_loss of career, lost wages - see statement_

**D.** Since disability began have you been engaged in any other occupation or work activity? If so, please provide employer's name, address, dates worked and duties performed.
_Frederick Cyker - Barton-Cyker Dental Supply, Inc._   _1/2/02 - present_
_147 Hayden Station Road_   _Outside Sales Represent_
_Windsor, CT 06095_

CLAIMS FEB 20 2002

## 3. Treatment

A. Date of first treatment by a physician (or other medical care provider) for this condition _____
Name and address of primary care provider:

*Latex allergy: 1999*    *Carpal Tunnel Syndrome 2000*

B. List all treating physicians:

| Name | Address | Telephone # | Dates of Treatment |
|---|---|---|---|
| *Robert Bedard MD* | *836 Farmington Ave. West Hartford, CT* | *(860)232-9911* | *1992 - present* |
| *H. Kirk Watson, MD* | *85 Seymour St. Hartford, CT 06106 Suite 516* | *(860) 527-7161* | *5/00 - present* |

C. List the name and address of all hospitals where you have received treatment for this injury or sickness. Include dates for each.

| Name | Address | Telephone # | Dates of Treatment |
|---|---|---|---|
| *Hartford Hospital* | *80 Seymour St* | | *9-16-00* |
| *Hartford Hospital* | *Hartford, CT 06102* | *(860) 345-5000* | *3-16-01* |

## 4. Premium Payments

What percentage of your premium is paid by your employer?

☐ All    ☒ None    ☐ ___0___ % (specify percentage)

## 5. Other Benefits

A. List all other companies with which you are insured for Disability (Health) and/or Medical Benefits (if "none," so state)

| Company | Policy No. | Type of Coverage | Group/ Individual | Effective Date of Coverage | Amount of Benefits (State Weekly or Monthly) |
|---|---|---|---|---|---|
| | | | *None* | | |
| *Blue Cross Regence* | *WIT04427215* | *Major Medical* | *Willamette Industries* | *1-14-02* | *none* |

B. List all other benefits for which you are eligible, have applied, or you are now receiving:

| | Applied Yes No | Receiving Yes No | Eligible Yes No | Date Applied For | Amount Received Weekly Monthly | Effective Date |
|---|---|---|---|---|---|---|
| (1) Social Security (Self) | ☐ ☒ | ☐ ☒ | ☒ ☐ | | | |
| If denied, have you reapplied? | ☐ ☐ | ☐ ☐ | | | | |
| Social Security (Family) | ☐ ☐ | ☐ ☐ | | | | |
| If denied, have you reapplied? | ☐ ☐ | ☐ ☐ | | | | |
| (2) Workers' Compensation | ☒ ☐ | ☐ ☐ | ☒ ☐ | *1/15/02* | | |
| (3) State Disability Insurance | ☐ ☒ | ☐ ☐ | ☐ ☐ | | | |
| (4) Retirement or Pension | ☐ ☒ | ☐ ☐ | ☐ ☐ | | | |
| (5) Salary Continuation | ☐ ☒ | ☐ ☐ | ☐ ☐ | | | |
| (6) Unemployment | ☐ ☒ | ☐ ☐ | ☐ ☐ | | | |
| (7) Government Retirement | ☐ ☒ | ☐ ☐ | ☐ ☐ | | | |
| (8) Union | ☐ ☒ | ☐ ☐ | ☐ ☐ | | | |
| (9) Other | | | | | | |

*I had been in a retirement program at work - 6.5% matching thousands*

I declare that all answers, statements and information made or given by me, or at my direction, in connection with this claim are and have been complete and true. I further understand Berkshire Life Insurance Company of America or its representative(s) may request from time to time any documents which I have in my possession, supporting this statement, and I hereby agree to furnish them upon request.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which is a crime and subject to criminal prosecution, substantial civil penalty and the stated value of the claim for each such violation.

*2/18/02*
_____
Date

*Carolyn T. Mirek*
_____
Signature of Insured

- 2 -

CLAIMS FEB 2♦ 2002

Berkshire Life Insurance Company of America
700 South Street
Pittsfield, Massachusetts 01201

*Berkshire Life Insurance Company of America*
*is a subsidiary of and an administrator for*
*The Guardian Life Insurance Company of America, NY, NY*

## DESCRIPTION OF OCCUPATION
For Assistance, Call Toll Free 1-888-275-7473

Carolyn T. Mirek
Name of Insured

G723670
Policy Number(s)

**Important: All Information should be for your normal work week immediately before your injury or sickness (include all information for each question for each employer, if multiple).**

