UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK, </br></br> Plaintiff, </br></br> vs. </br></br> THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) CIVIL ACTION NO.: 04-30166-MAP </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT II IN THE COMPLAINT AND FOR EMERGENCY PROTECTIVE ORDER

The Defendants, the Guardian Life Insurance Company of America ("Guardian") and Berkshire Life Insurance Company of America ("Berkshire"), hereby move this Court to enter judgment on the pleadings as to Count II of Plaintiff's Second Amended Complaint ("Complaint").[1] Through Count II, Plaintiff states mere conclusory allegations claiming numerous violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and Connecticut Unfair Trade Practices Act ("CUTPA").

As detailed below, the only facts alleged in Plaintiff's complaint pertain specifically to Plaintiff's Connecticut state law claim that the Defendants breached their obligation to pay disability benefits under a disability insurance policy. In order to state a claim under CUTPA/CUIPA, Plaintiff must plead facts alleging a pattern or practice. Pleading a single insurance transaction – as Plaintiff does here – is insufficient as a matter of law.

---

[1] By its February 9, 2005 Memorandum and Order Regarding Defendants' Motion to Dismiss, the Court Dismissed Counts III and IV of the Complaint. The sole remaining counts are Counts I and II.

Apparently recognizing that she lacks any factual basis for her CUTPA/CUIPA claim, Plaintiff is now engaged in discovery as to numerous elements of the Defendants' businesses on what is nothing more than a fishing expedition attempting to discover an actionable pattern or practice. Accordingly, the Defendants respectfully request that the Court, in addition to granting their motion for judgment on the Pleadings as to Count II, request that the Court enter an additional order protecting Defendants from Plaintiff's fishing expedition into their business practices.

## RELEVANT FACTUAL BACKGROUND

Plaintiff Complaint contains only the following factual allegations:

1. Plaintiff was insured under an "own occupation" disability policy issued by Guardian. Complaint at ¶ 4.

2. Plaintiff's occupation was that of a dental hygienist. Complaint at ¶ 6.

3. While the policy was in force, Plaintiff became so allergic to latex that she became unable to perform the major duties of her occupation and thus [was] totally disabled with in the meaning of the policy." Complaint at ¶ 7.

4. The Defendants denied Plaintiff's claim thus breaching the insurance contract. Complaint at ¶ 9.

5. The Defendants failed to provide Plaintiff with a reasonable explanation of the basis in the insurance policy for the denial of the claim. Complaint at ¶ 16.a.

6. The Defendants failed to conduct a meaningful investigation of Plaintiff's claims. Complaint at ¶ 16.c.

7. The Defendants denied Plaintiff's claim based on stated reasoning that was nonsensical or unsupportable. Complaint at ¶ 16.d.

2

8.    The Defendants in denying Plaintiff's claim relied on a physician who apparently was not board certified in allergy or occupational medicine and who did not examine the Plaintiff. Complaint at ¶ 16.e.

9.    The Defendants failed to conduct a reasonable investigation of Plaintiff's claim. Complaint at ¶¶ 16.c, f.

10.    The Defendants failed to decide Plaintiff's claim within a reasonable period of time and failed to effectuate a prompt settlement of Plaintiff's claim when liability for benefits became reasonably clear. Complaint at ¶ 16.h.

## ARGUMENT

A.    The Court Must Enter Judgment on the Pleadings as to
Count II Alleging a Violation of CUTPA/CUIPA

In order to state a claim for the violation of CUTPA/CUIPA, Plaintiff must allege that unfair insurance practices are committed or performed "with such frequency" as to indicate a "general business practice." Conn. Gen. Stat. 38a-816(6). Because Plaintiff's complaint merely asserts that the Defendants: 1) failed to pay her disability insurance claim; and 2) mishandled her claim, Plaintiff fails to state a claim for the violation of CUTPA/CUIPA and the Court must enter judgment on the pleadings dismissing Count II.

