# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CAROLYN MIREK,<br><br>　　Plaintiff,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA and<br>BERKSHIRE LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>　　Defendants. | Civil Action No. 04-30166-MAP |

## PLAINTIFF CAROLYN MIREK'S RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA

The plaintiff Carolyn Mirek hereby responds to the Request for Production of Documents Propounded by Berkshire Life Insurance Company of America:

### REQUEST NO. 1

Please produce any and all documents, writings, records, and/or correspondence that you contend constitute, memorialize, or evidence the contracts or policies of insurance referred to in the Second Amended Complaint.

### RESPONSE NO. 1

To the extent that such documents exist, plaintiff agrees to produce them.

### REQUEST NO. 2

Please produce any and all documents, writings, records, and/or correspondence including, but not limited to, memoranda, telephone notes or memos, handwritten notes, letters, medical records, reports, charts, statements, files, bills, and/or any other documents, relating or referring to, documenting, memorializing and/or evidencing treatment, examination, diagnosis, recommendation and/or consultation you requested and/or received from any physician, psychiatrist, therapist, psychologist, psychotherapist, social worker, counselor, chiropractor, and/or other health care provider for the period January 1, 1999 through the present.

**RESPONSE NO. 2**

Plaintiff objects to this request to the extent that it seeks materials protected by the attorney-client privilege and work-product doctrine. Plaintiff objects to request no. 2 to the extent it seeks materials that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, plaintiff objects to the extent such materials are protected by a patient/psychotherapist privilege. Notwithstanding plaintiff's objection, plaintiff agrees to produce all medical records in her possession other than psychotherapy records.

**REQUEST NO. 3**

Please produce any and all documents, writings, records, and/or correspondence including, but not limited to, contracts, ledgers, profit and loss statements, invoices, bills, state and federal tax returns, including any drafts and/or schedules, accounts receivable, accounts payable, and/or any other documents relating to any business, dental practice, and/or other professional practice, with which you were affiliated as an owner, employee, self-employed individual, and/or investor from January 1, 2000 through the present.

**RESPONSE NO. 3**

Plaintiff objects to request no. 3 to the extent it seeks income tax return information other than W-2's or 1099's on the grounds that such request is unduly intrusive, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Tax return data contains information such as earnings from savings, and information about plaintiff's spouse's income, which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Excluding documents subject to this objection, plaintiff agrees to produce responsive documents to the extent they exist.

**REQUEST NO. 4**

Please produce any and all licenses, registrations, degrees, and/or certificates held by you in effect at any time from January I, 2000 through the present.

**RESPONSE NO. 4**

To the extent such documents exist, plaintiff agrees to produce them.

**REQUEST NO. 5**

Please produce your personal state and federal income tax returns, whether filed individually or jointly, including any drafts, attachments and/or schedules, for each year from 1999 through the present.

2

by all parties, correspondence, deposition transcripts, deposition exhibits, discovery requests, responses thereto and any settlement agreements.

**RESPONSE NO. 30**

Plaintiff objects to request no. 30 to the extent it seeks materials protected by the attorney-client privilege or work-product doctrine. Excluding documents subject to this objection, plaintiff agrees to produce responsive documents to the extent they exist.

PLAINTIFF
By her Attorney,

_____
Joanne D'Alcomo, BBO #544177
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

**CERTIFICATE OF SERVICE**

I, Joanne D'Alcomo, hereby certify that on this date I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, to Edward K. Kimball, Esq., 700 South Street, Pittsfield, MA 01201 and David B. Crevier, Esq., Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, MA 01115-5727.

Date of Service:    July 8, 2005

_____
Joanne D'Alcomo

JS PCDocs #53819\1A

12

# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br>  Plaintiff,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA and<br>BERKSHIRE LIFE INSURANCE<br>COMPANY OF AMERICA,<br>  Defendants. | CIVIL ACTION<br>NO. 04-30166-MAP |

**PLAINTIFF'S NOTICE OF TAKING DEPOSITION
OF DEFENDANT BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA
PURSUANT TO RULE 30(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Please take notice that at 10:00 a.m. on September 20, 2005, at the offices of Berkshire Life Insurance Company of America, 700 South Street, Pittsfield, Massachusetts, the Plaintiff Carolyn Mirek in this action, by her attorney, will take the deposition, upon oral examination of the Defendant BERKSHIRE LIFE INSURANCE COMPANY, BY ONE OR MORE OF ITS OFFICERS OR EMPLOYEES, TO BE DESIGNATED BY THE COMPANY, PURSUANT TO FEDERAL R. CIV. P. 30(b)(6), WITH THE MOST KNOWLEDGE CONCERNING THE MATTERS LISTED IN THE ATTACHED SCHEDULE A, before an officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

THE ATTENTION OF BERKSHIRE LIFE INSURANCE COMPANY IS DIRECTED TO FEDERAL R. CIV. P. 30(b)(6), REQUIRING A CORPORATION TO DESIGNATE ONE OR MORE OFFICERS, DIRECTORS, MANAGING AGENTS OR OTHER PERSONS TO TESTIFY ON ITS BEHALF ON THE SPECIFIED MATTERS.

You are invited to attend and cross-examine.

PLAINTIFF
CAROLYN MIREK
By her Attorney,

*/s/ Joanne D'Alcomo*

Joanne D'Alcomo
BBO #544177
JAGER SMITH, PC
One Financial Center
Boston, MA 02111
617-951-0500

## CERTIFICATE OF SERVICE

I, Joanne D'Alcomo, hereby certify that on this date I caused a true and correct copy of the foregoing to be served by fax and first class mail, postage prepaid, to Edward K. Kimball, Esq., 700 South Street, Pittsfield, MA 01201, and by first-class mail, postage prepaid, to David B. Crevier, Esq., Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, MA 01115-5727.

