# Exhibit 3

Case 3:04-cv-30166-RGS   Document 23-3   Filed 09/09/2005   Page 1 of 18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br>  Plaintiff,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA and<br>BERKSHIRE LIFE INSURANCE<br>COMPANY OF AMERICA,<br>  Defendants. | CIVIL ACTION<br>NO. 04-30166-MAP |

PLAINTIFF'S NOTICE OF TAKING DEPOSITION
OF MLS NATIONAL MEDICAL EVALUATION SERVICES, INC.
PURSUANT TO RULE 30(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Please take notice that at 10:00 a.m. on September 9, 2005, at the offices of Hanson/Renaissance Court Reporters, 400 Renaissance Center, Suite 2160, Detroit, Michigan 48243, the Plaintiff Carolyn Mirek in this action, by her attorney, will take the deposition, upon oral examination of the MLS NATIONAL MEDICAL EVALUATION SERVICES, INC. BY ONE OR MORE OF ITS OFFICERS OR EMPLOYEES, TO BE DESIGNATED BY THE COMPANY, PURSUANT TO FEDERAL R. CIV. P. 30(b)(6), WITH THE MOST KNOWLEDGE CONCERNING THE MATTERS LISTED IN THE ATTACHED SCHEDULE B, before an officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

THE ATTENTION OF MLS NATIONAL MEDICAL EVALUATION SERVICES, INC. IS DIRECTED TO FEDERAL R. CIV. P. 30(b)(6), REQUIRING A CORPORATION TO DESIGNATE ONE OR MORE OFFICERS, DIRECTORS, MANAGING AGENTS OR

OTHER PERSONS TO TESTIFY ON ITS BEHALF ON THE SPECIFIED MATTERS

The deponent is further required to produce all documents on the attached Schedule A.

You are invited to attend and cross-examine.

PLAINTIFF<br>
CAROLYN MIREK<br>
By her Attorney,

Joanne D'Alcomo
BBO #544177
Seth Nesin
BBO #650739
JAGER SMITH, PC
One Financial Center
Boston, MA 02111
617-951-0500

## CERTIFICATE OF SERVICE

I, Joanne D'Alcomo, hereby certify that on this date I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, to Edward K. Kimball, Esq., 700 South Street, Pittsfield, MA 01201 and David B. Crevier, Esq., Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, MA 01115-5727.

Date of Service: August 25, 2005

Joanne D'Alcomo

55395v1

2

## SCHEDULE A

## DEFINITIONS

1. Whenever the phrase "documentary materials" is used, it means any original written record or graphic matter, however produced or reproduced, and/or each copy of the original that contains attachments, notes and/or markings not contained in or on the original including, but not limited to, the following whether printed, recorded and/or produced by hand: electronic mail, organizational charts, agreements, communications, correspondence, telegrams, memoranda, summaries and/or records of personal conversations and/or interviews, diaries, graphs, reports, sketches, maps, summaries and/or records of meetings and/or conferences, summaries and/or reports of investigations and/or negotiations, progress reports, opinions, and/or reports of consultants, photographs, motion picture films, brochures, pamphlets, advertisements, video recordings, circulars, press releases, drafts, letters, any marginal comments appearing on any document, sound recordings and/or transcripts thereof, account ledgers, financial records, corporate records, newspapers, magazines and other publications and/or clippings therefrom, estimates, licenses, permits, requisitions, invoices, leases, assignments, microfilm, and computer information (including but not limited to disks or other digitally or electronically stored information, printouts and/or other data together) with any materials required for the reasonable interpretation thereof, in the possession, custody or control of you, your assigns, representatives, agents, servants, employees or attorneys.

2. The term "claim" refers to the claim of plaintiff Carolyn Mirek submitted to the defendants which is the subject of Exhibits A and B attached.

3. The term "you" refers to MLS National Medical Evaluation Service, Inc., its officers, directors, employees, agents or representatives or any attorney acting on its behalf.

## DOCUMENTS TO BE PRODUCED

1. All promotional literature, marketing brochures or materials generated since January 1, 2000 used to promote or market MLS National Medical Evaluations, Inc., Medicolegal National I.M.E. Services, Inc. and/or Medicolegal Services, Inc.

2. The originals of Exhibits A and B.

3. The first addendum and any other addenda to Exhibit A.

4. All drafts, or portions of drafts, of Exhibits A and B attached, and all drafts or portions of drafts to any other addenda to Exhibits A and B.

5. All documentary materials, referring to, describing or concerning the educational background, credentials or qualifications of Harold Axe, M.D.

6. All documentary materials describing, referring to, concerning or relating to the process or methodology by which Harold Axe, M.D. was selected to perform work in connection with Carolyn Mirek's claim.

