# Exhibit 5

AO88  (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ CONNECTICUT _____

CAROLYN MIREK, Plaintiff,

V.

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA, ET AL., Defendants.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  D. Mass. C.A. No. 04-30166-MAP

TO:  Harold Axe, MD
     137 Cat Rock Rd.
     Cos Cob, CT 06807-1305

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION    Paul, Hastings, Janofsky & Walker LLP<br>1055 Washington Blvd., 10th Floor, Stamford, CT 06901 | DATE AND TIME<br>9/16/2005 12:00 pm |
|---|---|

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Joanne D'Alcomo* | *August 25, 2005* |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Joanne D'Alcomo, Esq. (BBO#544177), Jager Smith, PC, One Financial Center, Boston, MA 02111
(617) 951-0500

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
             DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

# Exhibit 6

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____    CONNECTICUT

CAROLYN MIREK, Plaintiff,

V.

THE GUARDIAN LIFE INSURANCE COMPANY OF
    AMERICA, ET AL., Defendants.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  D. Mass. C.A. No. 04-30166-MAP

Keeper of the Records of
TO:  Harold Axe, MD
     137 Cat Rock Rd.
     Cos Cob, CT 06807-1305

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached.

| PLACE    Paul, Hastings, Janofsky & Walker LLP<br>1055 Washington Blvd., 10th Floor, Stamford, CT 06901 | DATE AND TIME<br>09/08/2005 9:00 a.m. |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>August 25, 2005 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |

Joanne D'Alcomo, Esq. (BBO#544177), Jager Smith, PC, One Financial Center, Boston, MA 02111
(617) 951-0500

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

SCHEDULE A

**Definitions**

A.    The term "you" refers to Harold Axe, M.D., or any agents or employees of Harold Axe, M.D.

**Documents to Be Produced**

1.    All versions of your curriculum vitae in your possession, excluding duplicate copies of the same versions.

2.    All medical articles, presentations, chapters, publications or written material authored or co-authored by you since January 1, 1990 (except on the subject of oncology).

3.    All medical articles, presentations, chapters, publications or written materials to which you contributed since January 1, 1990 (except on the subject of oncology).

4.    All documentary materials, including but not limited to, notes, e-mails, correspondence, etc, referring to Carolyn Mirek.

5.    All documentary materials on which you relied in formulating the opinions contained in Exhibits A and B attached.

6.    All documentary materials describing, embodying, reflecting any opinions developed or adopted by you concerning Carolyn Mirek's claim.

7.    All transcripts of any depositions of you.

8.    All transcripts of any testimony given by you in any legal proceeding since January 1, 1990.

9.    All transcripts or recordings (digital, video or aural) of any presentations, talks, or speeches given by you since January 1, 1990 on medical subjects (except on the subject of oncology).

10.    All drafts, or portions of drafts, of Exhibits A and B attached, and all drafts or portions of drafts to any addenda to Exhibits A and B.

11.    The first "addendum," if any, to Exhibit A, and all other addenda.

12.    All documentary materials containing edits, revisions or notes relating to Exhibits A and B.

13.   Computer-stored data reflecting the creation date of Exhibits A and B  on the word-processing program used to create Exhibits A and B, and the dates of any edits and revisions on such word-processing program.

14.   An exemplar of all forms of stationery used by you in 2002 professionally.

15.   Exemplars of all stationery used by you professionally since January 1, 2002.

16.   All communications between you and anyone concerning Exhibits A and/or B attached.

17.   All communications between you and anyone concerning Carolyn Mirek.

18.   All documentary materials on which you relied in making the statement on page 1 of Exhibit A attached that latex allergy is "part of a much more multifactorial entity commonly referred to today as Chronic Inflammatory Airway Disease.

19.   All documentary materials on which you relied in making the statement on page 2 of Exhibit A attached that "Chronic Inflammatory Airway Disease describes the inflammatory process present in the nose, sinuses, and bronchi that is variously known as Allergy, Allergic Rhinitis, Bronchial Asthma, etc."

20.   All documentary materials on which you relied in making the statement on page 2 of Exhibit A attached that "This inflammatory process is the result of the collective allergic reactions to Pollens, House Dust Mite, Mold spores, Animal dander, and even Latex particles in the inspired, air."

21.   All documentary materials including, but not limited to, reports, expert disclosures, opinion letters, answers to interrogatories, etc. (but excluding claimant-identifying information) containing opinions, reports, conclusions or opinions adopted or formed by you on the subject of latex allergy in connection with any of the following:

      (a)     an insurance claim;

      (b)     a legal proceeding; and

      (c)     a worker's compensation claim.

