UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK, )<br> )<br> Plaintiff )<br> )<br>v. )<br> )<br>THE GUARDIAN LIFE INSURANCE )<br>COMPANY OF AMERICA and )<br>BERKSHIRE LIFE INSURANCE )<br>COMPANY OF AMERICA, )<br> )<br> Defendants )<br> ) | Civil Action<br>No. 04-30166-MAP |

**PLAINTIFF CAROLYN MIREK'S MOTION FOR RECONSIDERATION OF THE COURT'S DECISION ON HER MOTION TO AMEND THE COMPLAINT**

Plaintiff hereby moves the Court to reconsider its denial of plaintiff's motion to amend her complaint. Plaintiff, with the assent of defendants, had been about to file a reply to defendants' opposition for the Court's consideration in advance of the scheduled hearing on Monday, October 24, 2005. Unfortunately, however, the Court ruled before plaintiff was able to complete her reply. Without this additional information, the Court was deprived of an accurate understanding of the bases for plaintiff's motion to amend and the circumstances concerning

JS\110847.1

such proposed amendment.    The grounds for plaintiff's motion for reconsideration are set forth below:

**1.    Plaintiff's motion was not delayed or "untimely" as the Court was led to believe; the bases for the new specific allegations that plaintiff sought to add to the complaint were learned gradually through defendants' document productions beginning in the last week of July, 2005;   (2)   through deposition testimony of defendants' physician consultant September 16, 2005; (3) and through deposition testimony of defendants' personnel on September 20 and 21, 2005**

The Court is under the mistaken impression that plaintiff acted in an "untimely" fashion.[1] She did not.   As demonstrated below, plaintiff learned of the specific conduct giving rise to her new allegations concerning breach of the covenant of good faith and fair dealing in the time period beginning with defendants' first production of documents on July 27, 2005[2], followed by

---

[1] The Court denied the motion on the basis the motion was "untimely." But untimeliness by itself is not typically sufficient grounds to deny a motion to amend the complaint. There must be "undue" or "intended" delay or some other factor. As the First Circuit has stated: "Leave to amend is to be "freely given," unless it would be futile, or reward, *inter alia,* undue or intended delay. Resolution Trust Corp. v. Gold , 30 F.3d 251, 253 (1st Cir. 1994; see also  Glassman v. Computervision Corp.  90 F. 3d 617, 622 (1st Cir. 1996) (stating "Unless there appears to be an adequate reason for the denial of leave to amend (*e.g.,* undue delay, bad faith, dilatory motive, futility of amendment, prejudice), we will not affirm it.")

   Here, as demonstrated below, plaintiff did not act with "undue delay" in moving to amend the complaint.   See also Foman v. Davis, 371 U.S. 178, 182 (1962)(stating leave to amend should be granted: [i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of amendment).  None of these elements is present here. In this case, not only was plaintiff's proposed amendment timely, it would not cause any prejudice to the defendants, as explained infra.

[2]  The first documents produced by the defendants in discovery – automatic or otherwise – were sent by defendants to plaintiff on July 27, 2005. Plaintiff conducted discovery in an orderly, logical fashion. She did not schedule depositions until she was able to obtain documents from the defendants.  Following lengthy exchanges in an effort to resolve her discovery disputes with the defendants over what information had been produced by defendants in discovery, and after waiting for defendants to comply with the promise to provide additional discovery, plaintiff finally received additional documents in September 2005. Then, and only then, was plaintiff in a position to conduct depositions. Consequently, she began scheduling depositions*)* It was not until

other document productions in September 2005 (as a result of discovery conferences to resolve disputes) and in depositions of defense witnesses on September 16, 20 and 21, 2005. On September 26, 2005, just three business days after the last deposition was completed and even before the transcript was made, plaintiff promptly moved to add the specific allegations to the complaint.

