UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>    Plaintiff<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action<br>)  No. 04-30166-MAP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION
TO COMPEL PRODUCTION OF DOCUMENTS**

### I.   Background

Plaintiff Carolyn Mirek has brought a motion to compel production of certain documents that bear on her claim in this action, which arises out of Defendants' denial of a claim for disability benefits under an "own occupation" disability policy.

During 1993, The Guardian Life Insurance Company of America ("Guardian") issued Carolyn Mirek, a dental hygienist, an individual policy of disability insurance. The policy was intended to provide income protection in the form of monthly disability benefits if the policyholder – in this case, Carolyn Mirek -- became unable to work in her occupation.  In 1999, Ms. Mirek, who had been a full-time dental hygienist for many years, was diagnosed with latex allergy. Her allergist determined that she had been suffering from latex allergy for some time and had latex-allergy related asthma. She

1

continued to work as a dental hygienist for a period of time but eventually, upon the recommendation of her allergist, ceased working as a dental hygienist to minimize her exposure to latex. She then made a claim for benefits under the policy. The Defendants first denied coverage in 2002, and continue to deny benefits to this day, insisting that Ms. Mirek is capable of working as a dental hygienist and therefore is not entitled to benefits under the policy.

Plaintiff has learned that in making its determination, Berkshire relied primarily on the opinion of a physician who does not even believe that there is such a condition as "latex allergy." In addition, Plaintiff has learned through discovery, Berkshire relied on the opinion of an on-staff physician who had little familiarity with latex allergy and little or no experience diagnosing latex-allergic patients, testing for latex allergy or treating latex-allergic individuals.

In denying her benefits Defendants have scoffed at plaintiff's latex-allergy related claim and at her Board-certified allergist's concern and advice. Defendants have taken the position that latex allergy can be easily managed, and that individuals with latex allergy can easily continue to work in their medical occupations. In documents produced by the defendants, however, plaintiff has learned that in 2002, while defendants were denigrating plaintiff's latex allergy and claiming latex allergy posed no risk to her in her workplace, defendants were adamant about not selling any "own occupation" disability policies to <u>anyone</u> in the medical field who showed evidence of latex allergy because of the dangers that they would become unable to work in their occupation and become eligible for benefits. Plaintiff learned that this position has been held continuously to this

day based on Defendants' familiarity, through insurance industry meetings and other sources, of the risks associated with latex allergy.

Plaintiff has brought an action against Defendants as a result of their denial of her claim.

Plaintiff now seeks to compel production of documents related to the few instances since 1990 in which Defendants say that they granted disability claims based in whole or in part on latex allergy. Defendants have identified seven instances. Specifically, seeks – minus any claimant-identifying information – the consultant reports or Defendant-generated reports on which the Defendants relied in paying such claims because such documents may contain a discussion or analysis of latex allergy that is different than the Defendants' discussion or position in this case.

Plaintiff also seeks the identities of the persons at Berkshire or Guardian who were involved in such decision-making. For example, it is possible that the claims representative in her case – who is finally available for deposition on November 15 – was involved in such decision-making.

Because Defendants, by their own admission, primarily issue "own occupation" policies to medical professionals, such information would be directly relevant to Ms. Mirek's claim. Plaintiff does not seek, and has no interest in, any claimant-identifying information.

## II. Procedural Background

Carolyn Mirek served her First Request for Production to the Defendants Berkshire Life Insurance Company of America and Guardian Life Insurance Company of America on April 22, 2005. See Exhibit 1. Both Defendants served responses on July

11, 2005. See Exhibits 2 and 3. After extensive discussion between counsel, the Defendants agreed to supplement their responses with additional information, including information about the identities of individuals that Defendants relied upon when approving other claims made for latex allergies. On August 30, 2005, Defendants supplemented their interrogatories to describe seven instances in which claims were paid based in whole or in part on "latex sensitivity" but did not include any information identifying the consultants or employees of the Defendants who were relied upon in making the decisions.

### III. Argument

This motion and memorandum applies to two of the responses given by defendants to requests for production. Both were propounded for the purpose of exploring Defendants' knowledge and sophistication about latex allergy and their positions on latex allergy. Plaintiff seeks to determine the extent to which their internal knowledge and sophistication differs from their seeming unfamiliarity with latex allergy and unfamiliarity with the dangers of latex allergy when they were processing Ms. Mirek's claim and expressing the basis for denial of Ms.Mirek's claim, and the extent to which their positions taken on latex allergy in similar claims differs from the positions taken in stating their reasons for denying Ms. Mirek's claim. The requests seek such knowledge for impeachment purposes, as well to establish defendants' breach of the covenant of good faith and fair dealing.

