UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>    Plaintiff,<br><br>    vs.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)  CIVIL ACTION NO.: 04-30166-MAP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL
OF PLAINTIFF'S MOTION TO FILE A THIRD AMENDED COMPLAINT**

The Defendants, the Guardian Life Insurance Company of America ("Guardian") and Berkshire Life Insurance Company of America ("Berkshire") (collectively referred to as "Defendants"), hereby file this Opposition to Plaintiff's Motion For Reconsideration of the Court's Decision to Deny Plaintiff's Motion to file a Third Amended Complaint ("Plaintiff's Motion for Reconsideration").  Plaintiff's Motion for Reconsideration is yet another effort by Plaintiff to resuscitate her "fishing expedition" for information to support an unsustainable bad faith claim.

Plaintiff filed her Motion to Amend her Complaint directly in response to Defendants' Motion for Judgment on the Pleadings as to Count II of Plaintiff' Complaint (alleging unfair trade practices/insurance practices) and for an Emergency Protective Order for a panoply of discovery sought by Plaintiff with respect to Plaintiff's unsustainable unfair trade practices/insurance practices claim.  Recognizing the futility of her unfair trade practices / insurance practices claim, Plaintiff "willingly dismiss[ed] her unfair trade practices claim" and,

in an effort to establish some other basis for the discovery sought, moved to amend her Complaint to include a claim for breach of the covenant of good faith and fair dealing ("New Bad Faith Claim"). <u>Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings as to Count II in the Complaint and For Emergency Protective Order at 2, 10-13</u> predicating 30(b)(6) deposition topics on the New Bad Faith Claim.

On October 20, 2004, this Court correctly denied Plaintiff's Motion to Amend her Complaint as untimely and issued an "admonition that Plaintiff restrict discovery to matters relevant to Count One." <u>Order of Judge Ponsor Denying Plaintiff's Motion to Amend</u>; <u>Order of Judge Ponsor granting Defendants Motion for Judgment on the Pleadings as to Count II</u>. Now, in a last ditch effort to pursue her "fishing expedition," Plaintiff asks this Court to reconsider its Order correctly denying Plaintiff's Motion to Amend.

As set forth below, the Court must deny Plaintiff's Motion for Reconsideration because: (1) the Court correctly denied Plaintiff's Motion to Amend as untimely; (2) to the extent that Plaintiff seeks to overcome her untimeliness by alleging newly discovered evidence, the "new facts" set forth in her Complaint are not "new" and almost unanimously are not "facts"; (3) allowing Plaintiff's Motion to Amend would significantly prejudice Defendants by both: a) subjecting Defendants to significant additional discovery; and b) preventing Defendants from obtaining discovery as to Plaintiff's New Bad Faith Claim; and 4) Plaintiff's New Bad Faith Claim is futile. Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion for Reconsideration.

**I.    THE COURT CORRECTLY FOUND THAT PLAINTIFF'S
         MOTION TO AMEND WAS UNTIMELY**

In circumstances, like those here, where the Plaintiff files a motion to amend her Complaint long after the filing of the original complaint, after discovery has closed, not long

before trial and where Plaintiff has offered no justification for her delay, an order denying Plaintiff's Motion to Amend as "untimely" is appropriate. Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983) (upholding the district court's denial of plaintiff's motion to amend as "untimely").

As set out fully in Defendants' Opposition to Plaintiff's Motion to Amend, "[w]here, as here, considerable time has elapsed between the filing of the complaint and the motion to amend, the [Plaintiff] has the burden of showing some 'valid reason for h[er] neglect and delay.'" Stepanischen v. Merchants Despatch Transportations Corp., 722 F.2d 922, 933 (1st Cir. 1983); see also, Quaker State Oil Refining Corporation v. Garrity Oil Company, Inc., 884 F.2d 1510, 1517 (1st Cir. 1989) (internal citations omitted). Plaintiff's Motion to Amend failed to state any justification for her untimely delay and the Court correctly determined that Plaintiff's Motion to Amend was unjustifiably untimely.

**II.     TO THE EXTENT THAT PLAINTIFF CAN OVERCOME UNTIMELINESS BY SHOWING NEWLY DISCOVERED EVIDENCE, SHE HAD NOT DONE SO**

Now, after the Court has already ruled on Plaintiff's Motion to Amend, Plaintiff endeavors to justify her untimeliness and continue her unabated fishing expedition by attempting to dupe this Court into believing that she did not become aware of the "new" "facts" purportedly supporting her New Bad Faith Claim until mid-September of 2005. Plaintiff's Motion for Reconsideration at P. 4-7. As detailed below, Plaintiff's allegation of "new" "facts" is completely inaccurate as: 1) Plaintiff was aware of the alleged "facts" months, if not years, before September 2005 – so they are not "new"; and 2) contrary to Plaintiff's allegations, discovery has established that Plaintiff's alleged "facts" are for the most part not true.

