# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>   Plaintiff<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA and<br>BERKSHIRE LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>   Defendants | Civil Action<br>No. 04-30166-MAP |

**PLAINTIFF CAROLYN MIREK'S FIRST REQUEST FOR PRODUCTION TO THE DEFENDANTS THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA AND BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA**

Pursuant to Federal Rule of Civil Procedure 34, plaintiff Carolyn Mirek requests that the defendants The Guardian Life Insurance Company of America and Berkshire Life Insurance Company produce and permit her to inspect and copy each of the following documents in its possession, custody or control at the offices of Jager Smith P.C., One Financial Center, Boston, MA, 02111, within 30 days of the service of this request.

**DEFINITIONS**

1. The term "Mirek" refers to the plaintiff Carolyn Mirek.

2. Whenever the phrase "documentary materials" is used, it means any original written record or graphic matter, however produced or reproduced, and/or each copy of the original that contains attachments, notes and/or markings not contained in or on the original including, but not limited to, the following whether printed, recorded and/or produced by hand: electronic mail, organizational charts, agreements, communications,

28. All documentary materials identifying all persons who participated in the decision to deny Carolyn Mirek's claim, and/or their title, position and responsibilities at Guardian or Berkshire, and their role in the decision to deny Carolyn Mirek's claim.

29. All communications between Carolyn Mirek and the defendants.

30. All documentary materials including, but not limited to, e-mails, notes, memoranda, electronically stored data, etc., constituting, referring to, or relating to any communications between Carolyn Mirek and the defendants, other than attorney-work product and attorney-client privileged material.

31. All documentary materials used, consulted or relied upon in any by the defendants at any time since January 1, 1998 in determining, assessing, appraising, analyzing or evaluating the risks associated with underwriting disability insurance policies, including "own occupation" disability policies, of M.D.s, dentists, or other medical professionals who have been diagnosed with latex allergy.

32. All documentary materials used, consulted or relied upon in any by the defendants in concluding – as reflected in the website excerpt as attached Exhibit A – that if an applicant for disability insurance is an M.D., dentist or medical professional who has been diagnosed with latex allergy, the probable underwriting action is that coverage will be declined.

33. All documentary materials containing or identifying data or sources of data on which the defendants relied in concluding – as reflected in the website excerpt as attached Exhibit A – that if an applicant for disability insurance is an M.D., dentist or medical professional who has been diagnosed with latex allergy, the probable underwriting action is that coverage will be declined.

34. All documentary materials containing information, or identifying the sources of information, on which the defendants relied, at any time since January 1, 1995, in establishing, developing or formulating underwriting guidelines, standards, principles, rules, practices for the issuance of policies to M.D.'s, dentists or other medical professionals who have been diagnosed with latex allergy.

35. All documentary materials generated since January 1, 1995, discussing, analyzing, referring to, describing or containing underwriting guidelines, practices or procedures relating to the issuance of disability insurance policies to M.D.s, dentists or other medical professionals who have been diagnosed with a latex allergy.

36. All documentary materials on which the defendants relied at any time since January 1, 1995, in developing or establishing positions on whether to issue disability policies to M.D.s, dentists or other medical professionals who have been diagnosed with a latex allergy.

37. All documentary materials generated since January 1, 1995, pertaining to, embodying, referring to, or relating to any decision by the defendants not to write disability insurance coverage for persons with a latex allergy because of such diagnosis, except for information identifying particular insureds.

38. All documentary materials generated from January 1, 1995 to the present, including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, or charting disability claims in the aggregate that involve an alleged latex allergy.

39. All documentary materials generated since January 1, 1995, including but not limited to reports, memoranda, emails, etc., containing statistical data of any kind relating to latex allergy-related disability insurance claims.

40. All documentary materials including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, charting, or describing the outcome (that is, whether the claim was denied or accepted) of disability claims submitted to either of the defendants from January 1, 1995 to the present in which the claim was based, in whole or in part, on an alleged latex allergy (except for identifying information about the claimant).

