# Exhibit 11

# MLS National Medical Evaluation Services

25899 West Twelve Mile Road • Suite 200 • Southfield, MI 48034
Office: 248-352-6747 • Fax: 248-352-2761

July 10, 2002

Mr. Kevin Kvederas
Berkshire Life
700 South Street
Pittsfield, Massachusetts 01201-8285

Re:  Mirek, Carolyn
Your Claim/File Number:  G723670

Dear Mr. Kvederas:

Enclosed is the Medical Record Review Report rendered by

Dr. Harold Axe, regarding Ms. Carolyn Mirek, per your request. If we can

be of any further assistance, please do not hesitate to contact us.

Sincerely,

*SW*

MLS National Medical Evaluation Services

c:  File

Enclosures


PLAINTIFF'S EXHIBIT
Axe 3
CL 9/16/05

CLAIMS  JUL 10 2002

June 26, 2002

**FAX**

Re:  Carolyn Mirek

I am a physician licensed to practice medicine in the States of New York and Ohio, where I have practiced the specialty of Allergy and Immunology for more than 25 years.

I have reviewed the medical records, which you have provided me of Ms. Carolyn Mirek and I am aware of her claim for total disability on the basis of Latex Allergy and Carpel Tunnel Syndrome.

The most recent medical report dated October 22, 1999 and signed by Dr. Robert M. Bedard described the patient "Mrs. Mirek is doing quite well. She had an excellent September without symptoms of sneezing, runny nose..," From the medical record you have provided me I have no information to support a worsening of Ms. Mirek's condition.

Latex Allergy is not a distinct disease but rather a part of a much more multifactorial medical entity commonly referred to today as Chronic Inflammatory Airway Disease.

CLAIMS    JUL 10 2002

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 2

**FAX**

Chronic Inflammatory Airway Disease describes the inflammatory process present in the nose, sinuses, and bronchi that is variously known as Allergy, Allergic Rhinitis, Bronchial Asthma, etc. This inflammatory process is the result of the collective allergic reactions to Pollens, House Dust Mite, Mold spores, Animal dander, and even Latex particles in the inspired air. Symptoms of runny nose, sneezing, nasal stuffiness, cough, shortness of breath and wheezing occur whenever the accumulation of these factors and thereby the inflammation, reaches an overwhelming degree. Physical and non-allergic factors, too, such as smoke, air pollution, irritating odors and fumes, exercise, cold, viral infections, also contribute to the development of symptoms.

Allergy testing is a means of confirming the presence of some of the allergic factors in the clinical presentation of Allergic Disease. However, Allergy Skin Testing, and the alternative to skin testing, the blood test known as RAST, are merely tests to detect the presence of specific antibodies in a person's system. They are not indicative of the degree to which these factors contribute, if any, to the overall expression of the chronic airway inflammation.

Allergy testing is not precise. There are inherent flaws in its accuracy. There is no standardization of testing materials, especially Latex. Ms. Mirek was tested with a piece of examining glove. Allergy testing is therefore merely a piece of information to fit into the larger clinical picture. Allergy Skin Testing of Ms. Mirek in June, 1999, apparently showed significant reactions to Latex, but, also, to Ragweed Pollen, and Fresh Banana.

CLAIMS    JUL 10 2002

Case 3:04-cv-30166-RGS    Document 35-5    Filed 11/04/2005    Page 5 of 10

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 3

FAX

1. Chronic Inflammatory Airway Disease, or "Allergy" or "Asthma" is totally treatable, and thus, should rarely if ever prove a disability. In his notes in June, 1999 Dr. Bedard described a very favorable response by Ms. Mirek to just one medication, FLONASE, a nose spray. If Ms. Mirek's condition has deteriorated so much in the past 2-1/2 years since June, 1999, regardless of to what degree Latex may or may not have contributed to such deterioration, then an even more aggressive course of medical management is certainly indicated.

It is my medical opinion that such an unfavorable outcome to adequate treatment justifying the finding of "Total Disability" because of "Latex Allergy" in Ms. Carolyn Mirek is highly unlikely.

2. Through my review of the medical records, which you have provided me of Ms. Carolyn Mirek, I should like to emphasize that I see no basis for a work restriction or work limitation based on Latex Allergy in Ms. Mirek.

CLAIMS   JUL 10 2002

07/10/2002   10:10   MLS NAT MED EVAL SERVICES → 9141344375542   NO.902   D05

CL 56



3. In her medical record dated October 22, 1999, Dr. Robert M. Bedard described Ms. Mirek as doing quite well in view of the accommodations made in the workplace in that Vinyl was being substituted for Latex wherever possible.

Sincerely,

Harold Axe, M.D.

klm

CL 57

# Exhibit 12

Date:      October 2, 2002

To:        Pat

From:      Kevin Kvederas

Subject:   Carolyn Mirek

Claim#:    391131

Dr. Harold Axe had previously reviewed the medical information in Ms. Mirek's disability claim file and rendered his opinion. We have received additional medical information with respect to Ms. Mirek's medical condition. Enclosed please find a copy of a letter dated September 15, 2002, from Dr. Robert Bedard. Please ask Dr. Axe to review and comment on the additional information provided by Dr. Bedard as well as answering the following questions.

