UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>    Plaintiff,<br><br>vs.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA and<br>BERKSHIRE LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.: 04-30166-MAP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT II IN THE COMPLAINT AND FOR EMERGENCY PROTECTIVE ORDER

The Defendants, the Guardian Life Insurance Company of America ("Guardian") and Berkshire Life Insurance Company of America ("Berkshire"), hereby move this Court to enter judgment on the pleadings as to Count II of Plaintiff's Second Amended Complaint ("Complaint").[1] Through Count II, Plaintiff states mere conclusory allegations claiming numerous violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and Connecticut Unfair Trade Practices Act ("CUTPA").

As detailed below, the only facts alleged in Plaintiff's complaint pertain specifically to Plaintiff's Connecticut state law claim that the Defendants breached their obligation to pay disability benefits under a disability insurance policy. In order to state a claim under CUTPA/CUIPA, Plaintiff must plead facts alleging a pattern or practice. Pleading a single insurance transaction – as Plaintiff does here – is insufficient as a matter of law.

---

[1] By its February 9, 2005 Memorandum and Order Regarding Defendants' Motion to Dismiss, the Court Dismissed Counts III and IV of the Complaint. The sole remaining counts are Counts I and II.

g.  Failing to affirm or deny coverage of the claim within a reasonable period of time

h.  Failing to effectuate prompt, fair and equitable settlement of the claim when liability for disability benefits became reasonably clear."

ANSWER TO INTERROGATORY NO. 3:
**It is not possible for me to list all the facts on which these allegations in the Complaint are based.** Some facts however are as follows:

From the outset, Guardian/Berkshire Life brushed my claim aside. Following several communications, I was actually told by a representative, Kevin Kevediras, in a phone conversation that he "didn't know what latex allergy was anyway" or words to that effect. I was shocked that he was handling my case since he seemed to have no knowledge of latex allergy and acted as if he didn't even care to know anything about it. He even challenged me on whether latex allergy could be potentially life-threatening. His ignorant demeanor was very offensive and upsetting to me, and demonstrated that the company was not treating my claim fairly and reasonably, and not making a reasonable investigation. Documentation from my allergist was requested from Berkshire Life, only to be set aside by a company selected physician who appears to have had little knowledge of latex allergy and whose written explanations made no medical sense.

See Plaintiff's Answers To Interrogatories 2 and 3, relevant portions which are attached as Exhibit 1 (emphasis added). Given that Plaintiff: 1) lacked any factual basis for her CUIPA/CUTPA claim at the time that she filed the Complaint; and 2) further lacked any factual basis at the time that she responded to Defendants' interrogatories, it is clear that Plaintiff thoroughly lacks any factual basis on which to assert a CUIPA/CUTPA violation. The Court must enjoin her burdensome fishing expedition designed to find such a violation.

B.  <u>The Court Must Protect the Defendants from Plaintiff's Fishing Expedition</u>

Apparently recognizing that she admittedly lacks any factual basis for asserting that the Defendants engaged in unfair insurance practices with such frequency as to indicate a general business practice, Plaintiff has now noticed numerous depositions and served numerous subpoenas in an attempt to fish for a general business practice on which she can base her

CUIPA/CUTPA claim. Defendants request that the Court enter a protective order prohibiting Plaintiff from engaging in this burdensome fishing expedition.

The degree of Plaintiff's fishing expedition is demonstrated through Plaintiff's Rule 30(b)(6) Deposition Notice of Berkshire, see Exhibit 2, that was served on September 1, 2005. The notice identifies the following 26 topics on which Plaintiff requests testimony:

1. All actions taken by Berkshire or Guardian in the handling of Carolyn Mirek's claim, including all action leading up to the denial of her claim, and any review thereafter;

2. Guardian's and Berkshire's knowledge of, and the state of Guardian's and Berkshire's knowledge of any familiarity with, latex allergy in 2000, 2001, 2002, 2003, 2004, 2005 and currently;

3. The procedures you used since January 1, 2002 to evaluate disability claims under individual disabilities policies;

4. All communications between Berkshire Life Insurance Company of America and Guardian Life Insurance of America concerning the claim of Carolyn Mirek prior to the denial of her claim;

5. All communications between you and anyone concerning Carolyn Mirek (except for attorney-client privilege communications);

6. The circumstances under which either defendant has, at any time since January 1, 1990, concluded that a claimant under an individual disability policy was totally or partially disabled because of a latex allergy-related disability, including the occupation of the insured, and the basis for such determination;

7. The period of time, or periods of time, that it has been true that if an applicant for individual disability insurance coverage is an M.D., dentist or medical professional, and has been diagnosed with a latex allergy, disability insurance coverage would most likely be declined by (a) Guardian or (b) Berkshire;

8. Guardian's and Berkshire's use or non-use of exclusions or riders in individual disability policies for persons with latex allergies;

9. Underwriting practice and procedures of the defendants since 1995 with respect to the use of riders, exclusions, or other deviations from standard individual disability insurance policies;

10. The occasions on which either of the defendants, since January 1, 1998, has declined to issue an individual disability insurance policy to an M.D., dentist or medical professional because the applicant had been diagnosed with a latex allergy, and the circumstances;

11. The occasions on which either of the defendants issued a disability insurance policy to an

M.D., dentist or other medical professional since January 1, 1999, when the defendants had knowledge that the applicant had been diagnosed with a latex allergy, including the occupation of such person, and whether, and to what extent, such policy differed from a standard policy;

12. Any procedures, practices, or policies used in the handling of claims submitted to the defendants under "own occupation" or other individual disability policies during the period from January 1, 2000 to the present;

