# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAROLYN MIREK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: 04-30166-MAP |
| | ) | |
| THE GUARDIAN LIFE INSURANCE | ) | |
| COMPANY OF AMERICA and | ) | |
| BERKSHIRE LIFE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION PURSUANT TO RULE 37 (a) AND 37(b) AGAINST DEFENDANT BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA FOR REFUSAL TO PRODUCE WITNESSES

Defendant, Berkshire Life Insurance Company of America ("Berkshire"), hereby files this opposition to Plaintiff's Motion to Compel Berkshire to produce witnesses to testify pursuant to Plaintiff's re-notice of deposition under Rule 30(b)(6). In addition Berkshire opposes Plaintiff's request for attorneys' fees, sanctions and costs.

Plaintiff's motion is based upon the false premise that Berkshire has refused to produce witnesses. As detailed below, the Court admonished Plaintiff to restrict her deposition of Berkshire to matters relevant to Count I of the Complaint, the sole remaining count in this action. Contrary to Plaintiff's allegations, Berkshire has not refused to produce witnesses. To the contrary, Berkshire has consistently informed Plaintiff that it would produce witnesses solely as to topics relevant to Count I. Berkshire has gone to extensive effort to cooperate with Plaintiff to agree on the topics relevant to Count I. However, Plaintiff has failed to limit her discovery consistent with the Court's order.

Notwithstanding Plaintiff's failure to limit her discovery, Berkshire remains willing and able to produce witnesses in response to the majority of the topics designated by Plaintiff. However, Berkshire is unable to provide witnesses in response to a number of the topics. Accordingly, Berkshire requests that the Court both deny Plaintiff's motion and enter a further order limiting discovery as set forth below.

### FACTS

1. On February 15, 1993, Plaintiff applied to Guardian for an individual disability income insurance Policy No. G723670 (hereinafter "Policy"). On March 19, 1993 Guardian issued the Policy to Plaintiff.

2. Under the Policy, Total Disability "means that because of sickness or injury, you are not able to perform the major duties of your occupation".

3. On January 9, 2002, Plaintiff notified Guardian and Berkshire, that Plaintiff wished to make a claim for Total Disability benefits under the Policy because of a latex allergy and carpal tunnel syndrome.

4. Plaintiff's claim for Total Disability benefits under the Policy was subsequently denied because it did not appear that Plaintiff had been rendered unable to perform the major duties of her occupation due to sickness or injury.

5. On June 14, 2004, Plaintiff initially filed this action in Massachusetts State Court alleging a breach of contract claim based on Defendants' denial of her disability insurance claim.

6. On September 1, 2005, Plaintiff served a Rule 30(b)(6) deposition notice on Defendant Berkshire Life Insurance Company of America. See Exhibit 1, attached hereto.

7.  On September 9, 2005, Defendants filed a Motion for Judgment on the Pleadings as to Count II of the Complaint alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA Count) and for an Emergency Protective Order in order to enjoin the Plaintiff from a superfluous fishing expedition discovery.  In Defendants' Motion for Emergency Protective Order, Defendants contested the legitimacy of twenty-one of the twenty-six Rule 30(b)(6) deposition topics.  <u>See Defendants' Motion for Judgment on the Pleadings as to Count II in the Complaint and for Emergency Protective Order</u> at 10-11 (Document No. 23 on the Court's docket).

8.  On September 26, 2005, Plaintiff filed her Response to Defendants' Motion for Judgment on the Pleadings as to Count II and for an Emergency Protective Order.  In her response, Plaintiff "willingly" dismissed Count II (CUTPA Count).  <u>Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings as to Count II in the Complaint and For Emergency Protective Order</u> at 2 (Document No. 25 on this Court's Docket).

9.  As a result of Plaintiff's willful dismissal of Count II, the sole cause of action in this litigation was Count I ("Breach of Contract").

10. On September 26, 2005 Plaintiff also filed a Motion to Amend her Complaint in order to add a new count of Breach of the Implied Covenant of Good Faith and Fair Dealing ("New Bad Faith Claim").  <u>Plaintiff's Motion to Amend</u> (Document No. 26 on this Court's Docket)

11. Recognizing the futility of her unfair trade practices claim, which provided the basis on which Plaintiff sought discovery, Plaintiff sought to continue her discovery expedition based on her New Bad Faith Claim.  <u>Plaintiff's Response to Defendant's Motion for</u>

Judgment on the Pleadings as to Count II in the Complaint and For Emergency

Protective Order at 7-13 (Document No. 25 on this Court's Docket)(predicating

30(b)(6) deposition topics on New Bad Faith Claim).

