# Exhibit 5

# CREVIER & RYAN, LLP

ATTORNEYS AT LAW

TOWER SQUARE
1500 MAIN STREET, SUITE 2020
SPRINGFIELD, MASSACHUSETTS 01115-5727

TELEPHONE (413) 787-2400

FAX (413) 781-8235

David B. Crevier *
Michael P. Ryan
Timothy J. Ryan
Katherine R. Parsons +◊

\* Also admitted in NY
+ Also admitted in RI
◊ Also admitted in CT

November 17, 2005

BY EMAIL AND U.S. MAIL
Joanne D'Alcomo, Esq.
Jager Smith P.C.
1 Financial Center
Boston, MA 02111

Re: Mirek v. The Guardian Life Insurance Company of America, et al
U.S.D.C Civil Action No. 04-30166-MAP

Dear Joanne:

I write to follow-up on the emails that we exchanged earlier in the week regarding the Rule 30(b)(6) Deposition that you noticed for November 21. As I indicated, I have a previously noticed deposition on that date, a copy of which is enclosed, and therefore we need to reschedule.

In addition to choosing a date on which both you and I are available, we must pick a date on which the witnesses are available. Before Berkshire locates witnesses, Plaintiff must modify her list of topics on which she is demanding testimony. As Attorney Kimball and I indicated in our emails, Ms. Mirek's insistence that Berkshire produce witnesses in response to all of the deposition topics is inconsistent with Judge Ponsor's "admonition that Plaintiff restrict discovery to matters relevant to Count I."

As you know Count I of the Complaint is a breach of contract claim. Ms. Mirek claims that she is entitled to benefits under the terms of the disability insurance policy. It is undisputed 1) that Berkshire denied Ms. Mirek's claim; and 2) that Ms. Mirek has the burden of proof to establish that she is entitled to benefits under the policy.

Ms. Mirek's breach of contract claim does not involve a review of Berkshire's denial of Ms. Mirek's claim, Berkshire's past or present underwriting standards, Berkshire's past or present claim administration procedures or Berkshire's past or present relationships with external vendors or the business records of a Guardian General Agent who had nothing to do with Ms. Mirek's insurance policy.

Page 2
November 17, 2005

---

Accordingly, although while Ms. Mirek is certainly free to inquire as to the rationale for Berkshire's position that Ms. Mirek is not entitled to total disability benefits under the terms of the policy, this case is essentially a battle of the trial experts opining on whether Ms. Mirek has been rendered totally disabled and unable perform the major duties of her occupation due to her latex sensitivity.

Plaintiff has taken the position that notwithstanding the Court's admonition, Berkshire and/or Guardian is required to produce witnesses to testify to all of the deposition topics, regardless of their relevance to Count I, and that Plaintiff will then limit her interrogation to issues relevant to Count I. This position is completely contrary to the Court's admonition.

In Plaintiff's response to Defendants' Motion for a Protective Order, the cited basis for taking the deposition testimony rested exclusively (Topic 3) or primarily (Topics 6, 7, 8, 9, 10, 11, 12, 13, 16, 18, 19, 20, 21, 22, 23, 24 and 25) on Plaintiff's unsustainable (by the Court's Orders) Breach of Good Faith and Fair Dealing claim. Insofar as Plaintiff continues to insist on the presence of witnesses to testify to topics related to an unsustainable claim, Plaintiff has disregarded entirely the Court's admonition to limit Berkshire's Rule 30(b)(6) Deposition to Count I.

The Court's admonition that the deposition be limited to Count I was clear. Accordingly, unless Plaintiff is willing to rewrite its deposition topics (taking many out entirely and reducing the scope of others) to correspond to Count I, Berkshire intends to produce witnesses solely as to topics relevant to Count I.

Berkshire is confident that the Court will appreciate the parties attempt to comply with its orders before being asked to intervene again.

