# Exhibit 4

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAROLYN MIREK,<br><br>Plaintiff<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>Defendants | ) | Civil Action<br>No. 04-30166-MAP |

**PLAINTIFF CAROLYN MIREK'S FIRST REQUEST FOR PRODUCTION TO THE DEFENDANTS THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA AND BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA**

Pursuant to Federal Rule of Civil Procedure 34, plaintiff Carolyn Mirek requests that the defendants The Guardian Life Insurance Company of America and Berkshire Life Insurance Company produce and permit her to inspect and copy each of the following documents in its possession, custody or control at the offices of Jager Smith P.C., One Financial Center, Boston, MA, 02111, within 30 days of the service of this request.

**DEFINITIONS**

1. The term "Mirek" refers to the plaintiff Carolyn Mirek.

2. Whenever the phrase "documentary materials" is used, it means any original written record or graphic matter, however produced or reproduced, and/or each copy of the original that contains attachments, notes and/or markings not contained in or on the original including, but not limited to, the following whether printed, recorded and/or produced by hand: electronic mail, organizational charts, agreements, communications,

correspondence, telegrams, memoranda, summaries and/or records of personal conversations and/or interviews, diaries, graphs, reports, sketches, maps, summaries and/or records of meetings and/or conferences, summaries and/or reports of investigations and/or negotiations, progress reports, opinions, and/or reports of consultants, photographs, motion picture films, brochures, pamphlets, advertisements, video recordings, circulars, press releases, drafts, letters, any marginal comments appearing on any document, sound recordings and/or transcripts thereof, account ledgers, financial records, corporate records, newspapers, magazines and other publications and/or clippings therefrom, estimates, licenses, permits, requisitions, invoices, leases, assignments, microfilm, and computer information (including but not limited to disks or other digitally or electronically stored information, printouts and/or other data together) with any materials required for the reasonable interpretation thereof, in the possession, custody or control of the defendants, or their assigns, representatives, agents, servants, employees or attorneys.

3. The term "Guardian" refers to the defendant Guardian Life Insurance Company of America and any of its affiliates, officers, directors, employees, agents or representatives, or any attorneys acting on its behalf.

4. The term "Berkshire" refers to the defendant Berkshire Life Insurance Company and any of its affiliates, officers, directors, employees, agents or representatives, or any attorneys acting on its behalf.

5. The term "defendants" refers to Guardian and Berkshire collectively.

6. The term "claim" refers to the disability claim of plaintiff Carolyn Mirek.

7. The term "policy" refers to the disability policy issued by The Guardian Life Insurance Company of America to Carolyn Mirek, and any amendments thereto.

**REQUESTS**

1. The claims file for the claim of Carolyn Mirek.

2. The application file of Carolyn Mirek.

3. The policy issued to Carolyn Mirek.

4. All documentary materials, including but not limited to, manuals, handbooks, memoranda, directives, guidelines, practices or policies, etc. containing, reflecting, describing, summarizing, explaining or embodying any procedures, practices, or policies used in the handling of Carolyn Mirek's claim.

5. All documentary materials, including but not limited to, manuals, handbooks, memoranda, directives, guidelines, practices or policies, etc., containing, reflecting,

describing, summarizing, explaining or embodying any procedures, practices, or policies used in the handling of claims submitted to the defendants under "own occupation" or other disability policies during the period from January 1, 2000 to the present.

6. All documentary materials, including but not limited to, manuals, handbooks, memoranda, directives, guidelines, practices or policies, etc., containing, reflecting, describing, summarizing, explaining or embodying any procedures, practices, or policies used in the handling of latex allergy-related claims submitted to the defendants under "own occupation" or other disability policies during the period from January 1, 2000 to the present.

7. All claims manuals or manuals used by Guardian or Berkshire staff physicians or medical personnel, or other personnel in the handling of disability claims at any time from January 1, 2000 to the present.

8. All claims manuals or manuals used by Guardian or Berkshire staff physicians or medical personnel, or other personnel in the handling of Carolyn Mirek's claim..

9. All documentary materials, including but not limited to, memoranda of understanding, manuals, memoranda, guidelines, directives, policy memos, etc., referring to, relating to, describing or concerning Guardian's use of Berkshire in the claims-handling process for disability claims.

