# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>    Plaintiff<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA and<br>BERKSHIRE LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action<br>)  No. 04-30166-MAP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S PRE-TRIAL MEMORANDUM (CORRECTED)

The Plaintiff submits the following pre-trial memorandum, reflecting a correction in Section II:

**I.   SUMMARY OF EVIDENCE**

A. <u>Plaintiff: Carolyn Mirek</u>

Plaintiff Carolyn Mirek has brought this action to collect benefits owed under an "own occupation" individual disability insurance policy. Ms. Mirek stopped working as a dental hygienist became totally disabled on December 27, 2001 and submitted a claim to the defendants. The claim was ultimately denied on November 21, 2002.

Ms. Mirek was insured under the policy in her occupation as a registered dental hygienist. She was, and continues to be, a registered dental hygienist. She had worked for eighteen years as a dental hygienist when, in 2001, her physician told her to stop working due to a diagnosis of

JS\114333.1

latex allergy. The only meaningful treatment for latex allergy is avoidance – that is, avoidance of the extended exposures to latex and other materials to which she was experiencing reactions.

Under the policy, because she can no longer work as a registered dental hygienist, Mirek is entitled to collect a monthly benefit and is entitled to a waiver of her insurance premiums. Medical experts will testify that she is totally disabled from working as a registered dental hygienist.

1. Evidence re: liability for breach of contract

The evidence will show that Ms. Mirek is 42 years old, married, and the mother of two children. She lives in South Windsor, Connecticut. She has a solid work, educational and professional history.

Ms. Mirek graduated from Northeastern University with an Associate Degree in 1983 and obtained a certificate in Dental Hygiene Science from Forsyth School for Dental Hygienists at the same time. She worked as a registered dental hygienist from 1983 through December 2001. She has been active in several professional organizations, including the American Dental Hygienists' Association, the Connecticut Dental Hygienists' Association, and the Hartford Dental Hygienists' Association, where she served as President.

During the course of her career, Ms. Mirek worked for several different dentists. From 1994 until 2001, when she had to give up her career, she was employed by Dr. Robert Burstein. She worked full days for Dr. Burstein during that time period. According to Dr. Burstein, Ms. Mirek was very professional, was extremely hard working, and always gave an exceptional effort.

Carolyn enjoyed her job as a dental hygienist, and worked for several years after her diagnosis with latex allergy, despite persistent rashes and asthmatic attacks. She only left the profession, based on the insistence of her board-certified allergist, due to the life-threatening

nature of her latex allergy. Ms. Mirek was so distraught about being forced to leave the profession that she met a number of times with a licensed social worker to help her deal with the sadness of being forced to end her career as a dental hygienist.

Ms. Mirek did not originally use latex gloves while working as a dental hygienist, but they became part of the normal practice around 1986 due to concerns about AIDS. Starting from around the time Ms. Mirek began wearing latex gloves regularly, she began to experience allergy symptoms. Among other things, she suffered from itchy rashes on her hands with swollen, oozing pustules, difficulty breathing, nasal congestion, tightness in her chest, wheezing, tickling in her throat, runny, watery eyes, sneezing, and coughing. Because of the hand rashes, Ms. Mirek initially saw a dermatologist, who diagnosed her with contact dermatitis and prescribed her a cream for her hands. She later saw an allergist, who performed skin prick tests and diagnosed her with allergies to everything he tested for. As a result of this diagnosis, Ms. Mirek was prescribed medications and inhalers and had to see the allergist three times a week for allergy shots over the course of several years. Despite all of this treatment, her symptoms continued to get worse, including full-blown asthmatic attacks and developing specific food allergies.

Frustrated with the course of her treatment, in 1992, Ms. Mirek saw a new doctor -- Dr. Robert Bedard, a board-certified allergist and pulmonary specialist. Dr. Bedard performed his own skin prick tests, which revealed a number of allergies, but not as many as the test done by Ms. Mirek's previous doctor. Dr. Bedard prescribed her some new medications to help with Ms. Mirek's allergic and asthmatic conditions, but he continued to experience asthmatic attacks and other allergic symptoms. Over the course of the next several years, she also began having severe food allergies to, among other things, bananas and kiwis.

