**DONALD O. MORGAN**
**September 21, 2005**

ORIGINAL

Page 1

1                    UNITED STATES DISTRICT COURT

2                    DISTRICT OF MASSACHUSETTS

3

4

5       * * * * * * * * * * * * * * *

6       CAROLYN MIREK,                    *

7                          Plaintiff    *

8       vs.                              * No. 04-30166-MAP

9                                        *

10      THE GUARDIAN LIFE INSURANCE      *

11      COMPANY OF AMERICA and           *

12      BERKSHIRE LIFE INSURANCE         *

13      COMPANY OF AMERICA,              *

14                          Defendants  *

15      * * * * * * * * * * * * * * *

16

17           DEPOSITION OF:  DONALD O. MORGAN

18           Berkshire Life Insurance Company

19                    700 South Street

20             Pittsfield, Massachusetts

21                 September 21, 2005

22

23             Tacy A. Malandrinos

24                Court Reporter

**DONALD O. MORGAN**
**September 21, 2005**

1  up?

2       A.       It was sort of a progression of

3  things.  Typically at the time of the merger a

4  lot of companies were looking at latex allergy

5  and attempting to cover it with an exclusion

6  provision.  We were seeing more of it.  And our

7  medical staff and myself and the re-insurers did

8  not feel, because the medical awareness of latex

9  allergy was becoming more of an issue I think

10  since the HIV thing and gloving and that sort of

11  thing.  And so therefore there was more use of

12  latex, and we were seeing more reaction to it.

13            So it became, it was kind of a

14  progressive thing after that because of the

15  market we were working in.

16       Q.       On the second page of Exhibit 21

17  there is a section that has a heading of Latex

18  Allergy.  Do you see that?

19       A.       Yes, I do.

20       Q.       And do you see where there is a

21  sentence, the first sentence says "we reiterated

22  that our current policy is to decline all cases

23  mentioning a latex allergy."  And all is

24  underlined?

**DONALD O. MORGAN**
**September 21, 2005**

Page 18

1         A.     Yes.

2         Q.     Was it Berkshire's policy to

3  decline all cases mentioning a latex allergy in

4  2002?

5         A.     Yes, it was.  But remembering that

6  our almost exclusive market was in the medical

7  field.  That's what the all meant.

8         Q.     And for how long -- strike that.

9             You see the phrase "we reiterated"?

10        A.     Right.

11        Q.     Is it correct that even before

12 September of 2002, the date of this memo, it was

13 a policy of Berkshire to decline an application

14 in which there was a latex allergy mentioned?

15        A.     Yes, that's correct.

16        Q.     And did you participate in the

17 development of the policy to decline to insure

18 individuals with latex allergy?

19        A.     Yes, I did.

20        Q.     Was it your view that Berkshire

21 should not issue policies to individuals who had

22 a latex allergy -- strike that.

23            Was it your view at the time the

24 policy was developed that there was too great a

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**DONALD O. MORGAN**
**September 21, 2005**

Page 19

1    risk for the company in insuring individuals

2    where a latex allergy was mentioned?

3        A.      Yes.

4        Q.      **Why was that?**

5        A.      Again, considering in the context

6    that our market was predominantly medical, and

7    the development of non-latex products was

8    relatively new at that point in time, the

9    environmental concerns were such that these

10    professionals really could not avoid contact

11    with latex in the majority of the medical

12    situations and the dentist.

13        Q.      **Was it your view in developing the**

14    **policy regarding latex, that there was a**

15    **substantial risk to the company that if an**

16    **individual in the medical profession had a latex**

17    **allergy and obtained disability insurance, that**

18    **the individual would be filing a claim?**

19            MR. KIMBALL:  Objection to the form

20        of the question.  It's compound.

21            THE WITNESS:  I'm not sure where

22        you are going.

23        Q.      (By Ms. D'Alcomo)  **When you helped**

24    **developed the policy regarding latex allergy,**

**DONALD O. MORGAN**
**September 21, 2005**

Page 20

1  you were taking into account the risk to the

2  company of accepting the policy for people who

3  had a latex allergy, correct?

4        A.     Correct.

5        Q.     Was it your position in developing

6  the policy regarding the insuring individuals

7  with latex allergy, that the company would be

8  taking too great a risk in issuing disability

9  policies to individuals with latex allergy?

10        A.     Yes.

11        Q.     During the time that you were

12  working actively in the underwriting area at

13  Berkshire, did your position ever change?

14        A.     My job?

15        Q.     I'm sorry.  That's an ambiguous

16  question.

17             You stopped working actively in the

18  underwriting area in May 2004, correct?

19        A.     Right.

20        Q.     As of May 2004 had your position

21  regarding what the company should do as to

22  issuing policies to individuals with latex

23  allergy ever change?

24        A.     I think I explained earlier, it was

**DONALD O. MORGAN**
**September 21, 2005**

Page 22

1     A.    Yes.

2     Q.    "We do not consider applications

3 from individuals indicating latex allergies."

4 Correct?

5     A.    Yes.

6     Q.    Was that discussed at an

7 underwriting management meeting on August 7,

8 2003?

9     A.    Yes.

10     Q.    In parenthesis you refer to "bad

11 claim experiences."  Do you see that?

12     A.    Yes.

13     Q.    What did you mean by the reference

14 to "bad claim experiences" in the section of the

15 memo that refers to latex?

16     A.    It was my understanding that

17 industry-wide, latex allergies were presenting

18 more and more often in a negative claims

19 situation.

20     Q.    By that do you mean that more and

21 more often individuals were filing claims on

22 their disability policies claiming they were

23 unable to work?

24     A.    Right.  Correct.