Exhibit 1

Case Review

Carolyn Mirek

File No. 55549
Claim No. 437003 - Policy No. G723670

March 12, 2005

James R. Garb, M.D.

SS# 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

CLAIMS MAR 1 4 2005

CL 20B

RE: Carolyn Mirek
Page 1

## Introduction

This report is based on a review of the medical records furnished to me on Carolyn Mirek as requested by Samuel Haupt of the Berkshire Life Insurance Company of America. The purpose of this report is to assist in the understanding of Ms Mirek's medical condition and any current basis for occupational impairment as a result of this condition. The report addresses six specific questions posed by Mr. Haupt.

## Case Summary

Carolyn Mirek is a 41 year old dental hygienist who began having symptoms consistent with latex allergy as early as 1992, and was formally diagnosed with latex allergy in 1999 on the basis of a positive latex skin prick test. She also has diagnoses of rhinitis, seasonal allergies and asthma. She eventually filed a disability claim for latex allergy, her last day of work as a dental hygienist being December 27, 2001. Shortly thereafter, she began working as a sales representative for a dental supply company.

## Questions Posed by Mr. Haupt:

*1. Is the claimant at significant incremental risk for anaphylaxis or other serious medical emergency if she were to return to work in a dental practice as opposed to routine exposure in ADL's?*

Although the natural history of natural rubber latex (NRL) allergy is not fully understood, most experts believe that the allergic reactions to latex can become more severe with continued exposure. That said, latex is fairly ubiquitous in our non-work environments, and the list of commonly used household products that may contain latex includes, but is not limited to, the following: rubber toys, athletic shoes, racquet handles, erasers, rubber bands, tires, household gloves, rubber mats, elastic bands on clothing, adhesives, balloons, condoms, and diaphragms.[1] Exposure to these and other latex items can result in symptoms of latex allergy. By contrast, a dental practice is a setting where the use of latex can be effectively eliminated, as explained in the response to question three below, thereby eliminating the ongoing occupational exposure to latex and the potential for severe allergic reactions or the progression of symptoms due to work.

*2. Is it likely that the claimant's asthma and rhinitis can be controlled with adequate and appropriate medication?*

Ms Mirek's asthma and allergic rhinitis appear to be mild. Pulmonary function tests on 5/21/92 and 2/14/94 showed very mild obstructive changes, however follow-up pulmonary function tests done on 5/21/96, 5/20/97, 3/31/99, 6/5/01, 6/15/01, 10/11/01, and 12/23/02 were all normal. Her rhinitis has responded to the routine measures, as indicated by Dr. Bedard in his note of 7/13/00: "Minor allergic sx the same. Easily controlled by Flonase." These allergic symptoms should be easily controlled with adequate and appropriate medication.

**CLAIMS    MAR 1 4 2005**

CL 20C

RE: Carolyn Mirek
Page 2

**3. Is it likely that the claimant's sensitivity to latex could be accommodated in an average dental practice by excluding items containing latex in the office?**

As indicated above, when compared to other medical settings such as a hospital operating room, it is relatively easy to eliminate latex from a dental operatory. Latex gloves, the most significant source of exposure to latex aeroallergens, can be eliminated for all staff (not just the affected individual), and synthetic gloves such as nitrile can be worn instead. Dental dams, traditionally made of rubber, are now available in non-latex materials. Non-latex prophy cups and stainless steel saliva ejector tips are available. Medications such as lidocaine and epinephrine can be purchased in glass ampules to avoid latex vial stoppers, although many companies are now making their vial stoppers of non-latex materials as well. Syringes that do not contain latex are available. Impression material and their holders, as well as other dental materials such as composite resins do not contain latex. If rubber mouth props are necessary, they can be wrapped in a nitrile glove and tied with floss prior to use.[2]

Indeed, latex-free dentistry is not a new concept. An average dental practice should be able to eliminate the use of latex, making it safe for an employee who is allergic to latex to work there, as well as safe for patients with latex allergies. Please refer to information in Addendum.

**4. If the claimant's sensitivity to latex were accommodated by excluding items containing latex, would there be any incremental risk of illnesses compared to routine exposure to ADL's?**

The efforts made by Ms Mirek's employer appear to have consisted of providing her with non-latex gloves, while the rest of the staff continued to wear latex gloves. There is no indication in the records provided to me that any other work practice changes were made in her place of employment. The glove change appeared to have helped her symptoms for a period of time. However much more can be done to eliminate latex from a dental practice, thereby eliminating any further risk from occupational latex exposure.

If the steps outlined above were followed, Ms Mirek would be at no increased incremental risk of illness from latex exposure at work.

The reduction or elimination of occupational latex exposure has been shown to reduce or eliminate symptoms of latex allergy in affected healthcare workers. As reported by Fett Ahmed et al, in 36 latex-sensitive workers with well documented occupational asthma who reduced or avoided latex exposure, significant lessening of asthma and decreased bronchial hyperreactivity were noted after a median follow-up of 56 months. Latex specific IgE levels decreased in six of seven healthcare workers who avoided use of powdered latex gloves for 12 months. Twenty-six latex sensitized anesthesiologists who avoided uses of latex gloves for 10 to 15 months became asymptomatic, and 16 of them had decreased levels of latex specific IgE.[3]

CLAIMS   MAR 14 2005

CL 20D

RE: Carolyn Mirek
Page 3

Latex use can also be effectively eliminated in the home, however it is much more difficult to control the non-occupational environment outside of the home as regards ongoing exposure to latex products.

**5. Is the claimant impaired such that she is currently incapable of functioning as a dental hygienist?**

Although I do believe Ms Mirek is allergic to latex, she is fully capable of working as a dental hygienist in a practice that avoids using latex items, because there would be no ongoing occupational exposure to latex.

**6. Are there reasonable restrictions that would preclude the claimant from working as a dental hygienist in a practice that avoided latex items?**

If the measures outlined in the response to question number 3 above were implemented, I do not believe that any further work restrictions would be necessary for Ms Mirek. I believe that she could continue to work as a dental hygienist in such a practice. I further believe that the accommodation of eliminating latex from a dental practice would be considered reasonable for an employer to implement.

_____          3/12/05
James R. Garb, M.D.                      March 12, 2005
SS # 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

Mirek.doc

CLAIMS  MAR 1 4 2005

CL 20E

References

1. Spina AM Levine HJ, Latex Allergy, A review for the dental profession, Oral Surg Oral Med Oral Pathol Oral Radiol Endod;87:5-11, 1999.

2. Baine EI, Nurse with Latex Allergy Prompts Dentist to Change to Latex Safe Practice, Massachusetts Nurses Association, 1999. available on line at http://www.massnurses.org/News/1999/990120/latex.htm

3. Fett Ahmed DD et al, Occupational allergies caused by latex, Immunology and Allergy Clinics of North America, 32(2): May 2003

CLAIMS MAR 14 2005

CL 20F