UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>   Plaintiff<br><br>v.<br><br><br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>   Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action<br>) No. 04-30166-MAP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR AN ADVERSE INFERENCE INSTRUCTION DUE TO DEFENDANTS' FAILURE TO COMPLY WITH THE COURT'S ORDER REGARDING 30(B)(6) TESTIMONY**

Plaintiff Carolyn Mirek moves, pursuant to Federal Rule of Civil Procedure 37(b), for an adverse inference instruction to the jury related to Berkshire Life Insurance of America's ("Berkshire") failure to produce a knowledgeable 30(b)(6) deponent. This exact sanction was applied in a virtually identical situation last year in the case of Denmark v. Liberty Life Assurance Co., 2005 WL 3008684 (D. Mass. Nov. 10, 2005) (Woodlock, J.).

This motion relates to four topics on which the Court ordered deposition testimony. Each of the topics involves Berkshire's relationship with MLS National Medical Evaluation Services ("MLS"), a company that Berkshire used to locate a doctor to evaluate Ms. Mirek's claim. Plaintiff has asked the Court for an adverse inference instruction that every time Berkshire used MLS to choose a doctor to evaluate a disability claim, the doctor concluded that the claimant was not disabled.

### I. Background Regarding The 30(b)(6) "MLS" Subjects

On September 1, 2005, plaintiff served a 30(b)(6) deposition notice to Berkshire. See Exhibit A. On September 9, 2005, Berkshire[1] moved for a protective order with respect to most of the topics, including topics 20-25 which all involve the relationship between Berkshire and MLS.[2] See Docket No. 23. Defendant's motion for protective order was predicated on the argument that the topics were irrelevant.

---

[1] Defendant Guardian Life Insurance Company of America also participated in the motion.

[2] MLS National Medical Evaluation Services, Medicolegal Services, Inc.; and Medicolegal National I.M.E. Services, Inc. are related entities. The 30(b)(6) subjects involving MLS are:

    20. The terms of any contracts, agreements or business arrangements between either Berkshire Life or Guardian Life Insurance Company of America and any of the following since January 1, 1990:
    (a)    MLS National Medical Evaluation Services;
    (b)    Medicolegal Services, Inc.; and
    (c)    Medicolegal National I.M.E. Services, Inc.

    21. The frequency with which, since January 1, 1985, either of the defendants has done business with any of the following and the nature of the service, if any, provided:
    (a)    MLS National Medical Evaluation Services;
    (b)    Medicolegal Services, Inc.; and
    (c)    Medicolegal National I.M.E. Services, Inc.

    22. The total amount paid, by or on behalf of Berkshire or Guardian, by year or other time period, since January 1, 1995 to:
    (a)    MLS National Medical Evaluation Services;
    (b)    Medicolegal Services, Inc.; and
    (c)    Medicolegal National I.M.E. Services, Inc.

    23. The number or percentage or proportion of claims referred to MLS National Medical Evaluation Services, Inc., for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by MLS National Medical Evaluations Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

    24. The number or percentage or proportion of claims referred to Medicolegal Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that resulted in a recommendation, finding or conclusion contained in a report sent by Medicolegal Services, Inc. to Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company, that the claimant at issue was not disabled or that there was not a supportable basis for the claim;

    25. The number or percentage or proportion of claims referred to Medicolegal National I.M.E. Services, Inc. for any time period since January 1, 1995 by Berkshire Life Insurance Company of America and/or Guardian Life Insurance Company of America that results in a recommendation, finding or conclusion contained in a report sent by Medicolegal National I.M.E. Services, Inc. to Berkshire Life Insurance Company of

On October 20, 2005, the Court held as follows: "Motion for protective order DENIED, with the admonition that Pltf. restrict discovery to matters relevant to Count One." See Docket entry October 20, 2005. When Plaintiff re-noticed the deposition, Berkshire again refused to produce witnesses for many topics, including Topics 20-25.

Plaintiff filed a new motion to compel the 30(b)(6) deposition testimony. See Docket No. 38. In response, Berkshire stated it would now produce witnesses for topics 20 and 22, which asked for information about contracts and payments made between Berkshire and MLS. See Docket No. 41. Berkshire stated that it was still unable to produce deponents for topics 21, 23, 24 and 25, which asked for the frequency and results of Berkshire's use of doctors found through MLS, because it would be too burdensome. In support of this argument, Berkshire produced a new affidavit from its employee, Peter A. Palleschi, which stated that the only manner by which the information could be obtained would be through a manual review of claims files back to 1985, which would take over 11,700 hours. See Docket No. 41, Ex. 6 at ¶ 20.

