# EXHIBIT D

**PETER PALLESCHI**
**April 11, 2006**

 ORIGINAL

```
                                                          Page 1

 1              UNITED STATES DISTRICT COURT

 2                 District of Massachusetts

 3              Civil Action No. 04-30166-MAP

 4

 5

 6   ******************************

 7   CAROLYN MIREK,                     *

 8            Plaintiff                 *

 9   vs.                                *

10   THE GUARDIAN LIFE INSURANCE        *

11   COMPANY OF AMERICA and             *

12   BERKSHIRE LIFE INSURANCE           *

13   COMPANY OF AMERICA,                *

14            Defendants                *

15   ******************************

16

17         DEPOSITION OF:  PETER PALLESCHI

18         BERKSHIRE LIFE INSURANCE COMPANY

19                  700 South Street

20              Pittsfield, Massachusetts

21          April 11, 2006       10:30  A.M.

22

23                 Sharon Waskiewicz

24                   Court Reporter
```

**PETER PALLESCHI**
**April 11, 2006**

Page 8

1      the most knowledgeable to those entities, you
2      can respond.
3              THE WITNESS:  I don't know who would be
4      most knowledgeable in that relationship.
5      Q.      (By Mr. Nesin)  Do you know how to
6  find out who was the most knowledgeable?
7              MR. KIMBALL:  I have the same objection.
8              THE WITNESS:  No.
9      Q.      (By Mr. Nesin)  When your attorney
10 objects, unless he instructs you not to answer,
11 you can answer the question.
12     A.      Okay.
13     Q.      What is your job at Berkshire?
14     A.      I am a senior business analyst.
15     Q.      What does that job entail?
16     A.      I am responsible for the planning,
17 development, and execution of projects, mainly
18 systems projects within the claims department.
19     Q.      When you say "systems projects," does
20 that mean computers; what does that mean?
21     A.      Yes.  That means our claims system.
22     Q.      So would you describe your work as
23 somewhat in the IT department or is this a
24 separate entity within Berkshire?

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

PETER PALLESCHI
April 11, 2006

Page 11

```
 1      that we are talking about topics in this
 2      deposition.
 3           If you understand Mr. Nesin's point,
 4      please feel free to answer it.
 5           THE WITNESS:  I'm not sure what you are
 6      asking.
 7      Q.    (By Mr. Nesin)  Deposition Topic No.
 8   21 asks about the frequency with which the
 9   defendants have done business with MLS.  Do you
10   have any knowledge of what that frequency is?
11      A.    I do not, no.
12      Q.    Do you have any knowledge as to when a
13   relationship began between Berkshire and/or
14   Guardian and MLS?
15      A.    No.
16      Q.    Do you have any knowledge as to
17   whether the relationship between MLS and either
18   Guardian or Berkshire ended at any time?
19      A.    No.
20      Q.    Deposition Topic No. 23 asks about the
21   percentage or proportion of claims referred to
22   MLS by Berkshire and/or Guardian.  Do you have
23   any knowledge with respect to that subject?
24      A.    No.
```

**PETER PALLESCHI**
**April 11, 2006**

Page 12

1  Q.   Okay.  No. 24 and 25 asks the same
2  question with respect to two other entities
3  affiliated with MLS.  Do you have any knowledge
4  with respect to those two subjects?
5  A.   No.
6  Q.   Did you produce an affidavit in this
7  litigation with respect to what would need to be
8  done to answer some of the deposition topics?
9  A.   Yes.
10      MR. NESIN:  Mark this as the next
11   exhibit.  It is 71, I believe.
12
13      (Exhibit PP-76, Palleschi affidavit, marked)
14
15  Q.   (By Mr. Nesin)  Is this the affidavit,
16  Exhibit 71, that you indicated that you drafted
17  in this litigation?
18      MR. KIMBALL:  I am going to object to
19   that question as misstating the testimony of
20   the witness.  I would also ask the witness to
21   review the declaration to insure that it is,
22   in fact, the declaration that he did sign.
23      THE WITNESS:  It looks correct.
24  Q.   (By Mr. Nesin)  How did you come to

