# Exhibit 1

 MASSACHUSETTS
GENERAL HOSPITAL

 HARVARD
MEDICAL SCHOOL

1101 Beacon Street
Four West
Brookline, Massachusetts 02446
Tel: 617.232.1704, Fax: 617.232.3280

**L. Christine Oliver, MD, MPH, MS**
*Associate Physician*
*Pulmonary and Critical Care Unit*

November 9, 2005

Joannne D'Alcomo, Esq.
Jager Smith PC
Counselors At Law
One Financial Center
Boston, MA  02111

RE:  Carolyn S. Mirek – DOB 09/21/63, Social Security # 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

Dear Ms. D'Alcomo:

    I am writing with regard to my medical evaluation of Ms. Mirek. My findings and opinions are provided below. These are based upon history obtained and physical examination performed by me at the time of Ms. Mirek's visit to my office at the Massachusetts General Hospital (MGH) on June 7, 2005, the results of lung function testing at the MGH on the same day, and my review of medical records and a deposition transcript forwarded to me by your office. Medical records include those from the offices of Dr. Robert M. Bedard of Connecticut Asthma & Allergy Center LLC in West Hartford, CT; Drs. Joseph J. Guardino, III in Manchester, CT; Dr. Daniel S. Welling of Manchester Ob-Gyn Assoc., PC in Manchester, CT; Dr. Robert Greenberg; Dr. Ivelisse Viruet of South Windsor Internal Medicine in South Windsor, CT; Dr. MDS Nissanka of Vernon, CT; Dr. H. Kirk Watson of Hartford Orthopedic, Plastic & Hand Surgeons, Inc.; Manchester Memorial Hospital in Manchester, CT; the South Windsor Ambulatory Care Center, Inc., in South Windsor, CT; and the Hartford Hospital in Hartford, CT. The deposition transcript was of testimony taken of Robert Burstein, DDS, in Springfield, MA on August 19, 2005.

    In addition, I have relied upon publications in the medical and scientific literature and upon my own professional experience. A copy of my curriculum vitae is attached.

    My opinions are rendered to a reasonable degree of medical certainty.

Medical History

    Ms. Mirek was in good health until 1986 when she developed a pruritic vesicular eczematous dermatitis involving her hands and fingers and extending up to the wrists. She was evaluated by Dr. Greenberg and contact dermatitis was diagnosed. She was

treated with steroid cream and used barrier cream and cotton liner gloves, with some improvement. At the time she was working for Dr. Jeffrey Altman and other dentists in Connecticut as a dental hygienist, having graduated from dental hygiene school in 1983. During this period the use of latex gloves in dental and medical offices and hospitals had increased dramatically because of concern about the human immunodeficiency virus and other bloodborne pathogens. The use of powdered latex gloves was common.

In the late 1980's Ms. Mirek developed additional symptoms that included itchy swollen eyes diagnosed initially as "pink eye" and then later as allergic conjunctivitis. She developed sneezing and nasal congestion. Eventually she saw an allergist who did skin prick tests for various antigens. Ms. Mirek reported that the tests were positive to "everything", but that the person who administered the tests was wearing latex gloves. She was treated with desensitization shots approximately three times per week. On one occasion she developed difficulty breathing and had to have emergency treatment with inhaled medications. After this experience she discontinued the desensitization shots and changed allergists.

