**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CAROLYN MIREK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 04-30166-MAP |
| | ) |
| THE GUARDIAN LIFE INSURANCE | ) |
| COMPANY OF AMERICA and | ) |
| BERKSHIRE LIFE INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE IRRELEVANT EVIDENCE (Docket No. 61)**

Defendants, the Guardian Life Insurance Company of America ("Guardian") and Berkshire Life Insurance Company of American ("Berkshire") (collectively referred to as "Defendants"), hereby file this reply to Plaintiff's Opposition to Defendants Motion in Limine to Exclude Irrelevant Evidence ("Plaintiff's Opposition"). Contrary to the argument set forth in Plaintiff's Opposition, there is not a tortious bad faith claim in this case, and this Court should not consolidate this case with Civil Action 05-30246-MAP ("Mirek II") because doing so would significantly prejudice Defendants and would result in the significant waste of judicial resources.

This case is a breach of contract case ("Mirek I"). Plaintiff's Second Amended Complaint contained four Counts. The Court dismissed Counts III and IV upon Motion by Defendants and Plaintiff voluntarily dismissed Count II when faced with another Motion to Dismiss filed by the Defendants. Thus the only claim in this case consists of three paragraphs of common allegations (¶¶ 1-3) and ten paragraphs that comprise Count I, which is entitled "Count

I Breach of Contract" (¶¶ 4-13).  <u>Second Amended Complaint</u>, attached hereto as Exhibit D, at 1-2.

Despite the fact that the only remaining cause of action in this case is Count I - Breach of Contract, Plaintiff argues that what remains of her Second Amended Complaint "alleges facts that support a claim of tortious bad faith." <u>Plaintiff's Opposition</u> at 7.  Both the chronology of this case and the directly relevant controlling precedent dictate that this case, Mirek I, does not contain a bad faith cause of action.  That is precisely why Plaintiff sought to amend Mirek I and precisely why Plaintiff filed Civil Action No. 05-30246-MAP ("Mirek II").

Given that this case is a simple contract case, this Court should not entertain Plaintiff's claim that this matter would be more efficiently resolved if consolidated with Mirek II.  To the contrary, consolidation of this matter with Mirek II would cause significant prejudice to Defendants and would be judicially uneconomical and impractical.

Accordingly, Defendants request that the Court allow Defendants' Motion In Limine to Exclude Irrelevant Evidence and try this matter on its own as soon as the Court's calendar permits.

**ARGUMENT**

**I.  <u>MIREK I DOES NOT CONTAIN A BAD FAITH CAUSE OF ACTION</u>**

In her Opposition to Defendants' Motion in Limine to Exclude Irrelevant Evidence, Plaintiff argues that Mirek I, factually and legally, contains a breach of good faith and fair dealing claim ("tortious bad faith claim"). <u>Plaintiff's Opposition</u> at 5-7.  As set forth in Section A below, the factual chronology of this case demonstrates that Mirek I does not contain a count for tortious bad faith.  Moreover, as set forth in Section B, Mirek I does not contain a legally sufficient claim for tortious bad faith.

A. **THE CHRONOLOGY OF THIS CASE CONCLUSIVELY DEMONSTRATES THAT MIREK I DOES NOT CONTAIN A COUNT FOR BAD FAITH**

As detailed below, Mirek I initially had four distinct counts. After Defendants successfully moved to dismiss three of the counts, the sole remaining Count was for breach of contract. This is the way that all of the parties viewed and articulated Count I until Plaintiff moved to add a new Count alleging breach of the covenant of good faith and fair dealing. Plaintiff's motion to amend was denied twice by this Court – initially and upon reconsideration – notwithstanding Plaintiff's allegation that her new bad faith claim could be bootstrapped into a bad faith reference in the Breach of Contract Count, Count I.

As a result of the Court's denial of Plaintiff's motion to add her bad faith claim in Mirek I, Plaintiff filed Mirek II in which Plaintiff makes numerous unlabeled allegations of bad faith. In other words, but for the Court's refusal to accept Plaintiff's argument that Count I stated a claim for bad faith, there would have been no need for Plaintiff to commence Mirek II to allege bad faith. Accordingly, and as detailed below, Plaintiff cannot factually maintain that Mirek I states a cause of action for tortious bad faith.

