# EXHIBIT E

## Page 1

```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


CAROLYN MIREK,
         Plaintiff           )
                             )   CIVIL ACTION NO.
     vs.                     )   04-30166-MAP
                             )
THE GUARDIAN LIFE INSURANCE  )
COMPANY OF AMERICA and       )
BERKSHIRE LIFE INSURANCE     )   SEPTEMBER 15, 2005
COMPANY OF AMERICA,          )
         Defendants          )
```

DEPOSITION OF: CAROLYN MIREK, taken before Laurie A. Monaghan, Certified Shorthand Reporter, Registered Professional Reporter and Notary Public, pursuant to Rule 30 of the Federal Rules of Civil Procedure, at the Law Offices of Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, Massachusetts, on September 15, 2005, commencing at 10:00 a.m.

APPEARANCES:

(SEE PAGE 2)

                    Laurie A. Monaghan
                Certified Shorthand Reporter

## Page 2

APPEARANCES:

JAGER SMITH, P.C., One Financial Center, Boston, Massachusetts, 02111, representing the Plaintiff.
BY: SETH NESIN, ESQUIRE

CREVIER & RYAN, LLP, 1500 Main Street, Suite 2020, Springfield, Massachusetts, 01115-5727, representing the Defendants.
BY: DAVID B. CREVIER, ESQUIRE

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, 700 South Street, Pittsfield, Massachusetts, 01201, representing the Defendants.
BY: EDWARD K. KIMBALL, ESQUIRE

ALSO IN ATTENDANCE
CAROLYN MIREK

## Page 3

INDEX

WITNESS        DIRECT   CROSS     REDIRECT   RECROSS

Carolyn Mirek    6*    133**,290***  262*    291**

*By Mr. Kimball
**By Mr. Crevier
***By Mr. Nesin

EXHIBITS:        DESCRIPTION           PAGE

Defendant's 1    Guardian Policy         5
Defendant's 2    Interrogatories         67
Defendant's 3    Medical Notes           71
Defendant's 4    Medical Records         84
Defendant's 5    Insurance Application   93
Defendant's 6    Transcript              158
Defendant's 7    Claim Form              160
Defendant's 8    Letter                  205
Defendant's 9    Letter                  234
Defendant's 10   Resume                  236
Defendant's 11   Report                  276

## Page 4

STIPULATIONS

It is agreed by and between the parties that all objections, except as to the form of the question, are reserved to be raised at the time of trial for the first time.

It is further agreed by and between the parties that all motions to strike unresponsive answers are also reserved to be raised at the time of trial for the first time.

It is also agreed that the deponent will read and sign the deposition, and waive the sealing of the deposition.

It is further agreed by and between the parties that notification to all parties of the receipt of the original deposition transcript is also hereby waived.

******

Page 237

A. Yes.

Q. So, as of September 24th, 2001, after the Newport incident and after discussing your options with Dr. Bedard, your career objective was still to have a career in clinical dental hygiene, correct?

A. Yes.

Q. Okay. Now, what happened with that, with Dr. Segal?

A. He said he didn't wear latex gloves, and he wasn't interested in me, with my qualifications. He wanted somebody right out of school. He didn't want to pay for it, and he ended up hiring somebody that I had mentored.

Q. So, according to the letter to Monique Rubb, which is marked as Deposition Exhibit number 9, the reason that you didn't get a job in Dr. Segal's office was he told you that he could not pay you the salary, and he hired a dental hygienist right out of school at an entry level wage, correct?

A. Yes.

Q. Now, but for the fact that Dr. Segal couldn't pay your salary, could you have worked as a dental hygienist in Dr. Segal's office?

Page 238

A. No.

Q. Why not?

A. Everyone else there still used powdered latex gloves.

Q. How did you determine that?

A. I found out a little later, when I was working in sales. Actually, it may have been even before then. I may have seen that -- I knew that he was the only -- he used latex free gloves, but everyone else used latex gloves.

Q. And once again, how did you make that determination?

A. The gloves were there.

Q. You saw latex gloves when you were in his office?

A. Yes.

Q. How come you didn't note that in response to the interrogatories in this case and in your letter to Monique Rubb?

A. I don't know.

Q. You don't know? All you seemed to think was significant at that time was the salary issue?

A. Well, he wouldn't have hired me anyway.

Page 239

Q. Had he been willing to pay you the salary -- what salary were you looking for, by the way?

A. I was making -- I can't remember, when I left Dr. Burstein if I was on commission or salary -- or hourly. I was making $33.00 in commissions.

