UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | Civil Action |
| ) | No. 04-30166-RGS |
| THE GUARDIAN LIFE INSURANCE ) | |
| COMPANY OF AMERICA and ) | LEAVE TO FILE GRANTED ON |
| BERKSHIRE LIFE INSURANCE ) | OCTOBER 16, 2006 |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendants ) | |

**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
"IRRELEVANT" EVIDENCE (Docket No. 61)**

I. INTRODUCTION

Plaintiff opposes Defendants' motion to exclude evidence that it characterizes as "irrelevant." Evidence with respect to Defendants' claims handling and corporate position on latex allergy relevant to both the claims in this case and and impeachment. None of the evidence identified by the Defendants should be excluded.

II. ALL OF THE EVIDENCE DEFENDANTS SEEK TO EXCLUDE IS RELEVANT
TO IMPEACHING DEFENDANTS' POSITION CONCERNING THEIR REASONS
FOR DENYING HER LATEX-ALLERGY BASED DISABILITY CLAIM

The central issue in this case is whether the Defendants breached their disability insurance contract with Ms. Mirek in denying her latex-allergy based claim in 2002, and in continuing to deny her monthly benefits to this day. Defendants maintain that they properly denied her claim in 2002 because they concluded she was not disabled within the meaning of the policy. But, their basis for concluding she was not disabled then was

1

far different than what they are planning to tell the jury now. And their basis for denying her claim then, and their position now, clashes with their internal corporate position concerning the disabling nature of latex allergy. The Defendants' motions in limine are designed to prevent the jury from learning about their inconsistent positions, and preventing harm to the credibility of the basis of their position for denying Carolyn Mirek's latex allergy claim.

The Defendant insurance companies currently take the position that Carolyn Mirek is latex allergic, but that latex allergies are generally non-disabling. Defendants have proferred two experts to testify generally about latex allergies and to give the opinion that individuals with latex allergies can generally continue to work.

One expert plans to testify that:

> [T]he majority of health care workers that develop latex allergy can continue to work in their chosen profession after appropriate treatment and modifications of the environment. We are doing our patients a disservice by telling them they are disabled by a latex allergy.

Report of Steven J. Weiss, M.D. (Dec. 8, 2005) ("Weiss Report") at 8, Ex. 1.

Another expert designated by the Defendants plan to testify generally about latex-allergic employees in dental practices, and how it can be, in his view, generally safe for such latex-allergic employees to work in dental practices:

> An average dental practice should be able to eliminate the use of latex, making it safe for an employee who is allergic to latex to work there.

Report of James R. Garb, M.D. (Mar. 12, 2005) ("Garb Report #1") at 2, Ex. 2.

The primary thrust of both Defense experts' expected testimony is that latex allergy is rarely, if ever, a disabling condition for a dental hygienist. Although the expert reports mention Ms. Mirek's specific circumstances, they each conclude that a latex allergy in general is not disabling from work in a dental office.

This view now advanced by the Defendants for purposes of trial is is inconsistent with the position they took at the time when they denied Ms. Mirek's claim in 2002, and first breached the contract. Both of the current defense experts have Ms. Mirek is allergic to latex. See Weiss Report at 8, Ex. 1; Garb Report #1 at 3, Ex. 2. But at the time the Defendants denied Ms. Mirek's claim, they did so in reliance on Dr. Harold Axe, who holds the unorthodox view that latex allergy does not even exist. The report written by Harold Axe, M.D. dated June 26, 2002, Ex. 3, on which Defendants relied in denying Ms. Mirek's claim, expressly stated: "Latex allergy is not a distinct disease but a multifactorial medical entity commonly referred to as Chronic Inflammatory Airway Disease." At his deposition, Dr. Axe specifically stated that "Latex allergy is not a specific disease that you treat people for". Deposition of Harold Axe, M.D. (Sept. 16, 2005) at 10-11, Ex. 4.

A jury is entitled to judge the credibility of Defendants' current stance, and their current experts, by evaluating the opinions offered against the prior representations of a physician relied upon by Defendants. And, in considering the weight to give to the Defendants' current position, and to any corporate witness who takes the stand to rely on their current experts, it is important for the jury to know that Defendants previously relied on an expert who didn't even believe Ms. Mirek had a latex allergy, because he didn't even believe it existed. A juror might rightly be skeptical as to whether Defendants are taking expedient, rather than sound, positions simply to accomplish the result of avoiding paying Ms. Mirek's claim under the contract.

