UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>)<br>)<br>THE GUARDIAN LIFE INSURANCE )<br>COMPANY OF AMERICA and )<br>BERKSHIRE LIFE INSURANCE )<br>COMPANY OF AMERICA, )<br>)<br>Defendants )<br>) | Civil Action<br>No. 04-30166-RGS<br><br>LEAVE TO FILE GRANTED ON<br>OCTOBER 16, 2006 |

**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
EXPERT AND FACT WITNESSES (Docket No.62)**

I.   INTRODUCTION

Defendants have moved to exclude the testimony of Plaintiff's expert L. Christine Oliver and a number of fact witnesses for a variety of reasons.  As demonstrated below, Defendants' motion should be denied in whole. All of the witnesses' testimony is relevant and admissible.

II.   DEFENDANTS' SOLE ARGUMENT TO PRECLUDE THE TESTIMONY
OF DR. CHRISTINE OLIVER – THAT SHE IS "UNQUALIFIED" – MUST
FAIL

   *a. Dr. Oliver is highly qualified in the field of occupational medicine and
      latex allergy in particular*

Dr. Oliver is a leading expert in the field of occupational medicine, and has an extensive curriculum vitae demonstrating her credentials.   See Curriculum Vitae of Dr. Oliver ("C.V."), Ex. 1.  She is Board-certified in Occupational Medicine. Id.   She has been an instructor and professor at Harvard Medical School for 30 years. Id. She has

practiced occupational medicine at Massachusetts General Hospital for 24 years.  See Deposition of L. Christine Oliver, M.D., M.P.H., M.S. ("Oliver Dep.") at 23, Ex. 2.  She has a private practice in treating patients with occupational health issues.  C.V., Ex. 1.  She has authored and co-authored over 25 original medical journal articles involving occupational health.  Id.  She has an M.D. from the University of North Carolina, and did her residency in occupational medicine.  Id.; Oliver Dep. at 23, Ex. 2.  She also has both an MPH and MS from the Harvard School of Public Health.  C.V., Ex. 1.

Dr. Oliver is also an expert in the field of latex allergies as they relate to occupational health.  She regularly gives lectures to doctors and medical personnel on occupational lung disease, including latex allergy as a cause of occupational asthma.  Oliver Dep. at 16, Ex. 2.  She provides informal training to both medical students and pulmonary fellows on the latex related disease, including asthma.  Oliver Dep. at 17, Ex. 2.  She has treated patients with latex allergies over the duration of her medical career.  Oliver Dep. at 29.

> **b. *Defendants' attack on Dr. Oliver's qualifications to testify as an expert in this case go, at most, to the weight of her testimony, not its admissibility***

In moving to preclude Dr. Oliver's testimony, Defendants make no reference to the seminal case of Daubert v. Merrell Dow Pharms. Inc., at 509 U.S. 579, 594-95 (1993), which interpreted Federal Rule of Evidence 702 and established the judge's role as "gatekeeper."  The express purpose of that role is to insure that "the fact-finding process does not become distorted by what is popularly called 'junk science.' " Whiting v. Boston Edison Co., 891 F.Supp. 12, 24 (D.Mass.1995).  It is not intended to replace

the fact-finders role in determining the weight or credibility to give to an expert's testimony.

Defendants have argued that Dr. Oliver should be precluded from testifying because she purportedly lacks expertise in certain areas outside the field of occupational medicine. But

> [j]ust as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.

Whiting, 891 F. Supp. at 24. Dr. Oliver has based her conclusions on the scientific standards of her field and "follow[ed] [her] own prescribed scientific methodology." Wessmann v. Gittens, 160 F.3d 790, 805 (1st Cir. 1998). Any perceived flaws in Dr. Oliver's "application of an otherwise reliable methodology [go] to weight and credibility and not to admissibility." U.S. v. Shea, 211 F.3d 658, 668, (1st Cir. 2000). The proper method by which such opinions are tested is through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert v. Merrell Dow Pharms. Inc., at 509 U.S. 579, 596 (1993). It would be a disservice to the jury to preclude the testimony of a qualified expert like Dr. Oliver who could assist them in understanding the scientific issues in the case. As shown below, all of the areas about which Defendants complain are issues relating to the weight of the testimony not its admissibility.

