UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK,<br><br>      Plaintiff<br><br>v.<br><br><br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA and<br>BERKSHIRE LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>      Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action<br>)  No. 04-30166-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO BERKSHIRE EMPLOYEE DR. TIMOTHY A. NEWMAN'S MOTION TO QUASH SUBPOENA (Docket No. 108)**

Plaintiff Carolyn Mirek hereby opposes the last-minute motion brought by Timothy A. Newman, a Berkshire employee, to quash the trial subpoena that was served by Plaintiff several weeks ago. There is not a sufficient evidentiary basis for a determination that testifying would be harmful to Dr. Newman. Based on the circumstances in which the motion arises, as described more fully below, the Court should view this motion with extreme skepticism. It appears from the context to be part of concerted effort by Defendants to avoid having any corporate representative from appearing at trial. The last-minute motion should be denied, or, at the very least, an evidentiary hearing should be conducted. The Defendants should not be allowed to prevail in their effort to manipulate whom the plaintiff can call as witnesses.

**I.  Background**

Dr. Newman is the current Medical Director for Defendant Berkshire Life Insurance Company of America ("Berkshire").  Among his responsibilities has been the providing of providing medical consultation on disability claims and underwriting.  He also runs the company's medical clinic for employees. He has been involved in latex issues at the company and analyzed Carolyn Mirek's claim before it was denied.  He has taken positions on latex allergy, treatment of latex allergy and issues relating persons with latex allergy becoming disabled from working in their occupation.

Plaintiff identified Dr. Newman as a potential witness in the pretrial memorandum filed on January 20, 2006.  See Docket No. 46.  Plaintiff served Dr. Newman with a subpoena for trial testimony on October 5, 2006.  See Exhibit 1.  There was no hint by defense counsel that there was any problem with Dr. Newman coming to trial. In fact, as recently as this past Wednesday, November 8, at the final pretrial conference in the Court's chambers, Plaintiff's counsel repeated her intention to call Dr. Newman. Berkshire's in-house counsel Edward Kimball – who was present and who works with Dr. Newman at Berkshire's offices in Pittsfield – did not utter a word about what is now claimed to be Dr. Newman's medical inability to testify.  Even on November 9, 2006, the last business day before the trial, defense counsel said nothing about any medical condition inhibiting Dr. Newman's ability to testify.

Suddenly, however, on the Friday before the Monday start of trial, Berkshire's counsel Edward Kimball took the position that Dr. Newman has been medically unable to testify at trial. He announced that he would be filing a motion to quash the subpoena served on October 5, 2006 unless plaintiff agreed not to call Dr. Newman as a witness.

2

Attorney Kimball forwarded a letter from a family practitioner, who specializes in Family Practice and Geriatrics, stating that "it would not be in Dr. Newman's medical interests to expose him to anxiety provoking litigation at this time."  See Printout from Dr. Eugene Heyman's website, Ex. 2; Docket No. 108 Ex. B (Letter from Eugene Heyman, M.D.); Plaintiff's counsel asked for more information from Defense counsel to ascertain whether quashing the subpoena was appropriate, such as whether Dr. Newman had had any similar medical procedures or problems prior to his deposition in September 2005.  There is even no information about whether Dr. Newman has been deposed in the previous 11 months or testified at hearings or other proceedings during that period.  While defense counsel provided some additional information, defense counsel did not provide any information about whether Dr. Newman had any previous related problems, or whether Dr. Newman was on "reduced hours" when he was deposed in September 2005.  Plaintiff's counsel indicated that she would not assent to quash the subpoena with only the information provided.  Defense counsel then filed this motion to quash the subpoena.  See Docket No. 108.  The motion to quash was the third such motion filed on the eve of trial by witnesses aligned with the Defendants whom Plaintiff subpoenaed.  See Docket No. 100 (motion to quash subpoena by Dr. Harold Axe); Docket No. 106 (motion to quash subpoena by Donald Morgan).

