# Exhibit 1

# CONNECTICUT ASTHMA & ALLERGY CENTER LLC

836 FARMINGTON AVENUE, SUITE 207, WEST HARTFORD, CT 06119-1551 • (860) 232-9911 • FAX: (860) 233-5996

Jay E. Selcow, M.D.
Louis M. Mendelson, M.D.
James P. Rosen, M.D.
Marshall P. Grodofsky, M.D.

Jeffrey M. Factor, M.D.
Robert M. Bedard, M.D.
Jason O. Lee, M.D.

September 15, 2002

Richard Aries, Esquire
Box 431
South Windsor, CT 06074-0431

Re: Carolyn Mirek
#88175

Dear Mr. Aries:

Carolyn Mirek has been a patient of mine since 5/21/92 receiving care for seasonal allergic rhinitis and intermittent asthma. Because of suspicions of a latex allergy developed due to her occupational exposure she was skin tested to a Canadian latex extract on 6/11/99, which showed a significant positive test.

She did in my strong medical opinion develop her latex allergy causally due to her environmental exposure at the dental offices where she has worked. This significant additional allergic component to her rhinitis and asthma became evident in 1999 and was diagnosed appropriately.

Because of this allergy, she has developed concurrently sensitivities to avocado, banana and kiwi. These food allergies are seen in some latex-allergic individuals and likely represents a cross-reaction between the latex allergen and proteins in these foods.

Mrs. Mirek has worked as a dental hygienist since her graduation from School of Dental Hygiene in 1983. With the development of universal precautions in the mid to late 80s, it is likely that she had significant exposures to aerosolized latex allergen due to the widespread use of powdered latex gloves in dental offices.

In 1999 it was obvious that latex exposures at work were contributing to worsening in her preexisting rhinitis and asthma.

Her employer did make allowances for her recognized latex allergy and did switch to nonpowdered latex gloves. Mrs. Mirek used vinyl gloves or a Johnson & Johnson unpowdered latex glove with some success. She did intermittently have significant reactions manifesting in increased cough, asthma and nasal congestion.

In addition, she has had several episodes of food related anaphylaxis which in retrospect likely represented allergic reactions to transferred latex from the gloves used by the food handlers.

Specializing in Asthma, Allergic Diseases, Sinus Diseases • Board Certified Physicians in Allergy & Immunology
Satellites: Avon • Enfield • Manchester • Middletown

September 15, 2002
Richard Aries, Esquire
Re: Carolyn Mirek
Page 2

It is my strong medical opinion that despite careful latex avoidance, Mrs. Mirek continued to have difficulty while working as a dental hygienist. Because of this, it was medically necessary and clearly indicated for her to consider an alternative occupation.

Mrs. Mirek was last seen on 5/21/02. She related that she was doing well working as a dental supply salesperson. She did admit to some regret in leaving her primary occupation but I applaud her courage in making the change for the benefit of her health.

Her asthma as of 5/21/02 was in good control though she did report having some swelling in the face after stitching elastic bands on her children's shoes.

I have counseled her on continued latex avoidance as well as potential sources of cryptic latex exposure.

It is likely that she will remain with a permanent latex allergy. She will need to inform all healthcare providers given her care of this allergy and be prepared to treat latex-induced asthma and/or anaphylaxis should there be an inadvertent exposure.

The nature of the natural history of latex allergy that has developed in healthcare workers is not yet clear. With the onset of universal precautions in the mid 80s between 10-15% of healthcare workers developed a latex sensitivity, some of whom manifested significant clinical symptoms of rhinitis, asthma, contact urticaria and risk for anaphylaxis. As the healthcare and dental industries moved away from powdered latex gloves, it is likely that the level of sensitization may decline. It is not known whether or not previously sensitive individuals will lose their sensitivity over time.

At this time, I would consider her latex allergy a permanent restriction and level of impairment in Mrs. Mirek's case.

I hope this information will be of help.

Sincerely yours,

Robert M. Bedard, M.D.
RMB:NET/rg
D:   9/15/02
T:   9/16/02



**Berkshire Life
Insurance Company of America**

November 22, 2002

Robert Bedard, MD
836 Farmington Avenue
Suite 207
West Hartford, CT 06119-1551

Re: Carolyn Mirek
Policy#: G723670
Claim#: 391131

Dear Dr. Bedard:

Thank you for your letter of September 15, 2002 regarding the claim for disability benefits for Carolyn Mirek.

As part of our claim review, we forwarded your letter to Dr. Harold Axe for his evaluation. A copy of his response to the letter that you provided regarding Ms. Mirek is enclosed for your review. If you wish to comment on Dr. Axe's report or provide any additional information, please do not hesitate to do so.

