# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION NO.: 04-30166-RGS |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) ) ) |
| Defendants. | ) ) ) |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO FORCE DEFENDANTS TO AGREE TO PLAINTIFF'S STIPULATION

The Defendants, the Guardian Life Insurance Company of America ("Guardian") and Berkshire Life Insurance Company of America ("Berkshire") (collectively referred to as "Defendants"), hereby file this Opposition to Plaintiff's Motion to Require the Defendants to Stipulate to statements formulated by Plaintiff.

As set forth below, although there are many facts on which there is no disagreement, the Court should not force Defendants to stipulate to Plaintiff's slanted presentation of these facts to the Jury. This matter involves many operative and distinct provisions in an insurance Policy on which the Jury will require instruction to avoid confusion. Although the Defendants will not stipulate to the Plaintiff's slanted proffer, Defendants remain willing to stipulate to an unbiased single comprehensive set of stipulated facts to be presented to the Jury. Finally, Defendants believe it is thoroughly inappropriate and unnecessary for Plaintiff to demand that the Court force agreement between the parties, when the Court will have every opportunity to discuss this

matter with counsel at the November 8, 2006 conference and/or instruct the Jury as the Court deems appropriate at the close of evidence.

### I. The Defendants Do Not Dispute the Operative Policy Provisions

This case concerns Plaintiff's claim under an individual disability policy which provides Monthly Indemnity or Residual Indemnity subject to the satisfaction of several provisions in the operative insurance policy, including satisfying the definition or Total Disability or Residual Disability, satisfying the Elimination Period, and satisfying the Proof of Loss provision on a monthly basis.

In this case, Plaintiff seeks 1) Monthly Indemnity benefits; and 2) the return of insurance premiums paid by Plaintiff since the date she allegedly became totally disabled. In order to be entitled to receive either type of damages, Plaintiff must establish that she was totally disabled as of December 27, 2001 and that, at a minimum, she remained disabled through April 27, 2002. If Plaintiff meets her burden of proof in this regard, i.e. Plaintiff satisfies the Elimination Period, then the types of benefits/damages to which Plaintiff would be entitled under the Policy are treated distinctly in that: 1) Plaintiff would be entitled to Monthly Indemnity benefits beginning April 27, 2002; but 2) Plaintiff would be entitled to a return of premiums retroactive to the onset of the alleged disability on December 27, 2001.

To be entitled to either form of benefits/damages beyond April 27, 2002, Plaintiff must prove that she remained totally disabled from month to month. To be entitled to both forms of benefits/damages up until the present, Plaintiff must prove that she remains totally disabled to this day.

## II. The Defendants Do Not Dispute the Amount of Benefits/Damages at Issue

It is instructive for the Court to understand what this "stipulation dispute" is not about. It is not about the benefits at issue or the amount of premium that Plaintiff has paid for this Policy. In fact, there has never been any real dispute as to the amount of Policy benefits at issue in this case or the amounts of premium that Plaintiff has paid. Indeed, despite the fact that they were under no legal obligation to do so, Defendants provided the benefits information to Plaintiff in September 2005, updated Plaintiff in January 2006 and updated Plaintiff again in October 2006.

In October 2006, Defendants were asked to confirm premium payments and once again, despite having no legal obligation to do so, Defendants in good faith confirmed the premium payment history to Plaintiff in a timely and cooperative manner. Defendants have always cooperated with the Plaintiff in ascertaining the premium history and benefits at issue.

There is no dispute as to the benefits/damages at issue here.

## III. This Dispute Concerns the Manner in Which the "Facts" Are Presented

This stipulation dispute is about whether the Plaintiff can compel the Defendants to stipulate to a slanted and incomplete version of: 1) the damages scenarios that the Jury will have to decide; and 2) all of the undisputed facts in this case. As set forth below, the Jury will need to make numerous factual determinations in this case effecting damages. These determinations will need to be put into context of the relevant Policy provisions to ensure that the Jury is not confused and determines the appropriate damages, if any, that should be awarded given the factual conclusions that they reach. The Defendants are unwilling and to stipulate to the one factual scenario to which the Plaintiff requests the Court compel the Defendants stipulate, i.e., a stipulation to the facts by which Plaintiff obtains the largest potential recovery, without

stipulating to facts relating to all possible outcomes derivative of the Jury's factual findings. To put it another way, while there is no dispute as to the range of benefits and premium potentially at issue here, there is a disagreement as to the form in which the benefits and premium information should be communicated to the Jury given all of the scenarios and operative Policy provisions.