1. **Employer**
   a) Name (If self-employed, state business name) Robert N. Burstein, DDS
   b) Address 479 Buckland Rd    South Windsor, CT 06074
   c) Telephone No. (860) 644-8604  4741
   d) Name of immediate supervisor Robert N. Burstein DDS    May we contact this person? ☒ Yes ☐ No

2. Do you or any member of your family have ownership interest in this business?  ☐ Yes ☒ No *There was a profit-sharing plan.*
   If yes, answer a, b and c below:

   a) Percentage of your ownership at onset of disability _____ %
   b) Type of Business Entity: ☐ C Corporation  ☐ Sub S Corporation  ☐ Partnership
      ☐ Sole Proprietor  ☐ Other _____
   c) List all ownership interest or work activity in any other business(es) _____

3. Occupation Title Registered Dental Hygienist

4. Average number of hours worked each week 32-35

5. Usual daily hours: From 8:00 ☒ a.m. ☐ p.m. to 5:30 ☐ a.m. ☒ p.m.

6. Gross monthly earned income prior to disability (before taxes, after business expenses) ± 4,700/month
   ($33 hourly + bonus + commissions)

7. a) Number of people you employ _____
   b) Number of people under your supervision _____

8. a) Years with current employer (or, if self-employed, years in current business) 7
   b) Years in this occupation 19 yrs

9. **Occupational Duties** (list in order of importance and include for all employers)

| Duty | Description | Hours Per Week |
|------|-------------|----------------|
| a) | Scaling + Root Planning | |
| b) | Polishing | |
| c) | Exposing + Processing X-Rays | |
| d) | Providing homecare instruction + education. | |
| e) | Diagnosis, tx planning + recording documents. | |

10. **Instruments, Tools or Equipment normally used by you in your occupation**    Frequency of Use

| | | |
|------|-------------|----------------|
| a) | Scalers, Curettes. | Daily |
| b) | Ultrasonic cavitron | |
| c) | Slow handpiece | |
| d) | X-ray equipment, lead shield | |
| e) | Computer | |

11. **Travel**
    If your occupation normally requires travel other than between residence and principal place of business, describe usual frequency, mode of transportation and trip distance.

    N/A

12. a. Is there a position description for your job? ☐ Yes ☒ No  If yes, please include a copy.

    b. Do you receive periodic performance reviews of your work? ☐ Yes ☒ No  If yes, please include a copy of your most recent review.

    c. Do you require a license to conduct your job? ☒ Yes ☐ No  If yes, is your license current and in good standing? ☒ Yes ☐ No  Are there any complaints, actions, or investigations pending? ☐ Yes ☒ No

CLAIMS FEB 2 0 2002

2834-6-2001

**13. Requirements of your occupation**

(Check one or more of the following which best describe the physical/mental needs required by your occupation.

| Activity (in terms of an eight-hour day) | Occasionally 1/4 - 1 1/2 hrs. | Frequently 1 1/2 - 5 hrs. | Constantly 5 1/2 - 8 hrs. | N/A |
|---|---|---|---|---|
| Bending | | | ✓ | |
| Reaching | | | ✓ | |
| Lifting | ✓ | | | |
| Carrying | | | | ✓ |
| Speech - Expressing or exchanging ideas orally | | | ✓ | |
| Hearing - Recognizing sounds | | | ✓ | |
| Sight - Sharpness of near vision | | | ✓ | |
| Sight - Sharpness of far vision | | | ✓ | |
| Manual dexterity | | | ✓ | |
| Capacity to handle stress | | | ✓ | |
| Sales quotas | | | | ✓ |
| Time deadlines | | | ✓ | |
| Standing | | ✓ | | |
| Kneeling | | | | ✓ |
| Climbing | | | | ✓ |
| Squatting | | | | ✓ |
| Production Quotas | | | | ✓ |
| Other (explain) Meticulous hand scaling - exerting great force w/hand instruments | | | | |

If you checked lifting or carrying, please answer:

a) What is the maximum weight you lift or carry?   ☑ 10 lbs.  ☐ 25 lbs.  ☐ 50 lbs.  ☐ 100 lbs.  ☐ over 100 lbs.
b) What is the most frequent weight you lift or carry?  ☑ 10 lbs.  ☐ 25 lbs.  ☐ 50 lbs.  ☐ 100 lbs.  ☐ over 100 lbs.