In reviewing a motion for judgment on the pleadings under Fed. R. Civ. P. 12 (C) the Court must accept as true the well pleaded averments of the complaint and draw all reasonable inferences in the plaintiffs' favor. Feliciano v. State of Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief. Id. In this case, Plaintiff fails completely to assert any facts that

3

would entitle her to relief for the alleged CUTPA/CUIPA violations asserted in Count II and the Defendants are entitled to judgment on the pleadings.

1. <u>Plaintiff Fails to Allege a Violation of CUIPA</u>

The Connecticut Unfair Insurance Practices Act ("CUIPA") defines numerous acts as being unfair and deceptive acts in the business of insurance. Conn. Gen. Stat. §38a-816. Among CUIPA's prohibitions are "Unfair Claim Settlement Practices" which defines unfair settlement practices as those which are: "Committ[ed] or perform[ed] **with such frequency as to indicate a general business practice.**" Conn. Gen. Stat. §38a-816(a).[2]

The Supreme Court of Connecticut has expressly held that "claims of unfair settlement practices under CUIPA require a showing of more than a single act of insurance misconduct." <u>Mead v. Burns</u>, 199 Conn. 651, 659, 509 A.2d 11 (1986); <u>Gore v. Colonial Penn Ins. Company</u>, 2004 U.S. Dist. LEXIS 18691 (D.Conn. 2004). Moreover, the Supreme Court of Connecticut has held that numerous violations of CUIPA with respect to a single insurance claim, "without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a 'general business practice' as required by § 38a-816(6). <u>Lees v. Middlesex Insurance Company</u>, 229 Conn. 842, 849, 643 A.2d 1282 (1994).

In this case, Plaintiff's factual allegations are solely confined to the Defendants handling of Plaintiff's claim. Plaintiff fails to assert any facts that the Defendants alleged wrongful handling and denial of Plaintiff's claim were committed with such frequency so as to indicate a general business practice. Because Plaintiff's allegations in this case are confined to the facts of

---

[2] The provisions of Conn. Gen Stat. 38a-816(6) that correspond to the allegations in Plaintiff's Complaint are: (d) refusing to pay claims without conducting a reasonable investigation based upon all available information; (e) failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; (f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and (n) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

4

her insurance claim, she has failed to state a claim under CUIPA, and this Court must enter judgment on the Pleadings as to Plaintiff's CUIPA claim alleged in Count II.

    2.    <u>Because Plaintiff's CUIPA Claim Fails, Her CUPTA Claim Fails</u>

In Count II of her Complaint, Plaintiff's factual allegations merely concern the handling of her insurance claim. However, Plaintiff grounds her claim as constituting a violation of both CUIPA and the Connecticut Unfair Trade Practices Act ("CUTPA"). Conn. Gen. Stat. §42-110b et seq. The reason that Plaintiff linked her CUIPA claim to a CUTPA claim is that CUIPA is a punitive statute and there is no express authority under CUIPA that creates an independent private cause of action. At least one federal Court interpreting Connecticut law has held that there is no private right of action under CUIPA, see <u>Martin v. American Equity Insurance Company</u>, 185 F. Supp.2d 162, 166 (D.Conn. 2002), and on several occasions the Supreme Court of Connecticut has declined to decide if there is a private right of action under CUIPA because it was unnecessary to do so. See e.g., <u>Mead v. Burns</u>, 199 Conn. 651, 657 n.5 (1986); <u>Lees v. Middlesex Insurance Company</u>, 229 Conn. 842, 847 n.4 (1994); <u>Macomber v. Travelers Prop. and Cas. Corp.</u>, 261 Conn. 620, 645 n.14 (2002).

Although it is unclear whether a private cause of action can be maintained directly under CUIPA, the Supreme Court of Connecticut has found that a private cause of action under CUTPA can be maintained for violations of the unfair claims settlement practices provisions as defined and set forth in CUIPA. <u>Mead</u>, at 663. Thus, Plaintiff's CUTPA claim was merely a conduit to a private right of action for a violation of CUIPA.