Date of Service: September 1, 2005

*/s/ Joanne D'Alcomo*

Joanne D'Alcomo

JS PCDocs #55394\1

2

## SCHEDULE A

### DEFINITIONS

1. The term "Mirek" refers to the plaintiff Carolyn Mirek;

2. The term "Guardian" refers to the defendant Guardian Life Insurance Company of America and any of its affiliates, officers, directors, employees, agents or representatives, or any attorneys acting on its behalf;

3. The term "Berkshire" refers to the defendant Berkshire Life Insurance Company of America and any of its affiliates, officers, directors, employees, agents or representatives, or any attorneys acting on its behalf;

4. The term "defendants" refers to Guardian and Berkshire collectively;

5. The term "claim" refers to the disability claim of plaintiff Carolyn Mirek;

6. The term "policy" refers to the disability policy issued by The Guardian Life Insurance Company of America to Carolyn Mirek, and any amendments thereto; and

7. The term "you" refers to Berkshire Life Insurance Company as defined above.

### TOPICS FOR WHICH A WITNESS MUST BE DESIGNATED TO TESTIFY:

1. All actions taken by Berkshire or Guardian in the handling of Carolyn Mirek's claim, including all action leading up to the denial of her claim, and any review thereafter;

2. Guardian's and Berkshire's knowledge of, and the state of Guardian's and Berkshire's knowledge of and any familiarity with, latex allergy in 2000, 2001, 2002, 2003, 2004, 2005 and currently;

3. The procedures you used since January 1, 2002 to evaluate disability claims under individual disabilities policies;

4. All communications between Berkshire Life Insurance Company of America and Guardian Life Insurance of America concerning the claim of Carolyn Mirek prior to the denial of her claim;

5. All communications between you and anyone concerning Carolyn Mirek (except for attorney-client privilege communications);

6. The circumstances under which either defendant has, at any time since January 1, 1990, concluded that a claimant under an individual disability policy was totally or partially disabled because of a latex allergy-related disability, including the occupation of the insured, and the basis for such determination;

7. The period of time, or periods of time, that it has been true that if an applicant for individual disability insurance coverage is an M.D., dentist or medical professional, and has been diagnosed with a latex allergy, disability insurance coverage would most likely be declined by (a) Guardian or (b) Berkshire;

8. Guardian's and Berkshire's use or non-use of exclusions or riders in individual disability policies for persons with latex allergies;

9. Underwriting practice and procedures of the defendants since 1995 with respect to the use of riders, exclusions, or other deviations from standard individual disability insurance policies;

10. The occasions on which either of the defendants, since January 1, 1998, has declined to issue an individual disability insurance policy to an M.D., dentist or medical professional because the applicant had been diagnosed with a latex allergy, and the circumstances;

11. The occasions on which either of the defendants issued a disability insurance policy to an M.D., dentist or other medical professional since January 1, 1999, when the defendants had knowledge that the applicant had been diagnosed with a latex allergy, including the occupation of such person, and whether, and to what extent, such policy differed from a standard policy;

12. Any procedures, practices, or policies used in the handling of claims submitted to the defendants under "own occupation" or other individual disability policies during the period from January 1, 2000 to the present;

13. The criteria, standards, and practices used by Guardian or Berkshire at any time from January 1, 2000 to the present in determining whether to pay latex allergy-related claims under "own occupation" or other individual disability policies;

14. The business and/or contractual arrangement between Guardian and Berkshire concerning Guardian's use of Berkshire in the claims-handling process for disability claims;

15. Guardian's use of Berkshire in the claims-handling process for disability claims;

16. The treatises, medical journals, articles, manuals, memoranda, directives, guidelines, practices or policies, used by, referred to, consulted, relied upon in any way by Guardian or Berkshire from January 1, 1998 to the present in the processing of claims under individual disability policies where the issue of latex allergy was asserted to be involved in the insured's alleged disabling condition;

17. The process or methodology by which Harold Axe, M.D. was selected to perform work in connection with Carolyn Mirek's claim;

2

18. The data and information, and sources of data and information, used, consulted or relied upon in any by the defendants at any time since January 1, 1998 in determining, assessing, appraising, analyzing or evaluating the risks associated with underwriting disability insurance policies, including "own occupation" disability policies, of M.D.s, dentists, or other medical professionals who have been diagnosed with latex allergy;

19. Statistical data of any kind, generated since January 1, 1995 by Guardian or Berkshire, relating to latex allergy-related disability insurance claims;

20. The terms of any contracts, agreements or business arrangements between either Berkshire Life or Guardian Life Insurance Company of America and any of the following since January 1, 1990:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

21. The frequency with which, since January 1, 1985, either of the defendants has done business with any of the following and the nature of the service, if any, provided:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

22. The total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 1995, to:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

23. The number or percentage or proportion of claims referred to MLS National Medical Evaluation Services, Inc., for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by MLS National Medical Evaluations Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

24. The number or percentage or proportion of claims referred to Medicolegal Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by Medicolegal Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

25. The number or percentage or proportion of claims referred to Medicolegal National I.M.E. Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal National I.M.E. Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim; and

26. The involvement of James Garb, M.D. in reviewing Carolyn Mirek's claim; and the manner in which James Garb, M.D. became involved.

JS PCDocs #55542\1