7. All documentary materials generated by or on behalf of Harold Axe, M.D. concerning Carolyn Mirek.

8. All documentary materials sent to Harold Axe, M.D. concerning Carolyn Mirek.

9. All documentary materials submitted by or on behalf of Harold Axe, M.D., at any time, concerning his eligibility or interest as an examining physician on behalf of the defendants.

10. All documentary materials submitted by or on behalf of Harold Axe, M.D., at any time, concerning his eligibility or interest to perform services for any of the following:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

11. Curriculum vitae, resumes and other documentary materials describing the qualifications or credentials of all persons who reviewed or were asked to review Carolyn Mirek's claim.

12. All documentary materials received from Berkshire or Guardian concerning Carolyn Mirek.

13. All documentary materials sent by you to anyone that concern Carolyn Mirek.

14. All documentary materials identifying the total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 1995, to:

    (a) MLS National Medical Evaluation Services, Inc.;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

15. All documentary materials, including but not limited to, notes, e-mails, correspondence, etc, referring to Carolyn Mirek.

16. All documentary materials relating to Exhibits A and B attached.

17. All documentary materials describing, embodying, reflecting any opinions developed or adopted by you concerning Carolyn Mirek's claim.

18. All transcripts of any testimony given by you in any legal proceeding since January 1, 1995.

19. All documentary materials containing edits, revisions or notes relating to Exhibits A and B attached.

20. Computer-stored data reflecting the creation date of Exhibits A and B attached, on the word-processing program used to create Exhibits A and B, and the dates of any edits and revisions on such word-processing program.

21. All communications between you and anyone concerning Exhibits A and/or B attached.

22. All communications between you and anyone concerning Carolyn Mirek.

23. All contracts, agreements, or other documentary materials describing, embodying, or reflecting the terms of any business or any economic arrangement between either Berkshire Life or Guardian Life Insurance Company of America and any of the following since January 1, 1990:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

24. All documentary materials submitted by Harold Axe, M.D. to any of the following entities concerning his background, qualifications and experience and/or ability to perform services for one or more of these entities:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

25. All 1099s or other documents reflecting the amount of income paid by any of the following entities to Harold Axe, M.D. since January 1, 1990:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

26. Documentary materials identifying the background and qualifications of any individuals who revised, edited, composed or provided upon in any way to the preparation of Exhibits A and/or B.

27. All documentary materials, including but not limited to, medical treatises, medical journals, articles, etc., on which you relied in providing any input to the text of Exhibits A and B.

28. 1099s or other documents reflecting the amount of income received by MLS National Medical Evaluation Services, Inc., by Medicolegal Services Inc., or by Medicolegal National I.M.E. Services, Inc. since January 1, 1995 from each of the following entities:

3

  (a) Berkshire Life Insurance Company of America; and
  (b) Guardian Life Insurance Company of America.

29. All documentary materials containing any descriptions, reports, assessments, analyses, summaries, statistical reviews, of the number or percentage or proportion of claims referred to MLS National Medical Evaluation Services, Inc., for any time period since January 1, 1995 from Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by MLS National Medical Evaluations Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim.

30. All documentary materials containing any descriptions, reports, assessments, analyses, summaries, statistical reviews, of the number or percentage or proportion of claims referred to Medicolegal Services, Inc. for any time period since e January 1, 1995 from Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim.

31. All documentary materials containing any descriptions, reports, assessments, analyses, summaries, statistical reviews, of the number or percentage or proportion of claims referred to Medicolegal National I.M.E. Services, Inc. for any time period since January 1, 1995 from Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal National I.M.E. Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim.

32. All documentary materials, including but not limited to, reports, letters, addenda, etc., (except for claimant-identifying information) containing, embodying, or reflecting any analyses, conclusions, findings, or comments on the subject of allergy or latex allergy by Harold Axe, M.D.

JS PCDocs #55389\1

## SCHEDULE B

The topics for which a witness must be designated to testify:

1. All actions taken by any of the following in connection with the claim of Carolyn Mirek that is the subject of Exhibits A and B attached;

2. The method and and/or process by which Harold Axe, MD. was selected to review the claim of Carolyn Mirek;

3. the procedures you used in 2002 to choose physicians to review claims;

4. The identities, and educational background and qualifications of all persons who participated in any way in editing, revising, drafting, or composing, or providing any input into, the documents attached as Exhibits A and B, and the extent to which they edited, revised, drafted, composed, or provided input into Exhibits A and B;

5. The process by which Exhibits A and B were developed, created, generated, produced, revised, edited, typed, including all source materials relied upon;