22.   Copies of all brochures, pamphlets, information sheets you have disseminated since January 1, 1995 to actual or prospective patients on any of the following subjects:

      (a)     asthma;

(b)     allergy;

(c)     latex allergy; and

(d)     airway disease.

23.     All documentary materials describing, embodying, reflecting or concerning any business or any economic arrangement between you and any of the following since January 1, 1990:

(a)     MLS National Medical Evaluation Services;

(b)     Medicolegal Services, Inc.; and

(c)     Medicolegal National I.M.E. Services, Inc.

24.     All documentary materials containing, reflecting, or referring to communications between you and any of the following entities describing or referring to your offering to provide services, or agreeing to provide services:

(a)     MLS National Medical Evaluation Services;

(b)     Medicolegal Services, Inc.; and

(c)     Medicolegal National I.M.E. Services, Inc.

25.     All documentary materials submitted by you to any of the following entities concerning your background, qualifications and experience and/or ability to perform services for one or more of these entities:

(a)     MLS National Medical Evaluation Services;

(b)     Medicolegal Services, Inc.; and

(c)     Medicolegal National I.M.E. Services, Inc.

26.     All 1099s or other documents reflecting the amount of income received by you, and the source of such income, since January 1, 1999 from any of the following:

(a)     MLS National Medical Evaluation Services;

(b)     Medicolegal Services, Inc.; and

(c)     Medicolegal National I.M.E. Services, Inc.

27.   All 1099s, invoices, receipts or other documents reflecting the amount of any income and the source of any income received by you since January 1, 1990 for the activity of evaluating or rendering an opinion on insurance claims of any kind at the request of, directly or through an intermediary, an insurance company.

28.   Documentary materials identifying any individuals who contributed in any way to the preparation of Exhibits A and/or B.

29.   All communications between you and any board that certifies physicians in specialties which refers to, relates to, embodies or reflects:

   (a)   Any effort by you to become Board-certified;

   (b)   The results of any effort by you to become Board-certified; and

   (c)   Any Board certification of you.

30.   Documentary materials evidencing your Board-certification in any specialty.

JS PCDocs #55327\1

June 26, 2002

Re:   Carolyn Mirek

I am a physician licensed to practice medicine in the States of New York and Ohio, where I have practiced the specialty of Allergy and Immunology for more than 25 years.

I have reviewed the medical records, which you have provided me of Ms. Carolyn Mirek and I am aware of her claim for total disability on the basis of Latex Allergy and Carpel Tunnel Syndrome.

The most recent medical report dated October 22, 1999 and signed by Dr. Robert M. Bedard described the patient "Mrs. Mirek is doing quite well. She had an excellent September without symptoms of sneezing, runny nose..," From the medical record you have provided me I have no information to support a worsening of Ms. Mirek's condition.

Latex Allergy is not a distinct disease but rather a part of a much more multifactorial medical entity commonly referred to today as Chronic Inflammatory Airway Disease.

# EXHIBIT A

CLAIMS    JUL 1 5 2002

CL 4

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 2

Chronic Inflammatory Airway Disease describes the inflammatory process present in the nose, sinuses, and bronchi that is variously known as Allergy, Allergic Rhinitis, Bronchial Asthma, etc. This inflammatory process is the result of the collective allergic reactions to Pollens, House Dust Mite, Mold spores, Animal dander, and even Latex particles in the inspired, air. Symptoms of runny nose, sneezing, nasal stuffiness, cough, shortness of breath and wheezing occur whenever the accumulation of these factors and thereby the inflammation, reaches an overwhelming degree. Physical and non-allergic factors, too, such as smoke, air pollution, irritating odors and fumes, exercise, cold, viral infections, also contribute to the development of symptoms.

Allergy testing is a means of confirming the presence of some of the allergic factors in the clinical presentation of Allergic Disease. However, Allergy Skin Testing, and the alternative to skin testing, the blood test known as RAST, are merely tests to detect the presence of specific antibodies in a person's system. They are not indicative of the degree to which these factors contribute, if any, to the overall expression of the chronic airway inflammation.

Allergy testing is not precise. There are inherent flaws in its accuracy. There is no standardization of testing materials, especially Latex. Ms. Mirek was tested with a piece of examining glove. Allergy testing is therefore merely a piece of information to fit into the larger clinical picture. Allergy Skin Testing of Ms. Mirek in June, 1999, apparently showed significant reactions to Latex, but, also, to Ragweed Pollen, and Fresh Banana.