The significance of the new facts that were discovered can only be understood in context. This case arises out of a disability insurance claim made under an "own occupation" disability insurance policy, which is intended to provide monthly disability benefits to a policyholder who cannot, for medical reasons, continue working in his or her profession. The plaintiff, Carolyn Mirek, was a registered dental hygienist for many years. She developed a latex allergy and latex-allergy related asthma and, because of her symptoms and the advice of her long-time allergist, she left her job and gave up her occupation to avoid daily constant exposure to latex. She had to find other employment. Ms. Mirek, who holds a policy issued by the defendants, filed a claim in 2002, and maintains that she is entitled to receive benefits each month from 2002 forward. The policy is supposed to provide benefits to her for as long as she is disabled from working in her occupation as a dental hygienist, until 65, which will occur in approximately 23 years.

In denying her benefits in 2002, and in continuing to deny her benefits each month, including to the present day, defendants have scoffed at plaintiff's latex-allergy related claim and at her Board-certified allergist's concern and advice. Defendants have steadily taken the position

---

after Labor Day, for example, that plaintiff was finally able to learn the identity of the person who was deeply involved in defendants' position (discussed *infra*) that individuals with evidence of latex allergy should not be insured by the company. Plaintiff promptly scheduled a deposition of him; he was not able to deposed, primarily because of his own schedule, until September 21, 2005.

JS\110847.1                                    3

that latex allergy can be easily managed, and that individuals with latex allergy can easily continue to work.

Plaintiff learned through discovery, however, that defendants' stance on plaintiff's claim is directly contradicted by its internal positions concerning the dangers of latex allergy. In addition, plaintiff learned that defendants relied on grossly inaccurate, misleading, and irrelevant information, and used physicians with a lack of experience and familiarity with latex allergy to deny the claim.

Set forth below are the specific allegations that plaintiff proposed to add to the complaint as a basis for her claim that Defendants acted in violation of the covenant of good faith and fair dealing, and a description of the factual basis that plaintiff learned in the course of the discovery for each allegation:

- <u>Allegation in Proposed Amendment</u>

    The defendants acted in bad faith in "taking the position, in denying plaintiff's claim, that latex allergy posed no problem in the workplace to one who has a latex allergy, while knowing that their corporate position was and continues to be that they will no longer issue disability policies to any dentists, doctors, or other medical professionals, including dental hygienists, if there is any sign they have latex allergy because of the risks that they will become unable to work in their occupation and be entitled to payment under a disability policy"; (Proposed amendment, ¶16 a);

    <u>Facts Learned During Discovery Giving Rise to Allegation</u>

    In documents produced by the defendants in September 2005, and in depositions of defendants' employees on September 20 and 21, 2005, plaintiff learned that in 2002, while defendants were denigrating plaintiff's latex allergy and claiming latex allergy posed no risk to her in her workplace, defendants were adamant about not selling any "own occupation" disability policies to <u>anyone</u> in the medical field who showed evidence of latex allergy because of the dangers that they would become unable to work in their occupation and become eligible for benefits. Plaintiff learned that this position had been held continuously to this day based on defendants' familiarity, through insurance industry meetings and other sources, of the risks associated with latex allergy**.** This outrageously hypocritical

conduct – about which plaintiff learned in discovery – furnishes the basis for plaintiff's allegation here.

- Allegations in Proposed Amendment

The defendants acted in bad faith in "retaining, and relying on the opinions of, a physician who rejects conventional medicine and does not believe in latex allergy, even though latex allergy is widely recognized"; (Proposed amendment, ¶16b)

The defendants acted in bad faith by "retaining and relying on the opinions of a physician who rejects basic tenets of treatment of latex allergy and occupational asthma, knowing that the plaintiff's claim was based on latex allergy and asthma related to exposure to latex in her occupation, that is, occupational asthma"; (Proposed amendment, ¶16 c.)

Facts Learned During Discovery Giving Rise to Proposed Amendment

The principal physician on whom defendants have relied in denying plaintiff's claim is Dr. Harold Axe. Plaintiff did not know that until she deposed Dr. Axe on September 16, 2005, that he does not believe in "latex allergy" even though it is a widely accepted diagnosis in conventional medicine, and that he rejects other aspects of conventional medicine, such as occupational asthma, the seriousness of occupational asthma and asthma and their debilitative effects. Therefore, plaintiff learned on September 16, 2005 that even though defendants themselves believe in latex allergy and its dangers so seriously that they deliberately forego selling policies to anyone who shows signs of latex allergy, they arranged, in processing plaintiff's latex-allergy based claim, to rely principally on a physician who does not believe in latex allergy and who does not share other views of conventional medicine.