## THE REQUESTS AT ISSUE

**REQUEST FOR PRODUCTION NO. 56**

Documentary materials identifying all persons who were employees or independent contractors paid by Berkshire or Guardian on whose opinion the defendants relied, at any time since January 1, 1990, in acknowledging coverage for a disability claim based on a latex allergy.

**Response of Berkshire:** BERKSHIRE objects to this request as it is vague, ambiguous and overly broad. In addition, BERKSHIRE objects to this request as it seeks information that is neither relevant to matters at issue in this lawsuit nor is it reasonably calculated to lead to the discovery of admissible evidence. BERKSHIRE further objects to this Request as it seeks the production of documents that are protected by the attorney work product doctrine and the attorney client privilege. BERKSHIRE further objects to this request to the extent that it seeks proprietary or confidential information. BERKSHIRE further objects to the request as unduly burdensome.

**Response of Guardian**: Subject to and without waiving any of the General Objections, see BERKSHIRE's Response to Request for Production No. 56.

**REQUEST FOR PRODUCTION NO. 57**
All reports, narratives, reviews, or other documentary materials prepared or written by any medical personnel employed by or retained by the defendants at any time since January 1, 2000 that reflects or contains the opinion or conclusion that a claimant was totally or partially disabled because of a latex allergy, excluding claimant-identifying information.

**Response of Berkshire:** BERKSHIRE objects to this request as it is vague, ambiguous and overly broad. In addition, BERKSHIRE objects to this request as it seeks information that is neither relevant to matters at issue in this lawsuit nor is it reasonably calculated to lead to the discovery of admissible evidence. BERKSHIRE further objects to this Request as it seeks the production of documents that are protected by the attorney work product doctrine and the attorney client privilege. BERKSHIRE further objects to this request to the extent that it seeks proprietary or confidential information. BERKSHIRE further objects to the request as unduly burdensome.

**Response of Guardian**: Subject to and without waiving any of the General Objections, see BERKSHIRE's Response to Request for Production No. 57.

**ARGUMENT: NONE OF DEFENDANTS' OBJECTIONS JUSTIFIES
WITHHOLDING OF THE DOCUMENTS SOUGHT**

    A.    **The Information Sought is Relevant and Reasonably Calculated to Lead to the Discovery of Admissible Evidence, as the Court Recently Recognized in Denying Defendants' Motion for a Protective Order to Block Discovery of Similar Information through a 30(b)(6) Deposition**

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits "discovery of any matter, not privileged, that is relevant to the claim or defense of any party." The Rule broadly defines relevance to include not only information admissible at trial, but also information which "appears reasonably calculated to lead to the discovery of admissible evidence." Id; see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (relevance is broadly interpreted "to encompass any matter that bears on, or that reasonable could lead to other matter that could bear on any issue that is or may be in the case"). "[R]elevant information includes any matter that is or may become an issue in the litigation." Multi-Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262, 264 n. 2 (D.Mass.1991). As demonstrated below, the requests clearly meet the standards for discovery in this case.

Ms. Mirek seeks information about those cases where the Defendants have accepted coverage of a claim based on latex allergy for several reasons  Ms. Mirek's claim for benefits was denied based upon the opinion of a doctor, Dr. Harold Axe, who claims that latex allergies do not exist. Defendants have identified seven claimants who *did* receive benefits where the stated medical conditions in support of the claim included latex-related sensitivity. It is important, therefore, for plaintiff to know whose opinions Defendants relied upon in those other cases and what those individuals indicated about latex allergies. Such information is critical to establishing Defendants' knowledge and

Case 3:04-cv-30166-RGS   Document 34   Filed 10/26/2005   Page 7 of 14

sophistication about latex allergies. It also bears upon Defendants' credibility with regard to whether they possessed knowledge of latex allergies. The information also is valuable for impeachment to the extent that Defendants took positions in Ms. Mirek's case that are inconsistent with the positions that Defendants have taken in other cases involving latex allergy in the medical field, since Defendants have acknowledged that their own occupation policies are overwhelming written for individuals in the medical field.