The First Circuit has instructed that where "the facts upon which the proposed claim rested were known to [Plaintiff] all along," it is appropriate to bar the late-emerging claim.

Quaker State Oil, 884 F.2d at 1518. As set forth below, each of the allegations made by Plaintiff in her New Bad Faith Claim were known all along. Accordingly, this Court must deny Plaintiff's Motion for Reconsideration.

### A. PLAINTIFF'S ALLEGATIONS REGARDING DEFENDANTS' UNDERWRITING PRACTICES WERE KNOWN ALL ALONG

In paragraph 16a of her proposed amended complaint, Plaintiff claims that the Defendants acted in bad faith by:

> Taking the position, in denying plaintiff's claim that latex allergy posed no problem in the workplace to one who has a latex allergy, while knowing that their corporate position was and continues to be that they will no longer issue disability policies to any dentists, doctors, or other medical professionals, including dental hygienists, if there is any sign they have latex allergy because of the risks that they will become unable to work in their occupation and be entitled to payment under the disability policy.

Plaintiff's Motion for Reconsideration at P. 4.

In support of proposed paragraph 16a, Plaintiff claims that Defendants no longer sold "own occupation" disability policies to individuals in the medical field who showed evidence of allergies to latex because of the danger that they would become disabled under the terms of the policy and that this practice was inconsistent with Defendants' position that Plaintiff was not disabled in accordance with the disability policy. Plaintiff's Motion for Reconsideration at P. 4. Plaintiff claims that she did not learn these "new" "facts" until her untimely motion to amend.

Plaintiff's allegation of "new" facts is incorrect as (1) Plaintiff was aware of these "new" "facts," at latest, as of April 2005; and (2) rather than affirming Plaintiff's allegations, discovery in this case has contradicted these allegations by demonstrating that Defendants actions with regard to allergies to latex are consistent.

### 1. Plaintiff was Aware of These "New Facts" In, at the Latest, April 2005

Plaintiff's First Request for Production of Documents, served on April 22, 2005, contain seven requests that specifically relate to the allegation that Defendants' underwriting department does not sell policies to individuals in the medical field evidencing allergies to latex.  <u>Plaintiff's First Request for Production of Documents, relevant portions attached hereto at Exhibit 1 ("Exhibit 1"), at Requests 31-37</u>.  Furthermore, Request 32 references an "attached Exhibit A" allegedly obtained from Defendants' agent's website that states "if the applicant is an M.D., Dentist or medical professional we will decline coverage.  Other occupations can receive individual consideration."  <u>Exhibit 1 at Exhibit A</u>.

Thus, contrary to Plaintiff's assertion that she was unaware of Defendants' underwriting practices until her untimely motion to amend, Plaintiff was clearly aware of these "new facts" at least five months earlier than she represented to the Court.

### 2. The Discovery in This Case Demonstrates that Defendants' Actions With Respect to Latex Allergy is Consistent and In Good Faith

Plaintiff suggests that the underwriting decision not to sell disability policies to medical professionals with allergies to latex is incongruous with the claims decision not to grant benefits to Plaintiff.  The function of underwriting is to minimize the risk incurred by the company when it sells disability policies, while the function of the claims reviewers are to determine whether or not a **particular claimant** is actually disabled.  The rationale of one department is not applicable to the other, as their functions are entirely different.

Moreover, to the extent that this "new" allegation is based on the assertion that Plaintiff recently learned that Defendants deny the existence of latex allergy, this allegation has been refuted by the discovery in this case.  In Guardian's interrogatory responses, Guardian informed Plaintiff of numerous instances in which it paid disability benefits to medical professionals who,

unlike Plaintiff, are truly disabled due to allergies to latex.  <u>Guardian's Supplemental Response to Plaintiff's Interrogatories, Set No. One, the relevant portions attached hereto at Exhibit 2 ("Exhibit 2"), at Supplemental Response to Interrogatory No. 5</u>.  Because discovery demonstrated that the Defendants in fact pay claims where insureds are disabled by allergies to latex - unlike Plaintiff who is not disabled, -- the "new" "fact" on which Plaintiff bases her untimely motion to amend is not true in addition to being not new.  Accordingly, this "new" "fact" provides no basis for Plaintiff to reconsider its decision regarding Plaintiff's untimely motion to amend.