41. All documentary materials including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, charting, or describing the outcome of disability claims in the aggregate submitted to either of the defendants from January 1, 1995 to the present in which the claim was based, in whole or in part, on an alleged latex allergy.

42. All documentary materials including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, charting, or describing the number of disability claims submitted to either of the defendants from January 1, 1995 to the present, in which the claim was based, in whole or in part, on an alleged latex allergy.

43. All court filings, judgments, court rulings and orders, depositions, answers to interrogatories, requests for production of documents, and responses to requests for production of documents, and any litigation involving a disability insurance claim made to the defendants in which the claimant alleged a disability based, in whole or in part, on a latex allergy.

44. All material or data that appeared on any website operated by the defendants from January 1, 2002 to the present.

45. All material or data that appeared on the defendants' website from January 1, 1995 which referred, in any way, to latex or latex allergy.

46. All documentary materials generated by either of the defendants from January 1, 1995 to the present which referred, in any way, to latex or to latex allergy.

67. All documentary materials identifying the total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 2000, to MLS National Medical Evaluation Services, Inc.

PLAINTIFF
By her Attorney,

*/s/ Joanne D'Alcomo*

Joanne D'Alcomo
BBO #544177
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

## CERTIFICATE OF SERVICE

I, Joanne D'Alcomo, hereby certify that on this date I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, to Edward K. Kimball, Esq., 700 South Street, Pittsfield, MA 01201 and David B. Crevier, Esq., Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, MA 01115-5727.

Date of Service:    April 22, 2005

*/s/ Joanne D'Alcomo*

Joanne D'Alcomo

# Guardian Disability Insurance Brokerage

## MEDICAL DATABASE

 LEAVE US A MESSAGE

- Disability Insurance Quote
- Business Overhead Expense Quote
- Disability Insurance Statistics
- Common Terms & Definitions
- View Sample Policy
- Search This Site
- High-Tech Industry
- Business Owners
- Professionals
- Medical Community
- Independent Consultants
- Corporate Disability Insurance
- W-2 Employees
- Government Employees

If you are unsure if Berkshire will offer you coverage because of your medical history, this is the page to find out. Scroll through the medical condition database to the medical condition you have been diagnosed with. Click submit and you'll have a possible answer.

**Select a medical condition and click "Submit":**

Latex Allergy [Submit]

| Medical Condition: | Latex Allergy |
| --- | --- |
| Definition: | Hypersensitivity to latex |
| Probable Underwriting Action: | If the applicant is an M.D., Dentist, or medical professional we will decline coverage. Other occupations can receive individual consideration. |

Many serious medical conditions can still be underwritten. Instead of a standard policy the insurance company may be able to offer you a policy with a longer elimination period, a shorter benefit period, or an increased premium basis.

Contact a disability specialist if you still have further questions.



REQUEST A QUOTE

---

**Guardian Disability Insurance**

To contact us:
Phone: 888-513-2300
Fax: 240-683-8334
Click here to send us an e-mail

DISCLAIMER

# Exhibit 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>      Plaintiff,<br><br>vs.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>      Defendants. | CIVIL ACTION NO.: 04-30166-MAP<br><br>DEFENDANT THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET NO. ONE |

PROPOUNDING PARTY:    PLAINTIFF CAROLYN MIREK

RESPONDING PARTY:    DEFENDANT THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

SET NO.:    ONE (1)

1

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 5.

Has either defendant, at any time since January 1, 1990, to the present, acknowledged coverage for a claim made under an "own occupation" or other disability policy when the insured asserted that he or she had a latex allergy-related disability? If so, set forth in detail: the date or approximate date that coverage was acknowledged and the occupation of the insured.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5.