1) Does the additional information provided in Dr. Bedard's letter change your previous opinion regarding Ms. Mirek's condition? If so, please give details.

2) Dr. Bedard has indicated that, Because of this allergy, she has developed concurrently sensitivities to avocado, banana and kiwi. He further states that this likely represents a cross-reaction between a latex allergen and proteins in these foods. Please explain.

3) Based on the medical records previously provided as well as the additional information from Dr. Bedard, can you comment on the chronology of Ms. Mirek's symptoms and treatment from June 1999 to the present?

4) Please provide additional comments that you feel would give us a better understanding of Ms. Mirek's condition.

If you should have any questions, please do not hesitate to contact me at 1(800) 933-3302 or (610) 807-8738.

Enc: 9/15/02 letter

PLAINTIFF'S EXHIBIT
Axe 10
xc 9/16/05

# CONNECTICUT ASTHMA & ALLERGY CENTER LLC

836 FARMINGTON AVENUE, SUITE 207, WEST HARTFORD, CT 06119-1551 • (860) 232-9911 • FAX: (860) 233-5985

Jay E. Selcow, M.D.
Louis M. Mendelson, M.D.
James P. Rosen, M.D.
Marshall P. Grodofsky, M.D.

Jeffrey M. Factor, M.D.
Robert M. Bedard, M.D.
Jason O. Lee, M.D.

September 15, 2002

Richard Aries, Esquire
Box 431
South Windsor, CT 06074-0431

Re:  Carolyn Mirek
     #88175

Dear Mr. Aries:

Carolyn Mirek has been a patient of mine since 5/21/92 receiving care for seasonal allergic rhinitis and intermittent asthma. Because of suspicions of a latex allergy developed due to her occupational exposure she was skin tested to a Canadian latex extract on 6/11/99, which showed a significant positive test.

She did in my strong medical opinion develop her latex allergy causally due to her environmental exposure at the dental offices where she has worked. This significant additional allergic component to her rhinitis and asthma became evident in 1999 and was diagnosed appropriately.

Because of this allergy, she has developed concurrently sensitivities to avocado, banana and kiwi. These food allergies are seen in some latex-allergic individuals and likely represents a cross-reaction between the latex allergen and proteins in these foods.

Mrs. Mirek has worked as a dental hygienist since her graduation from School of Dental Hygiene in 1983. With the development of universal precautions in the mid to late 80s, it is likely that she had significant exposures to aerosolized latex allergen due to the widespread use of powdered latex gloves in dental offices.

In 1999 it was obvious that latex exposures at work were contributing to worsening in her preexisting rhinitis and asthma.

Her employer did make allowances for her recognized latex allergy and did switch to nonpowdered latex gloves. Mrs. Mirek used vinyl gloves or a Johnson & Johnson unpowdered latex glove with some success. She did intermittently have significant reactions manifesting in increased cough, asthma and nasal congestion.

In addition, she has had several episodes of food related anaphylaxis which in retrospect likely represented allergic reactions to transferred latex from the gloves used by the food handlers.


PLAINTIFF'S EXHIBIT

Specializing in Asthma, Allergic Diseases, Sinus Diseases • Board Certified Physicians in Allergy & Immunology
Satellites: Avon • Enfield • Manchester • Middletown

CLAIMS SEP 24 2002

FAX

September 15, 2002
Richard Aries, Esquire
Re: Carolyn Mirek
Page 2

It is my strong medical opinion that despite careful latex avoidance, Mrs. Mirek continued to have difficulty while working as a dental hygienist. Because of this, it was medically necessary and clearly indicated for her to consider an alternative occupation.

Mrs. Mirek was last seen on 5/21/02. She related that she was doing well working as a dental supply salesperson. She did admit to some regret in leaving her primary occupation but I applaud her courage in making the change for the benefit of her health.

Her asthma as of 5/21/02 was in good control though she did report having some swelling in the face after stitching elastic bands on her children's shoes.

I have counseled her on continued latex avoidance as well as potential sources of cryptic latex exposure.

It is likely that she will remain with a permanent latex allergy. She will need to inform all healthcare providers given her care of this allergy and be prepared to treat latex-induced asthma and/or anaphylaxis should there be an inadvertent exposure.

The nature of the natural history of latex allergy that has developed in healthcare workers is not yet clear. With the onset of universal precautions in the mid 80s between 10-15% of healthcare workers developed a latex sensitivity, some of whom manifested significant clinical symptoms of rhinitis, asthma, contact urticaria and risk for anaphylaxis. As the healthcare and dental industries moved away from powdered latex gloves, it is likely that the level of sensitization may decline. It is not known whether or not previously sensitive individuals will lose their sensitivity over time.

At this time, I would consider her latex allergy a permanent restriction and level of impairment in Mrs. Mirek's case.

I hope this information will be of help.

Sincerely yours,

*[signature]*

Robert M. Bedard, M.D.
RMB:NET/rg
D: 9/15/02
T: 9/16/02

CLAIMS SEP 24 2002