13. The criteria, standards, and practices used by Guardian or Berkshire at any time from January 1, 2000 to the present in determining whether to pay latex allergy-related claims under "own occupation" or other individual disability policies;

14. The business and/or contractual arrangement between Guardian and Berkshire concerning Guardian's use of Berkshire in the claims-handling process for disability claims;

15. Guardian's use of Berkshire in the claims-handling process for disability claims;

16. The treatises, medical journals, articles, manuals, memoranda, directives, guidelines, practices or policies, used by, referred to, consulted, relied upon in any way by Guardian or Berkshire from January 1, 1998 to the present in the processing of claims under individual disability policies where the issue of latex allergy was asserted to be involved in the insured's alleged disabling condition;

17. The process or methodology by which Harold Axe, M.D. was selected to perform work in connection with Carolyn Mirek's claim;

18. The data and information, and sources of data and information, used, consulted or relied upon in any by the defendants at any time since January 1, 1998 in determining, assessing, appraising, analyzing or evaluating the risks associated with underwriting disability insurance policies, including "own occupation" disability policies, of M.D.s, dentists, or other medical professionals who have been diagnosed with latex allergy;

19. Statistical data of any kind, generated since January 1, 1995 by Guardian or Berkshire, relating to latex allergy-related disability insurance claims;

20. The terms of any contracts, agreements or business arrangements between either Berkshire Life or Guardian Life Insurance Company of America and any of the following since January 1, 1990:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.;
    (c) and Medicolegal National I.M.E. Services, Inc;

21. The frequency with which, since January 1, 1985, either of the defendants has done business with any of the following and the nature of the service, if any, provided:

    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.;

    (c)    and Medicolegal National LM.E. Services, Inc.

22. The total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 1995, to:
    (a) MLS National Medical Evaluation Services;
    (b) Medicolegal Services, Inc.;
    (c) and Medicolegal National LM.E. Services, Inc.

23. The number or percentage or proportion of claims referred to MLS National Medical Evaluation Services, Inc., for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by MLS National Medical Evaluations Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

24. The number or percentage or proportion of claims referred to Medicolegal Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by Medicolegal Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

25. The number or percentage or proportion of claims referred to Medicolegal National L.M.E. Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal National LM.E. Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim; and

26. The involvement of James Garb, M.D. in reviewing Carolyn Mirek's claim; and the manner in which James Garb, M.D. became involved;

Berkshire does not object to producing witnesses to testify as to Topics 1, 4, 5, 17 and 26 as each of those topics concerns the handling and determination of Plaintiff's particular claim-the sole issue at dispute in this case. The remaining topics, however, are merely fishing expeditions into Berkshire's business practices in an attempt to find facts to articulate a theory to support Plaintiff's conclusory CUTPA/CUIPA allegations.

Thus, the topics on which Plaintiff has requested testimony: 1) are neither relevant to nor reasonably calculated to lead to admissible evidence in this matter; 2) create an undue burden on

11

the Defendants; are 3) are overbroad to the extent that they in fact could possibly lead to relevant evidence. Finally, to the extent Plaintiff seeks to discover information as to other persons not implicated in this litigation, as she does in Topics 10 and 11, above, such requests unnecessarily invades their privacy. Accordingly, Berkshire requests that the Court enter a protective order relieving it of any obligation to designate witnesses to testify to any topics other than Topics 1, 4, 5, 17 and 26.

In addition to subjecting Berkshire to her fishing expedition, Plaintiff has subpoenaed numerous other individuals/entities in an attempt to ascertain an actionable business practice. Specifically, Plaintiff has subpoenaed documents from and noticed the depositions of Medicolegal Services, Inc. and MLS National Medical Evaluation Services, Inc. (collectively "MLS") to occur in Detroit, Michigan. See Deposition Notices of MLS attached as Exhibits 3 and 4. MLS provides a service of locating medical experts to opine on medical conditions and was utilized by the Berkshire in locating an expert, Dr. Harold Axe to opine on Plaintiff's claim.

Although it is certainly appropriate for Plaintiff to inquire concerning Dr. Axe's expertise and the particulars of MLS's involvement in the processing of Plaintiff's claim, Plaintiff's deposition subpoenas go much further and demonstrate that her deposition of MLS is designed to fish for a business practice. For example, Plaintiff subpoenaed: 1) all documents that demonstrate contractual arrangements between MLS and the Defendants since 1990; 2) all documents that demonstrate amounts paid to MLS by Berkshire since 1995; 3) all documents that demonstrate amounts paid by MLS to Dr. Axe since 1990; and 4) all documents that demonstrate the number of claims on which MLS referred doctors have opined – since 1995 -- that individuals referred by the Defendants were not disabled.

12

## CONCLUSION

For the reasons stated above, the Court should grant the Defendants Motion for Judgment on the Pleadings as to Count II of the Complaint. Further, the Court should enter a protective order quashing all discovery Plaintiff seeks to take that exceeds discovery of the facts specifically particular to the Defendants handling and denial of Plaintiff's insurance claim.

Respectfully Submitted,

Defendants The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America

By their attorneys,

CREVIER & RYAN, LLP.

_____
David B. Crevier, Bar No. 557242
Katherine R. Parsons, Bar No. 657280
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel: 413-787-2400
Facsimile: 413-781-8235
Email: dcrevier@crevierandryan.com
       kparsons@crevierandryan.com

_____
Edward K. Kimball, Esq.
700 South Street
Pittsfield, MA 01201
(413) 499-4321

14

## LOCAL RULE 7.1 CERTIFICATION

I certify that the attorneys in this case have conferred and attempted in good faith to resolve or narrow the issues contained in this motion.

_____

## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing on all counsel of record said service having taken place this _9_ th day of September 2005.

_____

15