12. According to Plaintiff's own moving papers, eighteen of the twenty-one 30(b)(6)

deposition topics at issue in Defendants Motion for a Protective Order were predicated

in whole or in part upon Plaintiff's New Bad Faith Claim.  Plaintiff's Response to

Defendant's Motion for Judgment on the Pleadings as to Count II in the Complaint and

For Emergency Protective Order at 10-13 (Document No. 25 on this Court's Docket).

Those topics are as follows: 3; 6; 7; 8; 9; 10; 11; 12; 13; 16; 18; 19; 20; 21; 22; 23; 24;

and 25.

13.  **In fact, Plaintiff's stated basis for demanding testimony on topic 3 was predicated**

**solely on Plaintiff's New Bad Faith Claim.**  Plaintiff's Response to Defendant's

Motion for Judgment on the Pleadings as to Count II in the Complaint and For

Emergency Protective Order at 10 (Document No. 25 on this Court's Docket).

14. By Endorsed Order dated October 20, 2005 this Court Denied Plaintiff's Motion to

Amend her Complaint to add the New Bad Faith Claim.  See Exhibit 2, attached hereto.

**15.** By Endorsed Order dated October 20, 2005 this Court Granted Defendants Motion for

Judgment on the Pleadings and Denied Defendants Motion for a Protective Order with

the **"admonition that Plaintiff restrict discovery to matters relevant to Count One."**

See Exhibit 3, attached hereto.

16. On November 10, 2005, Plaintiff chose to ignore this Court's admonition to restrict her

discovery to matters relevant to Count One.  Instead Plaintiff re-noticed the identical

Rule 30(b)(6) notice that Plaintiff had sent to Defendants on September 1, 2005 that

was substantially predicated upon Plaintiff's non-existent New Bad Faith Claim. See Exhibit 4, attached hereto.

17. Plaintiff's Re-Notice of Taking Deposition purports to require Berkshire to produce corporate witnesses at a Hotel in Sturbridge, Massachusetts which is located approximately eighty two miles from Berkshire's Principal Place of Business in Pittsfield MA.  See Exhibit 4 at 1, attached hereto.

18. Since October 20, 2005, the sole cause of action in this litigation has remained Count One (Breach of Contract).

19. In light of the Court's admonition to Plaintiff that Plaintiff restrict discovery to matters relevant to Count One,  Defendants attempted in utmost good faith and candor to meet and confer with Plaintiff on numerous occasions in order to narrow the scope of her Rule 30(b)(6) discovery in order to bring said discovery into compliance with the Court's admonition.

20. Berkshire's efforts are demonstrated by the November 17, 2005 correspondence from Berkshire's counsel to Plaintiff's counsel in which Berkshire details its position and concludes that "unless Plaintiff is willing to rewrite its deposition topics (taking many out entirely and reducing the scope of others) to correspond with Count I, Berkshire intends to produce witnesses solely as to topics relevant to Count I."   See Exhibit 5, attached hereto.  Plaintiff refused to cooperate to narrow the scope of her topics to those relevant to Count One and instead filed the present motion.

21. Plaintiff's refusal to limit her topics consistent with the Court's admonition is exacerbated by Plaintiff's insistence that Berkshire produce corporate witnesses on a wide variety of topics at a location 82 miles from Berkshire's principal place of

business.  Plaintiff's actions clearly demonstrate that despite the Court's admonition to the contrary, Plaintiff has continued her unabated pursuit of a discovery fishing expedition designed to cause significant inconvenience and cost to Berkshire.

## ARGUMENT

By virtue of Plaintiff filing a motion to Compel and for Sanctions, Plaintiff has created a 30(b)(6) discovery dispute by re-noticing twenty six of the 30(b)(6) deposition topics that Plaintiff previously justified pursuant to Plaintiff's failed New Bad Faith Claim.  Now Plaintiff seeks sanctions against Berkshire because Berkshire dared to question the propriety of the re-noticed Rule 30(b)(6) deposition notice in light of this Court's admonition that Plaintiff restrict her discovery to Count One.