Sincerely,

David B. Crevier

Enclosure

cc:encls.    Edward Kimball, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEWART TITLE GUARANTY COMPANY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES WILLIS, JESSE CARLL, )<br>ROBERT CARLL, RESIDENTIAL )<br>MORTGAGE CORP., AMRESCO )<br>RESIDENTIAL MORTGAGE CORP., )<br>WALSH SECURITIES INC., BANKERS )<br>TRUST COMPANY and OCEANMARK )<br>BANK, FSB )<br>)<br>Defendants. ) | NO. 99 CV 10525 NG |

## RE-NOTICE OF DEPOSITION

TO:  John F. Palmer, Esq.
     Law Offices of John F. Palmer
     24 School Street, Suite 400
     Boston, MA 02108

Please take notice that on **Monday, the 21st day of November, 2005, beginning at 9:30 a.m.** at the offices of Robinson & Cole, One Boston Place, 25th Floor, Boston, Massachusetts, the Plaintiff, Stewart Title Insurance Company, by its attorneys, Robinson & Cole LLP, will take the deposition upon oral examination of **Jesse Carll**.

The deposition will be taken before a notary public in and for the Commonwealth of Massachusetts or before some other officer authorized by law to administer oaths. The deposition will continue from day to day until it is completed. You are invited to attend and cross-examine.

*/s/ signature*
Lawrence P. Heffernan, BBO# 228660
Mary L. Cataudella, BBO# 553350
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108
Tel: 617-557-5900
Fax: 617-557-5999

DATED: November 3, 2005

BOST1-872272-1

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November 2005, I caused a copy of the foregoing *Re-Notice of Deposition* to be served upon the following counsel of record via facsimile and U.S. mail:

David B. Crevier, Esq.
Crevier & Ryan, LLP
1500 Main Street
Springfield, MA 01115

John F. Palmer
Law Offices of John F. Palmer
24 School Street, Suite 400
Boston, MA 02108

Mary L. Cataudella

# Exhibit 6

|  |  |
|---|---|
| CAROLYN MIREK,  | ) CIVIL ACTION NO.: 04-30166-MAP |
| Plaintiff, | ) |
| vs. | ) |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, | ) |
| Defendants. | ) |

## DECLARATION OF PETER A. PALLESCHI

I, Peter A. Palleschi, declare as follows:

1. My name is Peter A. Palleschi, I am employed by Berkshire Life Insurance Company of America ("Berkshire") as a Senior Business Analyst. In particular I specialize in business analytics relative to Berkshire's claims department.

2. I have reviewed the proposed Federal Rule 30(b)(6) deposition topics Nos. 6, 19, 21, 23, 24 and 25 in this matter and I have endeavored to ascertain whether Berkshire is able to ascertain the information requested.

3. The International Classification of Diseases ("ICD") is the most accepted means of classifying diseases. Berkshire currently utilizes the ICD-9 version.

---

DECLARATION OF PETER A. PALLESCHI

4. Berkshire utilizes a computerized claims management system in order to administer individual disability insurance claims.

5. Berkshire's computerized claims management system only captures medical information and diagnoses of individual disability insurance claimants based upon ICD codes.

6. Berkshire's computerized claims management system does not utilize an ICD code for Latex Allergy.

7. Berkshire's computerized claims management system only captures one ICD code number per claim.

8. Since there is no ICD code for Latex Allergy in Berkshire's computerized claims management system, there is no computerized means for Berkshire to systematically access data as to claims involving Latex Allergy based upon an ICD code.

9. Since there is no computerized means for Berkshire to systematically access data regarding claims involving Latex Allergy based upon ICD code, the only methodology that Berkshire could utilize in order to ascertain the information requested in Rule 30(b)(6) deposition topics No. 6 would be a manual search of every claim file since 1990.

10. Since there is no computerized means for Berkshire to systematically access data regarding claims involving Latex Allergy based upon ICD code, the only methodology that Berkshire could utilize in order to ascertain the information requested in Rule 30(b)(6) deposition topics No. 19 would be a manual search of every claim file since January 1, 1995.