10. All documentary materials, including but not limited to, manuals, memoranda, directives, guidelines, practices or policies, containing, reflecting, describing, summarizing, explaining or embodying criteria or standards used by Guardian or Berkshire at any time from January 1, 2000 to the present in determining whether to pay latex allergy-related claims under "own occupation" or other disability policies.

11. All documentary materials, including but not limited to, manuals, memoranda, directives, guidelines, practices or policies, containing, reflecting, describing, summarizing, explaining or embodying criteria or standards used by Guardian or Berkshire at any time from January 1, 2000 to the present in determining whether to pay latex allergy-related claims under "own occupation" or other disability policies.

12. All documentary materials, including but not limited to, manuals, memoranda, directives, guidelines, practices or policies, containing, reflecting, describing, summarizing, explaining or embodying criteria or standards used by Guardian or Berkshire at any time from January 1, 2000 to the present in determining whether to pay Carolyn Mirek's claim.

13. All documentary materials, including but not limited to, manuals, memoranda, containing directives, guidelines, practices or policies, relied upon by Berkshire or Guardian in the handling of Carolyn Mirek's claim.

14. All documentary materials, including but not limited to, treatises, medical journals, articles, manuals, memoranda, directives, guidelines, practices or policies, used by, referred to, consulted, relied upon in any way by Guardian or Berkshire from January 1, 1998 to the present in the processing of claims under disability policies where the issue of latex allergy was asserted to be involved in the insured's alleged disabling condition.

15. All documentary materials describing or containing the criteria used by Guardian or Berkshire at any time since January 1, 2000, to determine whether to pay benefits to a claimant who asserted latex allergy as a basis for disability.

16. All documentary materials, referring to, describing or concerning the educational background, credentials or qualifications of Harold Axe, M.D.

17. All documentary materials describing, referring to, concerning or relating to the process or methodology by which Harold Axe, M.D. was selected to perform work in connection with Carolyn Mirek's claim.

18. All documentary materials generated by or on behalf of Harold Axe, M.D. concerning Carolyn Mirek.

19. All documentary materials sent to Harold Axe, M.D. concerning Carolyn Mirek.

20. All documentary materials submitted by or on behalf of Harold Axe, M.D., at any time, concerning his participation as an examining physician on behalf of the defendants, except for those portions of documents identifying particular insureds by name.

21. Curriculum vitae, resumes and other documentary materials describing the qualifications or credentials of all persons who participated in the decision to deny Carolyn Mirek's claim.

22. All documentary materials identified in defendants' answer to Interrogatory No. 4.

23. All documentary materials not protected by the attorney-work product or attorney-client privilege that refer to or concern Carolyn Mirek.

24. All documentary materials describing, referring to, relating to, analyzing or concerning the characteristics of, symptoms of, diagnosis of, or causes of, latex allergy.

25. All documentary materials describing, referring to, relating to, analyzing or concerning the treatment for latex allergy.

26. All photographs, surveillance videos or visual images, or sound recordings relating to Carolyn Mirek or to the claim of Carolyn Mirek.

27. All documentary materials relied upon by Guardian or Berkshire in any way in the decision to deny Carolyn's Mirek's claim.

28. All documentary materials identifying all persons who participated in the decision to deny Carolyn Mirek's claim, and/or their title, position and responsibilities at Guardian or Berkshire, and their role in the decision to deny Carolyn Mirek's claim.

29. All communications between Carolyn Mirek and the defendants.

30. All documentary materials including, but not limited to, e-mails, notes, memoranda, electronically stored data, etc., constituting, referring to, or relating to any communications between Carolyn Mirek and the defendants, other than attorney-work product and attorney-client privileged material.

31. All documentary materials used, consulted or relied upon in any by the defendants at any time since January 1, 1998 in determining, assessing, appraising, analyzing or evaluating the risks associated with underwriting disability insurance policies, including "own occupation" disability policies, of M.D.s, dentists, or other medical professionals who have been diagnosed with latex allergy.

32. All documentary materials used, consulted or relied upon in any by the defendants in concluding – as reflected in the website excerpt as attached Exhibit A – that if an applicant for disability insurance is an M.D., dentist or medical professional who has been diagnosed with latex allergy, the probable underwriting action is that coverage will be declined.

33. All documentary materials containing or identifying data or sources of data on which the defendants relied in concluding – as reflected in the website excerpt as attached Exhibit A – that if an applicant for disability insurance is an M.D., dentist or medical professional who has been diagnosed with latex allergy, the probable underwriting action is that coverage will be declined.