For a time, her symptoms seemed to become less severe. Yet within the next two years, Ms. Mirek's severe symptoms resumed. In 2001, Ms. Mirek had her eyes swell shut and difficulty breathing from eating a sandwich prepared with latex gloves. About two months later she experienced severe abdominal distress from eating a salad that had been prepared with latex gloves. Following that she had a severe skin reaction from wearing a swimsuit containing latex. Despite these reactions, Ms. Mirek continued to work as a dental hygienist. Eventually, Dr. Bedard recommended that she stop working as a dental hygienist to minimize her exposure to latex and avoid being exposed to latex hour after hour, day after day. Dr. Bedard told her he believed she should find other work to do. Plaintiff resisted the recommendation, but explored alternatives. Finally in December 2001, Ms. Mirek, concerned that she was feeling worse, left her job as a dental hygienist without a specific job to start. Her symptoms have significantly improved.

After leaving the dental hygiene profession, Ms. Mirek eventually found a job selling dental supplies, and currently works in that capacity. This job allows her to drastically reduce her exposure to latex yet at the same time earn a living for her family by using the knowledge that she gained by working in the dental field for so long. The exposure to latex she currently faces, either on the road, at home, or in short meetings typically in the non-clinical areas of dental offices, is far less than in her work as a dental hygienist where she was exposed to latex hour after hour, day after day in the medical areas of a dental office.

2. <u>Evidence re: Damages for breach of contract</u>

Carolyn Mirek has an "own occupation" disability policy with the defendants. If she is "totally disabled" from working as a dental hygienist, as defined by the Policy, she is entitled to benefits and a waiver of premium payments made while disabled. As of year-end 2005, Ms. Mirek would be owed, excluding interest, at least $147,000 in benefits and prejudgment interest

from the date that each premium should have been paid. In addition, plaintiff would be owed nearly $8,000 premiums, plus prejudgment interest from the date that each premium was paid.

3. <u>Evidence re: Liability for breach of the duty of good faith and fair dealing</u>

There is considerable evidence of Defendants' bad faith in the handling of plaintiff's claim – evidence which also undercuts the positions taken by Defendants in this litigation. Plaintiff has learned in making its determination to deny her claim in 2002, Berkshire relied primarily on the opinion of an allergist who does not even believe in as "latex allergy," who does recognize some well-accepted principles in medicine, and who has views that are odds with conventional medicine. In denying plaintiff's claim, Berkshire relied on the opinion of an on-staff physician who had little familiarity with latex allergy and little or no experience diagnosing latex-allergic patients, testing for latex allergy or treating latex-allergic individuals.

In addition, in denying her benefits Defendants have scoffed at plaintiff's latex-allergy related claim and at her Board-certified allergist's concern and advice. Defendants have taken the position that latex allergy can be easily managed, and that individuals with latex allergy can easily continue to work in their medical occupations. In documents produced by the Defendants, however, Plaintiff has learned that in 2002, up to the present, while defendants were denigrating plaintiff's latex allergy and claiming latex allergy posed no risk to her in her workplace, Defendants were adamant about not selling any "own occupation" disability policies to <u>anyone</u> in the medical field who showed evidence of latex allergy because of the dangers that they would become unable to work in their occupation and become eligible for benefits. Plaintiff learned that this position has been held continuously to this day based on Defendants' familiarity, through insurance industry meetings and other sources, of the risks associated with latex allergy.

JS\114333.1

5

4. <u>Evidence re: Damages for breach of the duty of good faith and fair dealing</u>

Under Connecticut law, Plaintiff would be entitled to punitive damages for breach of the duty of good faith and fair dealing, up to the amount of attorneys' fees and costs. In addition, Plaintiff is entitled to compensation for emotional distress suffered as a result of the bad faith. The plaintiff will offer evidence that she was already distressed about having to leave her career as a dental hygienist because of her latex allergy, and had to consult a therapist to deal with the loss of a career in which she had flourished. The Defendants' conduct in denigrating her latex allergy, and insisting that she was capable of working as a dental hygienist, and their insinuations and accusations that she has falsified, trumped up, or manufactured her disability claim, exacerbated her distress.

## II. FACTS ESTABLISHED BY THE PLEADINGS, BY ADMISSION, OR BY STIPULATION

### A. Stipulated Facts

In addition to the following stipulated facts, the parties agree to work out a stipulation as to the amounts of back monthly benefits involved, on a month by month basis, for the applicable period.