Plaintiff pointed out in reply that there would be numerous other ways to competently testify as to topics 21, 23, 24 and 25 without a manual review of claims files, most notably by using accounting records. See Docket No. 42. Magistrate Judge Neiman heard arguments on this motion, and stated at the hearing that the motion to compel "is allowed with regard to items 21, 22, 23, 24 and 25, to the extent that you need to produce, it could be the affiant that you had to address why he is unable to produce the data that's requested in those items." Transcript of Hearing (Mar. 1, 2006) at 54, Ex. A. The subsequent order of the court stated that the motion to compel was "ALLOWED

---

America and/or Guardian Life Insurance Company, that the claimant at issue is not disabled or that there is not a supportable basis for the claim;

3

with! regard to items 21, 23, 24, and 25 in the deposition notice, Defendants to produce a deponent or deponents who can respond to the inquiries and/or describe the efforts which would have to be undertaken to respond." Unnumbered March 1, 2006 Docket Entry.

On April 4, 2006, the parties agreed to a stipulation as to topic 22, indicating that Berkshire only made payments to MLS from 2002 to 2004. See Stipulation (signed April 6, 2006), Ex. B. The information in the stipulation cast serious doubt on the credibility of Mr. Palleschi's earlier affidavit, particularly with respect to the claim that it would be necessary to review over 20 years of claims files to respond adequately to the topic. Plaintiff's counsel emailed Defense counsel with reservations about whether Mr. Palleschi would be a competent 30(b)(6) deponent on those topics given the new information provided. See Email from Seth E. Nesin to Edward K. Kimball (April 4, 2006), Ex. C.

On April 11, 2006, Berkshire produced Mr. Palleschi to testify as to Topics 21, 23, 24 and 25. Mr. Palleschi was unable to testify as to the substance of any of those topics.

## II. Argument

### A. 30(b)(6) Deponents Have A Legal Obligation To Prepare Adequately So That They Can Speak Knowledgably About Their Designated Subjects

When 30(b)(6) designees "do not possess personal knowledge of the matters set out in the deposition notice, the corporation ***is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation***." McLellan Highway Corp. v. U.S., 95 F. Supp. 2d 1, 9 (D. Mass 2000) (quotation omitted and emphasis added). A corporate representative is required to "review all matters known or reasonably available to [her] in preparation for the 30(b)(6) deposition." Calzaturficio

4

S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc., 201 F.R.D. 33, 36 (D. Mass. 2001). Allowing a "half-hearted inquiry before the deposition" would "totally defeat the purpose of the discovery process." Id. A corporation "does not fulfill its obligations at the Rule 30(b)(6) deposition by stating that it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available." Id. Information that is "reasonably available" is that which is "in a party's control." Id. at 39.

Chief Magistrate Judge Swartwood recently discussed the duties of a 30(b)(6) witness in Briddell v. St. Gobain Abrasives, Inc., No. 04-CV-40146, 2005 WL 3065925 at *3 (D. Mass Nov. 10, 2005). In that employment discrimination case, the defendant resisted providing a 30(b)(6) witness because, among other reasons, it claimed it was burdensome for the deponent to adequately prepare to testify about subjects for which he had no personal knowledge. Id. at *1. Judge Swartwood rejected the defendant's argument, holding that the burden is on the corporate deponent to "make a conscientious good-faith endeavor to . . . prepare [its designee(s)] in order that they can answer fully, completely, unevasively." Id. at *3 (quotation omitted). The Court held that "the deponent must use documents, past employees, and other resources in performing this required preparation." Id. The defendant was obligated to prepare its witness (and compile documents related to an associated document request) despite the fact that it would take "175-200 hours." Id. at *4. The Court was unmoved by the defendant's burden because "[c]ourts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery." Id.

The duties of a Rule 30(b)(6) deponent are designed to prevent the litigation strategy of "bandying," whereby a witness disclaims knowledge of facts that are clearly known to other persons in the organization, thereby depriving the opposing party of information that the corporation knows. See Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing Fed. R. Civ. Proc. 30(b)(6) Advisory Committee Notes, 1970 Amendment). The testimony of a 30(b)(6) deponent "***represents the knowledge of the organization . . . not of the individual deponents***." McLellan Highway Corp., 915 F. Supp. at 9 (emphasis added).