1    A.    Based upon the topics given and
2    specific dates that were there, I gave
3    conservative estimates based on the number of
4    files applicable to those specific topics.
5    Q.    Did you talk to any claims reps or
6    claims consultants about deciding whether
7    Berkshire would be able to ascertain the
8    information requested?
9    A.    No.
10   Q.    Did you talk to anyone in the
11   accounting department about whether Berkshire
12   would be able to ascertain the information
13   requested?
14   A.    No.
15   Q.    Other than counsel, did you talk to
16   anyone at Berkshire with respect to how Berkshire
17   might ascertain that information?
18   A.    No.
19   Q.    Have you ever submitted a similar
20   affidavit in the past in a different litigation?
21   A.    No.
22   Q.    Do you have any idea why you were
23   chosen to draft or to sign this particular
24   affidavit for this litigation?

PETER PALLESCHI
April 11, 2006

Page 16

1  of every claim file since January 1, 1985.
2         Do you still believe that to be true?
3     A.    Yes.
4     Q.    Do you think that there is any other
5  way by which the number of claims reviewed could
6  be narrowed down?
7         MR. KIMBALL:  I am going to interject
8     and objection as to the question being vague
9     and ambiguous.  I'm not sure what the number
10    of claims being reviewed or narrowed down
11    refers to in the content of the topics listed
12    in the 30B6 notice.
13        THE WITNESS:  Not that I'm aware of,
14    no.
15        MR. NESIN:  Can we mark this as the
16    next exhibit?  It is the stipulation
17    regarding Topic 22.
18
19        (Exhibit PP-72, stipulation regarding
20         Topic 22 marked)
21
22    Q.    (By Mr. Nesin)  Have you ever seen
23  this document marked as Exhibit 72?
24    A.    No.

Page 48

1  2002?
2      A.   No.
3      Q.   Why not?
4      A.   I don't know what information that
5  president is basing his statement on.
6      Q.   When you filed your affidavit, did you
7  really make any attempt to ascertain the
8  information requested in the deposition topics?
9      A.   Yes.
10     Q.   Why didn't you call up someone like
11 Mr. Donnelly and ask if he knew when you started
12 using MLS?
13     A.   Mr. Donnelly isn't the best person to
14 answer that question.
15     Q.   Who is the best person to answer that
16 question?
17     A.   I think it would be me.
18     Q.   But you don't have any specific
19 knowledge of MLS or the relationship between
20 Berkshire and MLS; is that correct?
21     A.   That's correct.
22     Q.   So why would you be the most likely
23 person to have the information about when
24 Berkshire started using MLS?

**PETER PALLESCHI**
**April 11, 2006**

Page 49

1  A. I think that based upon my experience
2  and knowledge, we would need to go through and
3  look at every single claim file back to 1985.
4  And given my project manager background, I would
5  be the best person to go through and do that.
6  Q. Doesn't that strike you as a somewhat
7  inefficient way to answer the questions posed by
8  these deposition topics?
9  A. No.
10  Q. In one of the other deposition topics
11  that you did not produce an affidavit about, they
12  asked for information about the treatise, medical
13  journals, articles, manuals, memoranda,
14  directives, guidelines, practices and policies,
15  used by Berkshire since 1988 with respect to
16  latex allergies. Do you think it would be
17  possible for Berkshire to find out that
18  information?
19       MR. KIMBALL: Objection. It calls for
20  speculation. Obviously, this witness has not
21  been designated as to the topic which counsel is
22  referring to, which I believe it is Topic No. 16.
23  It calls for speculation.
24       THE WITNESS: I don't know.

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

1    information.

2       Q.   So at first you thought about how many

3    files there were and how long it would take to

4    look through a file, and then you were ready to

5    draft the document.  Is that an accurate

6    reflection of the preparation?

7       A.   Yes.

8       Q.   Did you ever consider any other

9    possible way to obtain this information or

10   tabulate this information other than by reviewing

11   all the claims files?

12      A.   I think that the best approach to find

13   out this information is to review all the claims

14   files.

15      Q.   Did you ever consider any other

16   alternatives?

17      A.   This is the best manner in which to do

18   it.  Other alternatives would not be as accurate,

19   in my mind, as this one.

20      Q.   I didn't ask that.  I asked whether

21   you considered any alternative ways to obtain

22   this information?

23      A.   No.

24           MR. NESIN:  That is all the questions