Ms. Mirek's initial visit to the office of Dr. Bedard was on May 21, 1992. At that time principal symptoms were nasal congestion to the point that she was unable to breathe through her nose, cough and paroxysmal nocturnal dyspnea, and occasional "tightness". Her eyes were watery and itchy. She was not sleeping well. Present year-round but worse in the spring and fall, symptoms had been worse during the week prior to her visit. She reported allergy to pollen, dander, mold, and possibly penicillin, and nausea and vomiting after eating avocado. Medications then were occasional albuterol by metered-dose inhaler (MDI), Hismanal or Seldane, chlorpheneramine, and prednisone when needed. Dr. Bedard diagnosed "severe seasonal allergic rhinitis associated with cough." When she returned on June 18 skin testing was done which revealed positive response to tree, grass, ragweed pollen, and Alternaria mold. Chlorpheneramine was continued and a steroid nasal spray prescribed. Three months later she was seen by Dr. Bedard with increased cough, wheeze, and chest tightness in association with an upper respiratory tract infection; symptoms improved with prednisone. On August 30, 1993 Ms. Mirek presented to Dr. Bedard with increased cough for two to three weeks and wheezing. It was noted that she was better in air conditioning and worse out of doors; latex was mentioned but the note was otherwise illegible in this regard. At that time medications were Azmacort by MDI and Beconase nasal spray. Prednisone was prescribed.

A January 25, 1996 office note is largely illegible but reflects a reaction that Ms. Mirek had while working on a patient who had a cat at home; skin prick for cat was negative and a question of latex allergy was raised. Four months later she was noted to have increased cough and chest congestion and a "tinge" of wheeze, and to be waking with cough. Prednisone was again prescribed. On May 20, 1997 Ms. Mirek was diagnosed with asthma when she presented with persistent, albeit improved, cough. On April 1, 1999 she was seen by Dr. Bedard with upper respiratory tract infection and was described as exhausted. Symptoms of cough, wheeze, chest tightness, loss of voice and hoarseness, and itchy swollen eyes were worse at work. At the time she was working in

one office Monday through Thursday and a second office on Fridays. By 11 AM on Fridays she needed to use her bronchodilator. The second office was larger and busier.

On June 11, 1999 Ms. Mirek reported swelling of her lips after eating a banana. Wheeze in some offices in the past and the current use of powdered latex gloves were noted by Dr. Bedard. Skin prick testing was done for ragweed, fresh banana, banana extract, and latex using Canadian latex extract. Her reactions to ragweed and fresh banana were positive 2+ to 3+; to latex, positive 3+ to 4+; and to banana extract, negative. Dr. Bedard diagnosed latex and fruit allergies. Four days later, he noted that she had swelling of her eyes after blowing up a balloon. In a letter of June 24, 1999 he advised the use of vinyl gloves and avoidance of kiwi, mango, banana and avocado. He further advised the use of nonpowdered latex gloves by other members of her office staff. On October 7, 1999 his diagnoses are asthma and latex allergy; he notes "office powder free."

On July 13, 2000 Ms. Mirek was noted to be doing well with her own room at work and with staff that used "powder free" latex gloves; she was using nitrile gloves. On June 15, 2001, Dr. Bedard notes that her cough occurred weekly during the work week and was worse in the Bloomfield office than the South Windsor office. In his note of August 27, 2001 he notes the development of abdominal discomfort and flushing of her neck and chest after she ate salad and bit into a pita sandwich. He notes "Latex avoidance advised. Options discussed." At the time of her next visit on October 14, Dr. Bedard notes "Latex allergy. Occupational exposure low grade. Options discussed. Avoidance only option." Ms. Mirek left her work as a dental hygienist two months later in December, 2001. Subsequently the frequency of her visits to Dr. Bedard's office decreased as did the prescription of prednisone for control of respiratory symptoms.

In a letter to Richard Aries, Esq. dated September 15, 2002 Dr. Bedard describes Ms. Mirek's response to latex on June 11, 1999 as significantly positive and goes on to state "She did in my strong medical opinion develop her latex allergy causally due to her environmental exposure at the dental offices where she has worked. This additional allergic component to her rhinitis and asthma became evident in 1999 and was diagnosed appropriately."

When I saw her in June, 2005 she reported that she gradually began to feel better after she discontinued work as a dental hygienist. In January, 2002 Ms. Mirek took a job selling dental supplies and equipment. At this job she traveled with a coworker; so that she was not able to control the amount of time spent in each office. Generally, she developed a "tickle" in her throat after less than 30 minutes. Dr. Bedard notes on January 23 that she was "In and out of dental offices", with increased in cough worse at the end of the day. "Fine on weekends. Occ eye redness." He prescribed the use of Intal by MDI prior to visits to offices associated with increase in cough. In June, 2002 she went to work for another dental supply company and has continued at this job to the present time. She works three days per week, on average, in dental offices – two to ten per day. She visits these offices in the mornings when possible, spending 15 minutes to an hour in each office.