**CHRONOLOGY**

1. On June 14, 2004, plaintiff commenced this action with a two count complaint: Count I was labeled and alleged a Breach of Contract; Count II alleged unfair and deceptive practices and unfair claim settlement practices pursuant to Conn. Gen. Stat. §42-110b et. seq. (hereinafter "CUTPA") and Conn. Gen Stat. §38a-816 (hereinafter "CUIPA"). See Original Complaint, attached hereto as Exhibit A.

2. On July 26, 2004, plaintiff filed an Amended Complaint that added two additional counts, Count III and Count IV, alleging unfair and deceptive practices and unfair settlement

3

practices pursuant to Mass. Gen. Laws ch. 176D § 3(9) et seq. and Mass. Gen. Laws ch. 93A ("Chapter 93A").  See Amended Complaint, attached hereto as Exhibit B.

3. On October 1, 2004, Defendants moved to dismiss the Chapter 93A claims, Counts III and IV.  Defendants did not have any notice nor any reason to suspect that Count I harbored a covert tortious bad faith claim.  This is reflected in the Defendants' Memorandum of Law in support of the Motion Dismiss in which Defendants noted in Section IV (B) of the Facts that the Amended Complaint "alleges in Count I that Guardian and/or BLICO breached a contract with Plaintiff."  See Defendants' Memorandum of Law in Support of Motion to Dismiss, relevant pages attached hereto as Exhibit C, at 4.

4. On October 14, 2004 pursuant to an assented to motion to change the name of a party, Plaintiff filed a Second Amended Complaint.  The Second Amended Complaint contained four separate Counts as follows:

> **Count I** -  Breach of Contract; **Count II**  - Unfair and Deceptive Practices (CUPTA) Conn. Gen. Stat. §42-110b et. seq. and unfair Insurance Practices (CUIPA), Conn. Gen Stat. 38a-816; **Count III** – Berkshire Life Insurance Company of America Unfair and Deceptive Practices, Mass. Gen Laws ch. 93A; and **Count IV** – The Guardian Life Insurance Company of America Unfair and Deceptive Practices, Mass. Gen Laws ch. 93A.

See Second Amended Complaint, attached hereto as Exhibit D.

5. Each Count in the Second Amended Complaint contained its own claim for relief.  There was and is no claim for tort/punitive damages in Count I – Breach of Contract.  See Second Amended Complaint, Count I Breach of Contract, attached hereto as Exhibit D, at 2.

6. On November 3, 2004, Plaintiff filed her Opposition to Plaintiff's Motion to Dismiss. When describing her cause of action, Plaintiff did not describe her Complaint as including a claim of tortious bad faith, rather she stated, "Plaintiff Carolyn Mirek seeks damages from Defendants …for their failure to pay benefits due her under a policy of disability insurance. Plaintiff also seeks damages under the Massachusetts Unfair and Deceptive Practices Act, GL 93A, or alternatively under the Connecticut Unfair Practices Act (CUTPA) for unfair claims settlement practices." Plaintiff did not assert that the Second Amended Complaint contained a count of tortious bad faith – because it did not. See Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Defendants Motion to Dismiss, attached hereto as Exhibit E, relevant pages attached hereto, at 1.

7. On February 9, 2005, the Court granted the Motion to Dismiss the Chapter 93A claims. See Docket Entry 14. The ruling left two counts in this case: Count I - Breach of Contract and Count II - CUTPA.

8. On September 9, 2005, Defendants moved for Judgment on the Pleadings as to Count II - CUTPA. See Docket Entry 23.

9. On September 26, 2005, Plaintiff filed her Response to Defendants' Motion for Judgment on the Pleadings as to Count II. In her response Plaintiff informed the Court and Defendants that she "willingly dismisses her unfair and deceptive practices claim under Connecticut law, " her Count II CUPTA claim. See Plaintiff's Response to Defendants Motion for Judgment on the Pleadings as to Count II, relevant pages attached hereto as Exhibit F at 2.