Q. So, you were looking for at least $33.00 an hour?

A. Yes.

Q. And he wasn't willing to pay you the $33.00 an hour, is that correct?

A. Right.

Q. But for that, though, you still maintain that you would not have been able to work in Dr. Segal's office because other people used latex gloves there, is that correct?

A. Yes.

Q. What if other people did not use latex gloves there? Would you have been able to take a job in his office, had he met your salary demands?

A. Maybe.

Q. What would be the determining factor?

A. Well, if he could meet my salary demands and if they were -- you know, a latex free office.

Page 240

Q. And what do you mean by latex free?

A. Having non-latex products, where there were substitutes available.

Q. Okay. So, if Dr. Segal's office used latex free gloves -- if everyone in Dr. Segal's office used latex free gloves, used latex free prophy cups, and used latex free masks, would you have been able to work there, assuming that he could have met your salary demands?

A. I would have tried.

Q. So, you believe that you would have been able to do it?

A. Well, I know there would still be other latex, like tubing and things like that, but I would give it a try. It would be better than where I was at.

Q. Was that one of the options that you discussed with Dr. Bedard, to work in an office where there were no such latex products?

A. I think so

Q. Okay. So, Dr. Bedard thought that you could work in an office where there were non-latex gloves and other non-latex objects that you would be working with, is that correct?

A. I believe so.



DEFENDANT'S DEPOSITION EXHIBIT

For:
Monique Rubb

### Dental Hygiene Job Prospects

I have contacted Dentalworks asking the owner, Luanne Israelevitz (sp?) to contact me if a FT RDH position opened up – no response.

Prior to 12/2001 I had interviewed with Dr. Daniel Segal at 1040 Sullivan Ave. South Windsor, CT for a dental hygiene position in his practice since he does not wear latex gloves. He told me he could not pay me my salary and hired a hygienist right out of D.H. school at an entry level wage.

Dr. Henry David at 800 Silver La. East Hartford has asked me to work although his office is not latex free. He also does not offer the possibility of having benefits. A former hygienist of his, Barbara Pirot, left after 13 yrs because he refused to offer benefits (I will need insurance when my husband retires).

I had interviews with Collagenex Pharmaceuticals trying to get a job with at least pay + benefits equal to what I made doing clinical dental hygiene. The prospects narrowed down to 2 candidates, myself and a man and he got the position. Someone within the company told me there was pressure to hire a man

since there were only women in the entire region. The position was for sales of periodontal medication sold to dentists.

*[signature: Carolyn Muriel]*

292

1   COMMONWEALTH OF MASSACHUSETTS
    COUNTY OF HAMPDEN
2


3           I, LAURIE A. MONAGHAN, a Notary Public within
    and for the Commonwealth of Massachusetts, do hereby
4   certify that I took the deposition of CAROLYN MIREK,
    pursuant to Rule 30 of the Federal Rules of Civil
5   Procedure, on September 15, 2005, at the Law Offices of
    Crevier & Ryan, LLP, 1500 Main Street, Suite 2020,
6   Springfield, Massachusetts.

7           I further certify that the above named deponent
    was by me first duly sworn to testify to the truth, the
8   whole truth and nothing but the truth concerning her
    knowledge in the matter of the case of CAROLYN MIREK vs.
9   THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, et al, now
    pending in the United States District Court for the
10  District of Massachusetts.

11          I further certify that the within testimony was
    taken by me stenographically and reduced to typewritten
12  form under my direction by means of COMPUTER ASSISTED
    TRANSCRIPTION; and I further certify that said deposition
13  is a true record of the testimony given by said witness.

14          I further certify that I am neither counsel for,
    related to, nor employed by any of the parties to the
15  action in which this deposition was taken; and further,
    that I am not a relative or employee of any attorney or
16  counsel employed by the parties hereto, nor financially or
    otherwise interested in the outcome of the action.
17
            WITNESS my hand this 27th day of September,
18  2005.

19                    _____
                      Laurie A. Monaghan
20                    Notary Public
                      Certified Shorthand Reporter
21                    Registered Professional Reporter

22
    My commission expires
23  August 8, 2006

---

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

**PHILBIN & ASSOCIATES, INC.**

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947