Similarly, a jury has a right to know when evaluating the opinions of Defendants' experts that their views conflict with the corporate position taken by the Defendants since

at least 2002. Since at least that time, Defendants have taken the position that there is such a risk of individuals in the health care field becoming disabled from latex allergy and filing a disability claim, that they will decline all applications for insurance in which an individual has any history of latex allergy.  Deposition of Donald O. Morgan ("Morgan Dep.") at 17-20, Ex. 5.  This practice is explicitly due to the risk of disability claims for individuals in the medical field with latex allergies.  Morgan Dep. at 20, Ex. 5.  The decision to deny such applications is based upon the experience in the industry of large numbers of latex-allergic claimants filing disability claims, making such policies losing propositions for insurance companies.  Morgan Dep. at 22, Ex. 5.  Nearly the entire market for disability insurance policies issued by the Defendants  for Berkshire insurance has been in the medical field  Morgan Dep. at 22, Ex. 5.

Obviously, Defendants' corporate position conflicts directly with Defendants' current view that "[T]he majority of health care workers that develop latex allergy can continue to work in their chosen profession after appropriate treatment and modifications of the environment." Weiss Report at 8, Ex. 1.

While listening to Defendants' lawyers cross-examine Plaintiff's experts on latex allergy – and Defendants' efforts to minimize the seriousness of latex allergy during such questioning  – the jury is entitled to consider the Defendants' own corporate position about the disabling nature of latex allergy, i.e.,  Defendants' internal corporate position is that latex allergy is so potentially disabling in the medical field that Berkshire is turning down a whole segment of its medical marketplace simply to avoid the risk of paying such claims. Moreover, the  jury is entitled to question the credibility of the positions taken by

the Defendants at trial in light of their shifting and conflicting rationales with respect to latex allergy.

### III. ALL OF THE EVIDENCE IS RELEVANT TO THE CLAIM OF BREACH OF GOOD FAITH AND FAIR DEALING

#### A. *The Applicable Complaint Still Contains An Allegation of Bad Faith*

Defendants' motion in limine is predicated largely on the argument that this is solely a breach of contract case. It is not. The currently applicable complaint in this case states that "the defendants have committed a breach of the implied covenant [of] good faith and fair dealing in the insurance contract." See Second Amended Complaint (Docket No. 9) at ¶ 12. That paragraph has never been dismissed or dropped voluntarily. It remains in this case.

The issue of what remains in this case is admittedly a confusing one. Several claims were dismissed by the court and an additional claim was dropped voluntarily by the Plaintiff. A motion to amend the complaint was denied by the court as untimely, and a second case was filed with respect to some of the allegations that Plaintiff sought to add to this case. See Carolyn Mirek v. The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America, Civil Action No. 05-30246-MAP ("Mirek II"). But nothing about those procedural machinations actually alters what is and what has always been in the complaint – an allegation of "breach of the implied covenant [of] good faith and fair dealing." The denial of leave to amend a complaint doesn't take away what was already in there.

Defendants rely on the headings in the complaint to assert that the only remaining claim is one for breach of contract. The breach of good faith and fair dealing claim is indeed contained within a section of the complaint identified as "Breach of Contract." But the headings in a complaint do not establish what claims are present therein. It is

5

well-established law that "[a] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations." Errichetti v. Mass. Water Resources Auth., 300 F. Supp. 2d 270, 273 (D. Mass. 2004) (quoting Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir.1992)); Fitzgerald v.Codex Corp., 882 F.2d 586, 589 (1st Cir.1989) ("it is not necessary that a legal theory be pleaded in the complaint if plaintiff sets forth "sufficient factual allegations to state a claim showing that he is entitled to relief" under *some* viable legal theory."); Morales-Vallellanes v. Potter, 339 F.3d 9, 14 (1st Cir.2003) (same).

Defendants have never provided any explanation about why they interpret the direct reference to good faith and fair dealing as superfluous language in the complaint. Defendants' theory is largely predicated on remarks made by the Court at a previous hearing, in which the Court acknowledged that it had not even looked into the issue as to what allegations were in Mirek I and Mirek II. Transcript of January 27, 2006 Conference (Ponsor, J.), ("January Hearing"), Ex. 6 at 10 ("[w]hat is in the 05 case, the one that is not before us right now, what is the cause of action that's different from the contract claim?"); January Hearing, Ex. 6 at 14 ("I'm going to give you a schedule which will address . . . the issue of the 05 case and its relationship to this case . . .").

The denial of leave to amend the complaint only prevented Plaintiff from asserting allegations that were not present in the complaint to begin with. The motion to amend and supplement the complaint sought to add certain claims based upon facts that had either not occurred, or could not have been known of, prior to the filing of the original complaint. All of those allegations are now in Mirek II. But with respect to

6

allegations involving conduct that was known at the time of the filing of this complaint, those allegations remain in this case.

The second amended complaint alleges facts that support a claim of tortious bad faith. At the time Ms. Mirek voluntarily dismissed her claim under the Connecticut Unfair Practices Act, she expressly indicated a desire to use those same allegations to bring a bad faith claim. All of the allegations supporting the bad faith claim are present in the complaint. The only thing missing from Mirek I are the allegations of conduct that either happened or were learned of since the case was filed – the denial of the motion to amend kept those out, which is why they have been asserted in Mirek II.