> *1. Defendants' motion is predicated on Dr. Oliver's supposed lack of personal knowledge of various issues that are unrelated to her area of expertise*

In their motion, Defendants rely primarily on the argument that Dr. Oliver's testimony should be excluded due to her purported lack of personal knowledge on a

variety of subjects.  See Defendants' Motion In Limine (Docket No. 62) at 3-13. Defendants suggest that Dr. Oliver has insufficient personal knowledge with respect to the prevalence of latex-free dentistry in Mr. Mirek's geographic area; insufficient personal knowledge of the difficulty in switching from a latex office to a latex-free dental office; insufficient personal knowledge about latex dental products; and insufficient empirical evidence about the ventilation of ambient latex into other parts of a dental office.  None of these are subjects in which any expert in occupational medicine would be expected to have personal knowledge.  Defendants have set an impossible standard for the expert testimony of an occupational medicine physician.

Dr. Oliver has been proffered in this case as an expert in occupational medicine, and specifically latex allergies, subjects in which she is unquestionably an expert.  The subjects on which Defendants claim she lacks personal knowledge are ones in which there is absolutely no need for her to have personal knowledge and are not required for her to render an opinion.

### 2. Dr.Oliver's personal knowledge about the costs and logistics of creating a latex-free dental office are irrelevant

Defendants first argue that Dr. Oliver is not qualified because of her supposed lack of knowledge and expertise as to the question of whether a dental office can theoretically be made latex -free.  Docket No. 62 at 6-8.  The evidence in this case clearly establishes that Ms. Mirek, as a dental hygienist, can not open up her own dental practice. See Deposition of Carolyn Mirek ("Mirek Dep.") at **[page].**  Her opportunities for employment as a dental hygienist are subject entirely to the dentists for whom she might work, and who may or may not attempt to have a latex-free office.  There may be some

relevance to the question of whether latex-free dental offices are prevalent in Ms. Mirek's geographic region, but the question of whether a dentist might *hypothetically* create a practice in which Ms. Mirek could work is irrelevant.  It is meaningless to assert that Ms. Mirek is not disabled because she might potentially be able to work in a dental office that does not actually exist.

> **3. *Personal knowledge about the prevalence of latex-free dentists in Ms. Mirek's geographic area is outside the scope of Dr. Oliver's testimony, and no medical expert could be expected to have such knowledge***

Defendants also argue that Dr. Oliver is also not qualified because she did not conduct her own investigation about the prevalence of latex-free dentistry in M. Mirek's geographic area. Docket No. 62 at 5-6.  There is nothing in the case law that suggests that such personal knowledge is at all necessary to testify as an expert.  It would be extremely rare for any expert in medicine to have conducted any such formal study.     Dr. Oliver obtained knowledge about dental practices and the use of latex in those practices from numerous sources, including published works, conversations with a dentist, and most notably, through discussions with Ms. Mirek herself.  Ms. Mirek is extremely knowledgeable on the subject due to the fact that 1) she has vast experience as a dental hygienist; 2) she has a latex allergy; and 3) she currently works as a dental supply salesperson and interacts with many dental offices regularly and services those dental offices with supplies.

The sources relied upon by Dr. Oliver are exactly the sorts of sources relied upon regularly by experts in occupational medicine.  Defendants' argument seems to be that the only qualified would come from an individual with both an expertise in occupational health or related disciple *and* expertise in dentistry *and* expertise in the specific dental

practices in the Plaintiff's geographic area. This is an impossible standard that might well preclude any potential expert from testifying, because few, if any, individuals would ever possess sufficient expertise in all of these areas to satisfy Defendants' standards.