## II. Argument

### A. There Is An Insufficient Evidentiary Basis On Which To Quash The Subpoena

Dr. Newman argues that the subpoena should be quashed based upon Federal Rule of Civil Procedure 45(c)(3)(A)(iv).  That rule states that "On timely motion, the

3

court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue burden." The motion to quash should be denied both because it is untimely and there is insufficient evidence of "undue burden"

### 1. *Dr. Newman's Motion Is Untimely*

Rule 45(c)(3)(A) states explicitly that motions to quash brought under that rule shall only be granted "on timely motion." Dr. Newman and Defendants had ample time to bring this matter to the attention of Plaintiff and the Court. The in-house Defense Counsel in this case, Edward Kimball, works in the same building as Dr. Newman and has told Plaintiff's counsel in the past that he has regular interaction with Dr. Newman. Attorney Kimball represented Dr. Newman at his deposition. Mr. Kimball, who signed the motion on defendants' behalf, was surely aware of Dr. Newman's myocardial infarction well before the filing of the motion.

Plaintiff identified Dr. Newman as a potential witness in the pretrial memorandum filed on January 20, 2006. See Docket No. 46. Plaintiff served Dr. Newman with a subpoena for trial testimony on October 5, 2006. See Exhibit 1. No objection to the subpoena was received. On November 8, 2006, at the final pretrial conference in the Court's chambers, Plaintiff's counsel re-iterated her intention to call Dr. Newman. Once again, defense counsel was silent about any issues with Dr. Newman's appearance at trial.

To help Dr. Newman plan his schedule, Plaintiff's counsel emailed in-house counsel Edward Kimball on November 9, 2006 to indicate she intended to call Dr. Newman on Wednesday during the trial week. See Email from Joanne D'Alcomo to Edward K. Kimball (Nov. 9, 2006), Ex. 3. Once again, Berkshire's in-house counsel said

nothing about any obstacle to Dr. Newman's testimony. It was only on the Friday before trial was to begin (and a federal holiday) that Plaintiff first heard about any claimed difficulties with Dr. Newman testifying. There is no justifiable reason for this delay.

### 2. There Is Insufficient Evidence That Testifying Would Be An "Undue Burden" for Dr. Newman

The Rule on which Dr. Newman bases his motion, Rule 45(c)(3)(A)(iv), provides for the quashing of a subpoena only if it "subjects a person to undue burden." The record does not provide sufficient evidence to determine whether testifying would actually be any significant burden to Dr. Newman. Dr. Newman provides a letter from a family physician who specializes in Family Practice and Geriatrics (not cardiology) indicating that Dr. Newman is "partially disabled" and that it "would not be in Dr. Newman's medical interests to expose him to anxiety provoking litigation." See Printout from Dr. Eugene Heyman's website, Ex. 2; Docket No. 108 Ex. B (Letter from Eugene Heyman, M.D.). Dr. Newman also submits an affidavit in which he states that he resumed working at "reduced hours" as Medical Director at Berkshire five months ago, but that testifying at trial will subject him "to an increased chance of my experiencing acute adverse medical conditions." See Docket No. 108, Ex. A.

Despite inquiries from Plaintiff's counsel, Defense counsel would not reveal what Dr. Newman's reduced hours are or if his job responsibilities have substantially changed as a result of health issues. It is unclear why testifying in this case would be more anxiety-provoking than Dr. Newman's regular job, which involves operating Berkshire's in-house medical clinic and providing medical consultation to other departments. If Dr.

Newman is capable of working as the Medical Director of an insurance company, it is not unreasonable to believe he is capable of providing testimony in this case.

> **3.  It is Not Reasonable For the Court To Conclude On This Record That Dr. Newman's Health Could Truly Be At Issue in Connection With Testifying at Trial, Since Berkshire and Dr. Newman Waited Until the Friday Before Trial to Even Mention the Issue or File a Motion About His Health Despite Knowing For 11 Months That He Was On Plaintiff's Witness List**

It hard to view with anything other than extreme skepticism this motion claiming that Dr. Newman should be spared testifying because of his health, when Berkshire and Dr. Newman failed to take any action whatsoever – and failed to even mention any health issues about Dr. Newman – for the past 10 ½ months since Dr. Newman was first listed as a witness to be called by plaintiff.  If health were truly a concern, Berkshire and Dr. Newman should have made a motion months ago, if not weeks ago.  Even when Berkshire made motions in limine to preclude nearly all of plaintiff's listed witnesses from testifying, <u>including Dr. Newman</u>, Berkshire did not write a single word about Dr. Newman's health or any other obstacle to his appearance at trial. It would have been logical, to say the least, for Berkshire to include all grounds on which Dr. Newman should be precluded from testifying, including his health.  In fact, health – as opposed to subject-matter – would be the far more important grounds on which to shield a witness from testifying, one would think.