If you should have any questions, please contact me at 1(800) 933-3302 or (610) 807-8738.

Sincerely,

Kevin T. Kvederas
Disability Claims Specialist
Claims Management Services

Enc: Report dated June 26, 2002 from Dr. Axe
     Letter dated October 21, 2002 from Dr. Axe
Cc: File

700 South Street • Pittsfield, Massachusetts 01201-8285 • Telephone: 413-499-4321
Berkshire Life Insurance Company of America, Pittsfield, MA, is a wholly-owned subsidiary of The Guardian Life Insurance Company of America, New York, NY



# National Medical Evaluation Services

25899 West Twelve Mile Road • Suite 200 • Southfield, MI 48034
Office: 248-352-6747 • Fax: 248-352-2761

July 10, 2002

Mr. Kevin Kvederas
Berkshire Life
700 South Street
Pittsfield, Massachusetts 01201-8285

Re: Mirek, Carolyn
Your Claim/File Number:  G723670

Dear Mr. Kvederas:

Enclosed is the Medical Record Review Report rendered by

Dr. Harold Axe, regarding Ms. Carolyn Mirek, per your request. If we can

be of any further assistance, please do not hesitate to contact us.

Sincerely

SW

MLS National Medical Evaluation Services

c: File

Enclosures

CLAIMS   JUL 15 2002

June 26, 2002

Re:   Carolyn Mirek

I am a physician licensed to practice medicine in the States of New York and Ohio, where I have practiced the specialty of Allergy and Immunology for more than 25 years.

I have reviewed the medical records, which you have provided me of Ms. Carolyn Mirek and I am aware of her claim for total disability on the basis of Latex Allergy and Carpel Tunnel Syndrome.

The most recent medical report dated October 22, 1999 and signed by Dr. Robert M. Bedard described the patient "Mrs. Mirek is doing quite well. She had an excellent September without symptoms of sneezing, runny nose..," From the medical record you have provided me I have no information to support a worsening of Ms. Mirek's condition.

Latex Allergy is not a distinct disease but rather a part of a much more multifactorial medical entity commonly referred to today as Chronic Inflammatory Airway Disease.

CLAIMS   JUL 15 2002

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 2

Chronic Inflammatory Airway Disease describes the inflammatory process present in the nose, sinuses, and bronchi that is variously known as Allergy, Allergic Rhinitis, Bronchial Asthma, etc. This inflammatory process is the result of the collective allergic reactions to Pollens, House Dust Mite, Mold spores, Animal dander, and even Latex particles in the inspired air. Symptoms of runny nose, sneezing, nasal stuffiness, cough, shortness of breath and wheezing occur whenever the accumulation of these factors and thereby the inflammation, reaches an overwhelming degree. Physical and non-allergic factors, too, such as smoke, air pollution, irritating odors and fumes, exercise, cold, viral infections, also contribute to the development of symptoms.

Allergy testing is a means of confirming the presence of some of the allergic factors in the clinical presentation of Allergic Disease. However, Allergy Skin Testing, and the alternative to skin testing, the blood test known as RAST, are merely tests to detect the presence of specific antibodies in a person's system. They are not indicative of the degree to which these factors contribute, if any, to the overall expression of the chronic airway inflammation.

Allergy testing is not precise. There are inherent flaws in its accuracy. There is no standardization of testing materials, especially Latex. Ms. Mirek was tested with a piece of examining glove. Allergy testing is therefore merely a piece of information to fit into the larger clinical picture. Allergy Skin Testing of Ms. Mirek in June, 1999, apparently showed significant reactions to Latex, but, also, to Ragweed Pollen, and Fresh Banana.

CLAIMS  JUL 15 2002

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 3


*[handwritten: Occupational Allergy / Treatment is Available]*

1. Chronic Inflammatory Airway Disease, or "Allergy" or "Asthma" is totally treatable, and thus, should rarely if ever prove a disability. In his notes in June, 1999 Dr. Bedard described a very favorable response by Ms. Mirek to just one medication, FLONASE, a nose spray. If Ms. Mirek's condition has deteriorated so much in the past 2-1/2 years since June, 1999, regardless of to what degree Latex may or may not have contributed to such deterioration, then an even more aggressive course of medical management is certainly indicated.

   It is my medical opinion that such an unfavorable outcome to adequate treatment justifying the finding of "Total Disability" because of "Latex Allergy" in Ms. Carolyn Mirek is highly unlikely.

2. Through my review of the medical records, which you have provided me of Ms. Carolyn Mirek, I should like to emphasize that I see no basis for a work restriction or work limitation based on Latex Allergy in Ms. Mirek.