Although Defendants are positive that the Court does not want to adjudicate how the dispute arose, given that the Plaintiff has impugned the integrity of Defense counsel, Defendants are obligated to respond. Defendants respectfully disagree with Plaintiff's description of the communications between the parties regarding the stipulation. In addition, Plaintiff's description is contradicted by Plaintiff's own pleading.

Defendants have participated in utmost good faith with Plaintiff in an attempt to stipulate to a set of facts to provide to the Court and Jury. In fact, as previously stated, the only reason that Plaintiff has the benefits and premium amounts is because Defendants, outside formal discovery, provided that information to Plaintiff. Plaintiff then crafted a proposed stipulation and invited Defendants to comment as to any changes they wanted to make to the proposed stipulation. Defendants reviewed the proposal and found that Plaintiff's language rendered the proposed stipulation inaccurate, incomplete and biased. Accordingly, Defendants drafted a proposed stipulation that was accurate, complete and unbiased yet included everything the Plaintiff wanted and a complete presentation of the agreed upon factual issues and the possible outcomes in light of the agreed upon facts.

On October 27, 2006 the Defendants provided the Plaintiff with a proposed stipulation. See Exhibit 1. After Plaintiff questioned why the Defendants would not agree with the stipulations as formulated by Plaintiff, Defendants' counsel provided Plaintiff with a thorough

explanation for the Defendants' proposed stipulated facts. See Exhibit 2. Plaintiff did not provide any meaningful answer to any of the points raised by Defendant. Instead, during the afternoon of October 27, 2006, Plaintiff revised her stipulation by incorporating portions of Defendants' proposed stipulation. However, instead of asking the Defendants to review Plaintiff's newly revised stipulation, Plaintiff did not show it to Defendants and instead opted to file the present motion which essentially asks the Court to Order Defendants to sign a stipulation that Plaintiff never even bothered to send to Defendants.

### IV.    The Defendants' Proposed Stipulation is Complete and Unbiased

Although the Defendants do not request that the Court compel a stipulation (although the Court could include the same information in a jury instruction), the Defendants' explanation, set forth below, demonstrates that the stipulation as proposed by the Defendants, attached hereto at Exhibit 1, is comprehensive, accurate and unbiased, unlike the stipulation proposed by Plaintiff.

First, in recognition of the numerous contingencies including: 1) whether Plaintiff can satisfy the Elimination Period; 2) the period of time that Plaintiff can prove that she was and remained disabled; and 3) the fact that the two forms of benefits have different start dates depending on Plaintiff's meeting her burden, the Defendants stipulation anticipates all possible conclusions that the Jury may reach as to both forms of damages. Defendants explained this as being the basis for Pars. 13, 14, 15, 16, 17, 10, 18, 19, 20 and 21. See Exhibit 2.

By comparison, Plaintiff's one sided "stipulation" only addressed what happens if the Jury finds that Plaintiff was totally disabled from December 27, 2001 through November 1, 2006, and does not address how the Jury should compute both forms of damages if Plaintiff does not satisfy the Elimination Period or does not prove continuing disability until the time of trial.

5

Accordingly, contrary to Plaintiff's characterizations, Defendants are willing to agree to the potential damages in this case given all the potential scenarios – however, Defendants are not willing to limit the stipulation to the one scenario that Plaintiff wishes to put before the jury.