**14. Where do you work?**   ☑ Mostly Indoors   ☐ Mostly Outdoors   ☐ Equally In and Out

**15. Previous Work History**

| | Employer | Occupation Title | Duties/Responsibilities | From | To |
|---|---|---|---|---|---|
| a) | Brian Mark, DMD | RDH | Dental Hygiene | 9/89 | 12/94 |
| b) | Dr. Gerard Graham, DDS | (RDH) | " | 1991 | 1997 |
| c) | Jean Amara, DMD MScD | (RDH) | " | 1987 | 1990 |
| d) | Jeffrey Altman DDS | (RDH) | " | 1985 | 1992 |

**15. Education/Training**

a) Degree(s) obtained  Associate in Science in Dental Hygiene Northeastern University
b) Highest grade completed  Graduated South Windsor High School, CT
c) Trade school completed  NA
d) Professional license(s) obtained
   License and/or Certificate # (if applicable)

| | Active | Inactive | Date Last Active |
|---|---|---|---|
| Dental Hygiene Certificate - Forsyth | ☑ | ☐ | current |
| CT License # 004119 | ☐ | ☐ | |

**16. Professional Insurance** (i.e., Malpractice, Hazard, etc.) - include carrier name and address and policy number

Chicago Insurance Company                # 44-2010129
Broker - Seabury + Smith - Park Ridge
1440 Renaissance Dr.                      Professional Liability Insur.
Park Ridge, IL  60068-1400

I declare that all answers, statements and information made or given by me, or at my direction, in connection with this claim are and have been complete and true. I further understand Berkshire Life Insurance Company of America or its representative(s) may request from time to time any documents which I have in my possession, supporting this statement, and I hereby agree to furnish them upon request.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which is a crime and subject to criminal prosecution, substantial civil penalty and the stated value of the claim for each such violation.

2/18/02
Date

Carolyn T. Mirek
Signature of Insured

CLAIMS FEB 20 2002

**Berkshire Life Insurance Company of America**    Page 6 of 6
700 South Street
Pittsfield, Massachusetts 01201

*Berkshire Life Insurance Company of America
is a subsidiary of and Administrator for
The Guardian Life Insurance Company of America, NY, NY*

## ATTENDING PHYSICIAN'S STATEMENT
For Assistance, Call Toll Free 1-888-275-7473

### Part A — To Be Completed By Insured

| Insured's Name and Address | Policy No. | Date of Birth | Social Security No. |
|---|---|---|---|
| Carolyn T. Mirek | G723670 | ███████ | ███████ |

### Part B — Attending Physician's Statement
(to be completed by physician for person identified in Part A)

1. Date symptoms first appeared or injury occurred _Worsening 1999 June_
2. Has patient ever had same or similar condition? ☒ Yes ☐ No   _Hand dermatitis in '92 Not tx yet_
3. Date patient first consulted you for this condition _evident latex allergy June 99_   _No Respiratory_
4. Referring physician _∅_   _Symptoms ē use_
5. History presented at initial visit _increased congestion / cough / wheezy at work_
6. Height _63"_   Weight _135 lb_
7. Current diagnosis(es) (include ICDA*/DSM IV diagnosis code) _latex allergy   Allergic Asthma   Seasonal / Year-round allergic rhinitis_
8. Have you ever treated this individual for any other conditions? ☒ Yes ☐ No  (If yes, state when and describe) _asthma / seasonal / perennial rhinitis since 1997_
9. Is condition due to injury or sickness arising out of patient's employment? ☒ Yes ☐ No
10. If pregnancy, approximate date commenced and/or EDC _NA_
11. List all dates of service for this condition _NA_
12. If hospitalized, please provide date(s), name and address of hospital _∅_
13. Dates and type of any surgical procedures performed or scheduled to be performed (include CPT4 code) _∅_
14. Is patient still under your care for this condition? ☒ Yes ☐ No - Date Discharged _∅_
15. Name and address of any physician(s) to whom patient was referred _∅_
16. Is patient competent to endorse checks and direct the use and proceeds thereof? ☒ Yes ☐ No
17. If you have completed forms for any other insurance carriers, please provide name and address of company(ies) _No_
18. Patient was totally unable to work from _____ through _last day of work Dec 27 2001_
19. Patient was partially unable to work from _____ through _____
20. Specific limitations and/or restrictions _Has generated food allergy to Kiwi & Banana as can be seen in latex allergy; antecedent hand dermatitis to latex glove reported in '92_
21. a) Objective findings which led to any limits or restrictions noted _Symptoms despite pharmacotherapy & latex glove, positive prick skin test to latex / banana; Hand rashes_
    b) Subjective symptoms _worsening congestion + cough at work, with relief away_
22. Prognosis for return to work  ☐ 1-3 months  ☐ 3-6 months  ☐ 6-12 months  ☒ more than 12 months

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which is a crime and subject to criminal prosecution, substantial civil penalty and the stated value of the claim for each such violation.