Where a plaintiff's CUTPA claim is based upon the same alleged unfair claims settlement practices as her CUIPA claim – as in the instant case -- the CUTPA claim cannot survive the failure of her CUIPA count. <u>Lees v. Middlesex Insurance Company</u>, 229 Conn. 842,

5

850-851 (1994). In this case, Plaintiff's CUIPA and CUTPA claims are combined in one count – Count II- in which Plaintiff's sole factual allegations pertain to the handling of Plaintiff's insurance claim. As set forth above, the Court must grant judgment on the Pleadings as to Plaintiff's CUIPA claim because Plaintiff fails to state facts demonstrating a general business practice. Because Plaintiff's CUTPA claim is based upon the same alleged unfair claims settlement practices as her unsustainable CUIPA claim, in addition to failing to state as CUIPA claim, Count II also fails to state a CUTPA claim. Accordingly, the Court must enter judgment on the Pleadings as to the entirety of Count II.

B.  The Court Must Enter a Protective Order Protecting
    The Defendants from Plaintiff's Fishing Expedition

As this Court has recognized, conclusory allegations standing alone – i.e., Plaintiff's unsupported allegations that Defendants are violating CUIPA/CUTPA – are a danger sign that the plaintiff is engaged in a **fishing expedition**. Davidson v. Cao, 211 F. Supp. 264, 281 (D. Mass. 2002)(emphasis in original). The First Circuit has instructed that it will not allow a party to go on a fishing expedition with the mere hope that it will obtain information on which to base a claim. See e.g., Ameristar Jet Charter, Inc., v. Signal Composites, Inc., 244 F.3d 189, 193 (2001). As set forth below, Plaintiff is attempting a fishing expedition to ascertain actionable business practices of the Defendants that must be enjoined by this Court.

A.  Plaintiff Admittedly Lacks Any Basis for A CUIPA/CUTPA Claim

In addition to failing to state a claim for a CUIPA/CUTPA violation, Plaintiff has candidly admitted that she lacks any factual basis for such a claim through her response to the following interrogatories propounded by the Defendants:

> INTERROGATORY NO. 2:
> Please state, in complete detail, each, every and all facts reflecting, supporting, constituting, concerning, memorializing, evidencing, referencing and/or relating or

pertaining in any way to your contention contained in paragraph 15 of your Complaint, wherein you allege that "The breach of contract set forth in Count I resulted from the reckless, willful and intentional breach of the defendants' contract and constituted, unfair claim settlement practices as defined in Conn. Gen. Stat. §38A-816(6), and unfair and deceptive practices."

ANSWER TO INTERROGATORY NO. 2:
**My attorney is still investigating the defendants' practices and therefore, I am unable to give a complete response.** However, I can say that I purchased the disability policy which would provide income to me should I be unable to work as a clinical dental hygienist. Upon the recommendation of my doctor, I made the painful decision to leave my career. The defendants are aware that a latex allergy is disabling because they have taken the position that they will not insure medical professionals like myself who have a latex allergy. Yet, they have denied my claim, and I am in the position of paying premiums on a policy, month after month, without receiving the benefits for which I have paid. The company misrepresented to me that I would receive income protection if I became disabled from performing my occupation as a clinical dental hygienist, and even though I have been disabled from this profession and continue to be, the company has refused to pay. In addition, the defendants relied on a physician who appears to have been uninformed about latex allergy to make its decision denying my claim.

INTERROGATORY NO. 3:
Please state, in complete detail, each, every and all facts reflecting, supporting, constituting, concerning, memorializing, evidencing, referencing and/or relating or pertaining in any way to your contention contained in paragraph 16 of your Complaint, wherein you allege that "In addition, the defendants committed the following unfair and deceptive practices and unfair claim settlement practices, among others:

a.  Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim;

b.  Failing to honor the contractual obligation to pay monthly all benefits due for disability after [you] established that [you] had a severe latex allergy that made [you] disabled from working in [your] occupation as a dental hygienist;

c.  Failing to conduct a meaningful investigation of the claim;

d.  Denying the claim based on stated reasoning that is nonsensical or unsupportable;

e.  Relying on a physician who apparently is not board-certified in a relevant specialty, that is, allergy or occupational medicine, to deny the claim, and, a physician who never examined [you];

f.  Refusing to pay the claim without conducting a reasonable investigation based on all available information

    g.        Failing to affirm or deny coverage of the claim within a reasonable period of time

    h.        Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear."