6. All communications between you and Berkshire Life Insurance Company of America or Guardian Life Insurance of America concerning the claim of Carolyn Mirek and review of her claim;

7. The identities and credentials of all persons who were contacted by you to review the claim of Carolyn Mirek, and the outcome of such contacts;

8. The documentary materials sent to Harold Axe, M.D. concerning Carolyn Mirek;

9. Communications between Harold Axe, M.D., at any time, and any of the entities below concerning his eligibility or interest to perform services for any of the following:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

10. Communications between Harold Axe, M.D., at any time, and any of the entities below concerning his eligibility or interest to perform services for the defendants:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

11. The total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 1995, to:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

12. Any opinions developed or adopted by you concerning Carolyn Mirek's claim;

13. All communications between you and anyone concerning Exhibits A and/or B attached;

14. All communications between you and anyone concerning Carolyn Mirek;

15. The terms of any contracts, agreements or business arrangements between either Berkshire Life or Guardian Life Insurance Company of America and any of the following since January 1, 1990:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

16. The amount of income paid by any of the following entities to Harold Axe, M.D. since January 1, 1990:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.; and
    (c) Medicolegal National I.M.E. Services, Inc.

17. The amount of income received by MLS National Medical Evaluation Services, Inc., by Medicolegal Services Inc., or by Medicolegal National I.M.E. Services, Inc. since January 1, 1995 from each of the following entities:

    (a) Berkshire Life Insurance Company of America; and
    (b) Guardian Life Insurance Company of America.

18. The number or percentage or proportion of claims referred to MLS National Medical Evaluation Services, Inc., for any time period since January 1, 1995 from Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by MLS National Medical Evaluations Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim;

19. The number or percentage or proportion of claims referred to Medicolegal Services, Inc. for any time period since e January 1, 1995 from Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life

        Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim;

20. The number or percentage or proportion of claims referred to Medicolegal National I.M.E. Services, Inc. for any time period since January 1, 1995 from Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal National I.M.E. Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim;

21. The contents of reports, reviews, letters, addenda, analyses that contain, embody or reflect any analyses, conclusions, findings, or comments on the subject of allergy or latex allergy by Harold Axe, M.D.

JS PCDocs #55451\1

June 26, 2002

Re:   Carolyn Mirek

I am a physician licensed to practice medicine in the States of New York and Ohio, where I have practiced the specialty of Allergy and Immunology for more than 25 years.

I have reviewed the medical records, which you have provided me of Ms. Carolyn Mirek and I am aware of her claim for total disability on the basis of Latex Allergy and Carpel Tunnel Syndrome.

The most recent medical report dated October 22, 1999 and signed by Dr. Robert M. Bedard described the patient "Mrs. Mirek is doing quite well. She had an excellent September without symptoms of sneezing, runny nose..," From the medical record you have provided me I have no information to support a worsening of Ms. Mirek's condition.

Latex Allergy is not a distinct disease but rather a part of a much more multifactorial medical entity commonly referred to today as Chronic Inflammatory Airway Disease.

# EXHIBIT A

CLAIMS   JUL 15 2002

CL

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 2

Chronic Inflammatory Airway Disease describes the inflammatory process present in the nose, sinuses, and bronchi that is variously known as Allergy, Allergic Rhinitis, Bronchial Asthma, etc. This inflammatory process is the result of the collective allergic reactions to Pollens, House Dust Mite, Mold spores, Animal dander, and even Latex particles in the inspired air. Symptoms of runny nose, sneezing, nasal stuffiness, cough, shortness of breath and wheezing occur whenever the accumulation of these factors and thereby the inflammation, reaches an overwhelming degree. Physical and non-allergic factors, too, such as smoke, air pollution, irritating odors and fumes, exercise, cold, viral infections, also contribute to the development of symptoms.

Allergy testing is a means of confirming the presence of some of the allergic factors in the clinical presentation of Allergic Disease. However, Allergy Skin Testing, and the alternative to skin testing, the blood test known as RAST, are merely tests to detect the presence of specific antibodies in a person's system. They are not indicative of the degree to which these factors contribute, if any, to the overall expression of the chronic airway inflammation.

Allergy testing is not precise. There are inherent flaws in its accuracy. There is no standardization of testing materials, especially Latex. Ms. Mirek was tested with a piece of examining glove. Allergy testing is therefore merely a piece of information to fit into the larger clinical picture. Allergy Skin Testing of Ms. Mirek in June, 1999, apparently showed significant reactions to Latex, but, also, to Ragweed Pollen, and Fresh Banana.