CLAIMS          JUL 1 5 2002

CL 48

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 3

1.    Chronic Inflammatory Airway Disease, or "Allergy" or "Asthma" is totally treatable, and

thus, should rarely if ever prove a disability. In his notes in June, 1999 Dr. Bedard

described a very favorable response by Ms. Mirek to just one medication, FLONASE, a

nose spray. If Ms. Mirek's condition has deteriorated so much in the past 2-1/2 years

since June, 1999, regardless of to what degree Latex may or may not have contributed

to such deterioration, then an even more aggressive course of medical management is

certainly indicated.


It is my medical opinion that such an unfavorable outcome to adequate treatment

justifying the finding of "Total Disability" because of "Latex Allergy" in Ms. Carolyn

Mirek is highly unlikely.


2.    Through my review of the medical records, which you have provided me of Ms. Carolyn

Mirek, I should like to emphasize that I see no basis for a work restriction or work

limitation based on Latex Allergy in Ms. Mirek.


CLAIMS        JUL 1 5 2002

CL 49

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 4

3.    In her medical record dated October 22, 1999, Dr. Robert M. Bedard described Ms.

Mirek as doing quite well in view of the accommodations made in the workplace in that

Vinyl was being substituted for Latex wherever possible.

Sincerely,

Harold Axe, M.D.

klm

CLAIMS    JUL 1 5 2002

CL 50

BERKSHIRE LIFE INS. CO.
700 SOUTH ST.
PITTSFIELD, MA. 01201-8285

Medicolegal Services, Inc.
25899 W 12 Mile Road, Suite 200
Southfield, MI 48034

October 11, 2002

Re: Carolyn Mirek –Claim # 391131, (2nd Addendum)

Through your offices, I am in receipt of a copy of a letter from Dr. Robert M. Bedard dated September 15, 2002, regarding his patient, Ms. Carolyn Mirek, and her medical condition that he describes as "Latex Allergy."

I am also in receipt of your memo to me dated October 2, 2002, requesting my review and comments of Dr. Bedard's recent letter.

1) Dr. Bedard's letter of September 15, 2002, does not change my previously stated opinion of Ms. Mirek's medical condition because I do not believe that Dr. Bedard has described anything significantly new in his description of Ms. Carolyn Mirek's medical condition, except to point out that she is "doing well" and that her asthma as of 5/21/02 was in good control."

2) Dr. Bedard alludes to a cross reactivity of Latex Allergy with Allergy to food proteins found in Kiwi, Banana, and Avocado. Although this phenomenon has been reported in the medical literature, I have no way of knowing, nor can I imagine how it can ever be proven, in which direction this cross reactivity developed in Ms. Mirek. It is just as likely that her Latex Allergy developed from her dietary exposure to Kiwi, Banana, and Avocado as it is that her reactivity to these foods resulted from her exposure to Latex.

3) In previous communications as well as this current letter, Dr. Bedard consistently describes Ms. Mirek as "doing well." He describes the many changes her previous employer made to accommodate her Latex- sensitivity in the work place, but he does not explain what environmental changes have been made in Ms. Mirek's home or what medications in addition to FLONASE have been prescribed. He dwells exclusively on the Latex issue, but fails to elucidate the presence of a cat or dog in the Mirek home, Ms. Mirek's smoking history, feather bedding, her Latex exposure off the job, etc. Moreover, no mention is made as to what Asthma medications were prescribed to control her Asthma so that she would not feel that she had to change jobs. These are but a few of the very many issues that an Allergist customarily addresses in the care of a person with Ms. Mirek's condition.

4) In the 12th paragraph of his letter dated September 15, 2002, Dr. Bedard states that "it is likely that she will remain with a permanent latex allergy." Yet, in the very next paragraph he states: "The nature of the natural history of latex allergy that has developed in healthcare workers is not yet clear." And further, in that same paragraph he even states: "As the healthcare and dental industries moved away from powdered latex gloves, it is likely that the level of sensitization may decline. It is not known whether or not previously sensitive individuals will lose their sensitivity over time."

# EXHIBIT B

CLAIMS OCT 25 2002

CL 34

Carolyn Mirek – Claim # 391131, (2nd Addendum)

Latex-free work environments are being routinely established all over the world to address the Latex problem. Ms. Mirek's former employer is an example of such effort. Safe, effective medication is readily available to adequately control Allergy and Asthma and prevent symptoms. I fail to see how Ms. Carolyn Mirek can be considered permanently disabled or how all her suffering (of which there seems to be very little) can be considered exclusively the result of her exposure to Latex in the workplace.

Harold Axe, M.D.

CLAIMS OCT 25 2002

CL 35

BERKSHIRE LIFE INS. CO.
700 SOUTH STREET
PITTSFIELD, MA. 01201-8285

Services, Inc.
Road, Suite 200
, MI 48034

CL 36