- Allegation in Proposed Amendment

The defendants acted in bad faith by "retaining and relying on the opinions of a physician who had little or no experience diagnosing, testing for, or treating latex allergy or occupational asthma"; (Proposed amendment, ¶16d)

Facts Learned During Discovery Giving Rise to Allegation

Plaintiff did not learn until September 16, 2005, when she deposed Dr. Axe that he had little experience diagnosing, testing for, or treating latex allergy and occupational asthma even though latex allergy and occupational asthma (workplace related latex-allergy related asthma) was the basis of plaintiff's claim. In addition, plaintiff did not learn until September 20, 2005 in deposing defendant's medical director, who was also consulted in the process of

defendants' denial of the claim, and whose writings appear in the claims file opining on plaintiff's latex allergy, that he had little familiarity with latex allergy and virtually no experience diagnosing, testing for or treating latex allergy.

- Allegation in Proposed Amendment

The defendants acted in bad faith by "relying on the opinions of a physician who was not Board-certified in any specialty, had failed Board-certification examinations, and who did not have expertise in latex allergy"; (proposed amendment, ¶16e)

Facts Learned During Discovery Giving Rise to Allegation

Plaintiff did not learn until she was able to depose Dr. Harold Axe on September 16, 2005 that he was not Board-certified in any specialty whatsoever, had failed Board-certification examinations and did not have expertise in latex allergy.

- Allegation in Proposed Amendment

The defendants acted in bad faith by "deliberately ignoring substantial information reported in peer-reviewed medical literature and in government publications concerning the prevalence, seriousness and symptoms and characteristics of latex allergy"; (Proposed amendment, ¶16f)

Facts Learned During Discovery Giving Rise to Allegation

Plaintiff did not learn until she was able to depose Dr. Harold Axe on September 16, 2005 the information he relied upon and ignored in concluding that plaintiff was not disabled from working in her profession as a dental hygienist. Plaintiff did not learn until documents were produced by the defendants in late July and September, 2005, and in deposing the defendants' personnel on September 20, and 21, 2005, that defendants had deliberately ignored such information as well.

- Allegation in Proposed Amendment

The defendants acted in bad faith in deliberately ignoring internal institutional information about latex allergy, including information from their own underwriting department and the industry"; (Proposed amendment, ¶16g)

Facts Learned During Discovery Giving Rise to Allegation

Plaintiff did not learn until documents were produced by the defendants in September, 2005, and in deposing the defendants' personnel on September 20, and 21, 2005, that defendants, in refusing to pay the plaintiff monthly benefits, were deliberately ignoring the internal knowledge that defendants' personnel had

about the risks and dangers posed to latex-allergic medical professionals in the workplace.

- Allegation in Proposed Amendment

Defendants acted in bad faith by "deliberately relying on misleading, inaccurate or irrelevant information to deny the claim." (Proposed amendment, ¶16g).

Facts Learned During Discovery Giving Rise to Allegation

Plaintiff did not learn until deposing Dr. Harold Axe on September 16, 2005 that he apparently did not review or consider any of the plaintiff's medical records dated after October 1999 in drawing his conclusion that plaintiff was not disabled from working from latex allergy when she filed a claim in 2002. Thus, his analysis and conclusions were inaccurate and misleading. In addition, plaintiff did not learn until defendants produced documents in late July 2005, that in 2005, their continued denial of plaintiff's claim was based on a misleading and irrelevant new report in March 2005 that they had deliberately generated. Plaintiff discovered that they hired a physician who concluded that dental offices could theoretically become free of latex because he had found, in an internet search, a dental office that claimed to be latex free in Ohio, and another office in Birmingham, England that claimed to practice latex-free dentistry. (Plaintiff lives in Connecticut.) Plaintiff learned in a deposition of defendants' personnel on September 21, 2005 that defendants concluded that this report supported their continued decision to deny benefits to plaintiff – even though such information is utterly irrelevant in denying plaintiff benefits. Even assuming that a dental office *could theoretically* become latex free, the plaintiff has no control as a dental hygienist over whether a dental office actually *is* latex free -- that is the decision of dentists who run the business and who may choose (even assuming that they could make their offices latex-free) for economic or other reasons, such as a preference for latex gloves, for example, to maintain use of latex. Moreover, it should be patently obvious that a dental hygienist who lives and is licensed in Connecticut can not reasonably work in Ohio or England.