The Court recognized plaintiff's legitimate interest in obtaining such information when it denied Defendants' effort for obtain a protective order on October 20. In their motion for protective order, the Defendants sought to prevent the plaintiff from deposing a witness on the following topic:

> The circumstances under which either defendant has, at any time since January 1, 1990, concluded that a claimant under an individual disability policy was totally or partially disabled because of a latex allergy-related disability, including the occupation of the insured, and the basis for such determination;

Topic No. 6, in Rule 30(b)(6) deposition notice that was subject of Defendants' Motion for Judgment on the Pleadings, and Motion for Protective Order, on file at Docket No. 23. The Court denied the Motion for Protective Order on that topic as well as the others designated by the Plaintiff.

The Advisory Committee responsible for the 2000 amendment of Rule 26 expressly contemplated discovery of the type that Ms. Mirek seeks here, namely discovery of facts concerning similar transactions that would also be useful in impeaching defense witnesses with respect to its purported defense:

> A variety of types of information not directly pertinent to
> the incident in suit could be relevant to the claims or defenses
> raised in a given action. **For example, other incidents of the**

7

> **same type, or involving the same product, could be properly discoverable under the revised standard**. … Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses.

Advisory Committee Note to 2000 Amendment, Fed. R. Civ. P. 26 (emphasis added).

In connection with this motion, Ms. Mirek's only burden is to demonstrate the appearance of relevance. The burden then shifts to the Defendants to establish lack of relevance. General Electric Capital Corp. v. Lear Corp. , 215 F.R.D. 637, 640 (D. Kan. 2003) ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."). The Defendants cannot meet their burden to prohibit discovery of this information.

### B.   The Defendants are Being Hypocritical and Inconsistent in Refusing to Produce the Very Same Type of Information They Demanded in a Subpoena to Plaintiff's Treating Allergist, and Received

Defendants' position in refusing to produce the information requested is hypocritical. Defendants demanded, by subpoena, the exact same sort of documents from Ms. Mirek's treating allergist. Specifically, the subpoena required Ms. Mirek's treating allergist, Dr. Bedard, to produce:

> All documentary materials including, but not limited to, reports, expert disclosures, opinion letters, answers to interrogatories, etc. (but excluding claimant-identifying information) containing opinions, reports, conclusions or opinions adopted or formed by you on the subject of latex allergy in connection with any of the following:
>
> (a)   an insurance claim;

    (b)    a legal proceeding; and

    (c)    a worker's compensation claim.

See subpoena to Dr. Bedard at ¶17, attached as Exhibit 4.  As a result of Defendants' subpoena, Ms. Mirek's allergist Dr. Bedard turned over information related to his work on other claims.  It is simply unfair of Defendants to turn around and deny Plaintiff the same type of information they demanded and received in discovery.

    **C.**    **The Request is Not "Vague," "Ambiguous," or "Overly Broad"**

Defendants claim that the requests are "vague, ambiguous and overly broad." There is no justification for these objections.   There is nothing the least bit vague or ambiguous about the nature of the information sought by Ms. Mirek, and Defendants have made no effort to specify what part of the request is ambiguous.  The request is narrow—it asks only about claims in which Defendants acknowledged coverage of a latex claim.  <u>Defendants have specified that they have only found seven such cases</u>. See Berkshire's Supplemental Ans. Int. No. 5, Exhibit 6 hereto (identifying only seven instances).  Asking for discrete information about seven cases that have already been identified by Defendants can hardly be deemed "overbroad."

    **D.**    **The Requests Do Not Ask For Any Confidential or Privileged Information**

<u>Privilege</u>. Defendants' claim of privilege with respect to this document request must be overruled for several reasons. First,  Defendants have not explained how this request requires disclosure of any confidential attorney-client communication concerning legal advice. <u>See</u>, <u>e.g</u>., <u>United States v. Massachusetts Institute of Technology</u>, 129 F.3d 681, 684 (1st Cir. 1997) (elements of privilege). It is mystifying how all the documents

9

requested could be swept into the attorney-client privilege since, by definition, the bulk of the documents will be reviews or reports by medical personal hired by the Defendants or on staff who are merely providing opinions on which the claims-handlers relied in accepting the claims. These are certainly are not the type of documents that one would expect to be privileged themselves or even to contain privileged information.

Second, in asserting "privilege" as a basis for withholding all documents responsive to this request, Defendants have failed to comply with the privilege-assertion requirements of the Federal Rules of Civil Procedure, which require specificity with respect to each assertion of a privilege. In a situation such as this, where <u>all</u> responsive documents are being withheld, and it is anything but obvious that the attorney-client privilege would be applicable to such documents, the Defendants should be expected to provide such information. The rule provides:

> When a party withholds information otherwise discoverable
> under these rules by claiming that it is privileged or subject
> to protection as trial preparation material, the party shall make
> the claim expressly and shall describe the nature of the
> documents, communications, or things not produced or
> disclosed in a manner that, without revealing information
>  itself privileged or protected, will enable the other parties to
> assess the applicability of the privilege or protection.