### B.    PLAINTIFF'S ALLEGATIONS AS TO DR. AXE ARE NOT NEW AND ARE LIBELOUS

In paragraph 16b of her proposed amended complaint, Plaintiff claims that the Defendants acted in bad faith by:

> Retaining, and relying on the opinions of, a physician who rejects conventional medicine and does not believe in latex allergy, even though latex allergy is widely recognized.

<u>Plaintiff's Motion for Reconsideration at P. 5</u>.

In paragraph 16c of her proposed amended complaint, Plaintiff claims that Defendants acted in bad faith by:

> Retaining and relying on the opinions of a physicians who rejects basic tenets of treatment of latex allergy and occupational asthma, knowing that the plaintiff's claim was based on latex allergy and asthma related to exposure to latex in her occupation, that is, occupational asthma.

<u>Plaintiff's Motion for Reconsideration at P. 5</u>.

In support of proposed paragraphs 16b and 16c, Plaintiff claims that the reviewing physician, Harold Axe, M.D., "does not believe in 'latex allergy' even though it is a widely accepted diagnosis in conventional medical, and that he rejects other aspects of conventional

medicine, such as occupational asthma, the seriousness of occupational asthma and asthma and their debilitative effects." Plaintiff's Motion for Reconsideration at P. 5. Plaintiff claims that she was not aware of these "new" "facts" until September 2005.

Contrary to Plaintiff's proffer to this Court: 1) Plaintiff was aware of Dr. Axe and his opinions in June 2004; and 2) the discovery in this case refutes – rather than supports -- Plaintiff's allegations as to Dr. Axe.

1. **Plaintiff was Aware of The Dr. Axe Facts in June 2004**

By letter dated June 14, 2004, to Guardian, Plaintiff's counsel, stated:

> Even more significant, the Berkshire letter dated August 7, 2002, purportedly explaining the basis for the decision that Ms. Mirek was not disabled from performing her own occupation due to a latex allergy did not make any sense – at least from a medical point of view. In explaining the basis for its denial, Berkshire wrote that "Latex allergy is not a distinct disease but a multifactorial medical entity referred to as Chronic Inflammatory Airway Disease." This pivotal statement which purports to explain the reasoning to the policyholder – an explanation to which the policyholder is entitled – is simply gibberish. Latex allergy is a well-recognized diagnosis, Latex allergy simply is not commonly referred to as "Chronic Inflammatory Airway Disease."

June 14, 2004 letter from Plaintiff's counsel to Guardian attached hereto at Exhibit 3 at P. 1 (emphasis added).

The August 7, 2002 letter from Berkshire to which Plaintiff expressly objected in June 2004 specifically identified Dr. Axe as the reviewing physician and the source of Berkshire's statements. August 7, 2002 letter from Berkshire to Plaintiff attached hereto at Exhibit 4. Accordingly -- and contrary to Plaintiff's allegation of newly discovered facts -- Plaintiff was aware of Dr. Axe and his opinions in June 2004, prior to the filing of this action and well over a year before Plaintiff's untimely motion to amend.

### 2.     The Discovery Does Not Support Plaintiff's Allegations As To Dr. Axe

Plaintiff alleges that Dr. Axe "does not believe in 'latex allergy' and that he rejects other aspects of conventional medicine, such as occupational asthma, the seriousness of occupational asthma and asthma and their debilitative effects." Plaintiff's allegations are a perversion of Dr. Axe's testimony and are directly contradicted by his deposition testimony.

Dr. Axe never stated, as Plaintiff suggests, that he does not believe that an individual could be allergic to latex, he simply objects to the term "latex allergy" as a comprehensive diagnosis. Specifically, Dr. Axe testified as follows:

> Q.  [By Plaintiff's Counsel] You have treated people who have been allergic to latex?
>
> A.  [By Dr. Axe] **Yes**.
>
> \*   \*   \*
>
> Q.  You would say it would be inaccurate to describe someone who was allergic to latex as having a latex allergy?
>
> A.  I think it would be misleading to imply that the latex allergy represents a specific diagnosis.
>
> Q.  Would you say it would be inaccurate to describe someone who is allergic to latex as having a latex allergy?
>
> A.  Yes.
>
> Q.  And would it be inaccurate to describe someone who had an allergy to cockroaches as having a cockroach allergy?
>
> A.  I think it's inaccurate in that the implication is that that is their problem and their disease when in fact it's merely an aspect of the disease.