GUARDIAN hereby incorporates by this reference each and every objection to this Interrogatory as set forth in GUARDIAN's original response to this Interrogatory. Subject to said objections GUARDIAN responds as follows:

Yes. The following table reflects specific instances in which a compensable claim for individual disability income insurance benefits has been approved by defendants where the stated medical conditions in support of the claim included latex related sensitivity.

| Occupation | Year of onset of Disability | Circumstances |
|---|---|---|
| Registered Nurse | 1995 | Initially unable to perform material duties of his/her occupation due to multiple conditions including latex allergy. Claimant eventually able to return to performing material duties of his/her occupation. |
| Physician | 1998 | Unable to perform material duties of his/her profession due to multiple conditions including immunological lung diseases impacted by pulmonary irritants including but not limited to latex. |
| Registered Nurse | 2003 | Unable to perform material duties of his/her occupation due to multiple chemical sensitivities including latex allergy. |
| Dentist | 1994 | Unable to perform material duties of his/her occupation due to multiple chemical sensitivities including latex allergy. |
| Dentist | 1997 | Unable to perform material duties of his/her occupation due to allergic contact dermatitis and latex hypersensitivity |
| Dental Hygenist | 1996 | Unable to perform material duties of his/her occupation due to Immunologic latex sensitivity, latex anaphlyaxis. |
| Dentist | 1999 | Unable to perform material duties of his/her occupation due to multiple medical conditions including latex sensitivity/ allergy. |

DATED: August 30, 2005       By: _____
                                 Edward K. Kimball, Esq.
                                 Berkshire Life Insurance
                                 Company of America
                                 700 South Street
                                 Pittsfield, MA 01201
                                 Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2005, a copy of the within Supplemental Responses to Interrogatories was mailed via overnight mail to Joanne D'Alcomo, Esq., Jager Smith, P.C., One Financial Center, Boston, MA 02111, Attorney for Plaintiff.

Edward K. Kimball

Dated: August 30, 2005

# Exhibit 3

# JAGER SMITH P.C.
## COUNSELORS AT LAW

ONE FINANCIAL CENTER
BOSTON, MASSACHUSETTS 02111
telephone 617 951 0500
facsimile 617 951 2414
www.jagersmith.com

JOANNE D'ALCOMO
jdalcomo@jagersmith.com

June 14, 2004

CERTIFIED MAIL

Dennis J. Manning
President and Chief Executive Officer
Guardian Life Insurance Company of America
7 Hanover Square
New York, NY 10004

    Re:   Demand letter pursuant to Mass. Gen. Laws ch. 93A, §9 concerning policyholder Carolyn Mirek, policy number G723670

Dear Mr. Manning:

    I represent policyholder Carolyn Mirek. This is a demand letter pursuant to Massachusetts General Laws Chapter 93A, Section 9, the Massachusetts Unfair and Deceptive Practices Act, on behalf of Ms. Mirek. Guardian Life Insurance Company of America has denied Ms. Mirek's claim for disability benefits made pursuant to a policy issued by Guardian.

    Ms. Mirek has a severe latex allergy that has disabled her from returning to work in her occupation as dental hygienist. She has asthma, and her board-certified allergist has concluded that her asthma is triggered by exposure to latex. Her latex allergy is so severe that she risks having an anaphylactic reaction if she is exposed to latex; her physician has concluded that anaphylactic reactions that she has experienced to food were apparently caused by latex gloves used by food handlers. This is a known result of severe latex allergy.

    Nevertheless, Guardian, through its wholly-owned subsidiary Berkshire Life Insurance Company, after many months of indecision on her claim, denied her claim for disability benefits under the policy. The company relied on a physician who, as far as I have been able to determine, is not even board-certified in allergy and who did only a paper review of the records. Even more significant, the Berkshire letter dated August 7, 2002 purportedly explaining the basis for the decision that Ms. Mirek was not disabled from performing her occupation due to a latex allergy did not make any sense – at least from a medical point of view. In explaining the basis for its denial, Berkshire wrote that "Latex allergy is not a distinct disease but a multifactorial medical entity commonly referred to as Chronic Inflammatory Airway Disease." This pivotal statement which purports to explain the reasoning to the policyholder – an explanation to which

JS PCDocs #46126/1



CLAIMS  JUN 17 2004

Dennis J. Manning
President and Chief Executive Officer
June 14, 2004
Page 2

the policyholder is entitled – is simply gibberish. Latex allergy is a well-recognized diagnosis. Latex allergy simply is <u>not</u> commonly referred to as "Chronic Inflammatory Airway Disease."