Notwithstanding numerous requests to restrict her discovery to Count One, Plaintiff has failed to do so.  Instead, Plaintiff has insisted that Berkshire is required to produce witnesses as to all of the Rule 30(b)(6) topics.  **Berkshire has not refused to produce witnesses, it has merely attempted to act in accordance with the Court's orders.**

Notwithstanding Plaintiff's failure to limit discovery, Berkshire, without waiving objections as to relevancy,  remains willing to produce witnesses at Berkshire's principal place of business to testify to the topics identified below.   Moreover, Berkshire has informed Plaintiff that it has designated previous testimony by Berkshire employees in this matter as responsive to some of the topics.  Accordingly, the only remaining topics as to which Berkshire is unwilling to provide witnesses are those identified below as topics on which Berkshire is unable to provide witnesses.  As set forth below, the Court should not compel testimony as to these topics but rather should enter a further order protecting Berkshire.

I.   **PLAINTIFF HAS REFUSED TO NARROW THE SCOPE OF HER DISCOVERY IN ORDER TO CONFORM TO THIS COURT'S ADMONITION THAT SHE DO SO, MEANWHILE BERKSHIRE HAS SUBSTANTIALLY AGREED TO PRODUCE WITNESSES WHERE IT IS POSSIBLE FOR BERKSHIRE TO DO SO**

Notwithstanding, the Court's admonition that Plaintiff limit her discovery to the breach of contract count, Plaintiff has utterly failed to conform the scope of her discovery to this Court's directive.  Berkshire does not waive its objections as to the relevance of many of the Rule 30(b)(6) deposition topics because there is no reasonable likelihood that discovery as to these topics will lead to the discovery of evidence that will be admissible in the breach of contract trial in this case.  Nevertheless, and demonstrating its compliance with the Court's orders, Berkshire will produce witnesses to testify to the following topics in Plaintiff's renoticed Rule 30(b)(6) Deposition Notice: topics 1, 3, 4, 5, 12, 13, 14, 15, 16, 17, 20, 22 and 26 ("Acceptable Topics").

Moreover, Plaintiff has already taken three depositions of three separate Berkshire employees in Berkshire's Underwriting Department, including the former Director of the Underwriting Department, regarding Berkshire's underwriting practices and procedures regarding latex allergies.  Therefore, without waiving objections as to the relevance of any of these topics as to Plaintiff's breach of contract cause of action, Berkshire has informed Plaintiff that it designates the previously obtained deposition testimony of underwriting employees Donald Morgan, Timothy Newman and Barbara Smachetti as responsive to the following Rule 30(b)(6) deposition topics: 7, 8, 9, 11 and 18 ("Previously Discovered Topics").

In light of the preceding paragraphs, the only remaining Rule 30(b)(6) topics upon which Berkshire opposes Plaintiff's Motion to Compel are Topics 2, 6, 10, 19, 21, 23, 24, and 25 (the "Disputed Topics").   As set forth below, it is not possible for Berkshire to produce witnesses to testify as to the Disputed Topics.

**II.    THE DISPUTED TOPICS ARE IN DISPUTE BECAUSE BERKSHIRE IS
UNABLE TO PRODUCE A WITNESS TO TESTIFY WITH RESPECT TO
THE TOPICS IDENTIFIED BY PLAINTIFF**

As set forth below, (A) Berkshire is unable to produce a witness to testify to topics 6, 19,

21, 23, 24 and 25; (B) Berkshire is unable to produce a witness to testify to topic 10; and

(C) Berkshire should not be compelled to produce a witness as to Rule 30(b)(6) Deposition topic

No. 2 because it is vague and overreaching.

**A.    BERKSHIRE IS UNABLE TO PRODUCE A WITNESS TO TESTIFY TO
TOPICS 6, 19, 21, 23, 24 AND 25.**

Berkshire is unable to produce a witness to testify to the topics Nos. 6, 19, 21, 23, 24, and

25.  As set forth in the Affidavit of Peter A. Palleschi, attached hereto as Exhibit 6, no employees

of Berkshire possess the knowledge to testify to the subject.  Mr. Palleschi, who is the Berkshire

employee best able to determine the steps necessary to cull information to testify to the topics

has estimated that it would take 17,550 person hours to do so.  The topics on which Berkshire is

unable to provide testimony are as follows:

6.    The circumstances under which either defendant has, at any time since January 1,
1990, concluded that a claimant under an individual disability policy was totally
or partially disabled because of a latex allergy-related disability, including the
occupation of the insured, and the basis for such determination;

19.    Statistical data of any kind, generated since January 1, 1995 by Guardian or
Berkshire, relating to latex allergy-related disability insurance claims.

21.    The frequency with which, since January 1, 1985, either of the defendants has
done business with any of the following and the nature of the service, if any,
provided:

(a)    MLS National Medical Evaluation Services;
(b)    Medicolegal Services, Inc.; and
(c)    Medicolegal National I.M.E. Services, Inc.