11. There are approximately 3,400 open claim files stored in an on-site location at Berkshire.

-2-
DECLARATION OF PETER A. PALLESCHI

12. Based upon my knowledge and experience, my best educated estimate is that there are approximately 15,000 closed claim files going back to 1990. The closed claims files (to the extent that they exist) are stored in multiple off-site locations.

13. In order to determine the information encompassed by Rule 30(b)(6) deposition topics Nos. 6, and 19 it would be necessary to perform a manual search and evaluation of every claim file within the time period described in order to determine which claims involved Latex Allergy.

14. At this stage, it is difficult to determine the actual time necessary to perform the actual file reviews necessary to fully respond to 30(b)(6) deposition topics Nos. 6, and 19. Based upon my experience such a search would conservatively require thirty minutes per claim file or 9,200 person hours (half-an-hour per claim file) to complete the review that would be required in order to respond to the deposition topics 6 and 19.

15. Over and above the hours it would take to search and evaluate the individual claims files, there would be substantial additional time necessary in order to coordinate a plan, conduct hiring, background screening, training, transportation, housing and daily management for the project. Preliminarily, it would be necessary to determine whether the review could take place on site at the storage facilities, or whether the files would have to be moved to a secure site that was also an appropriate working environment. Moreover, in order to assure that all the information requested was captured adequately, it would be advisable to establish and implement a quality assurance process. A critical component of the quality assurance function would be the development and administration of a computerized system for overall project management.

16. At this stage, it is difficult to determine the actual time necessary to plan, execute and control this project from an administrative perspective. However, based upon my experience

such planning, execution and control would conservatively require an additional 5,000 person hours.

17. As to the Rule 30(b)(6) deposition topics Nos. 21, 23, 24 and 25, the information described by those topics is not captured in any way by Berkshire's computerized claims management system.

18. Since there is no computerized means for Berkshire to systematically access data regarding the information described in the Rule 30 (b)(6) deposition topics Nos. 21, 23, 24 and 25, the only methodology that Berkshire could utilize in order to accurately ascertain the information requested would be a manual search of every claim file since January 1, 1985.

19. Based upon my knowledge and experience, my best educated estimate is that there are approximately 20,000 closed claim files going back to 1985. The closed claims files (to the extent that they exist) are stored in multiple off-site locations.

20. At this stage, it is difficult to determine the actual time necessary to perform the actual file reviews necessary to accurately ascertain the information described in Rule 30 (b)(6) deposition topics Nos. 21, 23, 24 and 25. Based upon my experience such a search would conservatively require thirty minutes per claim file or 11,700 person hours (half-an-hour per claim file) to complete the review that would be required in order to respond to the deposition topics Nos. 21, 23, 24 and 25.

21. Over and above the hours it would take to search and evaluate the individual claims files, there would be substantial additional time necessary in order to coordinate a plan, conduct hiring, background screening, training, transportation, housing and daily management for the project. Preliminarily, it would be necessary to determine whether the review could take place on site at the storage facilities, or whether the files would have to be moved to a secure site that was also an appropriate working environment. Moreover, in order to assure that all the information

-4-
DECLARATION OF PETER A. PALLESCHI

requested was captured adequately, it would be advisable to establish and implement a quality assurance process. A critical component of the quality assurance function would be the development and administration of a computerized system for overall project management.

22. At this stage, it is difficult to determine the actual time necessary to perform the actual file reviews necessary to fully respond to Rule 30 (b)(6) deposition topics Nos. 6, 19, 21, 23, 24 and 25. My best educated estimate as to the total amount of time necessary to complete such a project would be 17,550 person hours.

23. At this stage, it is difficult to determine the actual time necessary to plan, execute and control this project from an administrative perspective. However, based upon my experience such planning, execution and control would conservatively require an additional 10,000 person hours.

I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts that the foregoing is true and correct. Executed this 15th day of December 2005, at Pittsfield, Massachusetts.