34. All documentary materials containing information, or identifying the sources of information, on which the defendants relied, at any time since January 1, 1995, in establishing, developing or formulating underwriting guidelines, standards, principles, rules, practices for the issuance of policies to M.D.'s, dentists or other medical professionals who have been diagnosed with latex allergy.

35. All documentary materials generated since January 1, 1995, discussing, analyzing, referring to, describing or containing underwriting guidelines, practices or procedures relating to the issuance of disability insurance policies to M.D.s, dentists or other medical professionals who have been diagnosed with a latex allergy.

36. All documentary materials on which the defendants relied at any time since January 1, 1995, in developing or establishing positions on whether to issue disability policies to M.D.s, dentists or other medical professionals who have been diagnosed with a latex allergy.

37. All documentary materials generated since January 1, 1995, pertaining to, embodying, referring to, or relating to any decision by the defendants not to write disability insurance coverage for persons with a latex allergy because of such diagnosis, except for information identifying particular insureds.

38. All documentary materials generated from January 1, 1995 to the present, including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, or charting disability claims in the aggregate that involve an alleged latex allergy.

39. All documentary materials generated since January 1, 1995, including but not limited to reports, memoranda, emails, etc., containing statistical data of any kind relating to latex allergy-related disability insurance claims.

40. All documentary materials including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, charting, or describing the outcome (that is, whether the claim was denied or accepted) of disability claims submitted to either of the defendants from January 1, 1995 to the present in which the claim was based, in whole or in part, on an alleged latex allergy (except for identifying information about the claimant).

41. All documentary materials including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, charting, or describing the outcome of disability claims in the aggregate submitted to either of the defendants from January 1, 1995 to the present in which the claim was based, in whole or in part, on an alleged latex allergy.

42. All documentary materials including, but not limited to, spreadsheets, memoranda, reports, etc., analyzing, commenting upon, tabulating, charting, or describing the number of disability claims submitted to either of the defendants from January 1, 1995 to the present, in which the claim was based, in whole or in part, on an alleged latex allergy.

43. All court filings, judgments, court rulings and orders, depositions, answers to interrogatories, requests for production of documents, and responses to requests for production of documents, and any litigation involving a disability insurance claim made to the defendants in which the claimant alleged a disability based, in whole or in part, on a latex allergy.

44. All material or data that appeared on any website operated by the defendants from January 1, 2002 to the present.

45. All material or data that appeared on the defendants' website from January 1, 1995 which referred, in any way, to latex or latex allergy.

46. All documentary materials generated by either of the defendants from January 1, 1995 to the present which referred, in any way, to latex or to latex allergy.

47. All risk management publications, including but not limited to, brochures, materials, pamphlets, booklets, etc., generated since January 1, 1995 by the defendants, that refer to, relate to, describe or embody warnings, precautions, advice or recommendations concerning the use of latex or exposure to latex.

48. All documentary materials, including but not limited to, brochures, newsletters, pamphlets, booklets, etc., disseminated, distributed or generated since January 1, 1995 by the defendants, that refer to, relate to, describe or embody warnings, precautions, advice or recommendations concerning the use of latex or exposure to latex.

49. All documentary materials generated since January 1, 1995, including, but not limited to, reports, spreadsheets, analyses, memoranda, commenting upon, analyzing, discussing, reviewing, or otherwise referring to the actual, projected or potential financial exposure of either of the defendants as a result of latex allergy-related disability claims.

50. All documentary materials generated since January 1, 1995, including, but not limited to, reports, spreadsheets, analyses, memoranda, etc., commenting upon, analyzing, discussing, reviewing, or otherwise referring to actual, potential or projected volumes or amounts of latex allergy-related disability claims in the insurance industry or at Berkshire or Guardian.

51. All documentary materials generated since January 1, 1995, including, but not limited to, reports, spreadsheets, analyses, memoranda, etc., commenting upon, analyzing, discussing, reviewing, or otherwise referring to, trends in the industry or at Berkshire or Guardian in latex allergy-related disability claims.

52. All statements made or signed by Carolyn Mirek or by anyone else concerning Carolyn Mirek's disability claim.

53. All notes of telephone interviews, telephone conversations, or in-person interviews with any person concerning Carolyn Mirek.

54. All documentary materials referring to, describing, relating to or reflecting any meetings between or among any personnel at the defendants and anyone else that occurred at any time from the date that the defendants first learned that Carolyn Mirek was filing a disability claim to the denial of her claim, that referred to, related to or concerned Carolyn Mirek or Carolyn Mirek's disability claim.