1. Defendant Guardian issued Disability Income Policy No G-723670 ("Policy") to Carolyn Mirek on or about March 19, 1993.

2. On December 27, 2001, Carolyn Mirek was working as a registered dental hygienist.

3. Carolyn Mirek has continued to pay her premiums on the Policy every month to the present.

4. Carolyn Mirek has made the following premium payments since December 27, 2001:

   1. 1/19/02: $162.35
   2. 2/19/02: $162.35
   3. 3/19/02: $162.35
   4. 4/19/02: $162.35
   5. 5/19/02: $162.35
   6. 6/19/02: $162.35
   7. 7/19/02: $162.35
   8. 8/19/02: $162.35

9. 9/19/02: $162.35
10. 10/19/02: $162.35
11. 11/19/02: $162.35
12. 12/19/02: $162.35
13. 1/19/03: $162.35
14. 2/19/03: $162.35
15. 3/19/03: $162.35
16. 4/19/03: $162.35
17. 5/19/03: $162.35
18. 6/19/03: $162.35
19. 7/19/03: $162.35
20. 8/19/03: $162.35
21. 9/19/03: $162.35
22. 10/19/03: $162.35
23. 11/19/03: $162.35
24. 12/19/03: $162.35
25. 1/19/04: $162.35
26. 2/19/04: $162.35
27. 3/19/04: $162.35
28. 4/19/04: $162.35
29. 5/19/04: $162.35
30. 6/19/04: $162.35
31. 7/19/04: $162.35
32. 8/19/04: $162.35
33. 9/19/04: $162.35
34. 10/19/04: $162.35
35. 11/19/04: $162.35
36. 12/19/04: $162.35
37. 1/19/05: $162.35
38. 2/19/05: $162.35
39. 3/19/05: $162.35
40. 4/19/05: $162.35
41. 5/19/05: $162.35
42. 6/19/05: $162.35
43. 7/19/05: $162.35
44. 8/19/05: $162.35
45. 9/19/05: $162.35
46. 10/19/05: $162.35
47. 11/19/05: $162.35
48. 12/19/05: $162.35

B. Facts Established by Admission

1. Defendant Guardian issued Individual Disability Income Policy No G-723670 ("Policy") to Carolyn Mirek on or about March 19, 1993. It is referred to as an "own occupation" policy.

2. The policy defines the term "total disability" as meaning,

> because of sickness or injury, you are not able to perform the major duties of your occupation. Your occupation means the

JS\114333.1

7

regular occupation (or occupations if more than one) in which you are engaged at the time you become disabled.

You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation. If your occupation is limited to a single recognized specialty in medicine, dentistry or law, we will deem your specialty to be your occupation.

3. At all times material hereto, the Plaintiff's specialty in dentistry was that of a registered dental hygienist.

4. Carolyn Mirek made a claim for benefits under the Policy stating that she had a "total disability" as defined by the Policy beginning on December 27, 2001 due to latex allergy and carpal tunnel syndrome.

5. The Defendants denied Carolyn Mirek's claim under the Policy.

6. Carolyn Mirek has continued to pay her premiums on the Policy every month to the present. The parties expect to reach resolution on a stipulation on the amount of premiums paid to date and the rate of monthly benefits.

### III. CONTESTED ISSUES OF FACT

1. Whether, and over what period of time from December 27, 2001 to the present, Carolyn Mirek was "totally disabled" within the meaning of her "own occupation disability policy, that is, unable "to perform the major duties" of her occupation of a dental hygienist.

2. Whether Defendants breached the insurance contract by denying her claim in 2002 and continuing to deny her claim.

3. Whether Defendants acted in bad faith and breached the covenant of good faith and fair dealing in the handling of Carolyn Mirek's claim under her insurance contract.

### IV. JURISDICTIONAL QUESTIONS

None.