### B. Berkshire Deliberately Chose a 30(b)(6) Witness With No Knowledge Of The Subject Matter And Made No Effort To Prepare Him To Provide Substantive Testimony

Mr. Palleschi's job involves developing computer systems for the claims department. See Deposition Transcript of Peter A. Palleschi (4/11/2006) ("Palleschi Dep.") at 8, Ex. D. His job does not provide him with any specific knowledge of MLS or Berkshire's relationship with MLS. Palleschi Dep. at 48-49, Ex. D. He explicitly acknowledged at his deposition that he knew nothing about the subject matter of any of the topics he was designated to testify about. Palleschi Dep. at 11-12, Ex. D. Despite his lack of knowledge, his only preparation was meeting with counsel -- he had no interaction with anybody else at Berkshire to ascertain information about the topics on which he was produced as a 30(b)(6) witness (and on which he initially provided an affidavit). Palleschi Dep. at 14, Ex. D. Prior to his deposition, Mr. Palleschi had never even seen Berkshire's stipulation that they had only paid money to MLS from 2002 to 2004. Palleschi Dep. at 16, Ex. D. Mr. Palleschi never considered any other alternative methods of obtaining information about Berkshire's use of MLS other than a manual review of all the claims files. Palleschi Dep. at 65, Ex. D. Mr. Palleschi brought no

6

documents to his deposition. There is simply no question that he was unable to testify as to his designated topics.

Berkshire's counsel has suggested that Mr. Palleschi was an appropriate witness because the Court ordered production of "a deponent or deponents who can respond to the inquiries and/or describe the efforts which would have to be undertaken to respond." Unnumbered March 1, 2006 Docket Entry. According to this interpretation of the Court's order, Berkshire was free to produce a deponent to "describe the efforts which would have to be undertaken to respond," even if Berkshire could have produced a deponent capable of testifying as to the deposition topics. This interpretation conflicts with Magistrate Judge Neiman's statements at the hearing and with the general purpose of discovery.

At the hearing in which Berkshire was compelled to produce a witness as to these subjects, Magistrate Judge Neiman stated that the motion to compel "is allowed with regard to items 21, 22, 23, 24 and 25, ***to the extent that you need to produce***, it could be the affiant that you had to address why he is unable to produce the data that's requested in those items." Transcript of Hearing (Mar. 1, 2006) at 54, Ex. A. (emphasis added). Magistrate Judge Neiman's clear intent was to permit Berkshire to produce a deponent about the difficulty responding to the topic only if it were impossible to testify as to the subject matter of the topics. It is clearly evasive to produce such a witness if there are other individuals that could testify competently as to the substance of the deposition topics.

Berkshire has ample information that Mr. Palleschi did not consult in preparing his affidavit or preparing for his deposition. Berkshire's accounting department was able

7

to produce a chart representing the total payments made to MLS since 1995, and all of the payments took place between 2002 and 2004. See Stipulation, Ex. B. It seems likely that the accounting department could also have tracked the specific claims in which these payments were made, but no effort was made to do so. Mr. Palleschi did not contact the accounting department in preparation for his deposition. Palleschi Dep. at 14, Ex. D. Another 30(b)(6) witness, Brian Donnelly, testified that he started working at the company in 2001, and remembers when Berkshire first started using MLS's services. Deposition of Brian M. Donnelly (April 10, 2006 10:00 a.m.) at 74-77, Ex. E. Mr. Palleschi did not consult with Mr. Donnelly or anyone else to ascertain the time period in which Berkshire used MLS. Palleschi Dep. at 14, Ex. D. Numerous claims consultants presumably could have at least provided anecdotal evidence as to the frequency with which MLS was used and the outcome of those medical evaluations. But Mr. Palleschi did not talk to any of them. Palleschi Dep. at 14, Ex. D.

### C. An Evidentiary Sanction Identical To The One Imposed By Judge Woodlock In A Similar Case is Appropriate

Federal Rule of Civil Procedure 37(b)(2) provides for sanctions where "a person designated under Rule 30(b)(6) . . . fails to obey an order to provide or permit discovery." The failure of a corporation to designate a person with knowledge subjects it to sanctions. See, e.g. Resolution Trust Co. v. Southern Union Co., 985 F.2d 196, 197 (5th Cir. 1993). The failure to adequately prepare a deponent also subjects an entity to sanctions. See Bank of N.Y. v. Meridien Biao Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997). Many courts have made the analogy that an unprepared 30(b)(6) witness is equivalent to an absent 30(b)(6) witness. See, e.g., Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 303 (3rd Cir. 2000) ("If the agent [of a corporation] is not

knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."); Alexander, 186 F.R.D. at 151 ("Clearly, a deponent that does not know about the relevant subject matter is useless as a deponent at all."). The First Circuit has held in the past that failing to produce a 30(b)(6) witness can be fatal to a party's case. Atlantic Cape Fisheries v. Hartford Fire Ins. Co., 509 F.2d 577, 579 (1st Cir. 1975) (affirming dismissal of case due to plaintiff's failure to designate and make available a 30(b)(6) deponent).