Ms. Mirek has continued to have problems when eating out, despite calling ahead to check on the use of latex gloves by food handlers. Symptoms include nausea and vomiting, abdominal bloating, diarrhea, and itchy red throat. With Benadryl she has been able to abort these attacks; but when Benadryl is not available, she has to go to hospital emergency departments for treatment. Her last reaction was in April, 2005 when she became ill when eating salad and pizza. The salad was made by someone wearing latex gloves.

There is no history of asthma, hayfever, or eczema prior the development of contact dermatitis in 1986. There is a history of allergy to clams and scallops as a young adult. Family history is negative for allergies, asthma, eczema, or hayfever. In 1989 Ms. Mirek was noted by Dr. Guardino to have dry cough at night; in 1990, bronchitis; in 1991, bronchitis and sinusitis; in 1992, sore throat and laryngitis; in 1993, acute sinusitis; in 1994, acute bronchitis; in 1995, flu; and in 1996 and 1998, acute sinusitis. Medical records of Dr. Viruet reveal needle stick at work in 2001; bronchitis and laryngitis and allergic rhinitis in February and July, 2002, respectively; laryngitis in 2004; and cough and nasal congestion in 2005. Ms. Mirek is a never smoker of cigarettes. Past medical history reveals urinary tract infection and acute pharyngitis in 2001. Cervical biopsy in April, 1999 revealed cervical intraepithelial neoplasia, grade III, for which she underwent laser ablation in May, 1999 at Manchester Memorial Hospital. In September, 2000 and March, 2001 she underwent surgery at Hartford Hospital for right and left carpal tunnel syndrome, respectively. Ms. Mirek gave birth to a healthy son in 1994 and daughter in 1997.

Family history reveals that her mother is alive and well at age 62, with a history of elevated blood pressure. Her father is 65 and well, with high cholesterol. Three brothers and a sister are alive and well. Ms. Mirek is married. Her husband works as a salesperson for a pager company.

Occupational History

Ms. Mirek graduated from Northeastern School of Dental Hygiene in 1983. From 1983 to 1985 she worked in Ohio in three different dental practices. The use of latex gloves was not common. In 1985 she moved to Connecticut and began to work part-time for several different dental practices; the total time worked was the equivalent of fulltime work. She continued in this pattern until 1994, seeing on average eight to 11 patients per day. She reported that ventilation was fair in each of these practices. In 1989 Ms. Mirek began to work on a part-time basis for Dr. Brian Mark, who died in August, 1994. In December, 1994 after Dr. Burstein took over the practice, Ms. Mired began to work on a fulltime basis for this dental office. She continued with this practice until she left her work as a dental hygienist in December, 2001 at Dr. Bedard's direction. She worked Monday through Thursday in the South Windsor office and Fridays in the Bloomfield, CT office for Drs. Peter Gassner and Gerard Graham. The Bloomfield office was larger and busier.

In the mid to late 1980's and continuing into the 1990's the use of powdered latex gloves increased in the dental offices in which she worked, consistent with increased awareness of bloodborne pathogens and universal precautions. By 1999 Ms. Mirek was using nitrile gloves and the office in which she was working was phasing out powdered latex gloves. At the time she left her job with Dr. Burstein, his office was using predominantly "powder free" latex and nonlatex gloves, but there was continuing use of the powdered latex gloves that had been on hand in the office at the time a decision was made to phase out powdered gloves.