10. On September 26, 2005 - having willingly dismissed and deleted Count II, the CUTPA claim, Plaintiff filed a Motion to Amend and she attached a proposed new "Count II Breach

5

of the Implied Covenant of Good Faith and Fair Dealing." This proposed new Count II contained new factual allegations and contained a specific prayer for relief in the form of punitive damages. <u>Plaintiff's Motion to Amend the Complaint</u>, relevant pages attached hereto as Exhibit G at 1-2; <u>Proposed New Count II Breach of the Implied Covenant of Good Faith and Fair Dealing</u>, attached hereto as Exhibit H. Plaintiff argued that she should be allowed to add a claim for bad faith because she had mentioned it in Count I. Defendants opposed the Plaintiff's Motion to Amend and argued explicitly that Count I's unsubstantiated reference to bad faith bore no resemblance to Plaintiff's detailed tortious bad faith claim that Plaintiff wished to add to her complaint.

11. On October 20, 2005, the Court denied Plaintiff's Motion to Amend as untimely and granted Defendants' Motion for Judgment on the Pleadings.

12. On October 21, 2005, Plaintiff filed a Motion for Reconsideration of the Court's Order denying Plaintiff's Motion to Amend, again arguing that the reference to bad faith in Count I was sufficient to boot strap her new tortious bad faith claim.

13. On November 14, 2005 the Court denied Plaintiff's Motion for Reconsideration.

As demonstrated above, there is no tortious bad faith claim in Mirek I, nor has Mirek I proceeded as if there was a tortious bad faith claim in Mirek I. It is worth noting that when describing her causes of action in November 2004, Plaintiff herself failed to describe her own Complaint as including a claim of tortious bad faith. <u>See</u> Exhibit E at 1, attached hereto. Plaintiff now expects that Defendants and this Court should interpret Plaintiff's Count I of the Second Amended Complaint in a manner that Plaintiff herself did not. This Court previously rejected Plaintiff's untimely attempt to amend her complaint to add a tortious bad faith claim and

6

Defendants respectfully request that this Court decline Plaintiff's latest untimely invitation to add a bad faith claim to a simple breach of contract case.

**B.    MIREK I DOES NOT CONTAIN A LEGALLY SUFFICIENT CLAIM FOR TORTIOUS BAD FAITH**

As discussed in Section A above, the chronology of this case demonstrates that Mirek I does not contain a claim for tortious bad faith.  Moreover, as detailed below, contrary to Plaintiff's argument that she sufficiently pled bad faith in Mirek I, Mirek I fails to assert a legally sufficient claim for tortious bad faith.  Plaintiff's Opposition at 6.  As discussed below, not only is the burden of proving a bad faith claim immense, but Plaintiff must also actually allege acts or conduct that demonstrate dishonest purpose, malice or bad faith in her Complaint.  Contrary to Plaintiff's assertion that Mirek I "alleges facts that support a claim of tortious bad faith," Plaintiff's sole bad faith allegation in Mirek I, "by their conduct, the defendants have committed a breach of the implied covenant and [sic] good faith and fair dealing," is itself legally insufficient to maintain a claim for bad faith under Connecticut law.  Plaintiff's Opposition at 7; Second Amended Complaint at ¶ 12.

The burden of proving a bad faith claim under Connecticut law is immense.  In order to prove a claim of bad faith arising from an insurer's breach of its common law duty of good faith and fair dealing, the plaintiff is required to prove that the defendant "engaged in conduct designed to mislead or to deceive… a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. . . .bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will."  Buckman v. People Express Inc., 305 Conn. 166, 171-172 (1987).