### B.  All of the Evidence Defendants Seek To Exclude Is Relevant To The Bad Faith Claim

The evidence Defendants seek to exclude in their motion is all relevant to the claim of bad faith. It falls within two broad areas – 1) the handling of Ms. Mirek's claim and other similar claims and 2) the corporate position of the Defendants with respect to latex allergies. Both areas clearly evidence Defendants' bad faith. Defendants do not appear to contest the fact that both subjects are relevant to the bad faith claim, their sole argument appears to be that the claim of breach of good faith of fair dealing should be ignored in the complaint.

#### 1. Claims Handling Practices

Defendants argue that evidence about the handling of Ms. Mirek's claim by the Defendants is irrelevant to this case, because it is only a breach of contract case. As articulated above, there is also a claim of breach of the covenant of good faith and fair dealing in the Complaint. The unfair practices that Defendants engaged in when handling Ms. Mirek's claim are directly relevant to that claim, and is highly probative. Defendants

7

acknowledge that claim handling practices are a "core component" of Ms. Mirek's allegations of bad faith. Docket No. 61 at 4. The only disagreement is whether those allegations are in Mirek I or Mirek II or both

### 2.  Corporate Position Regarding Disabling Nature of Latex Allergy

Defendants argue that evidence about the corporate position of the Defendants regarding latex is similarly irrelevant to this case, because of the belief that it only relates to underwriting practices and this is only a breach of contract case. As articulated above, the Defendants' corporate position concerning the disabling nature of latex allergy is directly relevant the breach of contract claim. It also provides evidence of the Defendant's breach of the covenant of good faith and fair dealing. It is evidence of bad faith for the same company to take two diametrically opposed positions when dealing with claimants and with potential insureds.

Defendants argue that, because underwriters and claims handlers perform different functions, there is nothing untoward about their inconsistent positions. This may be the position of Defendants, but in the context of the bad faith claim, that question is for the fact finder. A reasonable jury could hold that it is evidence of bad faith for claims handlers and underwriters from the same company to take opposing positions about the severity of latex injury. Evidence of the bad faith conduct of Defendants is clearly probative as to the claim that Defendants breached the covenant of good faith and fair dealing.

### IV. CONSOLIDATING THIS CASE WITH MIREK II WOULD MOOT THE DEFENDANTS' MOTION AND AVOID FUTURE EVIDENTIARY DISPUTES AND DUPLICATIVE EVIDENCE

Defendants and the Plaintiff have a different view as to which facts and claims belong in Mirek I and which belong in Mirek II. As articulated earlier, much of the

8

confusion is understandable due to the twists and turns that this litigation has taken. The two cases relate to the same underlying contract, and many of the same witnesses would be applicable to each case. There is very little disagreement, however, about the facts and claims that apply to the two cases together. Parsing out which evidence is relevant to which case will undoubtedly be difficult and contentious. But it would become completely unnecessary if the two cases were consolidated.

As noted in Part II, supra, if the Court were persuaded by the Defendants' argument that there is only a breach of contract claim in Mirek I, much of the evidence of bad faith would still be relevant in Mirek I for impeachment. Excluding that evidence would therefore require a determination of whether a particular witness' testimony on a particular subject will be more probative or unduly prejudicial. There have already been three motions in limine filed, and many more would undoubtedly be forthcoming.

There will also be some difficulties if the Court is persuaded by Plaintiff's argument that both cases allege bad faith conduct, but that certain conduct is applicable only to the first case and certain conduct is only applicable to the second case. Dividing the cases in that manner would require that evidence be submitted to the jury about whether particular factual allegations were known or should have been known to the Plaintiff prior to the filing of her complaint in this case. This would inject a degree of confusion and wastefulness into the trial, as jurors would effectively be deciding what allegations are actually part of the case, before deciding on their merit.

Furthermore, the overlapping nature of the cases, regardless of how they are divided, will undoubtedly lead to many of the same witnesses testifying in both cases and

the same evidence presented. This duplication of resources is wholly unnecessary, given the alternative of trying the two cases together.

Consolidating the two cases would make all of the evidence that is the subject of this motion relevant, even under Defendants' interpretation of the Complaint. It would be the simplest and most efficient way to resolve the issue. It would also be the most consistent with the interests of justice, as it assures that all of Plaintiff's claims would be heard.

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion in Limine to Exclude Irrelevant Evidence should be denied.

Respectfully submitted,

PLAINTIFF CAROLYN MIREK

By her Attorneys,

<u>/s/ Joanne D'Alcomo</u>
Joanne D'Alcomo
BBO #544177
Seth Nesin
BBO #650739
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500