Defendants are certainly free at trial to cross-examine Dr. Oliver about the limits of her expertise and knowledge. But there is no reason to exclude her testimony about the many subjects on which she possesses expertise due to the fact that she does not have personal knowledge about other, unrelated subjects.

> ### 4. Knowledge about the costs and availability of various latex-free dental supplies is irrelevant

Defendants' next argument is that Dr. Oliver is an unqualified expert because of supposed lack of knowledge regarding the costs and availability of various latex-free alternatives to latex products that are commonly used in dentistry. Docket No. 62 at 8-11. For the reasons discussed in Part _____, supra, that subject is entirely irrelevant to the litigation. If it is possible for a dentist to purchase all latex-free alternatives to latex products, but he or she chooses not to do so, the office is no more latex-free than if no such alternatives exist. As indicated earlier, the question of whether a dentist might hypothetically create a practice in which Ms. Mirek could work is irrelevant. Ms. Mirek is no less disabled if she might potentially be able to work in a dental office that only exists in the theoretical.

Even if the subject of the cost and availability of latex-free dental products were relevant, there is no particular reason why an expert with Dr. Oliver's qualifications would also have personal knowledge or experience in that area. It is unlikely that any person exists that is an expert on, say, the percentage of Connecticut dentists that use different types of gloves and dental products. See Docket No. 62 at 11. Dr. Oliver

consulted with Ms. Mirek, who is extremely knowledgeable on the use of dental products due to the fact that she sells dental products in Connecticut, and has done so for the past few years. Obtaining information in this manner is reasonable, is standard practice for an occupational medicine physician who is forming an opinion about the characteristics of the person's occupation at issue, and is indeed sanctioned by the Federal Rules ofr Evidence.  See Fed. R. Evid. 703 (providing expert may rely on hearsay "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject).

> 5. ***Dr. Oliver is knowledgeable about ventilation of ambient latex within office buildings***

Defendants' last argument is that Dr. Oliver is not a qualified witness because she has no personal knowledge of the percentage of dental offices in which ambient latex is vented from one office in the building to other offices.  Defendants do not dispute that Dr. Oliver has reviewed the relevant literature and has expertise in ventilation systems, nor her conclusion that such cross-ventilation could be a problem for dental offices that contemplate removing latex from their office.  There is no reason that Dr. Oliver needs to know the percentage of offices in which this situation exists to point out that it is a problem. Moreover, to the extent that Defendants are permitted to argue at trial that any potential dental office is latex-free, Dr. Oliver's testimony would provide information to the jury about whether Ms. Mirek could potentially work in such an office.  The jury should not be denied that information.

> c. *Experts in occupational medicine routinely rely upon external information to reach conclusions about safe work environments*

Experts in Occupational Medicine treat and do research on a wide variety of patients, with a wide variety of ailments and symptoms, with a wide range of

occupations, in a wide range of workplaces. An expert in occupational health does not have first hand knowledge of every different type of work environment that a patient might encounter. It is standard practice to rely upon published works and upon individuals with familiarity of a work environment to determine the health risks inherent in a specific occupational setting. Information about the workplace is often provided in large part by the patient, who has the most knowledge about the working environment. This is the standard of care in treating and researching occupational health issues.

One standard for a trial court to apply in crediting the conclusions of an expert is whether the expert has "follow[ed] his own prescribed scientific methodology for collecting data" on the issue central to his hypothesis. Wessmann v. Gittens, 160 F.3d 790, 805 (1st Cir. 1998). "When scientists (including social scientists) testify in court, they must bring the same intellectual rigor to the task that is required of them in other professional settings." Id. citing Daubert. … "An expert witness can only deviate from accepted methods of scientific inquiry in ways that are consistent with the practices and usages of the scientific community." Id**. [fix these cites]**

### d. Dr. Oliver relied upon both published resources and discussions with knowledgeable individuals in reaching her conclusions about dentistry

In reaching her conclusion that Ms. Mirek was disabled from working as a dental hygienist, Dr. Oliver surveyed the relevant medical literature, which is cited in her report. She spoke with knowledgeable individuals, including Ms. Mirek herself, whose knowledge of the profession is a result of having worked as a dental hygienist for 20 years, and then as a dental supply salesperson. She also reviewed deposition transcripts in this litigation from the dentist that Ms. Mirek worked for previously, and from Ms. Mirek. Using these sources, in conjunction with her examination of Ms. Mirek, her

examination of Ms.Mirek's medical records, and her knowledge and experience in occupational medicine, she was able to reach her conclusion that Ms. Mirek is disabled from working as a dental hygienist.