Instead, however, Berkshire's counsel said nothing about Dr. Newman's health interfering with his ability to testify until mid-morning on November 10.  The timing of this motion, given the circumstances – i.e., that this medical condition has existed for months – raises nothing but questions.  Since Berkshire has been in a position to know

6

about Dr. Newman's condition – he has been working regularly – there is no justification for why it is only being raised now as an impediment, rather than earlier.

> **4. It Would Be Unfair For This Court to Conclude Summarily, on This Scant Record, That Berkshire Employee Dr. Newman is "Partially Disabled" and Unable to Perform the Job-Related Function of Testifying at Trial as the Result of a Belated Letter From a Family Practitioner Not Subject to Cross-Examination, When the Very Subject of This Case is Berkshire's Refusal to Recognize a Disability Despite Far More Substantial Findings From Carolyn Mirek's Long-time Treating Specialist and an MGH Specialist in Occupational Medicine**

There is more than some irony in the fact that Defendants believe a vague three-sentence letter from a family physician is adequate to conclude that a person is disabled from performing the job-related function of a couple hours' testimony due to a heart condition, but findings from Carolyn Mirek's long-time allergist and a highly credentialed Massachusetts General Hospital occupational medicine specialist are wholly inadequate to prove plaintiff's disability from performing her job. Defendants should not be permitted to take one position as to what proves an occupational disability when it comes to Dr. Newman's job-related function of testifying – when it serves their interest – and a totally different position in acting on Carolyn Mirek's claim. At the very least, plaintiff should be able to make greater inquiry into the facts on which this asserted disability from testifying is based.

> **5. There Is No Requirement That Plaintiff Show A "Substantial Need"**

Dr. Newman's motion states that the subpoena should be quashed, in part, because there is no "substantial need" for his testimony. There is no requirement of "substantial need" to issue a subpoena for testimony and there is no provision in Rule

7

45(c)(3)(A), the rule relied upon by Dr. Newman, that permits the quashing of a subpoena based on a purported lack of need. The "substantial need" language comes from a different provision of Rule 45 that is inapplicable to Dr. Newman's subpoena.

In any case, Plaintiff does have a need for Dr. Newman's testimony, particularly in light of the other motions to quash filed in this case. Dr. Newman is a physician who was first consulted about Plaintiff's claim and who is capable of testifying to Berkshire's beliefs about the treatment of latex allergy, treatment of latex allergy, and the dangers of latex allergy. The Plaintiff did not conduct Dr. Newman's deposition with an eye toward using the deposition at trial, because she had no reason to believe that Dr. Newman would not be available at trial. She only conducted a short deposition of Dr. Newman, because she had every reason to believe that his testimony need not be preserved for the trial.

### B. The Motion Appears To Be Part Of A Larger Defense Strategy

There is also reason to believe that Dr. Newman is not acting independently, but rather, as part of a strategy with his employer, a Defendant in this case. The counsel who filed Dr. Newman's motion also represents the Defendants. Two other witnesses have also filed motions to quash their subpoenas on November 8 and November 10, 2006. See Docket Nos. 100, 106. It is a fair inference that Defendants are working behind the scenes to manipulate the presence of witnesses, since three witnesses suddenly filed motions to quash within two days of one another. This is hardly a coincidence when all three witnesses had been listed by plaintiff since January, and had been subpoenaed weeks earlier.

The Defendants indicated to the Court at the November 8, 2006 pretrial conference that they do not intend to call a single corporate representative, other than their two expert witnesses, who have never been Berkshire employees and who had no involvement in this matter until 2005, more than three years after the claim was filed. Three motions to quash have now been filed at the last minute to block the appearance at trial of two corporate representatives and a physician who acted on behalf of the Defendants to evaluate Plaintiff's claim. It appears as if Dr. Newman's motion to quash is part of a larger strategy by Defendants to keep any corporate representatives off the stand – or at least, a strategy to whittle down plaintiff's options to only a single corporate witness who apparently Berkshire prefers to take the stand and face the jury (Barbara Smachetti).

Plaintiff therefore asks the Court to deny his motion to quash.

Respectfully submitted,

PLAINTIFF CAROLYN MIREK

By her Attorneys,

/s/ Seth Nesin
_____
Joanne D'Alcomo
BBO #544177
Seth Nesin
BBO #650739
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

9