CLAIMS    JUL 15 2002

Carolyn Mirek
Dr. H. Axe
July 9, 2002
Page 4

3. In her medical record dated October 22, 1999, Dr. Robert M. Bedard described Ms. Mirek as doing quite well in view of the accommodations made in the workplace in that Vinyl was being substituted for Latex wherever possible.

*[handwritten annotation: Correct]*

*[handwritten annotation: Was it continued? RMB]*

Sincerely,

*[signature]*

Harold Axe, M.D.

klm

CLAIMS    JUL 15 2002



**National Medical Evaluation Services**

25899 West Twelve Mile Road • Suite 200 • Southfield, MI 48034
Office: 248-352-6747 • Fax: 248-352-2761

# FAX

October 21, 2002

Mr. Kevin Kvederas
Berkshire Life Insurance Company
700 South Street
Pittsfield, MA. 01201-8285

Re: Ms. Carolyn Mirek
Your Claim/File Number:  G723670

Dear Mr. Kvederas:

Enclosed is the Addendum Report rendered by Dr. Harold Axe, regarding Ms. Carolyn Mirek, per your request. If we can be of any further assistance, please do not hesitate to contact us.

Sincerely,

MLS National Medical Evaluation Services

c: File

Enclosures

CLAIMS OCT 21 2002





October 11, 2002

Re: Carolyn Mirek – Claim # 391131, (2nd Addendum)

Through your offices, I am in receipt of a copy of a letter from Dr. Robert M. Bedard dated September 15, 2002, regarding his patient, Ms. Carolyn Mirek, and her medical condition that he describes as "Latex Allergy."

I am also in receipt of your memo to me dated October 2, 2002, requesting my review and comments of Dr. Bedard's recent letter.

1) Dr. Bedard's letter of September 15, 2002, does not change my previously stated opinion of Ms. Mirek's medical condition because I do not believe that Dr. Bedard has described anything significantly new in his description of Ms. Carolyn Mirek's medical condition, except to point out that she is "doing well" and that "her asthma as of 5/21/02 was in good control."

2) Dr. Bedard alludes to a cross reactivity of Latex Allergy with Allergy to food proteins found in Kiwi, Banana, and Avocado. Although this phenomenon has been reported in the medical literature, I have no way of knowing, nor can I imagine how it can ever be proven, in which direction this cross reactivity developed in Ms. Mirek. It is just as likely that her Latex Allergy developed from her dietary exposure to Kiwi, Banana, and Avocado as it is that her reactivity to these foods resulted from her exposure to Latex.

3) In previous communications as well as this current letter, Dr. Bedard consistently describes Ms. Mirek as "doing well." He describes the many changes her previous employer made to accommodate her Latex sensitivity in the work place, but he does not explain what environmental changes have been made in Ms. Mirek's home or what medications in addition to FLONASE have been prescribed. He dwells exclusively on the Latex issue, but fails to elucidate the presence of a cat or dog in the Mirek home, Ms. Mirek's smoking history, feather bedding, her Latex exposure off the job, etc. Moreover, no mention is made as to what Asthma medications were prescribed to control her Asthma so that she would not feel that she had to change jobs. These are but a few of the very many issues that an Allergist customarily addresses in the care of a person with Ms. Mirek's condition.

4) In the 12th paragraph of his letter dated September 15, 2002, Dr. Bedard states that "it is likely that she will remain with a permanent latex allergy." Yet, in the very next paragraph he states: "The nature of the natural history of latex allergy that has developed in healthcare workers is not yet clear." And further, in that same paragraph he even states: "As the healthcare and dental industries moved away from powdered latex gloves, it is likely that the level of sensitization may decline. It is not known whether or not previously sensitive individuals will lose their sensitivity over time."

CLAIMS OCT 21 2002



<u>Carolyn Mirek – Claim # 391131, (2nd Addendum)</u>

Latex-free work environments are being routinely established all over the world to address the Latex problem. Ms. Mirek's former employer is an example of such effort. Safe, effective medication is readily available to adequately control Allergy and Asthma and prevent symptoms. I fail to see how Ms. Carolyn Mirek can be considered permanently disabled or how all her suffering (of which there seems to be very little) can be considered exclusively the result of her exposure to Latex in the workplace.

*[signature]*

Harold Axe, M.D.

CLAIMS OCT 21 2002

## CAROLYN MIREK'S LATEX ALLERGY

I have been a registered dental hygienist since 1983. At that time gloves were rarely used in dentistry. I attended Forsyth School For Dental Hygienists in Boston, MA, from 1981 to 1983 and there was little contact with latex as masks and gloves were not worn. I had seasonal allergies as a child –hayfever, dust and animal dander, which I outgrew. I never had to take allergy medications during my elementary, middle school, high school or college years, and I do not recall ever having symptoms of asthma.