Second, in order to obtain Defendants' agreement to not take discovery concerning Plaintiff's carpal tunnel syndrome, which Plaintiff claimed was disabling in the claims process – but which Plaintiff subsequently abandoned in her Complaint in the lawsuit – Plaintiff's counsel agreed to stipulate that Plaintiff was not maintaining a claim for carpal tunnel based disability in this case. In addition to agreeing to so stipulate, Plaintiff's counsel informed Defendants' counsel that "I haven't had a chance to look at the stipulation, Carolyn Mirek does not make a claim for the period at issue because of carpal tunnel syndrome." See May 29, 2005 Email from Plaintiff's Counsel, attached at Exhibit 3. Given that the parties had agreed to stipulate that Plaintiff has no claim based on carpal tunnel syndrome, Defendants insisted that as part of any stipulation to which Defendants were to agree, Plaintiff stipulate to this fact as previously promised by Plaintiff's counsel. This is the basis for Paragraph 9 of Defendants' proposed stipulation. Given that Plaintiff once asserted carpal tunnel syndrome as a basis for disability and it is contained in numerous documents that will be offered into evidence, but that Plaintiff no longer makes such a claim, this stipulation – to which Plaintiff has agreed – is designed to simplify this undisputed matter for the Court and Jury.

Third, Defendants requested that the Plaintiff stipulate to the verbatim provisions defining total disability that are contained in the Policy that Plaintiff admits is the operative Policy/Contract in this case. The Policy that will be introduced into evidence is a lengthy document containing numerous provisions. Given that the rest of the stipulation discusses "total disability" as defined in the Policy, Defendants requested that to simplify this matter for the

Court and Jury, that the stipulation referring to the definition of total disability should actually contain the definition. This is the basis for Paragraphs 4 and 5 of Defendants' proposed stipulation.

Fourth, Defendants have requested that Plaintiff stipulate that the Policy contains a "residual disability" provision and that Plaintiff makes no claim for residual disability. In order to satisfy the residual disability provisions of the Policy, Plaintiff must prove that although not totally disabled, she is residually disabled and unable to earn 80% of her predisability income. Plaintiff 1) never made a claim for residual disability benefits; 2) informed Defendants on numerous occasions that she makes no such claim; and 3) moved in limine to exclude evidence of her post disability income. Insofar as Plaintiff does not claim residual disability and has moved in limine to exclude post disability income relevant to residual disability, Defendants requested that Plaintiff stipulate to such so that the parties could define and discard a provision in the Policy on which the Jury may become confused. This is the basis for Paragraphs 8 and 9 of Defendants proposed stipulation.

Finally, Defendants requested that Plaintiff stipulate to her birth date, her hometown and her insurance application that is part of the Policy. It is inconceivable why Plaintiff will not even stipulate to these simple facts to save time for the jury. This is the basis for paragraphs 1 and 2 of Defendants' proposed stipulations.

## V. <u>Plaintiff's Most Recent Proposed Stipulation was Never Shown to Defendants</u>

Finally, Defendants want the Court to know that prior to their receipt of Plaintiff's Motion to Compel this stipulation, Defendants had not seen the stipulation Plaintiff attached to the motion to which the Plaintiff requests the Court force the Defendants to agree. The last

stipulation to which Plaintiff demanded Defendants agree is attached to the email message through which it was delivered, attached hereto at Exhibit 4. Amazingly, before filing the stipulation on which she requests the Court compel agreement Plaintiff: 1) modified her draft to incorporate one of the Defenses requests; but 2) did not provide it to the Defendants.

It was unfair and improper for Plaintiff to not even bother showing the new and revised stipulation to Defendants for them to review before deciding to waste this Court's time with an issue that the parties could have worked to resolve as a single set of stipulated facts or which the parties and Court can discuss at the November 8, 2006 conference.

## VI.    Conclusion

As set forth above, the Court should not compel Defendants to stipulate to the incomplete and slanted facts to which Plaintiff has requested the Court compel Defendants to agree. Defendants have in good faith attempted to reach agreement on the entirety of facts on which the parties will stipulate and informed Plaintiff to the extent that the parties cannot reach agreement, the parties should take this matter up with the Court at the final pretrial conference scheduled for November 8, 2006.