Physician's Name (Print) _Robert M Betram_    Signature _RM Betram_    Specialty Degree _Allergy-Immunology_    Social Security/TIN _860-232-9911_

Date _8/31_   Street Address _Farmington_   City or Town _West Hartford_   State _CT_   Zip Code _07119_   Telephone No. _860-232-9911_

What is a convenient time and/or day for our claim specialist or consulting physician to call you? _Thurs PM 1:30 PM_

*ICDA - International Classification of Diseases

CLAIMS FEB 2 0 2002

WCC FILE # 100127243

## WORKERS COMPENSATION COMMISSION OF CONNECTICUT
### Form for Notice of Claim for Compensation
### (Employee to Commissioner and to Employer)

This form prepared by the W.C.C. is proper for ordinary use and is recommended, but any other notice complying with Section 31-294c shall be deemed sufficient.

(Type or Print in Ink)

Notice is hereby given that the undersigned, who while in the employ of the employer listed below sustained injuries arising out and in the course of his/her employment as follows:

COMPENSATION DISTRICT _____
(Refer to reverse side of form)

### Injured Worker Information

NAME OF INJURED WORKER: Carolyn T. Mirek

SOC. SEC. #: _____

DOB: _____ CHECK IF MINOR: _____ (under 18 yrs of age)

ADDRESS: _____

TOWN _____ STATE _____ ZIP _____

TEL. NO.: _____

### Employer Information

EMPLOYER: Robert N. Burstein, DDS

ADDRESS: 479 Buckland Rd.

TOWN South Windsor, CT 06074
STATE   ZIP

WAS INJURY ON PREMISES OF EMPLOYER: Yes

IF NO, WHERE _____

ADDRESS: _____

TOWN _____ STATE _____ ZIP _____

### Injury Information

DATE OF INJURY: 6-10-99

TOWN OF INJURY: South Windsor, CT

BODY PART: Entire body

DESCRIBE INJURY AND HOW IT HAPPENED: It was a cumulative allergic response to latex.

OCCUPATIONAL ILLNESS OR REPETITIVE TRAUMA? Yes

### Signature of Injured Worker or Representative

SIGNATURE: Carolyn T Mirek   9-1-99
DATE

Print name & address below if other than injured worker:

NAME: _____

NAME OF FIRM: _____

ADDRESS: _____

TOWN _____ STATE _____ ZIP _____

TEL. NO.: _____

This notice must be served upon the Commissioner and *Employer by personal presentation or by registered or certified mail. For the protection of the party, the employer should note the date when this notice was received and the claimant should keep a copy of this notice with the date of service.

*Persons employed by the State of Connecticut must serve the employer by serving this notice upon the Commissioner of Administrative Services, 165 Capitol Avenue, Hartford, CT 06106.

WARNING: For injuries/illnesses occurring before July 1, 1993, if an employer does not file a notice contesting liability for this claim within 28 calendar days from the date when this claim is received by personal delivery or by registered or certified mail, Compensability Shall Be Presumed and cannot thereafter be contested. [See Sec. 31-294c(b).]

For injuries/illnesses occurring on or after July 1, 1993, if an employer does not file a notice contesting liability for this claim OR begin making workers' compensation benefit payments "without prejudice" within 28 calendar days from the date when this claim is received by personal delivery or by registered or certified mail, Compensability Shall Be Presumed and cannot thereafter be contested. If an employer making workers' compensation benefit payments "without prejudice" within 28 calendar days...

RECEIVED CERTIFIED
Z 024 759 914

SEP 27 1999

WORKERS COMPENSATION COMMISSION

**30C**

State of Connecticut
Workers' Compensation Commission

WCC File # __Not yet assigned__

# NOTICE OF CLAIM FOR COMPENSATION
## (Employee to Commissioner and to Employer)

*This form prepared by the WCC is proper for ordinary use and is recommended, but any other notice complying with Section 31-294c shall be deemed sufficient.*

---

### PLEASE TYPE or PRINT IN INK

**Notice is hereby given that the injured worker, while in the employ of the employer, sustained injuries arising out of and in the course of his/her employment as follows, and makes claim for compensation benefits.**