ANSWER TO INTERROGATORY NO. 3:
**It is not possible for me to list all the facts on which these allegations in the Complaint are based.** Some facts however are as follows:

From the outset, Guardian/Berkshire Life brushed my claim aside. Following several communications, I was actually told by a representative, Kevin Kevediras, in a phone conversation that he "didn't know what latex allergy was anyway" or words to that effect. I was shocked that he was handling my case since he seemed to have no knowledge of latex allergy and acted as if he didn't even care to know anything about it. He even challenged me on whether latex allergy could be potentially life-threatening. His ignorant demeanor was very offensive and upsetting to me, and demonstrated that the company was not treating my claim fairly and reasonably, and not making a reasonable investigation. Documentation from my allergist was requested from Berkshire Life, only to be set aside by a company selected physician who appears to have had little knowledge of latex allergy and whose written explanations made no medical sense.

See Plaintiff's Answers To Interrogatories 2 and 3, relevant portions which are attached as Exhibit 1 (emphasis added). Given that Plaintiff: 1) lacked any factual basis for her CUIPA/CUTPA claim at the time that she filed the Complaint; and 2) further lacked any factual basis at the time that she responded to Defendants' interrogatories, it is clear that Plaintiff thoroughly lacks any factual basis on which to assert a CUIPA/CUTPA violation. The Court must enjoin her burdensome fishing expedition designed to find such a violation.

B.    <u>The Court Must Protect the Defendants from Plaintiff's Fishing Expedition</u>

Apparently recognizing that she admittedly lacks any factual basis for asserting that the Defendants engaged in unfair insurance practices with such frequency as to indicate a general business practice, Plaintiff has now noticed numerous depositions and served numerous subpoenas in an attempt to fish for a general business practice on which she can base her

CUIPA/CUTPA claim. Defendants request that the Court enter a protective order prohibiting Plaintiff from engaging in this burdensome fishing expedition.

The degree of Plaintiff's fishing expedition is demonstrated through Plaintiff's Rule 30(b)(6) Deposition Notice of Berkshire, see Exhibit 2, that was served on September 1, 2005. The notice identifies the following 26 topics on which Plaintiff requests testimony:

1. All actions taken by Berkshire or Guardian in the handling of Carolyn Mirek's claim, including all action leading up to the denial of her claim, and any review thereafter;

2. Guardian's and Berkshire's knowledge of, and the state of Guardian's and Berkshire's knowledge of any familiarity with, latex allergy in 2000, 2001, 2002, 2003, 2004, 2005 and currently;

3. The procedures you used since January 1, 2002 to evaluate disability claims under individual disabilities policies;

4. All communications between Berkshire Life Insurance Company of America and Guardian Life Insurance of America concerning the claim of Carolyn Mirek prior to the denial of her claim;

5. All communications between you and anyone concerning Carolyn Mirek (except for attorney-client privilege communications);

6. The circumstances under which either defendant has, at any time since January 1, 1990, concluded that a claimant under an individual disability policy was totally or partially disabled because of a latex allergy-related disability, including the occupation of the insured, and the basis for such determination;

7. The period of time, or periods of time, that it has been true that if an applicant for individual disability insurance coverage is an M.D., dentist or medical professional, and has been diagnosed with a latex allergy, disability insurance coverage would most likely be declined by (a) Guardian or (b) Berkshire;

8. Guardian's and Berkshire's use or non-use of exclusions or riders in individual disability policies for persons with latex allergies;

9. Underwriting practice and procedures of the defendants since 1995 with respect to the use of riders, exclusions, or other deviations from standard individual disability insurance policies;

10. The occasions on which either of the defendants, since January 1, 1998, has declined to issue an individual disability insurance policy to an M.D., dentist or medical professional because the applicant had been diagnosed with a latex allergy, and the circumstances;