CLAIMS   JUL 15 2002

CL 4

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 3

1. Chronic Inflammatory Airway Disease, or "Allergy" or "Asthma" is totally treatable, and thus, should rarely if ever prove a disability. In his notes in June, 1999 Dr. Bedard described a very favorable response by Ms. Mirek to just one medication, FLONASE, a nose spray. If Ms. Mirek's condition has deteriorated so much in the past 2-1/2 years since June, 1999, regardless of to what degree Latex may or may not have contributed to such deterioration, then an even more aggressive course of medical management is certainly indicated.

   It is my medical opinion that such an unfavorable outcome to adequate treatment justifying the finding of "Total Disability" because of "Latex Allergy" in Ms. Carolyn Mirek is highly unlikely.

2. Through my review of the medical records, which you have provided me of Ms. Carolyn Mirek, I should like to emphasize that I see no basis for a work restriction or work limitation based on Latex Allergy in Ms. Mirek.

CLAIMS    JUL 15 2002

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 4

3. In her medical record dated October 22, 1999, Dr. Robert M. Bedard described Ms. Mirek as doing quite well in view of the accommodations made in the workplace in that Vinyl was being substituted for Latex wherever possible.

Sincerely,

Harold Axe, M.D.

klm

CLAIMS   JUL 1 5 2002

BERKSHIRE LIFE INS. CO.
700 SOUTH ST.
PITTSFIELD, MA. 01201-8285

Medicolegal Services, Inc.
25899 W 12 Mile Road, Suite 200
Southfield, MI 48034

October 11, 2002

Re: Carolyn Mirek –Claim # 391131, (2nd Addendum)

Through your offices, I am in receipt of a copy of a letter from Dr. Robert M. Bedard dated September 15, 2002, regarding his patient, Ms. Carolyn Mirek, and her medical condition that he describes as "Latex Allergy."

I am also in receipt of your memo to me dated October 2, 2002, requesting my review and comments of Dr. Bedard's recent letter.

1) Dr. Bedard's letter of September 15, 2002, does not change my previously stated opinion of Ms. Mirek's medical condition because I do not believe that Dr. Bedard has described anything significantly new in his description of Ms. Carolyn Mirek's medical condition, except to point out that she is "doing well" and that "her asthma as of 5/21/02 was in good control."

2) Dr. Bedard alludes to a cross reactivity of Latex Allergy with Allergy to food proteins found in Kiwi, Banana, and Avocado. Although this phenomenon has been reported in the medical literature, I have no way of knowing, nor can I imagine how it can ever be proven, in which direction this cross reactivity developed in Ms. Mirek. It is just as likely that her Latex Allergy developed from her dietary exposure to Kiwi, Banana, and Avocado as it is that her reactivity to these foods resulted from her exposure to Latex.

3) In previous communications as well as this current letter, Dr. Bedard consistently describes Ms. Mirek as "doing well." He describes the many changes her previous employer made to accommodate her Latex sensitivity in the work place, but he does not explain what environmental changes have been made in Ms. Mirek's home or what medications in addition to FLONASE have been prescribed. He dwells exclusively on the Latex issue, but fails to elucidate the presence of a cat or dog in the Mirek home, Ms. Mirek's smoking history, feather bedding, her Latex exposure *off* the job, etc. Moreover, no mention is made as to what Asthma medications were prescribed to control her Asthma so that she would not feel that she had to change jobs. These are but a few of the very many issues that an Allergist customarily addresses in the care of a person with Ms. Mirek's condition.

4) In the 12th paragraph of his letter dated September 15, 2002, Dr. Bedard states that "it is likely that she will remain with a permanent latex allergy." Yet, in the very next paragraph he states: "The nature of the natural history of latex allergy that has developed in healthcare workers is not yet clear." And further in that same paragraph he even states: "As the healthcare and dental industries moved away from powdered latex gloves; it is likely that the level of sensitization may decline. It is not known whether or not previously sensitive individuals will lose their sensitivity over time."

# EXHIBIT B

CLAIMS ULI 25 2002

CL 3

Carolyn Mirek –Claim # 391131, (2nd Addendum)

Latex-free work environments are being routinely established all over the world to address the Latex problem. Ms. Mirek's former employer is an example of such effort. Safe, effective medication is readily available to adequately control Allergy and Asthma and prevent symptoms. I fail to see how Ms. Carolyn Mirek can be considered permanently disabled or how all her suffering (of which there seems to be very little) can be considered exclusively the result of her exposure to Latex in the workplace.

Harold Axe, M.D.

CLAIMS OCT 25 2002

CL 35

BERKSHIRE LIFE INS. CO.
700 SOUTH STREET
PITTSFIELD, MA. 01201-8285

Services, Inc.
Road, Suite 200
MI 48034