In sum, plaintiff's proposed addition of these allegations to her complaint as a basis for a bad faith claim under Connecticut law cannot fairly be said to be untimely, or made with "undue delay" – only the latter of which would be a basis for denial of a motion to amend – since plaintiff sought to add the allegations shortly after they became known to her. It would be manifestly unfair to deprive the plaintiff of the ability to pursue defendants for a bad faith claim

under Connecticut law based on such conduct when plaintiff learned of such conduct during discovery. Connecticut law provides her with a right of action for bad faith conduct of the defendants and she should be able to pursue it fully.

**2.  The defendants cannot and did not show that they would be prejudiced by the proposed amendment; they did not identify any additional discovery that would have to be done to defend themselves against the allegations, and the Court did not find any prejudice**

Conspicuously absent from defendants' opposition to plaintiff's motion to amend was any evidence of prejudice to defendants if the amendment were allowed.[3] This is not surprising. <u>Defendants did not cite – because they are unable to – a single deposition, a single document request, a single interrogatory or any other additional discovery that they needed if plaintiff's proposed amendment were granted</u>. That is because there is none. All of the discovery that forms the basis for plaintiff's proposed amendment emerged during discovery from the defendants themselves or a physician hired by them, Dr. Harold Axe, who was deposed on September 16, 2005. <u>None</u> of the evidence that forms the basis for the proposed amendment came from the plaintiff or from other third parties. In other words, defendants are not surprised by the allegations because the allegations are based on facts of which the defendants were aware but of which plaintiff was not. This is not a situation in which the plaintiff suddenly made claims based on her own peculiar knowledge or knowledge from third parties. These are claims based on facts uncovered during discovery about the defendants' conduct, and the conduct of others on whom they knowingly relied.

---

[3] The "touchstone" for denial of an amendment is prejudice to the non-moving party. <u>Carey</u> v. <u>Beans</u>, 500 F.Supp. 580, 582 (D.C. Pa. 1980 (citing and quoting <u>Cornell & Co</u>., <u>Inc</u>. v. <u>Occupational Health and Safety Administration</u>, 573 F.2d 820, 823 (3d Cir. 1978)), <u>cited</u> <u>with</u> <u>approval</u> <u>in</u> <u>Glassman</u> v. <u>Computervision Corp</u>. 90 F.3d 617, 623 (1st Cir. 1996).

Very simply, defendants did not contend the discovery they have done to date is insufficient to defend against plaintiff's proposed amendments. They did not provide evidene that they would <u>anything differently</u> in defending this case if they had known about these allegations. Even expert disclosures have not been done yet in this case, by agreement of the parties, since plaintiff has been unable to complete her discovery of defendants' witnesses.[4]

Moreover, the amendment, if allowed, will <u>not</u> cause the plaintiff to seek any additional discovery. Not a single additional deposition, document request, interrogatory or anything else will be needed by the plaintiff as a result of this amendment.[5]

---

[4] Contrary to the suggestions of defendants, discovery is continuing because of an agreement by the parties made as a result of scheduling and other issues. For example, plaintiff still has been unable to depose defendants' chief witness – the claims representative who handled the claim – since defendants have contended (and he finally furnished an affidavit this week supporting this contention) that he has been disabled since August and that he will be unable to have his deposition taken until, at the earliest, some time in November. On October 25, 2005, plaintiff will finally be able to depose the physician who wrote the March 2005 report at issue that is referenced above. In addition, because of scheduling issues involving a Michigan-based witness and because of defendants' motion for protective order, plaintiff did not depose the Michigan-based firm used by the defendants as part of the claims-handling process.