Fed. R. Civ. P. 26(b)(5).

Finally, Defendants also have failed to comply with Local Rule 33.1(E) by not identifying (a) the "applicable privileges" and (b) the particular state law privilege rule that is being invoked. <u>See</u> <u>also</u> <u>Marx v. Kelly, Hart & Hallman, P.C.</u>, 929 F.2d 8, 12 (1st Cir. 1991) (burden in discovery is on party invoking privilege to establish applicability;

party seeking protection must provide sufficient information to the court to let it rule intelligently).

Work Product. Defendants' assertion of the work product doctrine must also be overruled. First, specificity is also required with respect to the assertion of this doctrine as a reason for withholding information. Fed. R. Civ. P. 26(b)(5). Second, Defendants have not provided any basis for the assertion of the work product doctrine as the reason for not answering this document request. That doctrine, partially codified in Fed. R. Civ. P. 26(b)(3), "protects the files and mental impressions of an attorney…reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways prepared *in anticipation of litigation*." In Re Raytheon Securities Litigation, 218 F.R.D. 354, 357 (D. Mass.) (emphasis added) (internal citation omitted). Defendants have not explained how any of the requested information falls within the scope of the work-product doctrine.

Confidentiality. Finally, to the extent that any of the requested information is confidential, that can be addressed by stipulation or confidentiality order. Plaintiff's request specifically indicates that she is not looking for any claimant-identifying information, so there should be no privacy concerns at all.

### E.  Defendants Have Failed to Justify Their Claim of "Undue Burden"; On Its Face, Such an Objection Does Not Make Sense Since They Have Identified Only Seven Claims in Which Coverage Was Granted

A discovery request is unduly burdensome on its face only when responding to the challenged request will require the responding party to "engage in mental gymnastics to determine what information may or may not be remotely responsive" to the challenged request. See Aikens v. Deluxe Financial Services, Inc., 217 F.R.D. 533, 538 (D. Kan. 2003). When a discovery request is not unduly burdensome on its face, the responding

11

party bears the burden of coming forward with an evidentiary showing that supports that party's objection. See General Electric Capital Corp. v. Lear Corp., 215 F.R.D. 637, 640 (D. Kan. 2003). Consequently, unless the Court finds a request unduly burdensome on its face, the burden rests with Defendants to put forth evidence establishing an undue burden or expense that outweighs the ordinary presumption of broad discovery disclosures. Id. at 640.

Defendants have failed to meet this burden. Therefore, the assertion of this objection must be overruled. These documents are not unduly burdensome because none would require Defendants to engage in mental gymnastics to determine what information may or may not be responsive to that request. On the contrary, unlike a request seeking information "regarding," or that "relates to" its subject matter, see Aikens, 217 F.R.D. at 538, Ms. Mirek's requests for production are narrowly tailored and seek discrete information.

Furthermore, Defendants have already identified the seven claimants who received benefits, at least in part due to "latex sensitivity." Defendants need only to examine those same seven claim files (assuming there are no others) and provide the documents identifying those relied upon by Defendants in approving the claims.

Because Defendants have no valid justification for withholding the information, the documents should be ordered to be produced.

## IV. CONCLUSION

For the reasons stated above, the motion to compel production of documents should be granted.

CAROLYN MIREK
By her Attorneys,

/s/ Joanne D'Alcomo
_____

Joanne D'Alcomo
BBO #544177
Seth Nesin
BBO #650739
JAGER SMITH, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 951-0500

**Statement Pursuant to Local Rule 37.1(B)**

Discovery conferences were held at various times between Joanne D'Alcomo, attorney for plaintiff, Seth Nesin, attorney for plaintiff, and Edward Kimball. Plaintiff's counsel had understood based on a conference in late July, 2005, that responsive documents would be produced once the defendants determined the number of cases that would be involved. By supplemental answer dated August 30, 2005, defendants stated that only seven cases were involved, but refused to identify any personnel or consultants involved in the decision-making, or to produce documents related to the seven cases. There were further conferences and communications. Defendants responded further by moved for a protective order on September 9, 2005 barring the plaintiff from inquiring into the subject-matter in a 30(b)(6) deposition, which was ruled upon and denied by the Court on October 20.

/s/ Joanne D'Alcomo
_____

Joanne D'Alcomo

14