<u>Transcript of the Deposition of Dr. Axe ("Axe Transcript"), relevant pages attached hereto at Exhibit 5, at 11:14-16, 12:11-25</u>.

Similarly, Dr. Axe explained his concern with the term "occupational asthma," as follows:

> Q. What is occupational asthma in your view?
>
> A. Well, again, it's a misnomer, a specific entity. I think it's the same basic chronic inflammatory airway disease that is exacerbated by factors relevant to the workplace.

Axe Transcript at 90:18-22.

As demonstrated by Dr. Axe's testimony, he does not reject the concept that persons can be allergic to latex or have asthma which is exacerbated by factors in the workplace. Rather, as explained by Dr. Axe, he took exception with the use of specific language utilized by Plaintiff. Accordingly, Plaintiff's "new" "facts" are egregious adulterations of Dr. Axe's deposition testimony.

### C. PLAINTIFF'S ALLEGATIONS REGARDING DR. AXE'S EXPERIENCE ARE INACCURATE

In paragraph 16d of her proposed amended complaint, Plaintiff claims that the Defendants acted in bad faith by:

> Retaining, and relying on the opinions of, a physician who had little or no experience diagnosis, testing for, or treating latex allergy or occupational asthma.

Plaintiff's Motion for Reconsideration at P. 5. In support of proposed paragraph 16d, Plaintiff restates the allegations as "new" "facts" and claims that she did not become aware of these "new" "facts" until September 2005.

As discussed in Section II.B.1., above Plaintiff was aware of Dr. Axe and his opinions in June 2004. In addition, Dr. Axe's deposition testimony contradicts Plaintiff's claims. Contrary to what Plaintiff deceitfully attempts to lead the Court to believe, Dr. Axe testified that he has treated people with allergies to latex. Axe Transcript 11:1-4; 11:14-16, and he affirmed that he had diagnosed individuals as being allergic to latex, Axe Transcript 18:10-12. The "new" "facts" stated by Plaintiff in support of proposed paragraph 16d are contradicted by the discovery.

### D. PLAINTIFF'S ALLEGATIONS REGARDING BOARD CERTIFICATION ARE NOT NEW

In paragraph 16e of her proposed amended complaint, Plaintiff claims that the Defendants acted in bad faith by:

> Retaining, and relying on the opinions of, a physician who was not Board-certified in any specialty, had failed Board-certification examinations, and who did not have expertise in latex allergy.

<u>Plaintiff's Motion for Reconsideration at P. 6</u>.

In support of this allegation, Plaintiff restates the allegations as "new facts" and claims that she did not become aware of these "new facts" until September 2005. To the contrary, Plaintiff's counsel stated in her June 14, 2004 letter to Guardian that " [t]he company relied on a physician, who, as far as I have been able to determine, <u>is not even board certified</u> in allergy and who did only a paper review of the records." <u>Exhibit 3 at P. 1</u> (emphasis added). Plaintiff was aware of these "new facts" over a year before her untimely motion to amend.

### E. PLAINTIFF'S ALLEGATIONS REGARDING MEDICAL LITERATURE ARE RIDICULOUS

In paragraph 16f of her proposed amended complaint, Plaintiff claims that the Defendants acted in bad faith by:

> Deliberately ignoring substantial information reported in peer reviewed medical literature and in government publications concerning the prevalence, seriousness and symptoms and characteristics of latex allergy.

<u>Plaintiff's Motion for Reconsideration at P. 6</u>. In support of proposed paragraph 16f, Plaintiff restates the allegations as "new facts" and claims that she did not become aware of these "new facts" until filing her untimely motion to amend.

As previously discussed, Plaintiff was aware of Dr. Axe and his opinions in June 2004. In addition, discovery in this case demonstrated that Defendants have recognized sensitivity to

latex as providing the basis for disability in other cases. Accordingly, Plaintiff's allegations regarding peer-reviewed literature are ridiculous.

### F. PLAINTIFF'S ALLEGATION REGARDING DEFENDANTS' UNDERWRITING IS NONSENSICAL

In paragraph 16g of her proposed amended complaint, Plaintiff claims that the Defendants acted in bad faith by:

> Deliberately ignoring internal institutional information about latex allergy, including information from their own underwriting department and the industry.

<u>Plaintiff's Motion for Reconsideration at P. 6</u>. In support of proposed paragraph 16g, Plaintiff restates the allegations as "new facts" and claims that she did not become aware of these "new facts" until her untimely motion to amend.