The letter of August 7, 2002 also stated that skin testing that Ms. Mirek underwent showed not only reactions to latex, but to ragweed pollen and banana – as if the latter two were inconsistent with a severe latex allergy. In fact, it is well-established in the medical literature that individuals who are latex allergic also tend to test positive for allergies to banana and certain other foods, such as avocado, potato and tomato. Moreover, the fact that she has a history of allergy to ragweed pollen does not contradict or somehow demonstrate an inconsistency with a severe latex allergy. Rather, as those familiar with latex allergy know, it is not uncommon for individuals who have a severe latex allergy to be atopic, that is, tending to be allergic. Therefore, in another significant respect, the denial letter makes no sense.

In addition, Guardian, through Berkshire, has taken the position that Ms. Mirek's work selling dental supplies somehow was inconsistent with her claim for disability benefits due to a latex allergy. It is not inconsistent – it is simply an effort by Ms. Mirek to minimize any exposure to latex yet at the same time earn a living for her family by using the knowledge that she gained by working in the dental field for so long. It is well-established that the best treatment for a latex allergy is avoidance; however, it is also well-established that latex is in many facets of day-to-day life, particularly in restaurants, hospitals and other medical facilities. Ms. Mirek recognizes that she cannot remove latex from all aspects of her life. She is trying to carve out a living for herself and her family the best she can with the limitations that she has. At the same time, however, she <u>should be</u> protected from the loss of income that she has suffered from being unable to work as a dental hygienist where she would be exposed to latex hour after hour, day after day in the medical areas of a dental office. That type of exposure is a very different matter – and poses a far greater risk -- than the potential for exposure in a quick business meeting in a dentist's office. Moreover, she has been put in the position of having to try to find some way to earn income because the disability income on which she counted – from Guardian's policy – has not materialized.

In acting on Ms. Mirek's claim, Guardian Life Insurance Company of America committed a series of unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, §2 and Mass. Gen. Laws ch. 176D, §3. The conduct which constitutes violations, and which constitutes unfair claims settlement practices, includes:

1. Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim (Mass. Gen. Laws ch. 176D, §3(9)(n));

2. Failing to honor its contractual obligation to pay monthly all benefits due for disability after the policyholder established that she had a severe latex allergy that made her disabled from working in her occupation as a dental hygienist;



Dennis J. Manning
President and Chief Executive Officer
June 14, 2004
Page 3

3. Failing to conduct a meaningful investigation of the claim;

4. Denying the claim based on stated reasoning that is nonsensical or unsupportable;

5. Relying on a physician who apparently is not board-certified in a relevant specialty, that is, allergy or occupational medicine, to deny the claim, and, a physician who never examined the policyholder;

6. Refusing to pay the claim without conducting a reasonable investigation based on all available information (Mass. Gen. Laws ch. 176D, §3(9)(d));

7. Failing to affirm or deny coverage of the claim within a reasonable period of time (Mass. Gen. Laws ch. 176D, §3(9)(e));

8. Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear (Mass. Gen. Laws ch. 176D, §3(9)(f)).

As a result of these unfair and deceptive acts and practices, I am seeking, on Ms. Mirek's behalf, the benefits to which she is entitled, plus Massachusetts' statutory prejudgment interest rate of 12% (non-compounded) on each payment from the time that each payment was due, to compensate her for loss of use of the benefits. In addition, I am seeking a refund of all the premiums that she has paid when the premium waiver should have been in effect, plus the statutory prejudgment interest rate of 12% (non-compounded) on each premium payment from the time that it was paid. In addition, I am seeking payment of her current benefits going forward, month to month.