23.    The number or percentage or proportion of claims referred to MLS National
Medical Evaluation Services, Inc., for any time period since January 1,1995 by
Berkshire Life Insurance Company of America and/or Guardian Life Insurance

Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by MLS National Medical Evaluations Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

24.     The number or percentage or proportion of claims referred to Medicolegal Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by Medicolegal Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

25.     The number or percentage or proportion of claims referred to Medicolegal National I.M.E. Services, Inc. for any time period since January 1,1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal National I.M.E. Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim.

Exhibit 1 at 1-4; Exhibit 4 at 1-4.

Because Berkshire is unable to provide testimony as to topics 6, 19, 21, 23, 24 and 25, the

Court should not compel such testimony and should protect it from Plaintiff's discovery.

**B.     BERKSHIRE IS UNABLE TO PRODUCE A WITNESS TO TESTIFY TO TOPIC 10**

Berkshire is unable to produce a witness to testify to topic 10 through which Plaintiff

seeks testimony as to:

10.     The occasions on which either of the defendants, since January 1, 1998, has declined to issue an individual disability insurance policy to an M.D., dentist or medical professional because the applicant had been diagnosed with a latex allergy, and the circumstances.

Exhibit 1 at 2; Exhibit 4 at 2.

As set forth in the Affidavit of Kevin Mealey, attached hereto as Exhibit 7, no employees

of Berkshire possess the knowledge to testify to the subject.  Mr. Mealey, Berkshire's director of

underwriting, is the person best able to determine the steps necessary to cull information to testify to the topics has estimated that it would take 11,000 person hours to do so. Because Berkshire is unable to provide testimony as to topic 10, the Court should not compel such testimony and should protect it from Plaintiff's discovery.

### C.    BERKSHIRE SHOULD NOT BE COMPELLED TO PRODUCE A WITNESS AS TO RULE 30(B)(6) DEPOSITION TOPIC NO. 2

Berkshire requests that the Court protect it from testifying to topic 2. Through this overreaching and vague topic, Plaintiff demands Berkshire produce a witness to testify to:

> 2.    Guardian's and Berkshire's knowledge of, and the state of Guardian's and Berkshire's knowledge of and any familiarity with, latex allergy in 2000, 2001, 2002, 2003, 2004, 2005 and currently.

Exhibit 1 at 1; Exhibit 4 at 1.

This topic is so patently overbroad and vague that it is impossible for Berkshire to determine what witnesses are appropriate for designation. This is especially true in light of the numerous topics for which Berkshire will or has already provided witnesses as to its knowledge of latex allergy.

Specifically, Berkshire will provide a representative to testify to the following topics that are duplicative of topic 2 and which contain at least some outer boundaries that make it possible to try to determine potential witnesses:

> 13.    The criteria, standards, and practices used by Guardian or Berkshire at any time from January 1, 2000 to the present in determining whether to pay latex allergy-related claims under "own occupation" or other disability policies.

> 16.    The treatises, medical journals, articles, manuals, memoranda, directives, guidelines, practices or policies, used by, referred to, consulted, relied upon in any way by Guardian or Berkshire from January 1, 1998 to the present in the processing of claims under individual disability policies where the issue of latex allergy was asserted to be involved in the insured's alleged disabling condition.

Exhibit 1 at 2; Exhibit 4 at 2.

Moreover, Berkshire will provide a representative to testify to the following topics that are specific to Plaintiff's latex allergy claim:

1.  All actions taken by Berkshire or Guardian in the handling of Carolyn Mirek's claim, including all action leading up to the denial of her claim, and any review thereafter;

17. The process by which Harold Axe, M.D. [the allergist who provided an opinion in Ms. Mirek's case] was selected to perform work in connection with Carolyn Mirek's claim;

26. The process by which James Garb, M.D. in reviewing Carolyn Mirek's claim; and the manner in which James Garb, M.D. became involved.

Exhibit 1 at 1-4; Exhibit 4 at 1-4.

Finally, three Berkshire employees have already testified to, and Berkshire has already designated their prior testimony as responsive to, the following topics on which Plaintiff sought testimony as to Berkshire's underwriting knowledge as to latex allergy.