_____
PETER A. PALLESCHI

-5-
DECLARATION OF PETER A. PALLESCHI

# Exhibit 7

| | |
|---|---|
| CAROLYN MIREK, | ) CIVIL ACTION NO.: 04-30166-MAP |
| Plaintiff, | ) |
| vs. | ) |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, | ) |
| Defendants. | ) |

## DECLARATION OF KEVIN MEALEY

I, Kevin G. Mealey, declare as follows:

1. My name is Kevin G. Mealey, I am employed by Berkshire Life Insurance Company of America ("Berkshire") as the Director of the Underwriting Department.

2. I have reviewed the proposed Federal Rule 30(b)(6) deposition topic Nos. 10 in this matter and I have endeavored to ascertain whether Berkshire is able to ascertain the information requested.

3. In accordance with various Insurance Regulations, individual disability insurers such as Berkshire are required to maintain records with regard to declined applications for individual disability income insurance.

4. Berkshire maintains records of declined applications for individual disability income insurance that were submitted to Berkshire.

5. Said records are maintained according to file number.

6. Based upon my background, experience and knowledge, my best educated estimate is that on average Berkshire declines approximately 3,800 applications for individual disability income insurance per year.

7. Berkshire does not maintain such records according to the nature of the individual applicant's occupation.

8. Berkshire does not maintain such records according to the reasons for the declination.

9. Berkshire does not maintain such records according to the nature of the applicant's medical history or medical symptoms as known to Berkshire at the time of underwriting.

10. Since Berkshire does not maintain records of declined applications for individual disability income insurance on the basis of occupation or medical history, there is no computerized means for Berkshire to effectively and systematically identify declined applications for individual disability insurance where the applicant was a medical professional and where the reason for the denial was that the individual had been diagnosed with a latex allergy.

11. In order to be able to ascertain the information described in 30(b)(6) deposition topic No. 10, it would be necessary for me as Director of the Underwriting Department to create a project whereby the list of all the declined applications for the time period in question would be created.

-2-
DECLARATION OF KEVIN G. MEALEY

12. The next step in such a project would be that each such declined application file would then have to be manually reviewed on a page by page basis to be able to accurately determine if in fact the applicant was a medical professional and then if so, what the circumstances were with regard to each individual declination and whether the declination was in fact based upon a diagnosis of Latex Allergy.

13. At this stage, it is difficult to determine the actual time necessary to perform the declined underwriting application file reviews necessary to fully ascertain the information described by 30(b)(6) deposition topic No. 10. Based upon my experience such a project as described above would conservatively require approximately 9,500 person hours (assuming an average of half-an-hour per application file).

14. Over and above the hours it would take to search and evaluate the individual application files, there would be substantial additional time necessary in order to coordinate a plan and manage the project on a daily basis. Moreover, to assure that all the information requested was captured adequately, it would be advisable to establish and implement a quality assurance process. A critical component of the quality assurance function would be the development and administration of a computerized system for overall project management.

15. At this stage, it is difficult to determine the actual time necessary to plan, execute and control this project from an administrative perspective. My best educated estimate for the planning and daily management of the project described herein would conservatively require an additional 1,500 person hours.

16. It should be noted that the declined individual disability income insurance applications from 1998 through June 30, 2001 as to The Guardian Life Insurance Company of America ("Guardian") are to the best of my knowledge physically maintained in several different

locations in the United States and that they are not part of any computer system that I have access to. Moreover, those files are maintained as paper files.

17. I am unable to provide any firm estimate as to the time that would be required to evaluate those declined Guardian files. However, my educated opinion is that, in light of the fact that the declined Guardian files are in paper form only and are stored in multiple locations, a physical review process would be required and that therefore the time involved in reviewing those declined Guardian files would involve substantially more time than would be involved in reviewing the Berkshire files pursuant to the theoretical project as described herein.

I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts that the foregoing is true and correct. Executed this 15th day of December 2005, at Pittsfield, Massachusetts.

_____
KEVIN G. MEALEY

-4-
DECLARATION OF KEVIN G. MEALEY