55. Documentary materials identifying all physicians, nurses, or other medical personnel on whose opinion the defendants relied, at any time since January 1, 1990, in acknowledging coverage for a disability claim based on a latex allergy.

56. Documentary materials identifying all persons who were employees or independent contractors paid by Berkshire or Guardian on whose opinion the defendants relied, at any

time since January 1, 1990, in acknowledging coverage for a disability claim based on a latex allergy.

57. All reports, narratives, reviews, or other documentary materials prepared or written by any medical personnel employed by or retained by the defendants at any time since January 1, 2000 that reflects or contains the opinion or conclusion that a claimant was claimant was totally or partially disabled because of a latex allergy, excluding claimant-identifying information.

58. Documentary materials identifying all persons who, on behalf of either Guardian or Berkshire, approved coverage of a disability claim based in whole or in part on a latex allergy since January 1, 1990, and or their title, address and telephone number(s).

59. All documentary materials analyzing, discussing, assessing, commenting upon, or referring to the text circled in red on the attached Exhibit A.

60. All variations of the text circled in red on the attached Exhibit A that appeared on a website of the defendants, or in publications of the website, at any time.

61. All documentary materials generated since January 1, 1990 commenting upon, discussing, describing, analyzing, assessing, reporting on, the insurability of an M.D., dentist or other medical personnel who has been diagnosed with a latex allergy.

62. All sources of information or data, or documentary materials identifying all sources of data or information, on which either of the defendants relied in formulating or developing the position concerning the underwriting of coverage for persons diagnosed with latex allergy that is referenced on the attached Exhibit A, an excerpt from one or both of the defendants' websites.

63. The resumes, curriculum vitae, and other documentary materials identifying the name, title, last known telephone numbers and address, educational background or work history, of all persons who participated, on behalf of either the defendants, in preparing or approving the substance and content of the website excerpt that is circled in red on the attached Exhibit A.

64. All documentary materials identifying, containing, reflecting, describing or referring to any contractual or other formal business relationship between MLS National Medical Evaluation Services, Inc. and Berkshire or Guardian, in existence at any time from January 1, 2000 to the present.

65. All documentary materials received from MLS National Medical Evaluation Services, Inc. by Berkshire or Guardian concerning Carolyn Mirek.

66. All documentary materials sent to MLS National Medical Evaluation Services, Inc. by or on behalf of Berkshire or Guardian that concern Carolyn Mirek.

67. All documentary materials identifying the total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 2000, to MLS National Medical Evaluation Services, Inc.

PLAINTIFF
By her Attorney,

Joanne D'Alcomo
BBO #544177
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

CERTIFICATE OF SERVICE

I, Joanne D'Alcomo, hereby certify that on this date I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, to Edward K. Kimball, Esq., 700 South Street, Pittsfield, MA 01201 and David B. Crevier, Esq., Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, MA 01115-5727.

Date of Service: April 22, 2005

Joanne D'Alcomo

EXHIBIT "A"

GUARDIAN

Disability Insurance Quote
Business Overhead Expense Quote
Disability Insurance Statistics
Common Terms & Definitions
View Sample Policy
Search This Site
High-Tech Industry
Business Owners
Professionals
Medical Community
Independent Consultants
Corporate Disability Insurance
W-2 Employees
Government Employees

# Guardian Disability Insurance Brokerage



## MEDICAL DATABASE

If you are unsure if Berkshire will offer you coverage because of your medical history, this is the page to find out. Scroll through the medical condition database to the medical condition you have been diagnosed with. Click submit and you'll have a possible answer.

**Select a medical condition and click "Submit":**

Latex Allergy [Submit]

| | |
|---|---|
| **Medical Condition:** | Latex Allergy |
| **Definition:** | Hypersensitivity to latex |
| **Probable Underwriting Action:** | If the applicant is an M.D., Dentist, or medical professional we will decline coverage. Other occupations can receive individual consideration. |

Many serious medical conditions can still be underwritten. Instead of a standard policy the insurance company may be able to offer you a policy with a longer elimination period, a shorter benefit period, or an increased premium basis.

Contact a disability specialist if you still have further questions.




**Guardian Disability Insurance**

To contact us:
Phone: 888-513-2300
Fax: 240-683-8334
Click here to send us an e-mail

DISCLAIMER