### V. QUESTIONS RAISED BY PENDING MOTIONS

Plaintiff's pending motions

1. Motion Pursuant to Rule 37(a) and 37(b) against Defendant Berkshire Life Insurance Company of America for Refusal to Produce Witnesses after Motion for Protective Order Was Denied

In this motion, Plaintiff seeks to compel Berkshire to produce 30(b)(6) witnesses for all subjects noticed by Plaintiff. Berkshire filed a motion for protective order related to its 30(b)(6) deposition, which was denied by the Court. But even after that denial, Berkshire refused to produce any deponents for subjects on which they moved for a protective order. Berkshire has since relented with respect to some subjects but, as of the filing of this motion, Berkshire continues to refuse to produce deponents on several others, and has refused to permit depositions even on those subjects for which it has agreed to produce witnesses.

2. Motion to Consolidate in Carolyn Mirek v. The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America, 05-30246-MAP.

In this motion, Plaintiff seeks to consolidate these two pending cases involving the same parties and the same insurance contract. Although the motion was denied without prejudice, Plaintiff has included it as a pending motion because the Court indicated that "[d]epending on the pace of discovery, the court may reconsider consolidation later." Plaintiff has made it clear all along that she needs no discovery in the second case, and defendants have failed to identify a single deposition or even a single document that they need to defend themselves against the allegations in the second case. It is not surprising that the Defendants have failed to identify any discovery they have to conduct in the second case because the allegations in the second case all stem from discoveries made by Plaintiff in this case in *defendants' documents*, or through depositions of persons or entities *used by Defendants* in the handling of Plaintiff's claim. There has been no legitimate justification articulated by Defendants to keep these two actions separate; it would be a waste of the Court's and the parties' resources to continue to require the parties to litigate these two actions separately.

VI.    **ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS WITH SUPPORTING AUTHORITY**

Fed. R. Evid. 702 governs the admissibility of expert testimony. Rule 702 imposes an important gatekeeper function on judges by requiring them to ensure that three requirements are met before admitting expert testimony: (1) the expert is qualified to testify by knowledge, skill, experience, training, or education; (2) the testimony concerns scientific, technical, or other specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in understanding or determining a fact in issue. Correa v. Cruisers, 298 F.3d 13, 24-25 (1st Cir. 2002) citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 592 (1993). Although plaintiff has not yet deposed Defendants' fact witness and now expert Dr. James Garb on the subject of his new disclosed report from December 22, 2005, Plaintiff expects to be making a motion in line to preclude certain of his testimony.

VII.    **ANY REQUESTED AMENDMENTS TO THE PLEADINGS**

Plaintiff had requested leave to amend the complaint to add additional allegations concerning her claim for violation of the covenant of good faith and fair dealing. The Court denied the motion, and those allegations are now part of a second suit pending before this Court which Plaintiff is seeking to consolidate since no new discovery needs to be completed and both may easily be tried together.

VIII.    **ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE ACTION**

See docket in related case number Mirek v. The Guardian Life Insurance Company of America et al., No. 05-30246-MAP.

IX.    **PROBABLE LENGTH OF TRIAL**

This will be a jury trial and is expected to take a week to 8 days.

X.   **WITNESSES TO BE CALLED (EXPERT AND OTHERS) AND THE PURPOSE OF TESTIMONY**

Plaintiff expects to present the following witnesses, although new witnesses may need to be named after Plaintiff is able to conduct the Rule 30(b)(6) deposition of defendant Berkshire Life Insurance Company of America. Defendants had sought a protective order for the deposition, and were denied. However, Berkshire has continued to refuse to produce witnesses. Plaintiff has been totally unable to take the deposition. Plaintiff has filed a motion to compel Berkshire to produce witnesses for the 30(b)(6) deposition, and that motion is now pending.

1. Carolyn Mirek
   48 Sele Drive
   S. Windsor, CT 06074

   Ms. Mirek is expected to testify concerning her purchase of the policy, her development of latex allergy and symptoms, her communications with defendants, her treatment and filing of her claim, and related matters.

2. Ronald H. Mirek
   48 Sele Drive
   S. Windsor, CT 06074

   Mr. Mirek is the Plaintiff's husband, and is expected to testify regarding symptoms Plaintiff displayed and circumstances concerning the symptoms.

3. Christine Oliver, MD
   Occupational Health Initiative
   1101 Beacon Street
   4 West
   Brookline, MA 02446

   Dr. Oliver is expected to testify consistent with her expert disclosures. She is board-certified in occupational and rehabilitative medicine. She is expected to testify concerning her opinion that Ms. Mirek is disabled from working in her occupation as a dental hygienist because of a latex allergy. She is further expected to testify regarding the reports of Harold Axe, M.D., which defendants purported to rely in denying the claim in 2002, contained statements and analysis that conflicted with widely accepted views of conventional medicine, and, further, that other views expressed by Dr. Axe conflict or depart from widely accepted views of conventional medicine.