The appropriate sanction is in the discretion of the Court, and courts in this jurisdiction and elsewhere have sanctioned offending parties in various ways. Big Top USA v. Wittern Group, 183 F.R.D. 331, 343 (D. Mass. 1998) (dismissing plaintiff's case against two defendants due to discovery violations including the failure of plaintiff's 30(b)(6) deponent to provide substantive answers in deposition). United States v. Mass. Indus. Fin. Agency, 162 F.R.D. 410 (D. Mass. 1995) (granting additional interrogatories and requests for production due to incomplete 30(b)(6) testimony); Calzaturficio S.C.A.R.P.A. s.p.a., 201 F.R.D. at 41. (ordering another deposition and reserving the issue of whether it would be taken "at the corporation's expense.").

In this case, the most appropriate sanction would be an adverse jury instruction that every time Berkshire referred a claim to MLS, it resulted in a doctor's opinion that the claimant was not disabled. This exact sanction was applied in a virtually identical situation last year in the case of Denmark v. Liberty Life Assurance Co., 2005 WL 3008684 (D. Mass. Nov. 10, 2005) (Woodlock, J.). The Denmark case, brought under ERISA, also involved a plaintiff whose claim for benefits was denied. Id. at *1. The

9

insurer in <u>Denmark,</u> Liberty Life Assurance Company of Boston ("Liberty") also sent the claimant's file to a vendor, Network Medical Review – Elite Physicians ("NMR"), who located a doctor to do a medical review. <u>Id.</u> at *5. The doctor in <u>Denmark</u> similarly opined that the claimant was not disabled. <u>Id.</u> And just as in this case, the plaintiff in <u>Denmark</u> asked for information about the relationship between the vendor and the insurance company, so as to examine any potential biases. Id. at *10-*11.

Judge Woodlock ordered Liberty to respond to discovery about the number of claims referred to NMR and the results of those referrals. <u>Id.</u> at *11. And just like in this case, the insurance company refused to comply with the court's order. <u>Id.</u> Due to Liberty's recalcitrance, the court imposed a sanction "draw[ing] the inference suggested by the Plaintiff, namely that NMR has not found in favor of a single claimant in connection with the 1,204 Liberty files referred to NMR during the years 2001-2003." <u>Id.</u> The same sanction is appropriate in this case.

In this case, such a sanction is particularly appropriate given the wild goose chase the plaintiff has had to undertake to obtain this information. Berkshire initially moved for a protective order claiming that the topics were irrelevant. When the motion for protective order was denied, Berkshire continued to resist producing witnesses, forcing plaintiff to move to compel the testimony. In response to that motion, Berkshire produced Mr. Palleschi's affidavit, which for the first time, over 3 months after the deposition was originally noticed, indicated that the testimony would be impossible because it would require thousands of hours of preparation. When Plaintiff's counsel later learned that Berkshire had only used MLS from 2002-2004, he immediately emailed Defense counsel to advise that, in light of the new information, testimony relying on Mr.

Palleschi's affidavit would be a dereliction of Berkshire's duty to produce a knowledgeable witness, yet Berkshire still produced Mr. Palleschi and did not even prepare him with the most basic information as to the topics – namely that Berkshire had only used MLS from 2002-2004. Berkshire should not be permitted to ignore a direct order of the Court without consequence.

      Respectfully submitted,

      PLAINTIFF CAROLYN MIREK

      By her Attorneys,

      /s/ Seth Nesin
      _____
      Joanne D'Alcomo
      BBO #544177
      Seth Nesin
      BBO #650739
      JAGER SMITH P.C.
      One Financial Center
      Boston, MA 02111
      (617) 951-0500

<u>Statement Pursuant to Local Rule 37.1(B)</u>

A discovery conference was held by telephone on June 13, 2006. Seth Nesin, representing Carolyn Mirek, and Kate Parsons, representing the Defendants, participated in the conference. Mr. Nesin was at his office in Boston and Ms. Parsons was at her office in Springfield. The conference lasted a total of approximately 10 minutes. The issues not resolved are set forth in this memorandum.

      /s/ Seth Nesin
      Seth Nesin