In January, 2002 Ms. Mirek took a job with Barton-Cyker Dental Supply company selling dental supplies. As noted above, because she was traveling at this job, it was difficult for her to limit time in the offices of customers. In June, 2002 she went to work for Benco Dental. At the time I examined her in June, 2005 her office was in her home. She has set up computerized bar codes so that customers can do more ordering themselves. About three days per week, in the mornings, she visits customers. She tries to limit visits to a given customer to once a month. When working by herself, she is able to limit each visit to 15 minutes to an hour. When traveling with her "boss", it is more difficult for her to limit her time in this way. She avoids clinical areas. Ms. Mirek reported to me that although she believes she is able to do this job, she is not able to work to her full capacity because of her latex allergy.

## Physical Examination

Physical examination revealed weight of 146 lbs and normal blood pressure of 120/80 in the right arm, sitting. Skin exam was normal. Mucous membranes of her nose were swollen and erythematous. Mouth and oropharynx were injected. There was no sinus tenderness and no detectable lymph node enlargement. Her lungs were clear and heart exam was normal. There was no clubbing, cyanosis, or edema of her extremities. Neurologic exam was grossly within normal limits. Ms. Mirek was tearful when talking about the ways in which her latex allergy has limited her ability to work and made it impossible for her to care for patients.

## Pulmonary Function Tests

Lung function test results on the day of her visit to my office were normal: $FEV_1$ (L) 2.96, 104% predicted; FVC (L) 3.88, 115% predicted; $FEV_1$/FVC 0.76; PEF (L/sec) 6.85, 113% predicted; TLC (L) 5.03, 102% predicted; RV (L) 1.15, 74% predicted; RV/TLC 0.23.

Lung function tests ordered by Dr. Bedard over the time period May 21, 1992 to January 23, 2002 were normal, with varying degrees of airway reactivity to inhaled bronchodilator. At the time of her first visit to his office on May 21, 1992 pre-bronchodilator tests were as follows: $FEV_1$ (L) 3.01, 101.2% predicted; FVC (L) 3.81, 102.3% predicted; $FEV_1$/FVC 0.79; PEF (L/sec) 5.23, 82.1% predicted. Post-bronchodilator, $FEV_1$ increased 170 ml or 5.7% and $FEV_{25-75}$, 0.69 L/sec or 25.5%. On On February 14, 1994 following inhaled bronchodilator, $FEV_1$ increased from 2.93 L to

3.98 L, an increase of 5%. On March 31, 1999 there was no change after bronchodilator, with $FEV_1$ increasing from 2.92 to 2.93 L. At that time, medications included Flovent 44 µgm by MDI twice daily. On January 23, 2002 $FEV_1$ was 2.82 L, 103.3% predicted and FVC 3.42 L, 98.4% predicted, and $FEV_1/FVC$ 0.82. Tests were not obtained post-bronchodilator.

## Assessment

In summary, Ms. Mirek has a history of occupational exposure to latex during the course of her work as a dental hygienist from 1983 to 2001. Her latex exposure was limited from 1983 to 1985 and thereafter increased significantly as a result of the increasing use of powdered latex gloves in response to universal precautions introduced into health care settings in the mid to late 1980's.

In 1986 Ms. Mirek developed a pruritic eczematous hand rash in association with the use of latex gloves. In the late 1980's she developed redness, itching, and swelling of her eyes eventually diagnosed as allergic conjunctivitis. She also developed sneezing and nasal congestion. In 1992 when first seen by Dr. Bedard she had marked nasal congestion, watery itchy eyes, and cough and chest tightness. In May, 1997 Ms. Mirek was diagnosed with asthma. Temporal relationships between respiratory tract symptoms and work were noted in the medical record in April, 1999. Two months later she had a significantly positive reaction to skin prick with Canadian latex extract. She was diagnosed with latex allergy and latex avoidance was prescribed. Symptoms persisted at work, however, despite the fact that the office in which she was working went "powder free" in approximately 2000. Ms. Mirek also began to have symptoms after eating food prepared by workers wearing latex gloves. Finally, on October 14, 2001, Dr. Bedard advised Ms. Mirek that "Avoidance only option." She was forced to discontinue her work as a dental hygienist.