Moreover, Connecticut law requires that the Plaintiff actually allege acts or conduct that demonstrate bad faith.[1]  <u>Martin v. American Equity Insurance Company</u>, 185 F. Supp. 2d. 162, 165 (D.Conn. 2002), <u>citing</u> <u>Janecki v. Massachusetts Casualty Ins. Co.</u>, 196 Conn. Super. LEXIS 3099 (Conn. Super. Nov. 15, 1996).  Allegations of a mere coverage dispute or negligence by an insurer in conducting an investigation will not state a claim for bad faith against an insurer.  <u>Id.</u>, <u>citing</u> <u>Uberti v. Lincoln National Life Ins. Co</u>., 144 F.Supp. 2d 90, 103 (D.Conn 2001).  It is insufficient to simply state that a party has committed bad faith.  <u>Martin</u>, 185 F. Supp. 2d. at 165 (D.Conn. 2002); <u>Bepko v. St. Paul Fire and Marine Insurance Co.</u>, 2005 U.S. Dist. LEXIS 39066 *8 (D.Conn. 2005); <u>See also</u> <u>Emmelmann v. American & Foreign Ins. Co</u>., 2006 U.S. Dist. LEXIS 16286 (D. Conn 2006).

The analysis in <u>Martin</u> is directly on point in the case at bar except that the situation in Mirek I is much more egregious.  In <u>Martin</u>, the defendant insurer moved to dismiss a tortious bad faith count entitled Count Two - Breach of the Implied Covenant of Good Faith and Fair Dealing arguing that Count Two should be dismissed because the Plaintiff had failed to allege any conduct that rose to the level of bad faith under Connecticut law.  <u>Martin</u>, 185 F. Supp. 2d. at 164.  Like the Plaintiff in this case, the plaintiff in <u>Martin</u> alleged in conclusory fashion that the defendant "willfully and intentionally and wrongfully refused to provide….representation and/or defense required under the terms of the policy when in good faith it should have done so….The Defendants actions were unreasonable, outrageous, malicious and done in bad faith in [sic] unfair dealing which was by implication incorporated in the terms of the insurance policy."  <u>Id</u>.

---

[1] In diversity jurisdiction cases, determining whether a Complaint states a cause of action for bad faith breach of the implied covenant of good faith and fair dealing, Connecticut law defines the elements of the cause of action for bad faith and Federal law governs the degree of particularity with which such an allegation must be pled in a federal complaint. <u>Martin</u>, 185 F. Supp. 2d. at 164 (D.Conn. 2002), <u>citing</u> <u>Stern v. General Electric Co</u>. 924 F.2d. 472, 476 n.6 (2d Cir. 1991).

Also like the Plaintiff in this case, the <u>Martin</u> plaintiff made no other allegations regarding the defendant's bad faith.  The <u>Martin</u> Court granted Defendant's Motion Dismiss, stating that despite the Plaintiff's "naked conclusory allegations as to the legal status of defendant's acts, plaintiff never specifies how or in what manner defendant's denial of coverage…was 'unreasonable, outrageous, malicious and done in bad faith'."  <u>Martin</u>, 185 F.Supp.2d. at 165.  The <u>Martin</u> Court held that despite being labeled as a breach of the implied covenant of good faith and fair dealing, Count Two failed to state a cause of action for tortious bad faith under Connecticut law because the Plaintiff failed to allege acts or conduct by Defendants that demonstrated dishonest purpose, malice or bad faith.  <u>Id</u>.

Similarly in <u>Bepko</u> the Complaint contained a Count Two that alleged the Defendant had breached its implied duty of good faith and fair dealing.  <u>Bepko</u>, 2005 U.S. Dist. LEXIS 39066 (D. Conn 2005).  The Court reviewed Count Two and found that the factual allegations in the first two paragraphs of Count Two simply indicated an insurance contract and that the last two paragraphs simply alleged in conclusory fashion that the insurer had breached its duty of good faith and fair dealing.  <u>Id</u>.  Accordingly the Court dismissed Count Two for failure to state a claim.  <u>Id</u>.  The <u>Bepko</u> Court instructed that, "what appears to be a breach of contract claim will not be construed as a claim for a breach of the implied covenant of good faith and fair dealing." <u>Bepko v. St. Paul Fire and Marine Insurance Co.</u>, 2005 U.S. Dist. LEXIS 39066 (D. Conn 2005), <u>citing</u> <u>Martin</u> 185 F.Supp.2d. at 165 (where a supposed tortious bad faith claim contains no factual allegations in the pleadings of bad faith and where the pleading fails to even hint that a defendant insurer's denial of coverage was the result of conscious wrong doing, dishonest purpose or moral obliquity, then the claim fails to set forth a claim for tortious bad faith under Connecticut law).  The Second Amended Complaint in Mirek I is an even more obvious example

9

of non-existent bad faith claim then Count Two in Bepko. In Mirek I, the Second Amended Complaint contains a few factual allegations indicating an insurance coverage dispute under a Claim entitled "Count I - Breach of Contract" containing a conclusory allegation that "by their conduct, the defendants have committed a breach of the implied covenant and [sic] good faith and fair dealing." Second Amended Complaint at ¶ 12.