In this case, Dr. Oliver's method of inquiry was entirely consistent with the practices of the scientific community in her field of discipline, and Defendants have failed to show otherwise. Defendants' attempt to preclude her testimony based upon purported deficiencies in her methodology has no scientific basis. It is entirely appropriate, and in fact standard practice, for and occupational health expert to making such a judgment based upon on similar information.

> ### e. *The Defendants proffered experts – who opine about Plaintiff's ability to work as a dental hygienist in a dental office – lack the very same knowledge of dentistry, dental offices and dental products that Defendants claim is essential for Dr. Oliver to rende  an opinion*

Defendants plan to call two expert witnesses at trial, Dr. James Garb and Dr. Steven J. Weiss. Every criticism that Defendants have made about Dr. Oliver is equally applicable to Defendants' experts. Dr. Garb has rendered two reports. See Exs. ____, _____. At Dr. Garb's first deposition, he testified that his knowledge of the products dentists use came from a conversation with his personal dentist and an internet search. Deposition of James R. Garb at 40-41, Ex. 3. He has no specialized expertise in dentistry. At the time he produced his initial report, he had made no effort to determine the prevalence of latex-free dentistry in Ms. Mirek's geographic are – he only later attempted to obtain such knowledge by calling dentists that Defense Counsel had provided. See Docket No. __.

In his second report, called an "addendum," he reached the conclusion that "there is a wide array of non-latex products available for general dentistry," without any

personal knowledge of dental products. His conclusion was based on _____. His other main opinion in the addendum was that "The introduction of these and other alternatives to latex dental products and gloves and enabled dentists and their staffs to avoid using latex in their work." Garb Addendum, Ex. ___ at 2, 4. Once again, this conclusion was reached without any personal knowledge of dentistry, dental products, or dental products.

The Report of Defendants' other expert, Dr. Weiss, which is required by Federal Rule of Civil Procedure 26 (____) to contain all of the grounds for his opinion, demonstrates that he, like Dr. Garb, does not rely on any personal knowledge of dentristy or dental offices or dental products or ventilation. Weiss C.V., Ex. 4. Dr. Weiss's proferred opinions include the following:

> "[T]he majority of health care workers that develop latex allergy can continue to work in their chosen profession after appropriate treatment and <u>modifications of the environment.</u> We are doing our patients a disservice by telling them they are disabled by a latex allergy."

Ex. ___ at 8.

Dr. Weiss further opined:

> "I believe that Mrs. Mirek has a better chance of minimizing her exposure to NRL [natural rubber latex] working in a dental office where she able to have control over her environment…. The risk of Mrs. Mirek experiencing an anaphylactic reaction, while working as a dental hygienist, in a latex safe environment is negligible."

Ex. ____ at 8.

Dr. Weiss thus states bold opinions about all health care workers' environments, not only the environments of dental hygienists – yet Dr. Weiss does not give as grounds for his opinion <u>any</u> personal knowledge of health care workers' environments, or, dental offices, in particular. See generally Weiss report at Ex. ____. He further opines:

> I believe that Mrs. Mirek has a better chance of minimizing her exposure to NRL [natural rubber latex] <u>working in a dental office</u> where she able to have control over her environment…. The risk of Mrs. Mirek experiencing an anaphylactic reaction, while working as a <u>dental hygienist</u>, in a latex safe environment is negligible.

<u>Id</u>. at 8. Once again, Defendants' proferred expert Dr. Weiss states an opinion about the conditions in a dental office, and work as a dental hygienist, without relying on any personal knowledge of dentistry or dental offices or dental products or ventilation.