After 1985, with the AIDS epidemic and Hepatitis scares, wearing latex gloves became part of "universal precautions". Shortly after using gloves, I experienced hand rashes, which was initially diagnosed by my dermatologist, Dr. Robert Greenberg in Vernon, CT, as contact dermatitis on March 7, 1986. The seeping welts on my hands were so bad that I was prescribed Diprolene cream and cotton gloves to wear beneath my latex gloves. I began getting allergy symptoms, for which I received treatment in the form of shots from allergist Dr. Prasad Srinivasan in Glastonbury, CT. Instead of getting better, my condition worsened to the point of regularly experiencing allergy-induced asthma and needing emergency breathing treatments. In retrospect, my shots were given with latex gloves. In 1992 I changed my allergist of record to Dr. Robert M. Bedard in West Hartford, CT who is also a pulmonary specialist. I began to notice that certain types of masks would trigger an asthma attack at work and that I couldn't work in certain locations without needing to use an inhaler. I also began developing allergies to certain foods (e.g., avocado, kiwi, pear and banana), which I later found out are related to latex.

Following an allergic reaction to a banana in June of 1999, I went to Dr. Bedard with my suspicion of latex allergy. I had attended a lecture entitled "Latex Allergies" by Marcia Trape MD, FACP, the Assistant Professor of Medicine and Occupational Environmental Medicine at the UCONN School of Medicine at the UCONN Health Center. It was at this time that I discovered I had many of the symptoms of latex allergy. In June of 1999 I tested positively for latex allergy. Dr. Bedard recommended I switch to non-latex gloves

and that the dental office I worked in switch to powder-free latex gloves. I immediately used non-latex gloves and my employer, Dr. Robert Burstein, ultimately switched to powder-free latex gloves, at which point some of my allergy symptoms temporarily subsided. Dr. Bedard informed me that the only solution to my severe latex allergy was complete avoidance of latex.

I continued to see Dr. Bedard for allergy symptoms and treatment. In July of 2001 a new problem arose. After eating a bite of a sandwich while at Lake Compounce Amusement Park, one of my eyes became swollen shut and I experienced allergic distress. I later discovered that the food had been prepared with latex gloves. Another more severe episode occurred in August of 2001 in Newport, Rhode Island. After eating a salad of baby greens and vinaigrette I became violently ill. I later was informed that the restaurant had prepared the salad with the use of latex gloves.

Following each incident I spoke to Dr. Bedard, and he finally raised the possibility of changing my career, since over time I have developed a life threatening latex allergy. This news was devastating to me as I had been a Registered Dental Hygienist for 18 years and enjoyed my career. Nonetheless, continuing to work in a latex environment was increasing the severity of the allergy, and creating greater risks to my health.

More recently, I began getting welts on my body from the latex in my clothing. For years I have utilized inhalers, nasal sprays and, periodically, Prednisone. Now I must wear a medic alert bracelet and carry Benadryl and an Epipen (emergency syringe). I hand out business cards imprinted with "LATEX ALLERGY" to restaurant management, and I cannot eat any food without first finding out whether or not latex gloves were used in its preparation. Banquets, parties, fast food, bakeries, even packaged foods may have been handled with latex. In many restaurants, food is "prepped" ahead of time and I have been denied service. I also cannot go to restaurants and parties where there are latex balloons present.

Latex is very prevalent in dentistry. The gloves, tubing, rubber dams and even counter surfaces are contaminated with latex. Staying in my profession with continual latex exposure would increase the

likelihood of allergic anaphylactic shock. Accordingly, I decided it was medically necessary that I leave a career I loved. My last day as a clinical dental hygienist was on December 27, 2001. It was a decision Dr. Bedard called courageous and necessary for my health. All along Dr. Bedard told me that avoidance of latex would be the only solution to my health problems.

I began a job as a sales representative for Barton-Cyker Dental Supply, Inc. on January 2, 2002, earning half of the income I had made as a dental hygienist. During training for this job I did have some asthma while spending considerable time in dental offices. Dr. Bedard recommended staying out of the operatories and trying to make any sales calls to dental offices in the morning. He also prescribed a new asthma inhaler. On July 1, 2002 I took a position working for a different company, Benco Dental.

On February 13, 2002 I had an appointment with my primary care physician, Dr. Viruet in South Windsor. I had been coughing continuously for more than a week despite frequent use of my inhalers and cough drops and OTC cough medications. She prescribed prednisone steroids and Zithromax antibiotics for a lung infection. She told me that due to my latex allergy causing my lungs to react with asthma, that I am susceptible to this sort of illness.

In conclusion, my work-related exposure to latex has forever impacted my daily living. Latex allergy has caused irreversible damage to my health. It has also brought major dietary and social constraints and loss of my profession and earning potential.