Defendants do not believe that the Court should have to waste its time officiating a motion to determine the form of the facts to which the parties agree. However, given that Plaintiff has chosen to raise this issue with the Court rather than to attempt to reach agreement on a single set of complete and unbiased stipulations, the Defendants have provided this response.

Respectfully Submitted,

Defendants The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America

By their attorneys,

CREVIER & RYAN, LLP.

/s/David B. Crevier
David B. Crevier, Bar No. 557242
Katherine R. Parsons, Bar No. 657280
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel: 413-787-2400
Facsimile: 413-781-8235
Email: dcrevier@crevierandryan.com
kparsons@crevierandryan.com

/s/Edward Kimball
Edward Kimball, Esq.
700 South Street
Pittsfield, MA 01201
Tel: 413-499-4321

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 2nd day of November 2006.

/s/David B. Crevier

# Exhibit 1

**From:** Edward K Kimball <Edward_Kimball@berkshirelife.com>
**To:** "Joanne D'Alcomo" <jdalcomo@jagersmith.com>
**Date:** 10/27/06 11:11AM
**Subject:** Stipulation

Joanne:

As you know we I provided you with cola calculations about a year ago in an effort to facilitate a resolution of this case. For better or worse that hasn't happened and Seth first asked for my thoughts on a proposed stipulation in this matter on October 11th. Thereafter we went back and tried to verify the information in the proposal and Seth & I had some communications regarding the accuracy of the information as proposed. On October 16th Seth sent me a revised draft with corrections as to the December calculations. We did not and do not accept the language in Seth's proposal and I communicated that to Seth on October 23rd. However in an effort to narrow the areas of dispute and in recognition of the time limitations which will likely be imposed on the upcoming trial as well as Judge Stearns' judicial preference for efficiency in the presentation of evidence we have worked diligently and in good faith to respond to Plaintiff's request for a stipulation by drafting a stipulation that accomplishes the important objectives of efficiency in the presentation of evidence and accuracy in what is being stipulated to. This includes the applicable contract provisions quoted verbatim, Ms. Mirek's position as well as the possible scenarios that may lead to the return of none, some or all premiums paid and the possible award of none, some or all possible damages at issue. I'm sure the Court will appreciate our efforts to work together and assist the Court in achieving judicial efficiency and a pleasant trial experience for our jurors.

As you'll see, I've already signed the stipulation. Please simply countersign and return it to me via PDF and my office will file it electronically today.

Thanks
Ed


p.s. so much for the tigers....


(See attached file: Mirek Stip.pdf)



Edward K. Kimball, FLMI
Attorney III
Berkshire Life Insurance Company of America
700 South Street
Pittsfield MA 01201
vox: 413.395.4560
fax: 413.395.5990
Edward_Kimball@berkshirelife.com

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN MIREK, <br><br>     Plaintiff <br><br> v. <br><br> THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, <br><br>     Defendants | Civil Action <br> No. 04-30166-RGS |

## STIPULATION BETWEEN THE PLAINTIFF CAROLYN MIREK AND THE DEFENDANTS GUARDIAN LIFE INSURANCE COMPANY OF AMERICA AND BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA

The plaintiff Carolyn Mirek and the defendants Guardian Life Insurance Company of America ("Guardian") and Berkshire Life Insurance Company of America ("Berkshire"), stipulate and agree to the following facts:

1. Carolyn Mirek was born on September 21, 1963. Carolyn Mirek lives in South Windsor Connecticut.

2. On or about February 15, 1993 Carolyn Mirek signed and submitted an application for individual disability income insurance to Guardian.

3. Guardian issued Disability Income Policy No G-723670 ("Policy") to Carolyn Mirek on or about March 19, 1993.

4. The Policy states "Total Disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation."

5. The Policy states that "Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled."

6. Carolyn Mirek made a claim for total disability benefits stating that she had become "totally disabled," as defined by the Policy, beginning on December 27, 2001, due to latex allergy and carpal tunnel syndrome.

7. The Policy states "Residual disability means that you are at work and not totally disabled under the terms of this policy; but, because of sickness or injury, you are not able to earn at a rate of at least 80% of your prior income."