**1 — INJURED WORKER INFORMATION**

NAME __Carolyn Mirek__
*(please type or print in ink)*

SOC. SEC. # ▮▮▮▮▮

D.O.B. ▮▮▮▮    CHECK IF MINOR ▮▮▮
*(under 18 yrs. of age)*

ADDRESS ▮▮▮▮▮

TOWN ▮▮▮    STATE ▮▮ ZIP ▮▮▮

TEL. # ▮▮▮▮

**3 — INJURY INFORMATION**

DATE OF INJURY __September 12, 2001 (date of diagnosis__

TOWN OF INJURY __South Windsor__

BODY PART __Right (dominant) upper extremity__

DESCRIBE INJURY AND HOW IT HAPPENED ____

__Ulnar nerve damage at medial epicondylar groove__

__Repetitive stress/trauma from work as Dental Hygienist__

OCCUPATIONAL ILLNESS OR REPETITIVE TRAUMA? __Yes__

**2 — EMPLOYER INFORMATION**

EMPLOYER __ROBERT N. BURSTEIN, D.D.S.__

ADDRESS __479 Buckland Road__

TOWN __South Windsor__ STATE __CT__ ZIP __06074__

TEL. # __(860) 644-4741__

WAS INJURY ON PREMISES OF EMPLOYER? __Yes__

IF NO, WHERE? ____

ADDRESS ____

TOWN ____ STATE ____ ZIP ____

**4 — SIGNATURE OF INJURED WORKER OR REPRESENTATIVE**

*[signature]*    October 26, 2001

SIGNATURE    DATE

*Print name & address below, if other than injured worker:*

NAME __Richard S. Arles__

NAME OF FIRM __Law Office of Richard S. Arles__

ADDRESS __P.O. Box 431__

TOWN __South Windsor__ STATE __CT__ ZIP __06074__

TEL. # __(860) 648-9067__

---

This notice must be served upon the Commissioner and *Employer by personal presentation or by registered or certified mail. For the protection of the parties, the employer should note the date when this notice was received and the claimant should keep a copy of this notice with the date of service.

*Persons employed by the State of Connecticut must also serve the employer by serving this notice upon the Commissioner of Administrative Services, 165 Capitol Avenue, Hartford, CT 06106.

**WARNING:** If an employer does not file a notice contesting liability for this claim OR begin making workers' compensation benefit payments "without prejudice" within 28 calendar days from the date when this claim is received by personal delivery or by registered or certified mail, Compensability Shall Be Presumed and cannot thereafter be contested. If an employer chooses to begin making workers' compensation benefit payments "without prejudice" within 28 calendar days from the date of receipt of this claim and still wishes to contest this claim, it must do so by filing a notice contesting liability for this claim within one year from receipt of this claim. [See Sec. 31-294c(b).]

Rev. 3/15/96

*1.*

# CAROLYN MIREK'S LATEX ALLERGY

I have been a registered dental hygienist since 1983. At that time gloves were rarely used in dentistry. I attended Forsyth School For Dental Hygienists in Boston, MA, from 1981 to 1983 and there was little contact with latex as masks and gloves were not worn. I had seasonal allergies as a child –hayfever, dust and animal dander, which I outgrew. I never had to take allergy medications during my elementary, middle school, high school or college years, and I do not recall ever having symptoms of asthma.

After 1985, with the AIDS epidemic and Hepatitis scares, wearing latex gloves became part of " universal precautions". Shortly after using gloves, I experienced hand rashes, which escalated to contact dermatitis. The seeping welts on my hands were so bad that I was prescribed Diprolene cream and cotton gloves to wear beneath my latex gloves by my dermatologist, Dr. Robert Greenberg. I began getting allergy symptoms, for which I received treatment in the form of shots from allergist Dr. Prasad Srinivasan. Instead of getting better, my condition worsened to the point of regularly experiencing allergy-induced asthma and needing emergency breathing treatments. In 1992 I changed my allergist of record to Dr. Robert M. Bedard who is also a pulmonary specialist. I began to notice that certain types of masks would trigger an asthma attack at work and that I couldn't work in certain locations without needing to use an inhaler. I also began developing allergies to certain foods (e.g., avocado, kiwi, pear and banana) which I later found out are related to latex.

Following an allergic reaction to a banana in June, 1999, I went to Dr. Bedard with my suspicion of latex allergy. I had previously attended a lecture by a professor at the UCONN Health Center about latex allergy and discovered that I had many of the symptoms. In June of 1999 I tested positively for latex allergy. Dr. Bedard recommended I switch to non-latex gloves and that the dental office I worked in switch to powder-free latex gloves. I immediately used non-latex gloves and my employer, Dr. Robert Burstein, ultimately switched to powder-free latex gloves, at which point some of my allergy symptoms temporarily subsided. Dr. Bedard informed me that the only solution to my severe latex allergy was complete avoidance of latex.

I continued to see Dr. Bedard for allergy symptoms and treatment. In July, 2001 a new problem arose. After eating a bite of a sandwich while at Lake Compounce Amusement Park, one of my eyes became swollen shut and I experienced allergic distress. I later discovered that the food had been prepared with latex gloves. Another more severe episode occurred in August, 2001 in Newport, Rhode Island. After eating a salad of baby greens and vinaigrette I became violently ill. I later was informed that the restaurant had prepared the salad with the use of latex gloves.

Following each incident I spoke to Dr. Bedard, and he finally raised the possibility of changing my career, since over time I have developed a life threatening latex allergy. This news was devastating to me as I had been a Registered Dental Hygienist for 18 years and enjoyed my career. Nonetheless, continuing to work in a latex environment was increasing the severity of the allergy, and creating greater risks to my health.