11. The occasions on which either of the defendants issued a disability insurance policy to an

9

        M.D., dentist or other medical professional since January 1, 1999, when the defendants had knowledge that the applicant had been diagnosed with a latex allergy, including the occupation of such person, and whether, and to what extent, such policy differed from a standard policy;

12. Any procedures, practices, or policies used in the handling of claims submitted to the defendants under "own occupation" or other individual disability policies during the period from January 1, 2000 to the present;

13. The criteria, standards, and practices used by Guardian or Berkshire at any time from January 1, 2000 to the present in determining whether to pay latex allergy-related claims under "own occupation" or other individual disability policies;

14. The business and/or contractual arrangement between Guardian and Berkshire concerning Guardian's use of Berkshire in the claims-handling process for disability claims;

15. Guardian's use of Berkshire in the claims-handling process for disability claims;

16. The treatises, medical journals, articles, manuals, memoranda, directives, guidelines, practices or policies, used by, referred to, consulted, relied upon in any way by Guardian or Berkshire from January 1, 1998 to the present in the processing of claims under individual disability policies where the issue of latex allergy was asserted to be involved in the insured's alleged disabling condition;

17. The process or methodology by which Harold Axe, M.D. was selected to perform work in connection with Carolyn Mirek's claim;

18. The data and information, and sources of data and information, used, consulted or relied upon in any by the defendants at any time since January 1, 1998 in determining, assessing, appraising, analyzing or evaluating the risks associated with underwriting disability insurance policies, including "own occupation" disability policies, of M.D.s, dentists, or other medical professionals who have been diagnosed with latex allergy;

19. Statistical data of any kind, generated since January 1, 1995 by Guardian or Berkshire, relating to latex allergy-related disability insurance claims;

20. The terms of any contracts, agreements or business arrangements between either Berkshire Life or Guardian Life Insurance Company of America and any of the following since January 1, 1990:

    (a)    MLS National Medical Evaluation Services;
    (b)    Medicolegal Services, Inc.;
    (c)    and Medicolegal National I.M.E. Services, Inc;

21. The frequency with which, since January 1, 1985, either of the defendants has done business with any of the following and the nature of the service, if any, provided:

    (a)    MLS National Medical Evaluation Services;
    (b)    Medicolegal Services, Inc.;

        (c)     and Medicolegal National I.M.E. Services, Inc.

22. The total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 1995, to:
    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.;
    (c) and Medicolegal National I.M.E. Services, Inc.

23. The number or percentage or proportion of claims referred to MLS National Medical Evaluation Services, Inc., for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by MLS National Medical Evaluations Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

24. The number or percentage or proportion of claims referred to Medicolegal Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by Medicolegal Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

25. The number or percentage or proportion of claims referred to Medicolegal National I.M.E. Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal National I.M.E. Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim; and

26. The involvement of James Garb, M.D. in reviewing Carolyn Mirek's claim; and the manner in which James Garb, M.D. became involved;

Berkshire does not object to producing witnesses to testify as to Topics 1, 4, 5, 17 and 26 as each of those topics concerns the handling and determination of Plaintiff's particular claim- the sole issue at dispute in this case. The remaining topics, however, are merely fishing expeditions into Berkshire's business practices in an attempt to find facts to articulate a theory to support Plaintiff's conclusory CUTPA/CUIPA allegations.

Thus, the topics on which Plaintiff has requested testimony: 1) are neither relevant to nor reasonably calculated to lead to admissible evidence in this matter; 2) create an undue burden on

the Defendants; are 3) are overbroad to the extent that they in fact could possibly lead to relevant evidence. Finally, to the extent Plaintiff seeks to discover information as to other persons not implicated in this litigation, as she does in Topics 10 and 11, above, such requests unnecessarily invades their privacy. Accordingly, Berkshire requests that the Court enter a protective order relieving it of any obligation to designate witnesses to testify to any topics other than Topics 1, 4, 5, 17 and 26.