[5] Defendants also tossed in an argument that plaintiff's claims for bad faith based on these allegations are barred by the statute of limitations if the claims were filed separately. First, even if that were true, that would hardly be a basis for denying the amendment; it would be a basis for granting the amendment since the facts only came to light during discovery in this case and plaintiff should not be deprived of a cause of action as a result. That would be an unjust result and amendments under Rule 15(a) are to be "freely given when justice so requires.

But, in any event, defendants' assertion is incorrect. First, plaintiff did not learn of the facts supporting these allegations until discovery in this case. Consequently, until discovery, plaintiff could not possibly have known she was being harmed by certain conduct of the defendants since she had no knowledge of these particular acts. This implicates the discovery rule, which is recognized in Connecticut. <u>See</u>, e.g., <u>Champagne</u> v. <u>Raybestos-Manhattan, Inc</u>., 212 Conn. 509, 521, 562 A.2d 1100, 1107 (1989). Second, some of the conduct did not occur until 2005, such as the report generated in March 2005. Certainly, a claim based on that conduct would not be time-barred. Third, totally apart from the discovery rule, conduct that occurred in 2002 that plaintiff discovered in 2005 can form the basis of a new claim for breach of the covenant of good faith and fair dealing because the defendant insurers have a continuing duty to

3.  **Plaintiff has not repeatedly attempted to amend the complaint to add new grounds, as defendants suggest**

In opposing the proposed amendment, defendants grossly exaggerated the amendments previously made.  The first amendment was made as a matter of right, <u>before the complaint was even served</u>, to add a claim under Chapter 93A, since it could not be added until the defendants had responded to the demand letter. The defendants responded to the demand letter, the claim was added, and the complaint served.  The second amendment, *made with defendants' assent*, merely corrected the name of one defendant on the papers from "Berkshire Life Insurance Company" to "Berkshire Life Insurance Company of America."  There had been an editing error since the two companies are affiliated and have similar names. (The demand letter had been addressed to the proper party).  This hardly presents the kind of situation where a plaintiff has been repeatedly trying to amend a complaint to assert new and different theories.

The specific allegations that plaintiff sought to include in the proposed amendment are all based on discovery that plaintiff gained from the defendants beginning in the summer of 2005 through and including depositions taken on September 16, 20 and 21, 2005.

4.  **Defendants have known from the outset of the case that plaintiff accused them of violating acting in bad faith.**

A specific claim for breach of the covenant of good faith and fair dealing consistently appears in ¶ 12 of the original complaint and in the same paragraph of the the subsequent amendments.  Moreover, on August 17, 2005 – <u>before defendants took any deposition other than</u>

---

*(footnote continued from previous page)*
pay benefits to plaintiff each month and have engaged in a "continuing course of conduct" in connection with the initial wrong.  <u>See</u> <u>Sherwood</u> <u>v</u>. <u>Danbury Hosp</u>. 252 Conn. 193, 202-203, 746 A.2d 730,735-736 (recognizing statute of limitations may be tolled where plaintiff shows continuing course of conduct related to initial wrong).

JS\110847.1                                        10

one of the plaintiff's current supervisor – plaintiff underscored her bad faith claim. The subject arose during an exchange concerning the deposition of a therapist whom the plaintiff had consulted after she had to leave her position as a dental hygienist because of her latex allergy. The plaintiff had originally objected to the deposition, and did not waive the social worker-patient privilege. However, on August 17, 2005, plaintiff's counsel wrote to defense counsel and specifically gave the go-ahead for the deposition and agreed to produce the records, stating that the evidence could indeed be relevant on the bad faith claim. Specifically, she wrote:

> After giving this even more thought, I have decided that the Nissanka testimony and records may be indeed be relevant on Carolyn Mirek's affirmative claim for emotional distress, since the denial of the claim was piled on top of Carolyn's upset about losing her career as a dental hygienist. Therefore, I think it would be relevant on Carolyn's claim <u>for breach of the covenant of good [faith] and fai[r] dealing under which she can recover emotional distress</u>. As you know, it's the whole "you take the plaintiff as you find her" thing. So, I am producing the Nissanka records, and you are welcome to depose Ms. Nissanka.