As discussed in Section II.A.1. and II.A.2. above, Plaintiff's April 22, 2005 Request for Production of Documents demonstrates that Plaintiff was aware of the underwriting department's refusal to issue "own occupation" policies to medical professionals with known latex allergies at the very least, five months prior to her untimely motion to amend. Moreover, Defendants' underwriting criteria is of no relevance to its individual claims determinations.

### G. DEFENDANTS DID NOT RELY ON MISLEADING INFORMATION TO DENY PLAINTIFF'S CLAIM

In paragraph 16g of her proposed amended complaint, Plaintiff claims that the Defendants acted in bad faith by:

> Deliberately relying on misleading, inaccurate or irrelevant information to deny the claim.

<u>Plaintiff's Motion for Reconsideration at P. 7</u>. In support of the allegations in proposed ¶ 16g, Plaintiff falsely states that Dr. Axe "did not review or consider any of the plaintiff's medical records dated after October 1999" and that the conclusion of Dr. Garb, that a dental office could

be latex free, is irrelevant.  Plaintiff's Motion for Reconsideration at P. 7.  Plaintiff also claimed that she did not learn of these "new" "facts" until September 2005.

First, the claim that Dr. Axe did not review or consider any medical records dated after October 1999 is not true.  Dr. Axe testified that he was not entirely sure what was contained within the records that he reviewed regarding Plaintiff.  Axe Transcript at 57:1-58:8; 162: 8-11.  Moreover, Exhibit 9, introduced by Plaintiff at the deposition of Dr. Axe, is a letter from Dr. Axe to Defendants regarding his review of Plaintiff's claim and specifically references a letter from Plaintiff's treating physician dated September 15, 2002, well after October 1999.  See Exhibit 9 from the Deposition of Dr. Axe, attached hereto at Exhibit 6 at P. 2.  Thus discovery clearly contradicts Plaintiff's statement that Dr. Axe did not consider any medical records after October 1999.

Second, Plaintiff was aware of Dr. Garb's opinion in July 2005, as his report was produced as part of Plaintiff's claim file to Plaintiff in Defendants' responses to Plaintiff's Request for Production of Documents.  See Defendants' Responses to Plaintiff's Request for Production, attached hereto at Exhibit 7.  Furthermore, the existence of latex free dental offices is very relevant to Plaintiff's claim as it supports the fact that an allergy to latex need not prevent a dental hygienist from working in a dental office.  Plaintiff knew of Dr. Garb's report at least two months before her untimely motion to amend.

### III.  DEFENDANTS WOULD BE PREJUDICED BY THE PROPOSED AMENDMENT

Plaintiff argues that Defendants "cannot . . . show that they would be prejudiced by the proposed amendment." [1]  As discussed in Defendants' Opposition to Plaintiff's Motion to

---

[1] Plaintiff also argues that Defendants had notice of Plaintiff's bad faith claim from an excerpt of an email sent by Plaintiff's counsel on August 17, 2005.  Plaintiff's Motion for Reconsideration at P. 11.  First, until Plaintiff filed an amended complaint, Defendants had no reason to take Plaintiff's "comments as anything more than badinage."  Quaker State Oil Refining v. Garrity Oil Company, 884 F.2d 1510, 1517

Amend, "delay itself may be considered prejudicial," <u>Andrews v. Bechtel Power Corp.</u>, 780 F.2d 124, 139 (1st Cir. 1985) (upholding U.S. District Court's denial of motion to amend). Because Plaintiff has not demonstrated a valid reason for her delay and neglect, her delay in moving to amend is prejudicial.

In addition, the Court's allowance of the proposed amendment would also prejudice Defendants because: 1) the New Bad Faith Claim will lead to additional discovery and delay; and 2) Defendants will be deprived of the ability to obtain discovery as to Plaintiff's New Bad Faith Claim.

> **A.    DEFENDANTS WILL BE PREJUDICED BY ADDITIONAL DISCOVERY AND FURTHER DELAY**

Defendants will be prejudiced by additional discovery and delay to which they will be subjected if Plaintiff's Motion to Amend is allowed. It is proper to deny a Motion to Amend where such an amendment will result in additional discovery and delay. <u>Stepanischen</u>, 722 F.2d at 933. Despite Plaintiff's misleading statement that "not a single additional deposition, document request, interrogatory or anything else" will be sought by Plaintiff, allowing Plaintiff to amend her Complaint will result in significant additional discovery.