The failure to pay benefits to which Ms. Mirek is entitled also has caused Ms. Mirek financial stress and emotional distress, and continues to cause her emotional distress because, in part, she has paid for a policy for more than 10 years that has turned out to be worthless. She has suffered emotional distress by the fact that she has been deprived of the income protection that she hoped she would never need, but which she did need when she was forced -- because of her medical condition -- to leave the occupation that she had worked in for so many years. Therefore, to compensate her for this emotional distress, which exacerbated the loss that she suffered in leaving her profession, I am seeking $75,000.

The failure to provide a reasonable offer in response to this demand letter under Chapter 93A may subject Guardian to multiple damages and payment of attorneys' fees under the statute.

I invite you, in addition to responding to this letter, to have a member of your staff contact me so that a resolution of this matter may be reached.



CLAIMS JUN 17 2004

Dennis J. Manning
President and Chief Executive Officer
June 14, 2004
Page 4

Thank you.

Sincerely,

Joanne D'Alcomo

JDA/cl

FAX

# Exhibit 4

August 7, 2002

Carolyn Mirek
48 Sele Drive
South Windsor, CT  06074

       Re: Policy#: G723670
        Claim#: 391131

Dear Ms. Mirek:

We are writing you regarding your claim for disability benefits under the above policy.

Under your policy, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation. You have submitted a claim for total disability since you claim that you are unable to work as a Dental Hygienist due to Carpal Tunnel Syndrome as well as a latex allergy beginning December 27, 2001.

Pursuant to our letter of June 10, 2002, the information we received from Dr. Watson and Dr. Bedard does not substantiate total disability from either the Carpal Tunnel syndrome or the latex allergy. However, we forwarded copies of your medical records to Dr. Harold Axe, an Allergist and Immunologist, for further evaluation of your claimed disability due to latex allergy.

Dr. Axe indicated that the Allergy Skin Testing you had in June 1999, apparently showed significant reactions to latex, but also to Ragweed pollen and fresh banana. He further states that Latex allergy is not a distinct disease but a multifactorial medical entity commonly referred to as Chronic Inflammatory Airway Disease. Allergy testing is not indicative of the degree to which these factors contribute, if any, to the overall expression of the chronic airway inflammation.

Dr. Axe indicated that in the most recent medical report from Dr. Bedard dated October 22, 1999, he described your condition by stating that, " Ms. Mirek is doing quite well" and that you had an excellent September without symptoms of sneezing or runny nose. Dr. Axe indicated that from the medical records that he was provided, there is no information to support a worsening of your condition. Dr Axe goes on to say that if your condition has deteriorated so much in the past 2 ½ years since June 1999, regardless of what degree Latex may have contributed to such deterioration, then an even more aggressive course of medical management is certainly indicated. In summary, Dr. Axe states that he sees no basis for a work restriction or work limitation based on Latex allergy.

Page 2

In addition, we understand that subsequent to leaving your previous occupation as a Dental Hygienist on December 27, 2001, you were continuously employed at Barton Cyker Dental Supply from January 2, 2002 through the present time. Your duties there include selling dental supplies which requires you to visit dental offices and exposes you to latex on a daily basis. As we previously indicated in our letter of June 10, 2002, this refutes your claimed inability to tolerate any exposure to latex.

Therefore, based on this information we must affirm our prior determination and find that no disability benefits are payable. Of course, if there is any additional information of which we are unaware, please submit it for our review.

If you should have any questions, please do not hesitate to contact me at 1(800) 933-3302 or (610) 807-8738.

Sincerely,


Kevin T. Kvederas
Disability Claims Specialist
Claims Management Services

Cc: File