7.  The period of time, or periods of time, that it has been true that if an applicant for individual disability insurance coverage is an M.D., dentist or medical professional, and has been diagnosed with latex allergy, disability coverage would most likely be declined by (a) Guardian or (b) Berkshire;

8.  Guardian and Berkshire's use or non-use of exclusions or riders in individual disability policies for persons with latex allergies;

18. The data and information, and sources of data and information, used, consulted or relied upon by the defendants at any time since January 1, 1998 in determining, assessing, appraising, analyzing or evaluating the risks associated with underwriting disability insurance policies, including "own occupation" disability policies, of M.D.'s, dentists, or other medical professionals who have been diagnosed with latex allergy.

Exhibit 1 at 2-3; Exhibit 4 at 2-3.

A major problem with the topic as described by Plaintiff is that it falsely presumes that either Guardian or Berkshire has some sort of monolithic knowledge regarding Latex

Allergy.  Different individuals have different levels of knowledge and different opinions. In fact, this condition is the subject of  evolving healthy debate and divergent opinions within the medical community of those who specialize in the diagnosis and treatment of latex sensitivity and allergy.  Moreover, discovery in this case has already established that Berkshire's Underwriting Department probable underwriting action guide and probable underwriting practice is not to decline to issue Individual Disability Income policies to medical professionals with latex allergies.   Furthermore, discovery in this case has confirmed that Berkshire provides total disability benefits to claimants with latex related  allergies who satisfy the definitions of total disability.  Hence it is not clear what else could possibly be gained by forcing Berkshire to provide additional testimony and witnesses on a topic that is so amorphous and vague that in order to accurately respond, Berkshire would be in a position of asking everybody at Berkshire and at Guardian what their "knowledge of latex allergy" is.

 In light of:  1) the vagueness and overbreadth of topic 2 that makes it impossible for Berkshire to determine the scope of the testimony being sought; and, 2) Berkshire's providing witnesses in response to numerous interrogatories duplicative of topic 2, Berkshire requests that the Court order that it has no additional obligation to provide testimony as to topic 2.

**III.    THE LOCATION OF  BERKSHIRE'S 30(B)(6) DEPOSITIONS SHOULD
        BE AT BERKSHIRE'S PRINCIPAL PLACE OF BUSINESS AND NOT
        AT A HOTEL LOCATED 82 MILES AWAY FROM BERKSHIRE'S
        <u>PRINCIPAL PLACE OF BUSINESS</u>**

 Deposition of corporation by its agents and officers should ordinarily be taken at its principal place of business especially when corporation is defendant and plaintiff has not shown any peculiar circumstances that would justify deposition elsewhere.  <u>Salter v. The Upjohn Company</u>, 593 F.2d 649, 651 (5th Cir. 1979), <u>citing</u> 8 C. Wright & A. Miller, Federal Practice & Procedure § 2112 at 410 (1970).  See also <u>Zane S. Blanchard & Co. v. PSPT Ltd.</u>, 1995 U.S.

Dist. Lexis 7289 (D.N.H. 1995).  Plaintiff has not shown any peculiar circumstances that would

justify the deposition of Berkshire corporate witnesses anyplace other than Berkshire's principal

place of business: 700 South Street, Pittsfield MA.  Therefore depositions on the Acceptable

Topics should only occur at Berkshire's principal place of business.

<u>**CONCLUSION**</u>

As explained above, Plaintiff's Motion to Compel Defendant Berkshire Life Insurance

Company of America to produce witnesses to testify pursuant to a re-notice of deposition under

Rule 30(b)(6) should be denied because this discovery dispute arises from Plaintiff's failure to

comply with the Court's admonition, not Berkshire's refusal to provide witnesses.  Accordingly,

Defendants respectfully request that this Court deny Plaintiff's Motion to Compel and

additionally Defendants respectfully request that this Court order that depositions as to topics

Nos. 3, 4, 5, 12, 13, 14, 15, 16, 17, 20, 22 and 26 shall occur at Berkshire's principal place of

business and that Berkshire is protected from the remaining topics for which it is unable to

provide testimony.

Respectfully Submitted,

Defendants The Guardian Life Insurance
Company of America and Berkshire Life
Insurance Company of America

By their attorneys,

CREVIER & RYAN, LLP.

/s/David B. Crevier
David B. Crevier, Bar No. 557242
Katherine R. Parsons, Bar No. 657280
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel:  413-787-2400
Facsimile:  413-781-8235
Email: dcrevier@crevierandryan.com

Edward K. Kimball, Esq.
700 South Street
Pittsfield, MA  01201
Tel:  413-499-4321
Facsimile: 413-395-5990
Email:  Edward_Kimball@berkshirelife.com

## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing on all counsel of record said service having taken place this 16th day of December 2005.

/s/David B. Crevier