3. Robert M. Bedard, MD
   Connecticut Asthma & Allergy Center LLC
   836 Farmington Avenue
   Suite 207
   West Hartford, CT 06119-1551

   Dr. Bedard, Ms. Mirek's treating allergist for many years, is expected to testify concerning his treatment and diagnoses of Carolyn Mirek, consistent with this deposition.

4. Dr. Robert N. Burstein, D.D.S.
   479 Buckland Road
   South Windsor, CT 06074-3739

   Dr. Burstein, Ms. Mirek's last employer when she worked as a dental hygienist and her employer at the time she resigned because of her latex allergy, is expected to testify concerning her work, attitude, professionalism, and his persistent presence of latex gloves, including powdered latex gloves, in his office.

5. Jonathan Horn
   Benco Dental
   1486 Highland Industrial Park
   Bldg. 2, Unit 6
   Cheshire, CT

   Mr. Horn, Ms. Mirek's supervisor at her current employment as a dental supply sales representative, is expected to testify concerning the nature of her work as a salesperson and communications with Ms. Mirek. Mr. Horn is also expected to testify concerning precautions in the work setting to try to avoid exposure to latex.

6. Joseph Schimizzi
   MLS National Medical Evaluation Services, Inc.
   29792 Telegraph Road,
   Southfield, MI 48034

   Mr. Schimizzi is expected to testify concerning his company's retention by the defendants to find a physician to evaluate Ms. Mirek's claim, his communications with the physician, Dr. Harold Axe.

7. Srima Nissanka, LSW
   27 Hartford Turnpike, Suite 208
   Vernon, CT 06066-5245

   Ms. Nissanka, a licensed social worker, is expected to testify concerning her treatment of Ms. Mirek and her grief over having to leave her job as a dental hygienist because of her medical condition.

8. Janet Streeter
   56 Bramblebrae
   South Windsor, CT 06074

   Ms. Streeter is expected to testify regarding observations of Ms. Mirek's latex allergy reactions and emotional difficulties changing careers.

9. Carol Gustamachio
   85 Chafee Rd.
   Stafford Springs, CT 06067

   Ms. Gustamachio is expected to testify concerning Ms. Mirek's manifestations of latex allergies and her difficulties leaving her career.

10. Mary Beth Norman
    438 Woodland St.
    Glastonbury, CT 06073

    Ms. Norman is expected to testify concerning Ms. Mirek's manifestations of latex allergies and her difficulties leaving her career. Also, Ms. Norman is expected to testify concerning precautions taken in social settings to try to avoid latex exposure.

11. Jolanta Baginski
    1490 Mapleton Ave.
    Suffield, CT 06078

    Ms. Baginski is expected to testify concerning Ms. Mirek's manifestations of latex allergies and her difficulties leaving her career. Also, Ms. Norman is expected to testify concerning precautions taken in social settings to try to avoid latex exposure.

12. Sue Weigen, RDH
    75 Riverside Dr.
    South Windsor, CT 06074

    Ms. Weigen is expected to testify concerning Ms. Mirek's manifestations of latex allergies and her difficulties leaving her career. Also, Ms. Norman is expected to testify concerning precautions taken by Plaintiff in social settings to try to avoid latex exposure.

13. Kathy Czernicki Morlock
    174 Bourbon St.
    South Windsor, CT 06074

    Ms. Morlock is expected to testify concerning Ms. Mirek's manifestations of latex allergies and her difficulties leaving her career. Also, Ms. Norman is expected to testify concerning precautions taken by Plaintiff in social settings to try to avoid latex exposure.

14. Karen Jurgelas Volochenko
    2D Amato Drive
    South Windsor, CT 06074

    Ms. Volochenko is expected to testify concerning Ms. Mirek's manifestations of latex allergies and her difficulties leaving her career. Also, Ms. Norman is expected to testify concerning precautions taken by Plaintiff in social settings to try to avoid latex exposure.