Presently Ms. Mirek works for a dental supply company. Most of her work is done from home. However, she must visit on a regular basis dental offices that have latex gloves and other latex-containing supplies and equipment. She is rigorous in her avoidance of latex but nevertheless has continued to have reactions to food prepared by workers wearing latex gloves and to other occult exposures such elastic bands on her children's shoes. She is also allergic to and must avoid kiwi, banana, and avocado because of cross-reactivity with latex.

*In my opinion, Ms. Mirek has latex allergy.* This opinion is based upon symptoms and history consistent with this diagnosis and positive skin prick test. In addition, she has been diagnosed with rhinitis and asthma, causally related to latex.

*In my opinion, because of her latex allergy Ms. Mirek is at increased risk for anaphylaxis and/or life-threatening attacks of asthma with re-exposure to latex, even at low levels.* Latex is a sensitizer, capable of eliciting both type I and type IV immunologic responses.[1,2] Ms. Mirek's history is one of progression of seriousness of response from eczematous hand dermatitis to conjunctivitis and rhinitis to airway hyper-responsiveness.

Latex-related eczema is caused by a type IV reaction; conjunctivitis, rhinitis, and airway hyper-responsiveness, by a type I reaction. The latter is IgE-mediated and can cause immediate and life-threatening responses such as anaphylaxis. In Ms. Mirek's case, reactions have occurred with decreasing levels of exposure, from powdered latex gloves to so-called powder free latex gloves to elastic in her children's shoes and food prepared by individuals wearing latex gloves. This acceleration of response to lower levels of exposure is consistent with and indicative of sensitization.

*In my opinion, because of her latex allergy and associated health risks, Ms. Mirek is totally and permanently disabled from her work as a dental hygienist.* The bases for this opinion are several. First, latex allergy is a permanent condition. Measurable levels of antibodies to latex may fluctuate with avoidance of latex but sensitivity does not go away. It reactivated with re-exposure.

Second, because latex is a sensitizer, very low levels of exposure are associated with type I immunologic reactions that include anaphylaxis. Ms. Mirek has had symptoms consistent with anaphylaxis and Dr. Bedard has diagnosed her with latex-related anaphylaxis. In his letter dated September 15, 2002 to Mr. Aries he states: "In addition, she has had several episodes of food related anaphylaxis which in retrospect likely represented allergic reactions to transferred latex from the gloves used by the food handlers." These findings increase the likelihood that Ms. Mirek will have an anaphylactic reaction if re-exposed to latex in the future, in my opinion.

Finally, although a latex-free dental practice is possible in theory, in reality it is uncommon to find a dental practice that is truly latex free. In a survey of general dental practices in the United Kingdom, only 38% of general dental practices were aware of health risks associated with treating patients with latex allergy, and even fewer had written protocols for the latex-allergic patient.[3]

Further, it is not realistic to expect that a practice will make itself latex free for a single employee. Rendering a dental practice latex free is difficult. Latex-containing materials are numerous and varied and include gloves, syringes, stoppers, suction devices, prophy cups, and rubber dams.[4,5] Products often considered safe for use around those with latex allergy are in fact not safe. For example, "powder free" latex gloves contain residual cornstarch powder, on average 2 mg per glove.[6] This powder becomes airborne when gloves are donned and removed, and it is the respirable aerosolized powder that carries the latex antigen.[6,7] Also, "nonlatex" gloves have been found to contain latex antigen.[8] And it is unreasonable to expect elimination of risk with a Rube Goldberg approach such as wrapping rubber dams in a nitrile glove and securing it with dental floss.[5]

In addition to the cost and logistics of making a dental office latex free, there are clinical considerations. Dr. Burstein at his deposition testified to this (pp. 82, 83): "…. We have a duty to perform dentistry in a safe manner for our patients, latex gloves, to this day, and I've tried a lot of gloves, a lot of nitron [nitrile] gloves, a lot of vinyl gloves, as far as the tactile sensation, we're using hand pieces that are whizzing at eighty thousand

RPM, we're using extremely sharp instruments and everything else, it is one of those things you want, and touching very small little crowns, and lays way back down somebody's throat, that you need good tactile sensation....And that's more the clinical aspect of the importance of latex, in my mind." Dr. Burstein testified at his deposition in August, 2005 that he continued to use "powder free" latex gloves in his practice.

It is also important to remember that even if one office in a medical building is latex free, it does not mean that every office is latex free. The use of powdered latex gloves in one office in an improperly ventilated building can result in the distribution of latex to other parts of the building. Dr. Burstein addressed this problem in his testimony when he said (p.41) "You have other doctors in this building using latex gloves, there is air circulating throughout the whole building, I couldn't...I can't go and ask all the other doctors to get rid of their gloves, they could still be using latex powdered gloves now, I don't know. But I think that's kind of the thing where it does get difficult to go through and say, well, let's get rid of all the latex, it's not that easy."

If there are questions, or if I can be of further assistance at this time, please let me know.

Very truly yours,

*[signature]*

L. Christine Oliver, MD, MS

References

1. OSHA Technical Information Bulletin-Potential for Allergy to Natural Rubber Latex Gloves and other Natural Rubber Products. Information Date: 19990412 (April 12, 1999).
2. Liss GM, Sussman GL, Deal K, Brown S, Cividino M, Siu S, et al. Latex allergy: epidemiological study of 1351 hospital workers. Occup Environ Med 1997;54:335-342.
3. Clarke A. Safe dental care for latex-allergic patients. Research Summary. Br Dent J 2004;197:749-752.
4. Zak HN, Kaste LM, Schwarzenberger K, Barry MJ, Galbraith GMP. Health-care workers and latex allergy. Arch Environ Health 2000;55:336-346.
5. Bain EI. Nurse with latex allergy prompts dentist to change to latex safe practice. MNA Congress on Health and Safety. http://www.massnurses.org/News/1999/990120/latex.htm
6. Phillips ML, Meagher CC, Johnson DL. What is "powder free"? Characterisation of powder aerosol produced during simulated use of powdered and powder free latex gloves. Occup Environ Med 2001;58:479-481.
7. Tomazic VJ, Shampaine EL, Lamanna A, Withrow TJ, Adkinson NF, Hamilton RG. Cornstarch powder on latex products is an allergen carrier. J Allergy Clin Immunol 1994;93:751-758.
8. Crippa M, Belleri L, Mistrello G, Carsana T, Neri G, Alessio L. Prevention of latex allergy among health care workers: evaluation of the extractable latex protein content in different types of medical gloves. Am J Ind Med 2003;44:24-31.

## Trial/Deposition Testimony

### L. Christine Oliver, MD, MPH, MS
### 2001-2005

Ernest Thompson vs. CSX Transportations, Inc.
Law Offices of William P. Gavin
Deposition testimony 8/01: Boston, MA.

Roy Jernigan and Kenneth M. Kolb v. ACandS, INC., et al
Law Offices of Peter G. Angelos
Asbestos Litigation Jernigan Trial Group
Deposition testimony 09/01: Boston, MA

Kayla T. Gilberti v. Touro Infirmary, et al
Law Offices of Jones, Verras & Freiberg, LLC
Deposition testimony 10/01: Boston, MA
Trial testimony 2/11/03 & 2/12/03: New Orleans, LA

Catherine Chappell v. Great-West Life & Annuity Insurance Company
Law Offices of Berman & Simmons, PA
Deposition testimony 10/01: Boston, MA

Harry F. Bargelski, Sr., Joy Jernigan, and Kenneth M. Kolb v. ACandS, INC., et al
Law Offices of Jacobs & Crumplar
Asbestos Litigation Jernigan Trial Group
Trial testimony 10/17/01: Wilmington, Delaware

Charles Cargile, Antonio Colella, and Leroy Lane v. Harbison Walker
Law Offices of Peter G. Angelos
Deposition testimony 09/01: Boston, MA
Trial testimony 11/14/01: Baltimore, MD

Thomas Smith v. Boston Edison, et al
Law Offices of Dangel & Mattchen, LLP
Daubert hearing testimony 1/02: Boston, MA

State of West Virginia Civil Action
Law Offices of Motley, Loadholt, Richardson & Poole
Asbestos Personal Injury Litigation
Deposition testimony 1/02: Boston, MA

Keene Creditors Trust v. BAIRNCO Corporation, et al
Law Offices of Levy, Phillips & Konigsberg, LLC
Deposition testimony 2/02: New York City, NY

Francis Bokman v. ACandS, INC., et al
Law Offices of Peter G. Angelos
Deposition testimony 4/02: Boston, MA

Allen E. Wiles v. ACandS, INC., et al
Law Offices of Peter G. Angelos
Deposition testimony 5/02: Boston, MA

George Sawicki v. ACandS, INC., et al
Law Offices of Peter G. Angelos
Deposition testimony 7/02: Boston, MA

Schmidt et al v. County of Norfolk et al
Law Offices of Christopher Milne
Trial testimony 7/19/02: Boston, MA

Katherine Walden v. ACandS, INC., et al
Law Offices of Peter G. Angelos
Deposition testimony 9/02: Boston, MA

William Herd v. ACandS, INC., et al
Law Offices of Peter G. Angelos
Deposition testimony 1/03: Boston, MA

William Blackard v. ACandS, INC. et al
Law Offices of Ness Motley
Deposition testimony 2/03: Boston, MA

Alfred A. Moore v. Able Supply Company, et al
Law Offices of Stanley, Mandel & Iola
Deposition testimony 5/03: Boston, MA

Knott-Smith, et al v. Detroit Board of Education, et al
Law Offices of Weiner & Cox
Deposition testimony 6/03: Boston, MA

Bennett v. Sulzer Metco (US) Inc., et al
Martin & Jones Trial Lawyers
Jones Martin Parris & Tessener Law Offices, PLLC
Deposition testimony 7/03: Boston, MA

John Canatella and Nathaniel Hawkins v. ACandS, INC. et al
Law Offices of Parker, Dumler & Kiely, LLP
Deposition testimony 8/03: Boston, MA

Ferry et al v. Constar, et al
Law Offices of Overchuck, Denault & DeMarco
Deposition testimony 9/03: Boston, MA

Kelly Clark, et al v. Drummey Rosane Anderson, Inc., et al
Law Offices of Nixon Peabody, LLP
Trial testimony 11/03: Boston, MA

Charles D. Mills v. Provident Life and Accident Insurance Company
Law Offices of Jager Smith PC
Deposition testimony 02/04: Boston, MA

Howard A. Van Pelt: May 4, 2003 Mesothelioma Trial Group M54
Law Offices of Peter G. Angelos
Deposition testimony 03/04: Boston, MA

Ferry et al v. Constar, et al: Plaintiff Jacklyn R. Hayes
Law Offices of Overchuck, Denault & DeMarco
Deposition testimony 06/04, 06/05: Boston, MA

Emanuel Thomas v. Jannor Enterprises/American Home Assurance
Law Offices of Collins and Collins
Deposition testimony 09/04: Boston, MA

Eugene J. Love and Annette Love v. A.W. Chesterton Company
Law Offices of Thornton & Naumes, LLP
Deposition testimony 10/04: Boston, MA

Gary W. Snyder: February 8, 2005 Mesothelioma Trial Group (M68)
Law Offices of Peter G. Angelos
Deposition testimony 01/05: Brookline, MA
Trial testimony (video) 02/05: Boston, MA

Mark Coffey and Robin Coffey v. American Standard, et al
Law Offices of Belluck & Fox, LLP
Trial testimony 04/05: Buffalo, NY

Wayne S. Wagner and Michele D. Wagner v. Anchor Lithkemko, Inc., et al
Law Offices of Thornton & Naumes, LLP
Deposition testimony 06/05: Boston, MA

Ferry, et al v. Constar, Inc., et al
Law Offices of Overchuck, Demarco, Byron & Overchuck
Deposition testimony 06/05: Boston, MA