In Emmelmann the Defendant insurer moved to dismiss Counts Three and Eighteen for failure to state a claim upon which relief could be granted. The Court reviewed the pertinent allegations and granted the Motion to Dismiss because, like here, plaintiff had failed to allege facts that could show the insurer was acting in bad faith such as engaging in conduct designed to mislead or deceive or a neglect to fulfill some contractual duty that was not prompted by honest mistake arbitrary conduct. Emmelmann v. American & Foreign Ins. Co., 2006 U.S. Dist. LEXIS 16286 (D. Conn 2006). "A mere coverage dispute or negligence by an insurer in conducting an investigation is not sufficient to state a claim of bad faith against an insurer" Id. citing Martin at 165.

For the reasons cited above, Plaintiff's last ditch attempt to convince this Court to interpret her Breach of Contract claim as if it were a claim of tortious bad faith breach of the implied covenant of good faith and fair dealing must fail because contrary to her unsubstantiated assertions, Mirek I does not contain a claim for tortious bad faith. Defendants respectfully request that this Court grant their Motion in Limine to Exclude Irrelevant Evidence.

## II.     THIS COURT SHOULD NOT CONSOLIDATE MIREK I WITH MIREK II

Plaintiff argues that the trial of Mirek I should essentially be stayed and consolidated with Mirek II so that the two cases can be tried together. Plaintiff's Opposition at 8-10. On

three previous occasions, the Court rejected Plaintiff's request to consolidate Mirek I with Mirek II.

First, on November 15, 2005, Plaintiff filed a formal motion to consolidate. On December 12, 2005, the Court denied Plaintiff's motion for consolidation finding that "Consolidation, at this stage, would undercut the rationale for denying the motion to amend" in Mirek I. December 12, 2005 Order, attached hereto as Exhibit I.

Second, through her Pre-Trial Memorandum in Mirek I, Plaintiff informed the Court that she was seeking consolidation of the cases. Plaintiff's Pretrial Memorandum at this Court's Docket No. 48. At the January 27, 2006 Pretrial conference, Plaintiff raised this issue, and the Court stated "I don't want to deal with the other case right now today. I deliberately denied that motion to deal with them together, that's something that can happen at a Rule 16 Conference." Pretrial Conference Transcript, relevant pages attached hereto as Exhibit J, at 14:11.

Finally, on March 22, 2006 the Court held the Rule 16 Conference in Mirek II at which time Plaintiff again moved the Court to consolidate the two cases. See March 22, 2006 Clerk's Notes attached hereto as Exhibit K. On March 23, 2006 the Court issued a Pretrial Scheduling Order in Mirek II, which did not consolidate the cases.[2] See March 23, 2006 Pretrial Scheduling Order, attached hereto as Exhibit L.

As set forth below, the Court should reject Plaintiff's fourth request to consolidate this matter because: A) it would be extremely prejudicial to Defendants if the two cases were

---

[2] At the June 8 Pretrial Conference, Plaintiff suggested that the Court's March 23, 2006 Pretrial Scheduling Order stated that the Court would defer the trial of Mirek I until the Pretrial Conference in Mirek II. This is not true. In Mirek II, the Court ordered that "8. Counsel will appear again before this court for a final pretrial conference on November 21, 2006 at 2:00 P.M. . . . At the time counsel appear, the court will address the issue of dispositive motions, and the status of a related earlier filed case." This order recognizes that the disposition of Mirek I will effect Mirek II and must be reviewed and is not a stay of Mirek I as suggested by Plaintiff.

consolidated and B) contrary to Plaintiff's assertions, judicial economy will actually be furthered if the two cases **are not** consolidated.  Moreover, nothing has changed since this Court's numerous rejections of Plaintiff's request to consolidate and allowing consolidation would "effectively reverse the trial court's denial of leave to amend" having an "'absurd' result."  <u>In Re Dual-Deck Video Cassette Recorder Antitrust Litigation, Go Video, Inc. v. Matsushita Electric Industrial Co., Ltd.</u>, 1991 U.S.Dist.LEXIS 20824 *7 (D.Ariz. 1991).

### A.   IT WOULD BE EXTREMELY PREJUDICIAL TO DEFENDANTS TO CONSOLIDATE MIREK I AND MIREK II

It would be extremely prejudicial to Defendants in the event that the Court consolidates these cases.  As the Court is aware, the filing of Mirek II did not result from any actions of the Defendants.  Rather, it resulted from Plaintiff's twelfth hour recognition that she had a new cause of action.  As a result of Plaintiff's untimely acts, the Court denied her motion to amend, but permitted her to maintain a second action.  As a result of Plaintiff maintaining a separate action, the Defendants have had to answer a new Complaint, participate in a Rule 16 conference, and take discovery regarding the numerous conclusory allegations in the Mirek II Amended Complaint.

More significantly, the Defendants have taken the Court's orders seriously and proceeded with Mirek I as a separate case.  Specifically, the Defendants have recently filed and responded to numerous motions in limine in Mirek I at significant expense.  If the Court were to consolidate the cases at this time, the motions in limine will have to be revised and/or discarded given that a trial of both cases will be significantly different involving different causes of action.  It would be paramountly unfair to allow Plaintiff to cause Defendants extraordinary expense by essentially allow her the untimely amendment of her complaint – twice rejected  by the Court – by

consolidating the case after the Defendants incurred significant expense based on the cases proceeding separately.

Moreover, if this Court were to consolidate the cases at this time, it would have the effect of turning the discovery and motion practice in Mirek I into a dress rehearsal for Mirek II. For example, the Defendants have moved in limine regarding Plaintiff's alleged occupational expert, Dr. Oliver. If these cases are consolidated, the Plaintiff will be able to find a qualified expert to overcome the defect identified by the Defendants in their motion in limine. As such, it would be extremely prejudicial to consolidate Mirek I and Mirek II.

B.  **JUDICIAL ECONOMY SUPPORTS THE NON-CONSOLIDATION OF PLAINTIFF'S CLAIMS**

Plaintiff suggests that consolidation will serve the purposes of judicial economy by arguing that the Court should consolidate Mirek I and Mirek II because both Mirek I and Mirek II have tortious bad faith claims and because consolidation will solve the evidentiary issues in this case. Plaintiff's Opposition at 9. Contrary to Plaintiff's arguments and as explained above in Section I, there is no bad faith claim in Mirek I. In addition, as discussed in Section 1 below, consolidation will not solve the evidentiary issues in this case, it will only result in a procedural quagmire. Moreover, as discussed in Section 2 below, contrary to Plaintiff's allegations, judicial economy will actually be furthered by the separate trial of these cases for numerous reasons.

  1.  **Consolidation of Mirek I and Mirek II Will Result In A Procedural Quagmire**

Plaintiff suggests that evidentiary issues will be moot if these cases are consolidated. Plaintiff's Opposition at 8. Nothing is further from the truth. As part of Mirek II, Plaintiff alleges that "Beginning in late 2005, Defendants hired yet another physician in their campaign to defeat Plaintiff's claim under her disability policy . . . Defendants hired and used this physician

13

to try to defeat Plaintiff's claim, all the while knowing, upon information and belief, that the physician had biases and that his position was in sharp contradiction with their own internal position about the dangers of latex allergy . . ." Amended Complaint in Mirek II, relevant pages attached hereto as Exhibit M, at ¶ 32.  As set forth in Plaintiff's Opposition to Defendant's Emergency Motion to Stay, "The allegation in paragraph 32 refers to the Defendants' use of Steven J. Weiss, M.D. in the handling of Plaintiff's claim." Plaintiff's Opposition to Defendants' Emergency Stay, relevant pages attached hereto as Exhibit N, at 2.  In support of this claim – and notwithstanding informing the Court that Plaintiff would take no discovery in Mirek II – Plaintiff has subpoenaed documents as to Dr. Weiss in Mirek II.

Dr. Weiss's sole participation in either of these cases is that he has been identified as Defendants' latex allergy expert in Mirek I.  Thus, Plaintiff has taken the position that Defendants retention of an expert witness constitutes bad faith based on what Defendants purportedly knew about Dr. Weiss.  Obviously, this position presents an untenable situation if this case is consolidated because Plaintiff will not only be attacking the opinion of Defendants' expert, she will be factually attacking his retention as constituting bad faith.  Under these circumstances, Plaintiff will call Defendant's expert as a fact witness in her bad faith case.  This untenable situation will be avoided if this Court does not consolidate these cases as Dr. Weiss will testify as an expert only in Mirek I and Plaintiff will be able to call him as a fact witness in the event Mirek II is ever tried.

    **2.    Contrary To Plaintiff's Allegations, Judicial Economy Will Actually Be Furthered By The Separate Trial Of These Cases**

Judicial economy will be furthered because depending on the outcome, the resolution of Mirek I will either be dispositive of Mirek II or resolve issues that will not need to be relitigated in the event Mirek II is ever tried.  As discussed at Section a. below, the State Courts of

Connecticut have held that a tortious bad faith claim cannot be maintained in the absence of a plaintiff proving that they were entitled to coverage under the operative policy. In reliance on United Technologies. Corp. v. Am. Home Assurance Co., 118 F.Supp.2d 181, 188 (D. Conn. 2000), Plaintiff argues that a decision for Defendants on Plaintiff's contract claim will not be dispositive of Plaintiff's bad faith claim in Mirek II. Plaintiff's decision is based on a Federal District Court decision that expressly recognized that this issue had not yet been decided by the Connecticut Supreme Court. Although Defendants believe that United Technologies is distinguishable from the instant case, the fact that the District Court acknowledged that the issue was undecided by the Connecticut Supreme Court presents a unique opportunity to this Court to conserve its resources.

As discussed at Section b. below, the non-consolidation of Mirek I and Mirek II will allow the Court to decide the breach of contract claim – if Plaintiff prevails on her breach of contract claim the Issue becomes moot – if Defendants prevail on Plaintiff's breach of contract claim then this Court has the opportunity to certify the question to the Connecticut Supreme Court for a truly dispositive ruling.

    **a.**    **The State Courts Of Connecticut Have Held That A Tortious Bad Faith Claim Cannot Be Maintained In The Absence Of A Plaintiff Proving That They Were Entitled To Coverage Under The Operative Policy**

The parties dispute the issue of whether or not Plaintiff's bad faith claim in Mirek II is rendered moot if Defendants prevail on Plaintiff's breach of contract claim in Mirek I. See Defendants' Emergency Motion to Stay the Case (Docket No. 23 in Mirek II) at 3; Plaintiff's Opposition to Defendants' Emergency Motion to Stay the Case (Docket No. 24 in Mirek II) at 5.

While the Connecticut Supreme Court has not yet addressed this Issue, the State Courts in Connecticut that have, have concluded that Plaintiff must show that she is entitled to recover

under an insurance policy before the insurer can be found to have acted in bad faith.  See e.g., McCarthy v. The Travelers Indemnity, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 970345443 (March 29, 2000, Melville, J.), 2000 Conn.Super.LEXIS 823 ("if the insurer is found to have no obligation to pay under the policy, its refusal to do so cannot provide the basis for a claim of bad faith); Patrons Mutual Ins. Co. v. Maguire, Superior Court, judicial district of New Haven, Docket No. 374329 (March 26, 1997, McMahon, J.), 1997 Conn.Super.LEXIS 840 (where it is determined that insurer was not obligated to indemnify or defend, insurer could not have breached duty of good faith); Vincenzi v. Nationwide Mutual Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 337630 (February 6, 1997, Skolnick, J.), 1997 Conn.Super. LEXIS 311 (where insurer found to have no obligation to pay, bad faith claim based upon refusal to pay fails as well); Sponzo v. Hartford Underwriters Ins. Group, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 5433134 (March 15, 1996, Aurigemma, J.), 1996 Conn. Super. LEXIS 710 ("Failure to pay a claim which it was not obligated to pay under the terms of the policy is clearly not bad faith").

Plaintiff relies on United Technologies to support her position that she can maintain her bad faith claim in Mirek II even if she loses on her breach of contract claim in Mirek I. Plaintiff's Opposition to Defendants' Emergency Motion to Stay the Case (Docket No. 24 in Mirek II) at 5.  Plaintiff's reliance on United Technologies in this case is misplaced because: (1) the United Technologies Court limited its speculation of how the Connecticut Supreme Court might decide the issue to bad faith claims in the property insurance context; and (2) United Technologies involves a claim where the insurer never denied coverage and, it does not address the issue in this case of whether or not a plaintiff can maintain a claim for bad faith after the court has determined that denial of coverage was proper.

First, in speculating how the Connecticut Supreme Court might decide the issue, the United Technologies Court limited its conclusion to the property insurance context stating, "the Connecticut Supreme Court would not limit the tort of bad faith in the property insurance context to claims of unreasonable or wrongful denial of claims." United Technologies, 118 F.Supp.2d at 188. As this case involves disability insurance, not property insurance, United Technologies is inapplicable.

Second, the issue before the Court in United Technologies is whether or not the Connecticut Supreme Court "would recognize a common law action for property insurer procedural bad faith, that is, claims handling misconduct not involving wrongful withholding of payment due under an insurance policy." United Technologies, 118 F.Supp.2d at 186. The crucial distinction between United Technologies and the case presently before this Court is that in that case, "the plaintiff . . . was never denied coverage." United Technologies, 118 F.Supp.2d at 187. The United Technologies Court was concerned with the fairness in holding "insurers accountable for their bad faith actions in wrongfully denying claims, yet immunize them from liability if they simply refuse to issue the denials that can prompt coverage-testing litigation." United Technologies, 118 F.Supp.2d at 188. The issue before the United Technologies Court is distinct from the issue presently before the Court and the issue before the Connecticut Superior Court cases cited above.

      **b.**    **Non-Consolidation of the Claim Bifurcates The Case In A Manner Most Conducive To Serving The Interests Of Judicial Economy**

If the Court maintains the two separate cases and Plaintiff prevails on her breach of contract claim in Mirek I, then the issue is moot and the Court can move on to Mirek II. If the Court maintains two separate cases and Defendants prevail on Plaintiff's breach of contract claim in Mirek I, then this Court has the time and opportunity to certify the question to the

Connecticut Supreme Court, pursuant to C.G.S.A. § 51-199b, and have the Issue conclusively decided, while also avoiding successive appeals and remands of this case. If the Court consolidates Mirek I and Mirek II, the Court will not know whether Plaintiff prevailed on the Contract claim at the time the two cases are tried and the Court will lose the opportunity to request this guidance from the court that has the unique interest in its disposition.

## CONCLUSION

For the reasons set forth above and in its Motion in Limine to Exclude Irrelevant Evidence ("Motion in Limine"), Defendants respectfully request that this Court grant its Motion in Limine and again deny Plaintiff's informal request for consolidation.

> Respectfully Submitted,
>
> Defendants The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America
>
> By their attorneys,
>
> CREVIER & RYAN, LLP.
>
> /s/David B. Crevier
> David B. Crevier, Bar No. 557242
> Katherine R. Parsons, Bar No. 657280
> 1500 Main Street, Suite 2020
> Springfield, MA 01115-5727
> Tel: 413-787-2400
> Facsimile: 413-781-8235
> Email: dcrevier@crevierandryan.com
>     kparsons@crevierandryan.com
>
> and
>
> Edward Kimball, Bar No. 636865
> BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA
> 700 South Street

               Pittsfield, MA 01201
               Tel:  413-499-4321

## CERTIFICATE OF SERVICE

 I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 15th day of June 2006.

            /s/David B. Crevier