Thus, Defendants' argument that Dr. Oliver's purported lack of knowledge about various subjects precludes her testimony applies with equal or greater force to their own two experts.

> ***f. Defendants have denied Ms. Mirek's claim for disability without any knowledge of the subjects they now claim are essential to coming to such a conclusion***

Defendants' arguments in seeking to exclude Dr. Oliver's testimony directly contradict the actions they took that are the subject of this litigation. Defendants determined in 2002 that Ms. Mirek was not disabled under the policy, and continues not to be disabled under the policy. It is well-established in the record that they reached this conclusion without relying on anyone with expertise in the costs or logistics of latex-free dental offices or the prevalence of latex-free dental products or offices, or the prevalence of improper ventilation in dental offices. Defendants did not consult with any individual with expertise in dentistry, nor did they review any literature related to dentistry of latex-free dentistry.

It is inconsistent, to say the least, for Defendants now to argue to this Court that only a witness with detailed knowledge about dentistry, dental offices and the the use of dental products in Connecticut  is qualified to render an opinion about whether Plaintiff has been disabled within the meaning of the policy.. If extensive knowledge of these

subjects is required to render an opinion as to whether Ms. Mirek is disabled under the terms of the policy, then Defendants have committed bad faith in handling her claim, as a matter of law, by not referring it to any individuals with expertise in dentistry

> g. *Dr. Oliver's Testimony About Defendants' Reliance On The Opinion of An Physician with Unconventional views of latex allergy Is Relevant To Both The Merits of This Case And As important Evidence Impeaching Defendants' Position concerning latex allergy and the true basis for denial of Plaintiff's claim*

Defendants also move to exclude any evidence, including testimony of Dr. Oliver, about their reliance on Dr. Harold Axe during the process of reviewing Ms. Mirek's claim. This evidence, particularly Dr. Oliver's testimony, is relevant to both Defendants' claimed reason for refusing to pay Ms. Mirek benefits, and their bad faith in denying her claim.

The central issue in this case is whether the Defendants breached their disability insurance contract with Ms. Mirek in denying her latex-allergy based claim in 2002, and in continuing to deny her benefits to this day. The Defendants are seeking to make arguments to the jury justifying their position denying Ms. Mirek's claim that sharply conflict with their earlier position about latex allergy.

When Defendants denied Ms. Mirek's latex-allergy based claim in 2002, Defendants relied on a physician named Harold Axe, M.D., who holds the unorthodox view that <u>latex allergy does not exist</u>. <u>See, e.g.</u>, Dep. of Harold Axe, M.D. at _____, Ex. _____. The denial was based on Dr. Axe's analysis that the Defendants' concluded that Ms. Mirek was not disabled within the meaning of the policy in 2002, and denied her claim. The Defendants have continued to refuse to pay her benefits since that time.

Last year, during this litigation, Defendants apparently decided that it would likely hurt them before a jury to present such an orthodox view of latex allergy, and they hired new experts to testify at trial. These new experts – Dr. James Garb and Dr. Steven Weiss – both believe that latex allergy exists and that Ms. Mirek is latex allergic. For strategic purposes, Defendants now seek to prevent the jury from having knowledge of the outlandish views of latex allergy on which they relied in denying Ms. Mirek's claim in 2002. But the jury is entitled – in assessing Defendants' current position on latex allergy – to hear about the unconventional views on which they relied in denying Ms. Mirek's claim in 2002 -- the very denial that is the subject of this lawsuit.

The only way that the jury will be able to understand how unconventional the views were that the Defendants relied on in denying Ms. Mirek's claim in 2002 and in determining that she was not disabled under the policy, is to hear testimony from an expert such as Dr. Oliver. See Dr. Oliver's Nov. 10, 2005 Report, attached to Defendants' Mem. at Ex. 5.

The evidence is also relevant to Plaintiff's bad faith claim which, as articulated further in the Opposition to Defendants' Motion in Limine to Exclude Irrelevant Evidence, remains sin this case. Evidence that Defendants relied on a physician with views that are far outside the mainstream in evaluating Ms. Mirek's claim is certainly relevant to that claim.

### III. THE TESTIMONY OF THE FACT WITNESSES DEFENDANTS SEEK TO EXCLUDE IS RELEVANT, NON-DUPLICATIVE AND UNDERMINES DEFENDANTS' ATTEMPTS TO CAST DOUBT ON PLAINTIFF'S CREDIBILITY

Defendants' motion also seeks to exclude the testimony of thirteen fact witnesses based on the argument that their testimony will be duplicative. As an initial matter, Defendants have not deposed any of these witnesses, and therefore the only information they have as to the c testimony of these witnesses comes from the brief description in Plaintiff's Pretrial Conference Memorandum.

Furthermore, Plaintiff is uncertain whether it will be necessary to call all of these witnesses, but at the time of the filing of the pretrial conference, she had no idea when the trial will be scheduled and therefore cannot rely on any particular witness' availability. Given the fact that witnesses to be used at trial must be named in the pretrial disclosures, it would have been foolish for Plaintiff to pick and choose as to the witnesses before knowing which are available. It would be premature to strike such witnesses at this point in the case, when it is unknown which of the witnesses will actually be providing testimony because of scheduling issues. For example, if the Court schedules trial during a school vacation or around a holiday, many witnesses could be unavailable. .

The witnesses identified all can provide relevant testimony that serves several purposes, most notably to corroborate Ms. Mirek's statements about the severe reactions she has had to latex allergy and the difficulty she had in leaving the field of dental hygiene.

Testimony about the severity, symptoms and reactions of Ms. Mirek to latex are relevant to the question of whether she is disabled by a latex injury under the terms of her policy. Defendants argue that testimony about her allergy is irrelevant because their

experts have already concluded that she has a latex allergy. See Docket No. 62 at 14. This argument ignores the fact that people with latex allergies do not all have identical symptoms or risks. An individual with a mild skin irritation due to contact with latex is completely different from an individual at risk of anaphylaxis from latex. The fact that Defendants' experts now acknowledge that Ms. Mirek has a latex allergy does not mean that the parties are in perfect agreement as to her medical condition. The severity of Ms. Mirek's latex allergy is a very significant issue in the case.

In motions and in discovery and in their expert reports, Defendants have repeatedly tried to portray Ms. Mirek's latex allergy as not severe or life-threatening. Ms. Mirek will certainly testify as to the severity of her past reactions and her symptoms, as will her treating physician, Dr. Bedard, who advised her to stop working as a dental hygienist. But the other witnesses who can testify about their observations about specific instances and manifestations of Ms. Mirek's latex allergy are important to corroborating those accounts. A Plaintiff's testimony about her own condition might well be diminished by a jury due to concerns that it is self-serving. Testimony of other witnesses about their observations of Ms. Mirek's condition lends credence to her testimony and allows the jury to better evaluate the true nature of her allergy. Defendants' request to exclude these corroborating witnesses is due not to a concern about duplication, but rather so they can attempt to portray Ms. Mirek as not credible at trial.

Defendants have indicated they plan to attack Ms. Mirek's credibility in filing a disability claim by contending that she voluntarily chose to leave her profession as a dental hygienist rather than leaving due to her latex allergy, and therefore is not entitled to benefits. Testimony from other witnesses about the difficulties Ms. Mirek faced in

leaving her career is therefore critical. If only Ms. Mirek testifies that she loved her job and was heartbroken to leave it, the jury may view that as purely self-serving testimony. If other witnesses describe their observations about Ms. Mirek's struggles in leaving her career, it will provide the jury with more information with which to ferret out the truth. Similarly, testimony from other witness about the precautions Ms. Mirek has taken and continues to take to avoid latex exposure will rebut any claim that Ms. Mirek is insincere about her allergy and has merely used it as a pretext to collect on her insurance contract.

In short, the evidence that Plaintiff seeks to offer is highly relevant to her claim, and to defending herself from Defendants' attacks on her credibility in describing her symptoms and reasons why she left her profession as a dental hygienist.

IV. **THE TESTIMONY OF ROSANNA BAENA AND EILEEN BARILE IS NECESSARY TO REBUT SPECIFIC WITNESS TESTIMONY THAT WAS UNKNOWN AT THE TIME OF AUTOMATIC DISCLOSURES**

Defendants further argue that the testimony of Rosanna Baena and Eileen Barile should be excluded because they were not disclosed until after discovery ended. This argument has no merit.

    *a. Rosanna Baena*

Rule 26(a) requires disclosure of individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses, ***unless solely for impeachment***, identifying the subjects of the information. Fed. Rule Civ. Pro. R. 26(a)(1)(A) (emphasis added). Rosanna Baena is a witness whose sole purpose is to rebut the testimony of Dr. Daniel Segal, who has been identified by the Defendants as a witness. She therefore does not fall under the requirement of Rule 26(a). She also does not fit within the Defendant's interrogatory request for individuals with knowledge of Plaintiff's claim.

Furthermore, the failure to disclose Ms. Baena is solely due to the misleading nature of Defendants' initial disclosures. Those disclosures listed Dr. Segal as one of the Defendants' 17 potential witnesses and described the subject matter of his testimony as "Carolyn Mirek's seeking work as a dental hygienist in his practice." Plaintiff had no reason to rebut that testimony, as Ms. Mirek is well aware that she sought a job with Dr. Segal, and she has testified to that fact. No deposition was taken of Dr. Segal, and no efforts were made to rebut his expected testimony because there was nothing to rebut.

Defendants' pretrial memorandum, however, changed the subject matter of Dr. Segal's testimony and thrust Dr. Segal into a position as one of the most prominent witnesses in the Defendants' case. Defendants discuss Dr. Segal's practice in 11 of the 57 paragraphs of their "statement of facts," giving him more attention in the facts section than any other individual other than Ms. Mirek. See Docket No. 46. Dr. Segal is put forth not just with respect to Ms. Mirek's application for employment, but also with respect to the amount of latex in his office and his ability to work with an apparent latex allergy of unknown severity. Defendants also discuss one of Dr. Segal's employees and her ability to work with an apparent latex allergy. It is now obvious that Dr. Segal is being called as a witness in large part as an undisclosed expert on latex-free dentistry, and not merely as an individual to whom Ms. Mirek contacted about employment opportunities.

Plaintiff would have deposed Dr. Segal had she been aware during the discovery period that Dr. Segal was being called as a witness for these purposes, rather than the narrow purpose in which he was originally identified. Plaintiff also would have identified Ms. Baena, a former employee of Dr. Segal, as a witness to rebut Dr. Segal's

testimony. Plaintiff should not be precluded from presenting Ms. Baena's testimony because of the misleading description of the subject of Dr. Segal's testimony, especially given that her expected testimony is being used for impeachment rather than to substantiate Ms. Mirek's claim.

### b. *Eileen Barile*

Defendants also seek to exclude the testimony of Eileen Barile based upon the fact that she had not previously been mentioned as having information about "symptoms manifested by Carolyn Mirek in the dental offices setting." This is hardly a discrete area, and Defendants have suffered absolutely no prejudice from the fact that Ms. Barile had not previously been disclosed. Several other witnesses have been identified as knowledgeable about the same or similar subjects, and Defendants made no effort to depose any of them. Ms. Barile is merely an additional witness who may be needed because of scheduling issues to testify on that subject and corroborate Ms. Mirek's testimony about the difficulties she encountered.

### V. CONCLUSION

For the reasons stated above, Defendants' motion to exclude expert and fact witnesses should be denied.

Respectfully submitted,

PLAINTIFF CAROLYN MIREK

By her Attorneys,

<u>/s/ Seth Nesin</u>
Joanne D'Alcomo
BBO #544177
Seth Nesin
BBO #650739
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500