8. Carolyn Mirek does not claim that she is entitled to any residual disability benefits pursuant to the Policy at any time.

9. Carolyn Mirek was not totally disabled or residually disabled as a result of carpal tunnel syndrome at any time. Accordingly, Carolyn Mirek's sole claim is that she was totally disabled due to latex allergy.

10. Carolyn Mirek has continued to pay the monthly premium on the Policy every month to the present.

11. Carolyn Mirek's Monthly Indemnity under the Policy, if she had a "total disability" as defined by the Policy on December 27, 2001, would be $3,160, subject to a cost of living adjustment.

12. The Policy provides for a three month Elimination Period such that if Ms. Mirek became totally disabled as defined by the Policy on December 27, 2001 and if she continued to be totally disabled for three months, then the three month Elimination Period would have been satisfied and would have ended on March 27, 2002.

13. If Carolyn Mirek does not prove that she became totally disabled as defined by the Policy on December 27, 2001 and that she continued to be totally disabled under the Policy through March 27, 2002, then Carolyn Mirek is not entitled to any Monthly Indemnity payments under the Policy.

14. As an example, if Carolyn Mirek proves that she became totally disabled as defined by the Policy on December 27, 2001 and that she continued to be totally disabled under the Policy through March 27, 2002, but she ceased being totally disabled as of April 27, 2002, then Carolyn Mirek would be entitled to receive one Monthly Indemnity payment on April 27, 2002 for the period March 27 2002 through April 27, 2002.

15. If Carolyn Mirek proves that she was totally disabled pursuant to the Policy continuously from December 27, 2001 through November 1, 2006, then Carolyn

2

Mirek would be entitled to the following Monthly Indemnity payments which include the cost of living adjustments pursuant to the Policy:

1. 4/27/02: $3160.00
2. 5/27/02: $3160.00
3. 6/27/02: $3160.00
4. 7/27/02: $3160.00
5. 8/27/02: $3160.00
6. 9/27/02: $3160.00
7. 10/27/02: $3160.00
8. 11/27/02: $3160.00
9. 12/27/02: $3160.00
10. 1/27/03: $3207.85
11. 2/27/03: $3207.85
12. 3/27/03: $3207.85
13. 4/27/03: $3207.85
14. 5/27/03: $3207.85
15. 6/27/03: $3207.85
16. 7/27/03: $3207.85
17. 8/27/03: $3207.85
18. 9/27/03: $3207.85
19. 10/27/03: $3207.85
20. 11/27/03: $3207.85
21. 12/27/03: $3207.85
22. 1/27/04: $3282.29
23. 2/27/04: $3282.29
24. 3/27/04: $3282.29
25. 4/27/04: $3282.29
26. 5/27/04: $3282.29
27. 6/27/04: $3282.29
28. 7/27/04: $3282.29
29. 8/27/04: $3282.29
30. 9/27/04: $3282.29
31. 10/27/04: $3282.29
32. 11/27/04: $3282.29
33. 12/27/04: $3282.29
34. 1/27/05: $3365.59
35. 2/27/05: $3365.59
36. 3/27/05: $3365.59
37. 4/27/05: $3365.59
38. 5/27/05: $3365.59
39. 6/27/05: $3365.59
40. 7/27/05: $3365.59
41. 8/27/05: $3365.59
42. 9/27/05: $3365.59
43. 10/27/05: $3365.59

3

44. 11/27/05: $3365.59
45. 12/27/05: $3365.59
46. 1/27/06: $3523.32
47. 2/27/06: $3523.32
48. 3/27/06: $3523.32
49. 4/27/06: $3523.32
50. 5/27/06: $3523.32
51. 6/27/06: $3523.32
52. 7/27/06: $3523.32
53. 8/27/06: $3523.32
54. 9/27/06: $3523.32
55. 10/27/06: $3523.32

16. The total amount of the above Monthly Indemnity payments is: $181,941.96. This is the maximum Monthly Indemnity pursuant to the Policy that may be awarded by the Jury in this lawsuit.

17. If Carolyn Mirek proves that she remained totally disabled under the Policy from December 27, 2001 through March 27, 2002, but she does not prove that she continues to be totally disabled under the Policy through to the present, then Carolyn Mirek is only entitled to Monthly Indemnity payments under the Policy from April 27, 2002 through to the date that her total disability ceased.

18. Carolyn Mirek has made the following premium payments since December 27, 2001:

1. 1/19/02: $162.35
2. 2/19/02: $162.35
3. 3/19/02: $162.35
4. 4/19/02: $162.35
5. 5/19/02: $162.35
6. 6/19/02: $162.35
7. 7/19/02: $162.35
8. 8/19/02: $162.35
9. 9/19/02: $162.35
10. 10/19/02: $162.35
11. 11/19/02: $162.35
12. 12/19/02: $162.35
13. 1/19/03: $162.35
14. 2/19/03: $162.35
15. 3/19/03: $162.35
16. 4/19/03: $162.35
17. 5/19/03: $162.35
18. 6/19/03: $162.35
19. 7/19/03: $162.35
20. 8/19/03: $162.35

4

21. 9/19/03: $162.35
22. 10/19/03: $162.35
23. 11/19/03: $162.35
24. 12/19/03: $162.35
25. 1/19/04: $162.35
26. 2/19/04: $162.35
27. 3/19/04: $162.35
28. 4/19/04: $162.35
29. 5/19/04: $162.35
30. 6/19/04: $162.35
31. 7/19/04: $162.35
32. 8/19/04: $162.35
33. 9/19/04: $162.35
34. 10/19/04: $162.35
35. 11/19/04: $162.35
36. 12/19/04: $162.35
37. 1/19/05: $162.35
38. 2/19/05: $162.35
39. 3/19/05: $162.35
40. 4/19/05: $162.35
41. 5/19/05: $162.35
42. 6/19/05: $162.35
43. 7/19/05: $162.35
44. 8/19/05: $162.35
45. 9/19/05: $162.35
46. 10/19/05: $162.35
47. 11/19/05: $162.35
48. 12/19/05: $162.35
49. 1/19/06: $162.35
50. 2/19/06: $162.35
51. 3/19/06: $162.35
52. 4/19/06: $162.35
53. 5/19/06: $162.35
54. 6/19/06: $162.35
55. 7/19/06: $162.35
56. 8/19/06: $162.35
57. 9/19/06: $162.35
58. 10/19/06: $162.35

19. If Carolyn Mirek does not prove that she remained totally disabled under the Policy from December 27, 2001 through March 27, 2002, then Carolyn Mirek is not entitled to receive reimbursement of any premiums that she paid.

20. If Carolyn Mirek proves that she was totally disabled under the Policy from December 27, 2001 through November 1, 2006, then she would be entitled to

5

reimbursement of the premiums she has paid for the Policy since December 27, 2001 which amounts to: $9,416.30.

21. If Carolyn Mirek proves that she was totally disabled under the Policy from December 27, 2001 through March 27, 2002, but she does not prove that she continues to be totally disabled through to the present, then Carolyn Mirek is only entitled to reimbursement of premiums under the Policy for the time period that Carolyn Mirek proves that she was totally disabled.

| CAROLYN MIREK | THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, |
|---|---|
| By her attorneys, | By their attorneys, |
| Joanne D'Alcomo, Esq.<br>BBO #544177<br>Seth Nesin, Esq.<br>BBO #650739<br>Jager Smith, P.C.<br>One Financial Center<br>Boston, MA 02111-2621<br>Phone: (617) 951-0500<br>Fax: (617) 951-2414 | Edward Kimball, Esq.<br>700 South Street<br>Pittsfield, MA 01201<br>Phone: (413) 499-4321<br><br>David B. Crevier, Esq.<br>BBO #557242<br>Katherine R. Parsons<br>BBO #657280<br>1500 Main Street, Suite 2020<br>Springfield, MA 01115-5727<br>Phone: (413) 787-2400<br>Fax: (413) 781-8235 |

Dated: October 27, 2006

# Exhibit 2