More recently, I began getting welts on my body from the latex in my clothing. For years I have utilized inhalers, nasal sprays and, periodically, Prednisone. Now I must wear a medic alert bracelet and carry Benadryl and an Epipen (emergency syringe). I hand out business cards imprinted with "LATEX ALLERGY" to restaurant management, and I cannot eat any food without first finding out whether or not latex gloves were used in its preparation. Banquets, parties, fast food, bakeries, even packaged foods may have been handled with latex. In many restaurants, food is "prepped" ahead of time and I have been denied service. I also cannot go to restaurants and parties where there are latex balloons present.

Latex is very prevalent in dentistry. The gloves, tubings, rubber dams and even counter surfaces are contaminated with latex. Staying in my profession with continual latex exposure would increase the likelihood of allergic anaphylactic shock. Accordingly, I decided it was

CLAIMS FEB 2 0 200

2.

medically necessary that I leave a career I loved. My last day as a clinical dental hygienist was on December 27, 2001. It was a decision Dr.Bedard called courageous and necessary for my health.

I began a job as a sales representative for Barton-Cyker Dental Supply, Inc. on January 2, 2002, earning half of the income I had made as a dental hygienist. During training for this job I did have some asthma while spending considerable time in dental offices. Dr. Bedard recommended staying out of the operatories and trying to make any sales calls to dental offices in the morning. He also prescribed a new asthma inhaler.

On February 13, I had an appointment with my primary care physician, Dr.Viruet in South Windsor. I had been coughing continuously for more than a week despite frequent use of my inhalers and cough drops and OTC cough medications. She prescribed prednisone steroids and Zithromax antibiotics for a lung infection. She told me that due to my latex allergy causing my lungs to react with asthma, that I am susceptible to this sort of illness.

In conclusion, my work-related exposure to latex has forever impacted my daily living. Latex allergy has caused irreversible damage to my health. It has also brought major dietary and social constraints and loss of my profession and earning potential.

# CAROLYN MIREK'S BILATERAL CARPAL TUNNEL SYNDROME

While practicing as a registered dental hygienist for 18 years I developed a crippling pain in my right hand and numbness and tingling that would awaken me several times per night. On May 10, 2000, while performing my dental hygiene duties, I experienced an excruciating pain that I had never felt before.

I scheduled an appointment with an orthopedic hand specialist, Dr. John Marra in Avon, CT. He diagnosed me with Carpal Tunnel Syndrome and gave me a splint to wear at night and told me to wait until I am dropping things all the time before scheduling surgery. The splint did not help and I did not want to start dropping sharp instruments over my patients. Many people recommended that I see Dr. H. Kirk Watson for an evaluation so I did.

By that time, Dr. Watson said that I had bilateral carpal tunnel and that my right hand was "pretty far gone." I had lost 90% of my thumb use! This he told me was due to cumulative repetitive strain injury as a direct result of dental hygiene duties. He ordered surgery for my right hand immediately and urged me not to wait so long to operate on the left hand.

On September 16, 2000 I had the operation on my right hand followed by several weeks of extensive occupational hand therapy three times per week. I returned to work but was unable to perform the full scope of my duties. Eventually, my left hand began to bother me more. I had the Carpal Tunnel Release surgery on the left hand in March 2001 followed by several more weeks of hand therapy three times per week.

My hands have never been quite the same. I continue to lose my grip and drop things. I had continued to have pain in my right hand and thumb while working as a hygienist. Dr. Watson told me that if my symptoms were to worsen he could perform surgery to release the ulnar nerve. Dr. Watson ordered new x-rays of my right hand on September 12, 2001 and he determined there was arthritis in the base of my thumb. He prescribed more hand therapy that

CLAIMS FEB 2 3 2

3.

began at that visit. He wanted to" load " my hands to see if more symptoms would come to surface. Meanwhile, I was suffering at work. Dr. Babigian and Dr. Wollstein, Dr. Watson's fellows, had both suggested in the past that I change my career path. I told Dr. Watson that I was upset and was giving notice to my employer that I could no longer work. He told me he understood. My last day of employment as a hygienist was on December 27, 2001. At my hand therapy appointment three weeks later, I told my therapist that my hands felt much better than they had in a long time. Since I was no longer working as a hygienist, I was experiencing less pain. I backed off on the exercises but was told to keep up with them. There is a direct correlation between the pain in my hands and the dental hygiene services I had been providing.

2003 FEB 21 PM 1:27

CLAIMS FEB 2 0 2

Exhibit G



## Carolyn T. Mirek



### Fax

# Facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Kevin Kvederas | **Fax:** | 203-934-3724 |
| **From:** | CAROLYN MIREK | **Date:** | 5/2/02 |
| **Re:** | Latex allergy | | |
| **Pages: 20** | | | |
| **CC: Joseph Champigny** | | | |

Urgent    ☒For Review    ☐ Please Comment    Please Reply    ☐ Please Recycle

I.   Please read these articles-I think you will understand more about latex allergy and its

progression.  The woman in the articles is a nurse who is the same age as myself.  I do

not want to end up like her!!  Don't tell me that  you would rather see me in that state

of health in order to receive benefits.  Please respond.

Thank you.

*Sincerely,* Carolyn T. Mirek

Carolyn T. Mirek RDH

**naplesnews**.com | Naples Daily News

# Naples/Collier news

E-mail this story to a friend...

# Latex: More than 200 lawsuits filed against latex manufacturers

Sunday, July 4, 1999

By ANNEELENA FOSTER, Staff Writer

An 11-year-old boy with latex allergy is chased into the bathroom by other boys who attempt to rub latex gloves in his face, just to see what will happen.

A 36-year-old physician goes into muscular paralysis from the steroids she takes to control her allergy, but cannot go to the latex-laden emergency room for treatment.

A nurse in a prison infirmary has a violent reaction associated with gloves, but is separated by locked doors from the shot of Epipen that will halt her anaphylaxis. She dies in the prison.

※※※

An ever-growing list of people have seen their lives forever altered or even ended because they developed a sensitivity to natural rubber latex.

"If you have a drug that causes two deaths, it's taken off the market. These are not cases, these are not numbers, these are lives," said Lise Borel, a once-practicing dentist who now is a health activist and president of ELASTIC, the Education on Latex Allergy Support Team and Information Coalition.

"This is a patients' rights issue and that's starting to be recognized. People have a right to be safe."

Borel lost her ability to practice dentistry after she became disabled



FREE EMAIL
SIGN-UP FOR
YourName@naplesnews.net

GO
SHOP NAPLES
Find what you need...

**Shop:**
Online for cool stuff from Naples Daily News.

**Coupons:** ✂
Save at local area businesses.

**Advertise...**
...on the Internet! Find out our rates and details.

**Subscribe:**
Get the print edition of the Daily News delivered to your door.

**Internet Access**
Choose from 3 monthly rate plans.


Postcards
SEND ONE FOR FREE

Case 3:04-cv-00766-RGS    Document 20-3    Filed 08/09/2005    Page 17 of 20

by her own latex allergy.

The life-threatening allergic reactions were only half the misery. The treatments that prevent the lethal anaphylaxis are themselves so hard on the body, Borel and others like her endure interrelated maladies and a general deterioration in health. At 45, she just had a pacemaker installed - her fifth cardiac procedure.

Yet latex allergy is an enigma even to those whose lives stand to be ruined by it. It's not well understood by even doctors and nurses, let alone lower-level workers who are constantly exposed to the risk of sensitization. And this is to say nothing of latex users outside of medicine, of which there are many.

But it's not because information isn't available.

The Food and Drug Administration, Centers for Disease Control and Prevention, American Nurses Association, Mayo Clinic, Occupational Safety and Health Administration - among other organizations - have researched the problem. They have issued statements to educate their membership or the public.

Since 1988, more than 700 research articles have been published addressing its origins, its prevention and its treatment.

Yet that information isn't being systematically disseminated, Borel said, so too many people who need to know about the risks remain in the dark. Often, by the time people learn, they already have been sensitized and their lives are forever changed.

Some choose to sue latex glove manufacturers. More than 200 cases have been filed in federal court, including a recent $20 million suit by Karen Vivonetto of Naples, who is disabled by a latex allergy acquired during a career as an obstetrics nurse at Naples Community Hospital.

Most latex suits have been consolidated into a multi-district case to help control the legal costs. One court in Philadelphia is handling all the pretrial work, discovery and motions.

Chicago attorney Alan Unikel, the defense liaison spokesman, said once that process is complete, the suits will be sent back to their courts of origin where attorneys will argue them before local judges.

But Donna Gaidamak, media relations manager for Allegiance Health Care, a major manufacturer of latex gloves, said the suits are misguided.

Allegiance doesn't dispute that latex allergy exists, she said, and encourages people with latex sensitivity not to use their gloves. The

Case 2:04-cv-00066-RCS    Document 20-3    Filed 08/09/2005    Page 18 of 20

company even has nurses who go to customer hospitals to educate about the allergy and its prevention. Latex allergy is a serious problem, she said.

"But latex is a natural substance," she said. "It's no different than someone who is allergic to peanuts or bees. If you got stung by a bee, then who would you sue?"

That's a specious argument, Borel said.

"Nobody encounters latex naturally. It's not like pollen, it's not in the grass, it's not in the dirt, it's not just part of nature. We take a plant byproduct and use it to manufacture lots and lots of things," she said.

Latex allergy works as any allergy does: The body is exposed to a substance it doesn't like - an allergen - in this case, the proteins of natural rubber latex.

Cells of the immune system make a record of the allergen. Some are programmed to look for that specific allergen in the future, to seek it out and destroy it. That programming is sensitization.

At its essence, allergy is *hyper*sensitivity, an overreaction of the immune system.

This hypersensitivity could be a just a minor skin rash caused by latex gloves. But when a sensitized immune system is repeatedly exposed to an offending allergen, the reactions can become more exaggerated until a sort of physiological hysteria sets in. The body pulls out all sorts of defense systems that aren't necessary, and these are themselves potentially dangerous.

When this hypersensitivity is at its worst, the immune system creates a special antibody against the allergen. The antibody makes fluids accumulate in the tissues, muscles contract - including those in the windpipe - and the person begins to suffocate. That response is anaphylaxis.

Unless halted immediately, with a shot of epinephrine (Epipens) for instance, the worst level of reaction can be fatal within minutes.

But sensitivity varies greatly from one person to the next. The FDA says there is no way to know which latex-using workers will become sensitized to what degree, the length of time sensitization will take, nor the extent of a worker's reaction once sensitized.

It is also not possible to predict who will go from local skin rashes to dangerous anaphylaxis, because not everybody progresses through the various stages of the allergy.

http://www.naplesnews.com/today/local/latex5.htm

4/29/02

Glove manufacturers, who now are the target of more than 200 lawsuits, and their critics agree that latex allergy became a problem after the CDC recommended "universal precautions" in 1987 in response to AIDS.

Use of latex gloves quadrupled during 1988 and 1989, as workers used them more often and more workers used them.

"A nurse, who prior to universal precautions might have been exposed to latex two hours a day, was suddenly exposed eight to ten hours a day. They'll literally go through 70 or 80 pairs a day," said Doug Roberts, a litigator representing numerous latex allergic people, including Vivonetto of Naples.

An ancillary result of the increased use was a boom in demand for latex gloves. And to meet the increased demand, shortcuts were taken in the manufacturing processes used for gloves, according to OSHA.

Most significant was the elimination or abbreviating of a rinse that removed most of the allergenic proteins from the surface of the latex, where they settle.

"The reason I can be so unqualified in telling you (these illnesses) could have been prevented is that the gloves simply needed to be washed," said Alan Laufman, a Texas physician and attorney who wants glove manufacturers held responsible.

Laufman cites a 1991 FDA alert to manufacturers and the medical field that addressed the problem of latex allergy, listing steps that could reduce if not eliminate the problem, including rinsing.

"Every manufacturer knows what's going on - the government holds seminars and symposia," Laufman said. "But the imperative for companies to make money caused those without internal checks to maximize their profits at the risk of causing unneccessary harm."

Gaidamak said Allegiance, at least, didn't cut out its washing process. Even so, she said, while washing reduces the concentration of proteins on the gloves, it doesn't remove all of them.

Researchers say they don't know which of the two dozen or so antigenic latex proteins will create sensitivity, or in whom, so even washed gloves could be allergenic to some people.

"If you can't isolate the protein it is, then it could be those specific ones in that glove," she said, "and you'd still be exposed."

Borel said it's a matter of simple mathematical logic: reduce the number of threats and you reduce the risk of injury.

Case 3:04-cv-30166-RGS    Document 20-3    Filed 08/09/2005    Page 20 of 20 Page 2 of 5

Though domestic glove manufacturing has improved and the FDA is looking at establishing standards on protein levels, many gloves are imported.

"Today, into this country, we are still getting millions of foreign-made gloves that are dangerous," Laufman said. "Imagine all over the country there's hospitals with purchasing deparments that are not knowledgable, that are buying by price, not by some characteristic bearing on quality."

It is money that will drive change in the medical field, Laufman said.

"There's a movement to get away from the most dangerous powdered gloves. The increases in workers' compensation premiums will eventually force the hospitals to do the right thing," he said, adding:

"But the real point is what is the cost when a veteran nurse like Karen Vivonetto can no longer work at the hospital where she was employed, counseling expectant parents, teaching other nurses in your community?"



**Feedback**
Comments? Questions? Suggestions? E-mail the website crew at info@naplesnews.com. You can also use our directory to e-mail our staff directly. Or, express your opinion in a letter to the editor.



Entire contents © 1999 Naples Daily News. All rights reserved.
Published in Naples, Florida. A Scripps Howard newspaper.
Please read our user agreement and privacy policy.

http://www.naplesnews.com/today/local/latex5.htm

4/29/02