In addition to subjecting Berkshire to her fishing expedition, Plaintiff has subpoenaed numerous other individuals/entities in an attempt to ascertain an actionable business practice. Specifically, Plaintiff has subpoenaed documents from and noticed the depositions of Medicolegal Services, Inc. and MLS National Medical Evaluation Services, Inc. (collectively "MLS") to occur in Detroit, Michigan. See Deposition Notices of MLS attached as Exhibits 3 and 4. MLS provides a service of locating medical experts to opine on medical conditions and was utilized by the Berkshire in locating an expert, Dr. Harold Axe to opine on Plaintiff's claim.

Although it is certainly appropriate for Plaintiff to inquire concerning Dr. Axe's expertise and the particulars of MLS's involvement in the processing of Plaintiff's claim, Plaintiff's deposition subpoenas go much further and demonstrate that her deposition of MLS is designed to fish for a business practice. For example, Plaintiff subpoenaed: 1) all documents that demonstrate contractual arrangements between MLS and the Defendants since 1990; 2) all documents that demonstrate amounts paid to MLS by Berkshire since 1995; 3) all documents that demonstrate amounts paid by MLS to Dr. Axe since 1990; and 4) all documents that demonstrate the number of claims on which MLS referred doctors have opined – since 1995 -- that individuals referred by the Defendants were not disabled.

12

Clearly, each of these categories of documents is designed to fish for a general business practice and not likely to lead to the introduction of admissible evidence as to Plaintiff's insurance claim. Defendants request that the Court's protective order quash Plaintiff's subpoena to the extent that it exceeds MLS's involvement in the handling of Ms. Mirek's case.

Likewise, Plaintiff has subpoenaed Dr. Axe to produce documents and testify at a deposition. See Subpoenas of Dr. Axe attached as Exhibits 5 and 6. Through these depositions, Plaintiff not only requests documents pertaining to Dr. Axe's qualifications and his participation in the handling of Ms. Mirek's claim, but she further subpoenas documents pertaining to Dr. Axe's income, contracts and handling of other matters going back numerous years. The Court must quash the subpoenas to Dr. Axe to the extent they exceed seeking information as to his qualifications and his participation in the handling of Ms. Mirek's claim as they are not likely to lead to the introduction of admissible evidence, unduly burdensome, invade other persons privacy and overbroad.

Plaintiff also has subpoenaed documents from Steven L. Crawford and the Keeper of Records of Crawford Associates, Inc., an insurance agent that sells Guardian products, demanding documents to be produced in Washington, D.C. See Subpoenas attached as Exhibits 7 and 8. By these subpoenas, Plaintiff demanded the production of numerous documents pertaining to the Defendants underwriting guidelines and practices since 1990. The subpoenaed parties filed an objection to this request, a copy of which is attached as Exhibit 9. Notwithstanding this objection, Plaintiff has continued to subject all parties potentially related to the Defendants to her fishing expedition.

## **CONCLUSION**

For the reasons stated above, the Court should grant the Defendants Motion for Judgment on the Pleadings as to Count II of the Complaint. Further, the Court should enter a protective order quashing all discovery Plaintiff seeks to take that exceeds discovery of the facts specifically particular to the Defendants handling and denial of Plaintiff's insurance claim.

Respectfully Submitted,

Defendants The Guardian Life Insurance
Company of America and Berkshire Life
Insurance Company of America

By their attorneys,

CREVIER & RYAN, LLP.

_____
David B. Crevier, Bar No. 557242
Katherine R. Parsons, Bar No. 657280
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel: 413-787-2400
Facsimile: 413-781-8235
Email: dcrevier@crevierandryan.com
       kparsons@crevierandryan.com

_____
Edward K. Kimball, Esq.
700 South Street
Pittsfield, MA 01201
(413) 499-4321

14

## LOCAL RULE 7.1 CERTIFICATION

I certify that the attorneys in this case have conferred and attempted in good faith to resolve or narrow the issues contained in this motion.

_____

## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing on all counsel of record said service having taken place this _9_th day of September 2005

_____