Email dated August 17, 2005 from plaintiff's counsel D'Alcomo to defense counsel Crevier, attached as Exhibit 1. (Emphasis added).

Not a single deposition except for the deposition of Carolyn Mirek's current supervisor had been taken by that date. Defense counsel expressed no surprise that plaintiff was pursuing a claim for breach of the covenant of good faith and fair dealing. He only responded with a discussion about scheduling. <u>See id</u>.

On August 23, 2005, in a filing with the court, plaintiff repeated her position that the information concerning her therapy with Ms. Nissanka, the therapist, would be produced "because of the possible relevance to … her damages for emotional distress, under Connecticut law, for the defendants' breach of the implied covenant of good faith and fair dealing in processing her claim, *i.e.*, their bad faith." Response of Plaintiff Carolyn Mirek to Defendants'

Motion to Compel Production of Documents and Testimony in Accordance with a Subpoena Duces Tecum Issued to the Keeper of the Records of Srima L. Nissanka, LCSW and Srima L. Nissanka, LCSW filed August 23, 2005, Docket No. 21.

In addition, on September 9, 2005, in response to requests by defense counsel that plaintiff make a formal demand to settle the case, plaintiff's counsel again repeated plaintiff's position that she had a claim for bad faith. She specifically referenced the information she had learned by that point in defendants' document production about their internal position concerning latex allergy and their internal sophistication about latex allergy, in contrast with the external position they adopted in denying the claim. She wrote to defense counsel, in relevant part:

> Carolyn also has a claim for bad faith, or breach of the implied covenant of good faith and fair dealing, under Conn. Law. You know what I think of the defendants' articulated rationale in the denial letter, since it is explained in my demand letter that I made under 93A (although 93A has been found not applicable to the case.) <u>I think a jury will see the defendants' internal sophistication about the seriousness of latex allergy, their unwillingness even to insure someone with a latex allergy in the medical profession, to be not only [hypocritical] but bad faith in view of the very different view the defendants' took in denying this claim.</u>

Email dated September 9, 2005 from plaintiff's counsel to defense counsel. (Emphasis added). At no time did defendants respond with surprise, or express any doubt, that plaintiff was pursuing a claim against defendants for bad faith.

Clearly, then, before any end of discovery and before defendants had even deposed the plaintiff, defendants were aware from the pleadings, the filing concerning the therapist, and written communications, that plaintiff was pursuing a claim in this case that defendants had acted in bad faith.

**5.     It is a waste of the parties' and the Court's resources for plaintiff to have to pursue a new complaint based on the conduct of which she has recently become aware**

Denial of the amendment will inevitably lead to a waste of the parties' and Court's resources since it has put plaintiff in the position where she must file another complaint to avoid losing claims for bad faith based on the new conduct she has uncovered. Plaintiff cannot walk away from the bad faith claim that she has under Connecticut law simply because the amendment is denied in this action as untimely. She has done nothing justifying her being barred from pursuing her full remedies under Connecticut law for such bad faith conduct. In the interest of efficiency if the proposed amendment is not allowed, plaintiff will move to consolidate the new complaint that must be filed and this existing action, since no new discovery will have to be done. The Court would then have to decide whether to consolidate the actions, or to let them proceed separately resulting in two separate courses of litigation. But such steps seem circular and wholly unnecessary in view of the circumstances in which plaintiff's amendment was proposed. Rule 15(a), as all the Federal Rules of Civil Procedures, "shall be construed and administered to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1  Allowing the plaintiff to amend her complaint as proposed, under these circumstances, surely serves such objectives, and is supported by Rule 15(a) as well as the case law governing the amendment of pleadings.

## CONCLUSION

For all these reasons, plaintiff requests that the Court reconsider its denial of the motion to amend and allow the amendment.

        PLAINTIFF
        By her Attorneys,

        /s/ Joanne D'Alcomo
        _____
        Joanne D'Alcomo
        BBO #544177
        Seth Nesin
        BBO #650739
        JAGER SMITH P.C.
        One Financial Center
        Boston, MA 02111
        (617) 951-0500