As discussed in Defendants' Opposition to Plaintiff's Motion to Amend, the entire impetuous behind Plaintiff's untimely Motion to Amend was to avoid the dismissal of her unsustainable unfair trade practices/insurance practices claim, while attempting to provide the basis for continued engagement in a discovery fishing expedition. This is evidenced by the fact that almost all of the topics on which Plaintiff seeks deposition testimony from Defendants are based on her eleventh hour New Bad Faith Claim. See <u>Plaintiff's Response to Defendant's</u>

---

n. 4 (1st Cir. 1989). Second, it is ridiculous to assert that Defendants were aware of Plaintiff's New Bad Faith Claim when it was buried in an email that was one of nine emails exchanged between Plaintiff's counsel and defendants' counsel on August 17, 2005 regarding the scheduling of a deposition.

<u>Motion for Judgment on the Pleadings as to Count II in the Complaint and For Emergency Protective Order at 10-13</u>.  The Court has specifically admonished Plaintiff to restrict discovery to Count I of her Complaint, prohibiting Plaintiff from seeking deposition testimony on topics 3, 6-13, 16, 18-25.  <u>Id</u>.; <u>Order of Judge Ponsor granting Defendants Motion for Judgment on the Pleadings as to Count II</u>.

Consequently, if this Court allows Plaintiff to amend her Complaint to add a New Bad Faith Claim, it will have the effect of authorizing deposition testimony on topics that Plaintiff currently lacks any basis to depose Defendants.  Accordingly, the Court's grant of Plaintiff's motion will lead to significant additional discovery by Plaintiff.

    **B.    DEFENDANTS WILL BE PREJUDICED BY THE INABILITY TO TAKE ANY DISCOVERY WITH RESPECT TO PLAINTIFF'S NEW BAD FAITH CLAIM**

The discovery deadline closed on September 30, 2005 and Defendants will be prejudiced by their inability to obtain information as to Plaintiff's basis for her New Bad Faith Claim.  In order to establish a claim for breach of the implied covenant of good faith and fair dealing, Plaintiff must demonstrate the following three elements: 1) two parties must engage in a contract from which the Plaintiff reasonably expects to benefit; 2) the benefit is in some way injured by the other party's actions; and 3) these injurious actions were the product of the Defendant's bad faith.  <u>See Franco v. Yale Univ.</u>, 238 F.Supp.2d 449, 455 (D. Conn. 2002).  The bad faith element requires evidence of a dishonest purpose or a sinister motive.  <u>Habetz v. Condon</u>, 224 Conn. 231, 237-38 (Conn. 1992); <u>Buckman v. People's Express Inc</u>., 205 Conn. 166, 171 (Conn. 1987) ("bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will").

In Berkshire's First Set of Interrogatories to Plaintiff, Berkshire specifically requested each and every fact supporting Count I and Count II of Plaintiff's Complaint. See Berkshire's First Set of Interrogatories to Plaintiff, No. 2 & 3, attached hereto at Exhibit 8. Had Plaintiff asserted her New Bad Faith Claim in a timely manner, Defendants would have made a similar inquiry regarding the New Bad Faith Claim. As the deadline for discovery has passed, Defendants will be deprived of their ability to obtain any discovery with respect to the factual bases for Plaintiff's New Bad Faith Claim.

### IV.    TO ALLOW PLAINTIFF'S AMENDMENT WOULD BE FUTILE

The Court need not allow a motion to amend where an amendment would be futile. See, Resolution Trust Corp. v. Gold, 30 F.3d 251, 253-254 (1st Cir. 1994) (Leave to amend denied where amendment would be futile); citing with approval, Northeast Federal Credit Union v. Neves, 837 F.2d 531, 536 (1st Cir. 1988). Plaintiff's amendment to include a New Bad Faith claim would be futile, as Plaintiff could not sustain it under Connecticut law. To sustain a claim for breach of the implied covenant of good faith and fair dealing, "the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in **bad faith**." Buckman, 205 Conn. at 171. Bad faith is extraordinarily difficult to prove and is defined as follows:

> Bad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . .bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.

Buckman, 205 Conn. at 171. In other words:

> Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some

> contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive . . . Bad faith means more than mere negligence; it involves a dishonest purpose.

Habetz, 224 Conn. at 237-38 (citation omitted; internal quotation marks omitted.); De Le Concha of Hartford Inc., 269 Conn. at 424. Absent allegations and evidence of a dishonest purpose or sinister motive, a claim for breach of the implied covenant of good faith and fair dealing is legally insufficient. See e.g., Feinberg v. Berglewicz, 32 Conn. App. 857, 862 (Conn. 1993) (dismissing plaintiff's case for failure to provide evidence of bad faith).

Plaintiff's New Bad Faith Claim boils down to two allegations: (A) Defendants exercised bad faith in obtaining and relying on Dr. Axe's medical review; and, (B) Defendants exercised bad faith because it is incongruous that their underwriting department refuses to sell policies to medical professionals with allergies to latex, but their claims department denied Plaintiff's claim. Plaintiff's Motion for Reconsideration at P. 4-7. As demonstrated in Section II above, Plaintiff has not identified any evidence of bad faith. Instead, Plaintiff utterly distorts the facts that have been adduced in this case in a concerted last-ditch effort to dupe the Court into allowing her fishing expedition.

    **A.    DEFENDANTS EXERCISED GOOD FAITH, NOT BAD, IN OBTAINING AND RELYING ON DR. AXE'S MEDICAL REVIEW**

Contrary to Plaintiff's suggestions, the discovery demonstrates good faith by Defendants in their relationship with and reliance on Dr. Axe. During the claims review process, in a good faith effort to determine if Plaintiff's allergies to latex were truly disabling, Defendants, by letter dated June 17, 2002, submitted a request for a medical review of Plaintiff's claim to a service that locates doctors to provide medical reviews. Exhibit 2 from the Deposition of Dr. Axe, attached hereto at Exhibit 9. In that request they asked that an allergist review the claim file and address the following questions:

    1.  Based on the medical information provided, can you evaluate the severity of Ms. Mirek's latex allergy?

    2.  Can you please evaluate the findings of the latex testing performed in June 1999 on Ms. Mirek and what limitations and restrictions she would have as a result?

    3.  Based on the medical records, can you determine whether there had been any change in Ms. Mirek's condition from June 1999 through the present time. Please give details.

    4.  We would appreciate any additional comments or information that you can provide which would give us a better understanding of this patient's medical condition.

<u>Id</u>.

  The service gave the case to Dr. Axe, who, contrary to Plaintiff's suggestions, is a well-qualified doctor with 3 offices in New York City.  <u>See Exhibit 13 from the Deposition of Dr. Axe, attached hereto at Exhibit 10</u>.  Dr. Axe received his M.D. from Temple University, interned at Beth Israel Medical Center and did his residencies are University Hospital in Ann Arbor, Michigan and was Chief Medical Resident at Albert Einstein Medical Center in Philadelphia, Pennsylvania.  <u>Id</u>.  At the time he reviewed Plaintiff's claim, he was in private practice and affiliated with Beth Israel Medical Center, Cabrini Medical Center, and St. Clare's Hospital and Health Center in New York City, and NY United Medical Center in Port Chester, NY, focusing his practice on "asthma, hay fever, sinus conditions, hives, food, drug and insect reactions."  <u>Id</u>.  Dr. Axe responded to Defendants' questions in a report dated June 26, 2002.  <u>See Exhibit 3 from the Deposition of Dr. Axe, attached hereto at Exhibit 11</u>.

  Defendants subsequently received a letter from Plaintiff's physician, Dr. Bedard. Defendants, in a good faith effort to determine whether or not Dr. Bedard's letter would affect Dr. Axe's original review, immediately forwarded the letter to be reviewed by Dr. Axe with the following additional questions:

> 1. Does the additional information provided in Dr. Bedard's letter change your previous opinion regarding Ms. Mirek's condition? If so, please give details.
>
> 2. Dr. Bedard has indicated that, because of this allergy, she had developed concurrently sensitivities to avocado, banana and kiwi. He further states that this likely represents a cross-reaction between a latex allergen and proteins in these foods. Please explain.
>
> 3. Based on the medical records previously provided as well as the additional information from Dr. Bedard, can you comment on the chronology of Ms. Mirek's symptoms and treatment from June 1999 to the present?
>
> 4. Please provide additional comments that you feel would give us a better understanding of Ms. Mirek's condition.

See Exhibits 10 and 11 from the Deposition of Dr. Axe, attached hereto at Exhibit 12. Dr. Axe reviewed Dr. Bedard's letter and responded to Defendants' questions by letter dated October 21, 2002.

As evidenced by Defendants' diligence in providing all of the medical information to Dr. Axe, by Dr. Axe's diligence in responding to Defendants' requests for review and further review, and by Dr. Axe's qualifications, Defendants exercised good faith, not bad, in obtaining and relying on Dr. Axe's opinion.

### B. THE FACT THAT DEFENDANTS HAVE GRANTED BENEFITS TO MEDICAL PROFESSIONALS WITH ALLERGIES TO LATEX DEMONSTRATES DEFENDANTS' GOOD FAITH, NOT BAD FAITH

Plaintiff argues that Defendants acted in bad faith when they denied Plaintiff's claim for benefits because Defendants' underwriting department refuses to sell disability policies to medical professionals with allergies to latex. Plaintiff's Motion for Reconsideration at P. 4, 6. As discussed in Section II.A., above, under Plaintiff's argument, no medical professional claiming disability due to allergies to latex would ever receive disability benefits from Defendants. As Plaintiff already knows, this is not the case; Defendants have granted disability benefits to numerous medical professionals when they, unlike Plaintiff, are truly disabled due to

allergies to latex.  Exhibit 2 at Supplemental Response to Interrogatory No. 5.  The fact that Defendants have granted benefits to medical professionals with allergies to latex, demonstrates Defendants' good, not bad, faith.

Plaintiff fails to provide any evidence of bad faith on the part of Defendants and the "new false facts" that she alleges in support of her New Bad Faith Claim, actually demonstrate Defendants' good faith.  Given the futility of Plaintiff's New Bad Faith Claim, to allow Plaintiff's Motion to Amend would be a waste of judicial resources[2] and Plaintiff's Motion for Reconsideration should be denied.

## CONCLUSION

As discussed above, (1) the Court correctly denied Plaintiff's Motion to Amend as untimely; (2) to the extent that Plaintiff had the opportunity to overcome her untimeliness by showing newly discovered evidence, she has failed to do so; (3) allowing Plaintiff's Motion to Amend would prejudice Defendants; and (4) allowing Plaintiff's Motion to Amend would be

---

[2] Plaintiff argues that it would be a "waste of the parties' and the Court's resources for plaintiff to have to pursue a new complaint based on conduct of which she has recently become aware."  Plaintiff's Motion for Reconsideration at P. 13.  First, as discussed in Section I, above, Plaintiff has known about the "new facts" that she claims constitute newly discovered conduct for months, if not years.  Second, if Plaintiff were to file a new complaint, it would be barred by the statute of limitations.  In Connecticut, the breach of a contract's implied covenant of good faith and fair dealing sounds in tort.  Grand Sheet Metal Products Company v. Protection Mutual Insurance Company, 34 Conn.Supp. 46 (Conn.Sup.Ct. 1997); Craig v. Colonial Penn Insurance Co., 335 F.Supp.2d 296, 303 (D.Conn. 2004).  The statute of limitations for tort claims in Connecticut is "three years from the date of the act complained of."  Conn. Gen. Stat. § 52-577.  Plaintiff argues that: (1) the statute of limitations accrued when Plaintiff knew she was harmed and that was not until 2005; and (2) any statute of limitations would be tolled due to the fact that "insurers have a continuing duty to pay benefits to plaintiff each month."  Plaintiff's Motion for Reconsideration at P. 9-10 n. 5.  With respect to (1), the acts Plaintiff complains of all allegedly occurred during the administrative review of Plaintiff's claim, culminating in Defendants' decision to deny her benefits, which occurred on June 10, 2002.  Consequently, the harm suffered by Plaintiff was the fact that her benefits were denied.  With respect to (2), contrary to Plaintiff's assertion, where an insurer denies a claim for benefits, it is under no obligation to pay benefits each month.  As such there is no continuing duty upon which to base a tolling of the statute of limitations.  The statute of limitations ran, at the latest, on June 10, 2005.  Consequently, contrary to Plaintiff's argument, given the futility of Plaintiff's proposed amendments and the fact that Plaintiff would be unable to file a separate complaint anyway, it would actually be a waste of judicial resources to allow Plaintiff to amend.

futile because the "new" "facts" cannot sustain Plaintiff's New Bad Faith Claim. Accordingly, Defendants respectfully request that this Court deny Plaintiff's Motion for Reconsideration.

        Respectfully Submitted,

        Defendants The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America

        By their attorneys,

        CREVIER & RYAN, LLP.


        s/David B. Crevier
        David B. Crevier, Bar No. 557242
        Katherine R. Parsons, Bar No. 657280
        1500 Main Street, Suite 2020
        Springfield, MA 01115-5727
        Tel:  413-787-2400
        Facsimile:  413-781-8235
        Email: dcrevier@crevierandryan.com
              kparsons@crevierandryan.com


        s/Edward Kimball
        Edward Kimball, Esq.
        700 South Street
        Pittsfield, MA 01201
        Tel:  413-499-4321


## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing on all counsel of record said service having taken place this 4th day of November 2005.

        s/David B. Crevier