15. Robert Prestileo
    31 Clearview Dr.
    South Windsor, CT 06074

    Mr. Prestileo, who sold Plaintiff the policy at issue, is expected to testify concerning the sale, premiums, policy, and coverage.

16. Alice Hertel
    1486 Highland Ave.
    Bldg 2, Suite 6
    Cheshire, CT 06410

    Ms. Hertel is expected to testify concerning the precautions Ms. Mirek takes to try to avoid exposure to latex in her job as selling dental supplies.

17. Brian McAnneny
    2605 Autumn Chase
    Ellington, CT 06029

    Mr. McAnneny is expected to testify concerning precautions Ms. Mirek takes to try to avoid latex exposure, and difficulties she has faced in changing careers because of latex allergy.

18. Karen Stoker
    139 Quarry Brook Dr.
    South Windsor, CT 06074

    Ms. Stoker is expected to testify concerning precautions Ms. Mirek takes to try to avoid latex exposure, and her difficulties in changing careers because of latex allergy.

19. Diane Chupas, RDH
    77 Shailer Pond Rd
    Deep River, CT 06417-1568

    Ms. Chupas is expected to testify concerning her observations of Ms. Mirek's latex allergy reactions in the dental setting.

20. Salvatore Squatrito, DDS
    East Point Business Center
    Suite 1C
    360 Tolland Turnpike
    Manchester, CT 06040

    Dr. Squatrito is expected to testify concerning his observations of Ms. Mirek's reactions.

21. Kevin T. Kvederas
    716 Stones Crossing Road
    Easton, PA 18045-5024

    Mr. Kvederas, who was the primary person responsible for handling plaintiff's claim, is expected to testify concerning his handling of the claim.

22. Harold Axe, MD
    137 Cat Rock Rd.
    Cos Cob, CT 06807-1305

    Dr. Axe is expected to testify concerning his reports and the basis for his reports for the defendants in 2002.

23. James Garb, M.D.
    Baystate Medical Center
    759 Chestnut Street
    Springfield, MA 01199

    Dr. Garb is expected to testify concerning the report he was retained to provide to the defendants in March 2005.

24. Donald O. Morgan
    Bennett Neck Drive
    Pocasset, MA, 02559

    Mr. Morgan is expected to testify concerning the defendants' underwriting practices with respect to latex allergy claims, and specifically that the companies have had a policy, at least in and since 2002, of refusing to insure individuals who are suspected of having latex allergy.

25. Samuel P. Haupt
    7 Gentian Hill Road
    Peru, MA 01235-9124

    Mr. Haupt is expected to testify concerning his initiation of a new report, that from Dr. Garb, as a basis for denying the claim in 2005.

26. Joseph Champigney
    141 Nottingham Drive
    East Longmeadow, MA 01028-2653

    Mr. Champigney is expected to testify concerning investigation that he conducted of Ms. Mirek for the defendants in connection with the processing of the claim in 2002.

27. Timothy A. Newman, M.D.
    47 Pinecrest Drive
    Dalton, MA

    Dr. Newman is the medical director of Berkshire Life Insurance Company of America, and is one of two physicians on whom the defendants claim they relied denying the claim in 2002. Dr. Newman is expected to testify concerning the circumstances concerning his review of the claim, his position on the claim at the time, and his role in development of underwriting positions.

28. Barbara Smachetti
    32 Riverview Drive
    Dalton, MA 01226-1759

    Ms. Smachetti is a nurse on staff at Berkshire Life Insurance Company of America. She is expected to testify concerning her involvement in the development of the underwriting position of defendants at individuals suspected of having latex allergy should not be insured, and is expected to testify concerning the materials in Berkshire's files on the subject of latex allergy.

29. Rosanna Baena
    South Windsor, CT

    To the extent Dr. Segal, listed on Defendants' witness list and disclosed for the first time as a prospective witness, is permitted to testify, Ms. Baena is expected to testify concerning the working conditions at Dr. Segal's office and hiring.

38. Eilleen Barile
    South Windsor, CT

    Ms. Barile is expected to testify regarding symptoms manifested by Carolyn Mirek in the dental office setting.

## XII. PROPOSED EXHIBITS

Plaintiff expects to offer the following exhibits, but may seek to add others following the 30(b)(6) deposition of Berkshire: