# Exhibit 4

ORIGINAL

Page 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAROLYN MIREK          :  Civil Action

      vs.

THE GUARDIAN LIFE
INSURANCE COMPANY OF
AMERICA, ET AL          : NO. 04-CV4895


— — —

Philadelphia, Pennsylvania

November 15, 2005

— — —

Pretrial examination of

KEVIN KVEDERAS, held at the

Offices of Adelman Lavine Gold & Levin, PC,

1600 John F. Kennedy Boulevard, Suite 900,

on the above date, commencing at or about

10:10 a.m., before Marybeth Kennedy,

Certified Court Reporter and Notary Public.

**ROYAL**
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

```
 1                    —    —    —
 2            MS. D'ALCOMO:  It is
 3        stipulated and agreed that all
 4        objections except as to form are
 5        reserved until time of trial; and
 6        motions to strike are reserved until
 7        time of trial; and the witness shall
 8        have 30 days to read and sign, and
 9        signing need not be in front of a
10        notary.
11                    —    —    —
12            KEVIN KVEDERAS, having been
13        duly sworn, was examined and testified
14        as follows:
15                    —    —    —
16                 EXAMINATION
17                    —    —    —
18     BY MS. D'ALCOMO:
19     Q.    Good morning, Mr. Kvederas.
20     A.    Good morning.
21     Q.    Have you been deposed before?
22     A.    Yes, I have.
23     Q.    On how many occasions?
24     A.    Three or four.
```



1    Q.    What is your title?

2    A.    LTD Benefit Analyst.

3    Q.    Now, are you currently receiving

4    disability benefits from Guardian?

5    A.    No.

6    Q.    Have you received any disability

7    benefits from Guardian in 2005?

8    A.    Yes.

9    Q.    And for what period of time?

10    A.    August through last week.

11    Q.    Was that under a group or individual

12    policy or both?

13    A.    Group.

14            MR. KIMBALL:  Objection, calls

15        for speculation.

16            MS. D'ALCOMO:  I'm sorry?

17            THE WITNESS:  Group.

18    BY MS. D'ALCOMO:

19    Q.    Now, did you have at any time in your

20    career any medical training?

21            MR. KIMBALL:  Objection to the

22        form of the question.

23            THE WITNESS:  We had meetings

24        discussing various conditions.



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

```
1       do you believe you've handled while at

2       Berkshire?

3                       MR. KIMBALL:  Objection to the

4               form of the question, ambiguous, calls

5               for speculation.

6                       THE WITNESS:  It would vary

7               from time to time.

8       BY MS. D'ALCOMO:

9       Q.      More than a thousand?

10                      MR. KIMBALL:  Objection.

11                      THE WITNESS:  No.

12      BY MS. D'ALCOMO:

13      Q.      More than 500?

14      A.      I don't remember.

15      Q.      More than a hundred?

16      A.      I don't remember.

17      Q.      More than 50?

18      A.      Definitely more than 50.

19      Q.      How many claims do you estimate

20      involving disability have you handled since

21      1990 when you first joined Guardian?

22                      MR. KIMBALL:  Objection, calls

23              for speculation, ambiguous.

24                      THE WITNESS:  I'd be guessing.
```



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1          claims?

2                    MR. KIMBALL:  Objection to the

3          form of the question.

4                    THE WITNESS:  Group or

5          individual?

6                    MS. D'ALCOMO:  Disability

7          claims of any kind.

8                    THE WITNESS:  I'd be guessing.

9     BY MS. D'ALCOMO:

10    Q.     So is it fair to say that you don't

11    recall whether since 1990 you've handled more

12    than 2,000 disability claims?

13    A.     I'd rather not guess on how many

14    claims.

15                   MS. D'ALCOMO:  Could you read

16         the question back, please?

17                   (Whereupon the reporter read

18         back the last question.)

19                   MR. KIMBALL:  Objection to the

20         form of the question, ambiguous, calls

21         for speculation.

22                   THE WITNESS:  I don't remember.

23    BY MS. D'ALCOMO:

24    Q.     How many claims are you handling right



1  Q.    In the past 15 years have you handled

2  more than 400 disability claims a year?

3              MR. KIMBALL:  Objection to the

4         form of the question, ambiguous, calls

5         for speculation.

6              THE WITNESS:  Yes.

7  BY MS. D'ALCOMO:

8  Q.    In the past 15 years have you handled

9  more than 500 disability claims a year?

10             MR. KIMBALL:  Same objection.

11             THE WITNESS:  I believe so.

12             MS. D'ALCOMO:  Let me just take

13        one minute.  I think some things are

14        out of order.

15             MR. KIMBALL:  Sure.

16             (Whereupon a short recess was

17        taken.)

18  BY MS. D'ALCOMO:

19  Q.    When did you read the claims file

20  concerning Carolyn Mirek in preparation for

21  your deposition?

22  A.    In the past few days, past week.

23  Q.    And before you read the claims file

24  this past week concerning Carolyn Mirek you

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    A.    Most times, yes.

2    Q.    Was it a practice of Guardian to

3    maintain as part of claims files all

4    materials used in the processing of the

5    claim?

6              MR. KIMBALL:  Objection, calls

7         for speculation.

8              THE WITNESS:  I can't speak for

9         Berkshire.

10             MS. D'ALCOMO:  Can you read the

11        question back for the witness?

12             (Whereupon the reporter read

13        back the last question.)

14             THE WITNESS:  As far as I

15        understand the question, yes.

16   BY MS. D'ALCOMO:

17   Q.    During the three years or so that you

18   worked at Berkshire, was it the practice of

19   Berkshire to maintain as part of the claims

20   file all materials used in the processing of

21   the claim?

22             MR. KIMBALL:  Objection, calls

23        for speculation, ambiguous.

24             THE WITNESS:  Can you say that

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

Page 54

```
 1                    THE WITNESS:  I read quite a

 2            few magazines.  I don't recall

 3            precisely which ones I was reading at

 4            that time.

 5    BY MS. D'ALCOMO:

 6    Q.      Which magazines do you subscribe to

 7    today?

 8    A.      None.

 9    Q.      Which magazines do you read on a

10    regular basis today?

11                    MR. KIMBALL:  Objection.

12                    THE WITNESS:  Various.  On a

13            regular basis, anything that I pick

14            up.

15    BY MS. D'ALCOMO:

16    Q.      So what do you mean by, "pick up?"

17    A.      I see in a doctor's office; comes in

18    the mail, things like that.

19    Q.      It comes in the mail where?

20    A.      Sometimes you get a free magazine.

21    Q.      So currently you are not subscribing

22    to any magazines?

23                    MR. KIMBALL:  Objection, asked

24            and answered.
```



230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

```
 1        BY MS. D'ALCOMO:

 2        Q.      You wouldn't do that?

 3        A.      No, I would not.

 4        Q.      Would it have been inaccurate to tell

 5        her, if you did, that you didn't know much

 6        about latex allergy in early 2002?

 7                        MR. KIMBALL:  Objection.

 8                        THE WITNESS:  No.

 9        BY MS. D'ALCOMO:

10        Q.      Now, do you recall that Carolyn Mirek

11        sent you some information about latex

12        allergy?

13        A.      Yes, I believe, she did.

14        Q.      Could you look at the pages numbered

15        163 through 182?

16        A.      (Complies.)

17        Q.      Have you finished looking at those

18        pages?

19        A.      Yes.

20        Q.      Are those pages pages that Carolyn

21        Mirek sent to you in May of 2002?

22                        MR. KIMBALL:  Objection, calls

23                for speculation.

24                        THE WITNESS:  Well, the cover
```



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    claim -- actually, let me withdraw that.

2                        Did you evaluate Carolyn

3    Mirek's claim?

4    A.      Yes.

5    Q.      And when did you start evaluating

6    Carolyn Mirek's claim?

7    A.      When the claim came in.

8    Q.      How did it get assigned to you?

9    A.      I don't remember.

10    Q.      Were claims assigned at Berkshire to

11    individuals to analyze based on the level of

12    the benefits at issue?

13                        MR. KIMBALL:  Objection, calls

14            for speculation.

15                        THE WITNESS:  It may have been

16            at times, but I'm speculating.

17    BY MS. D'ALCOMO:

18    Q.      When you were at Berkshire, did you

19    tend to handle claims above a specific limit?

20    A.      I tended to handle higher indemnities.

21    Q.      Was Carolyn Mirek's claim a higher

22    level claim?

23    A.      I don't know what category it would

24    fit in at that time.


ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    Q.      Today would it be considered a high

2    level claim at Guardian?

3                    MR. KIMBALL:  Objection, calls

4             for speculation.

5                    THE WITNESS:  I don't know what

6             their superiors would consider high

7             level indemnity.

8    BY MS. D'ALCOMO:

9    Q.      What did you consider a high level

10   claim in 2004 when you last worked at

11   Berkshire?

12                   MR. KIMBALL:  Objection.

13                   THE WITNESS:  I didn't.

14   BY MS. D'ALCOMO:

15   Q.      Well, earlier today when you were

16   talking about you were working on high level

17   claims, what did you mean?

18   A.      It's what management told me they

19   considered high level claims.

20   Q.      What do you recall management telling

21   you as being a high level claim while you

22   were at Berkshire?

23   A.      I don't remember the exact monthly

24   indemnity.



230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1      Q.    Do you remember generally?

2      A.    No.

3      Q.    Was a monthly benefit amount of more

4      than $3,000 considered a high level claim at

5      Berkshire?

6               MR. KIMBALL:  Objection, calls

7           for speculation.

8               THE WITNESS:  I don't know.

9      BY MS. D'ALCOMO:

10     Q.    Was a monthly benefit amount of more

11     than $5,000 considered a high level claim at

12     Berkshire?

13              MR. KIMBALL:  Same objection.

14              THE WITNESS:  I don't know.

15     BY MS. D'ALCOMO:

16     Q.    When you were at Guardian before

17     joining Berkshire working on disability

18     claims was a disability claim under a policy

19     of 5,000 a month considered a high level

20     claim?

21              MR. KIMBALL:  Same objection.

22              THE WITNESS:  I don't remember.

23     BY MS. D'ALCOMO:

24     Q.    And you've been handling disability



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1      A.      On the initial claim form he didn't

2      indicate either way.

3      Q.      You didn't know by June 10, 2002 that

4      Doctor Bedard considered Carolyn Mirek

5      disabled from being a dental hygienist?

6      A.      Based on the medical records, I

7      believe, he advised her to minimize exposure

8      to latex.

9      Q.      So is the answer no?

10             MR. KIMBALL:  Objection to the

11             form of the question.  The answer

12             speaks for itself.

13             THE WITNESS:  That's what I was

14             aware of at that time.

15     BY MR. D'ALCOMO:

16     Q.      You were not aware by June 10, 2002

17     that Doctor Bedard considered Carolyn Mirek

18     disabled from performing her work as a dental

19     hygienist; is that correct?

20     A.      On the claim form that he completed on

21     April 2002 he indicated that she was unable

22     to work in her profession.

23     Q.      So is it correct that by June 10, 2002

24     you knew that Doctor Bedard, Carolyn Mirek's



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1  10, 2002 telling Carolyn Mirek that Berkshire

2  did not consider her disabled from working as

3  a dental hygienist because of her latex

4  allergy?

5                       MR. KIMBALL:  Objection.

6                       THE WITNESS:  In part I relied

7         on Doctor Newman's response.

8  BY MS. D'ALCOMO:

9  Q.    Was there any other doctor's view you

10  relied on, other than Doctor Newman, in

11  reaching the conclusion reflected in your

12  letter of June 10, 2002 that Carolyn Mirek

13  was not disabled from working as a dental

14  hygienist because of her latex allergy?

15                       MR. KIMBALL:  Objection,

16         ambiguous, misstates the evidence.

17                       THE WITNESS:  I relied on the

18         medical records from other doctors in

19         addition to Doctor Newman's, as well

20         as Doctor Bedard's medical records.

21  BY MS. D'ALCOMO:

22  Q.    Well, you didn't rely on Doctor

23  Bedard's view -- let me just reask the

24  question, Mr. Kvederas.

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1  how severe Carolyn Mirek's latex allergy was

2  at that time, correct?

3      A.      Yes.

4      Q.      Now, Doctor Newman didn't tell you

5  that anything that Carolyn Mirek was doing

6  was inconsistent with having a latex allergy,

7  did he?

8      A.      No.

9      Q.      And Doctor Newman didn't advise you to

10  deny the claim, did he?

11     A.      No.

12     Q.      Was there any medical person who told

13  you before June 10, 2002 to deny Carolyn

14  Mirek's claim because of her latex allergy?

15     A.      No.

16     Q.      In your letter of June 10, 2002 you

17  told Carolyn Mirek in the third paragraph

18  that you believed her current occupation

19  selling dental supplies was inconsistent with

20  her latex allergy; is that right?

21              MR. KIMBALL:   Objection,

22          misstates the evidence.

23              THE WITNESS:   Which paragraph?

24              MS. D'ALCOMO:   The third



230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    dated June 10, 2002 that you found it

2    inconsistent -- strike that.

3                    Is it fair to say that you

4    concluded by June 10, 2002 that Carolyn

5    Mirek's selling dental supplies was

6    inconsistent with her having a latex allergy?

7                    MR. KIMBALL:  Objection,

8           misstates the evidence.

9                    THE WITNESS:  Can you repeat

10          it?

11                   MS. D'ALCOMO:  Is it fair to

12          say that June 10, 2002 you concluded

13          that Carolyn's job in selling dental

14          supplies was inconsistent with her

15          having a latex allergy claim?

16                   MR. KIMBALL:  Objection.

17                   THE WITNESS:  Her being exposed

18          to latex brings in question how severe

19          the condition is.

20   BY MS. D'ALCOMO:

21   Q.     What made you think that?

22   A.     She had told me that she couldn't

23   tolerate it.

24   Q.     She, also, told you she was trying to

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    make use of her familiarity with dentistry in

2    trying to get a new career, did she not?

3                    MR. KIMBALL:  Objection,

4            misstates the evidence.

5                    THE WITNESS:  Yes, I believe

6            she did.

7    BY MS. D'ALCOMO:

8    Q.     Now, the only question under the

9    policy was whether she could perform the

10   substantial duties of being a dental

11   hygienist, isn't that right?

12                   MR. KIMBALL:  Objection,

13           misstates evidence.

14                   THE WITNESS:  The only question

15           in terms of what?

16                   MS. D'ALCOMO:  Of the claim

17           that you had to decide.

18                   THE WITNESS:  No.

19   BY MS. D'ALCOMO:

20   Q.     What was the other question or

21   questions that you had to decide?

22   A.     How severe the conditions were that

23   would prevent her from performing the major

24   duties of her occupation.

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

Page 90

1    Q.     Isn't that just part of the question

2    of whether she could perform the substantial

3    duties of her profession?

4                    MR. KIMBALL:  Objection,

5              misstates the evidence.

6                    THE WITNESS:  Yes, you're

7              correct.

8    BY MS. D'ALCOMO:

9    Q.     But isn't it fair to say that the only

10   question that you were to decide in deciding

11   the claim is whether she could perform the

12   substantial duties of her profession as a

13   dental hygienist?

14                   MR. KIMBALL:  Objection,

15             misstates the evidence.

16                   THE WITNESS:  Whether she could

17             perform the major duties of her

18             occupation as defined by the policy

19             was my job.

20   BY MS. D'ALCOMO:

21   Q.     Is it fair to say that the job that

22   you had was to decide whether Carolyn Mirek

23   could perform the major duties of her

24   occupation as a dental hygienist?

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    A.    Yes.

2    Q.    If she couldn't perform the major

3    duties of her occupation as a dental

4    hygienist, then the claim should have been

5    granted, correct?

6              MR. KIMBALL:  Objection, calls

7         for a legal conclusion, misstates the

8         evidence.

9              THE WITNESS:  I would pay

10        claims if you could not perform the

11        major duties of your occupation.  The

12        claim would be compensible.

13   BY MS. D'ALCOMO:

14   Q.    Now, you knew that by June 10, 2002

15   her treating allergist had the opinion that

16   she could not perform the major duties of her

17   occupation as a dental hygienist, correct?

18             MR. KIMBALL:  Objection,

19        misstates the evidence.

20             THE WITNESS:  Yes.

21   BY MS. D'ALCOMO:

22   Q.    And you, also, knew by June 10, 2002

23   that Carolyn was feeling better not working

24   eight hours a day five days a week as a

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    dental hygienist, did you not?

2                    MR. KIMBALL:  Objection.

3                    THE WITNESS:  No, I didn't know

4            that.

5    BY MS. D'ALCOMO:

6    Q.    You knew that her job as a dental

7    hygienist involved her being in a dentist's

8    office eight hours a day at least five days a

9    week, correct?

10                    MR. KIMBALL:  Objection,

11            misstates the evidence.

12                    THE WITNESS:  No.

13    BY MS. D'ALCOMO:

14    Q.    What did you know about her job as a

15    dental hygienist -- strike that.

16                    Did you not know that she

17    worked eight hours a day five days a week in

18    a dentist's office when she was working as a

19    dental hygienist?

20    A.    Her employer indicated that she worked

21    32 to 35 hours a week rather than 40.

22    Q.    So you believe she worked 32 to 30 --

23    how many hours?

24    A.    Her employer indicated on the



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

```
1              You don't know if you believed
2   at the time that what Doctor Bedard was
3   telling you was true?
4              MR. KIMBALL:  Objection, it's
5          ambiguous.
6              THE WITNESS:  I simply
7          evaluated the information that he
8          forwarded to me in terms of the entire
9          claim.
10  BY MS. D'ALCOMO:
11  Q.    Well, you rejected his conclusion,
12  isn't that right?
13             MR. KIMBALL:  Objection,
14         misstates evidence.
15             THE WITNESS:  I found her to be
16         not totally disabled which was in
17         conflict with his opinion.
18  BY MS. D'ALCOMO:
19  Q.    Did you conclude by June 10, 2002 that
20  Carolyn Mirek would not be taking a risk as
21  working as a dental hygienist because of her
22  latex allergy?
23             MR. KIMBALL:  Objection to the
24         form of the question, ambiguous.
```

```
 1              THE WITNESS:  Based on the
 2         medical records that I received at
 3         that point in time it wasn't apparent
 4         that it was a risk that was severe.
 5    BY MS. D'ALCOMO:
 6    Q.    And is the standard that you applied
 7    in evaluating the claim that it had to be
 8    apparent from the medical records that
 9    Carolyn Mirek was at risk in working as a
10    dental hygienist before the claim could be
11    accepted?
12    A.    No.
13    Q.    Now, did you know by June 2002 that
14    the preferred method of treatment for an
15    allergy is avoidance?
16              MR. KIMBALL:  Objection, calls
17         for speculation.
18              THE WITNESS:  I knew that that
19         was Doctor Bedard's opinion.
20    BY MS. D'ALCOMO:
21    Q.    Did you know that as a general matter
22    the preferred method of treatment for latex
23    allergy is avoidance?
24    A.    Yes.
```

1    Q.    And did you know that by June 2002

2    that Carolyn Mirek was trying to minimize her

3    exposure to latex?

4    A.    It appeared that way, yes.

5    Q.    What was inconsistent about Carolyn

6    Mirek's trying to -- strike that.

7              What was inconsistent about

8    Carolyn Mirek having a latex allergy and

9    attempting to minimize her exposure to

10   latex?

11              MR. KIMBALL:  Objection.

12              THE WITNESS:  It's a two-part

13              question.  What is the first question?

14   BY MS. D'ALCOMO:

15   Q.    Well, was there something inconsistent

16   about Carolyn Mirek having a latex allergy

17   and trying to minimize her exposure to latex?

18              MR. KIMBALL:  Objection, calls

19              for speculation.

20              THE WITNESS:  The medical

21              records indicate there were latex

22              reactions out of the workplace as

23              well; and, in fact, a great deal of

24              them were, which was not related to

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1            the duties of her occupation as a

2            hygienist.

3    BY MS. D'ALCOMO:

4    Q.    So are you suggesting that because

5    someone has a reaction to latex outside of

6    the workplace that they don't face a risk

7    being in a workplace with latex?

8                 MR. KIMBALL:  Objection,

9            misstates testimony.

10                THE WITNESS:  No.

11    BY MS. D'ALCOMO:

12    Q.    Then what was the significance to you

13    at the time of there being reactions outside

14    the workplace?

15    A.    Because that would have nothing to do

16    with her major duties of her occupation.

17    Q.    Is that something you concluded in

18    June of 2002?

19                 MR. KIMBALL:  Objection, calls

20            for speculation.

21                 THE WITNESS:  No.  It was

22            indicated in the doctor's records from

23            Doctor Bedard.

24    BY MS. D'ALCOMO:



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    supplies in 2002, would you have granted the

2    claim?

3                    MR. KIMBALL:  Objection, calls

4           for speculation.

5                    THE WITNESS:  I can't answer

6           that because I based it on all of the

7           facts of the claim.

8    BY MS. D'ALCOMO:

9    Q.    Well, assume for the moment that

10   Carolyn Mirek was not selling dental supplies

11   as of June 10, 2002, based on the other

12   information you had would you have granted

13   the claim?

14   A.    I can't answer hypotheticals.

15   Q.    Why not?

16   A.    Because I make my claims decision

17   based on the entire facts of the claim, not

18   hypothetical circumstances.

19   Q.    You had the medical records from

20   Doctor Bedard, correct, relating to latex

21   allergy?

22   A.    Which document are you referring to?

23   Q.    No, I'm just talking in general.  You

24   had the medical records from Doctor Bedard in

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1          conclusion after Doctor Newman

2          reviewed it.

3    BY MS. D'ALCOMO:

4    Q.    Well, did Doctor Newman conclude that

5    the reactions that Carolyn Mirek reported to

6    consuming foods prepared with latex gloves

7    were not severe?

8              MR. KIMBALL:  Objection to the

9          form of the question in that it calls

10         for speculation.

11             THE WITNESS:  Doctor Newman's

12         document of May 6, 2002, Bate stamped

13         157, he indicates in response to my

14         question whether he could evaluate the

15         severity of Miss Mirek's conditions,

16         he states the objective -- subjective,

17         rather, complaints are severe but

18         objective findings are minimal for the

19         latex allergy.

20   BY MS. D'ALCOMO:

21   Q.    Well, you're not suggesting that the

22   medical records that recorded what Carolyn

23   Mirek said to Doctor Bedard are more or less

24   objective than what Carolyn Mirek said, are

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

Page 117

1     prepared with latex gloves were not severe?

2                    MR. KIMBALL:  Objection,

3            misstates the testimony and calls for

4            speculation.

5                    THE WITNESS:  I didn't conclude

6            that.

7     BY MS. D'ALCOMO:

8     Q.    You didn't conclude after reading

9     Doctor Newman's notes to you that Doctor

10    Newman had concluded that Carolyn Mirek's

11    reports of what she had experienced after

12    eating foods prepared with latex gloves were

13    not severe?

14                   MR. KIMBALL:  Objection to the

15           form of the question.

16                   MS. D'ALCOMO:  Correct?

17                   MR. KIMBALL:  Objection to the

18           form of the question.

19                   THE WITNESS:  Well, as he

20           stated the complaints are severe and

21           the objective findings are minimal.

22    BY MS. D'ALCOMO:

23    Q.    What objective findings would you have

24    expected to see in a medical report about

1    Carolyn Mirek's complaints concerning foods

2    she had eaten outside the doctor's office?

3                    MR. KIMBALL:  Objection to the

4              form of the question, calls for

5              speculation.

6                    THE WITNESS:  There could be

7              all types of medical treatment for a

8              reaction.

9    BY MS. D'ALCOMO:

10   Q.      Well, she didn't tell you she had

11   received any medical treatment for the

12   reaction, did she?

13   A.      No, she didn't, not during this phone

14   call.

15   Q.      Well, was there some other phone call

16   where she told you she did have medical

17   treatment for the food related -- strike

18   that.

19                    Was there some other phone call

20   that you claim she did tell you she had

21   medical treatment for the reactions she

22   had to having foods prepared at restaurants

23   with latex gloves?  Are you able to answer

24   that without looking at the records,

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

```
 1        BY MS. D'ALCOMO:

 2        Q.     Do you consider medical treatment to

 3        be a telephone call to a doctor?

 4        A.     It depends.

 5        Q.     What does it depend on?

 6                    MR. KIMBALL:  Objection to the

 7               form of the question, calls for

 8               speculation.

 9                    THE WITNESS:  It would depend

10               upon what the content of the

11               conversation was.

12        BY MS. D'ALCOMO:

13        Q.     Now, would you turn to page 159 of the

14        claims file.

15        A.     (Complies.)

16        Q.     Those are your notes, right, on 159?

17        A.     Yes.

18        Q.     And in the second handwritten line

19        under message you wrote that you told her,

20        referring to Carolyn Mirek, that her claim

21        "was being reviewed by a medical consultant

22        and I would advise her shortly of findings,"

23        have I read that correctly?

24        A.     Yes.
```


**ROYAL**
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1        them.

2        Q.      Did you use them in 2004?

3        A.      I don't remember.

4        Q.      Were there other services, other than

5        MLS, that were used while you were at

6        Berkshire for record reviews?

7        A.      At certain times.

8        Q.      Was there only one service used at one

9        time, or were there multiple services used at

10       the same time?

11       A.      I don't remember.

12       Q.      Does Guardian ever use outside

13       services for record reviews in the types of

14       claims you handle now?

15               MR. KIMBALL:   Objection, calls

16            for speculation.

17               THE WITNESS:   I don't know.

18       BY MS. D'ALCOMO:

19       Q.      You're not aware of Guardian using

20       outside services for records reviews in your

21       present job; is that right?

22       A.      We have a medical staff physically

23       located in our department.

24       Q.      Do you rely on the medical staff for



230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    be called on for back matters; is that

2    right?

3    A.    Oh, yes, he was.

4    Q.    So apart from Doctor Corona --

5    A.    Right.

6    Q.    -- you're not aware of any doctor who

7    was identified as being someone to call on in

8    a particular area of expertise when you had a

9    disability claim either at Guardian or at

10   Berkshire?

11   A.    Not that I can recall, no.

12   Q.    Now, in 2002 when you contacted --

13   strike that.  Did you contact MLS?

14   A.    Yes.

15   Q.    And when you contacted MLS somewhere

16   along the line what you wanted an allergist

17   to do was broader than just look at latex

18   allergy tests, right?

19               MR. KIMBALL:  Objection, calls

20         for speculation.

21               THE WITNESS:  I wanted them to

22         review the entire medical contents of

23         the file.

24   BY MS. D'ALCOMO:



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

```
 1                    MR. KIMBALL:  Objection, calls

 2            for speculation.

 3                    THE WITNESS:  I don't remember.

 4    BY MS. D'ALCOMO:

 5    Q.      Was it ever true that you only wanted

 6    an allergist to look at the latex test

 7    results of Carolyn Mirek?

 8    A.      I don't remember.

 9    Q.      Do you know when it was you decided

10    that you wanted an allergist to look at the

11    entire file?

12                    MR. KIMBALL:  Objection,

13            misstates prior testimony.

14                    THE WITNESS:  No.

15    BY MS. D'ALCOMO:

16    Q.      Now, would you turn to 153 of the

17    claims file.

18    A.      (Complies.)

19    Q.      Who developed the questions that are

20    numbered one through four on page 153?

21    A.      I would have done so.

22    Q.      Do you remember doing so?

23    A.      After review of the file I do.

24    Q.      Now, you remember developing the
```



1      withdraw that.

2                        Was Doctor Axe the first

3      physician that was picked to review -- strike

4      that.

5                        Was Doctor Axe the first

6      allergist who was picked to review Carolyn

7      Mirek's claim?

8      A.      I don't remember.

9      Q.      Now, at some point you received a

10     report that Doctor Axe had prepared?

11     A.      Yes.

12     Q.      By the way, was it the practice of MLS

13     to prepare the reports at their office?

14                       MR. KIMBALL:  Objection, calls

15               for speculation.

16                       THE WITNESS:  I don't know.

17     BY MS. D'ALCOMO:

18     Q.      At some point did you receive a report

19     that was signed by a Doctor Axe?

20     A.      Yes, I did.

21     Q.      Did you ever get any resume or CV of

22     Doctor Axe?

23     A.      I don't remember.

24     Q.      If you had, would it be in the file?


ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1                  indicated that that was the case,

2                  and I was in no position to challenge

3                  him.

4     BY MS. D'ALCOMO:

5     Q.      Why not?

6     A.      Because he's a medical doctor; his

7     specialty is allergy, immunology; and he's

8     practiced for more than 25 years as of the

9     date he sent the report.  So I, as a claims

10    examiner, am in no position to challenge

11    someone like that.

12    Q.      Now, you challenged Doctor Bedard's

13    conclusions; is that right?

14                  MR. KIMBALL:  Objection,

15             misstates prior testimony.

16                  THE WITNESS:  No, I wouldn't

17             say that I challenged them.

18    BY MS. D'ALCOMO:

19    Q.      You wouldn't say that you challenged

20    Doctor Bedard's conclusions?

21                  MR. KIMBALL:  Objection, asked

22             and answered.

23                  THE WITNESS:  No.

24    BY MS. D'ALCOMO:


ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

Page 155

1    Q.    Anything else?

2    A.    That would be the only one that I

3    could recall at this time.

4    Q.    Now, did you know in 2002 whether

5    Doctor Axe was Board Certified in any

6    specialty?

7    A.    I don't remember.

8    Q.    Do you know today whether he was Board

9    Certified in any specialty at any time?

10   A.    I don't think that he is, or they

11   would have said so in the report.

12   Q.    Who would have said so in the report?

13   A.    Medical Legal Services.

14   Q.    Did Medical Legal Services write the

15   report?

16            MR. KIMBALL:  Objection, calls

17        for speculation.

18            THE WITNESS:  I don't know who

19        writes the reports.

20   BY MS. D'ALCOMO:

21   Q.    Was it their practice to include --

22   strike that.

23            What made you say they did not

24   include it in their report?  Was there some

Page 156

1    kind of a practice of including a reference

2    to Board Certification in reports?

3    A.    In a lot of cases --

4              MR. KIMBALL:  Excuse me.

5        Objection, calls for speculation.  You

6        may answer it.

7              THE WITNESS:  That may be in

8        the report from time to time.

9    BY MS. D'ALCOMO:

10   Q.    Now, do you consider faculty

11   appointments to be a significant credential,

12   medical school appointments, in evaluating a

13   physician's expertise?

14   A.    I'm sorry.  I don't have an opinion on

15   that.

16   Q.    Did you consider in 2002 whether a

17   physician had published in an area to be a

18   sign of qualifications?

19   A.    Again, I didn't really have an opinion

20   on that.

21              (Whereupon a short recess was

22        taken.)

23   BY MS. D'ALCOMO:

24   Q.    You read Doctor Axe's report dated



230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

Page 157

1    June 26, 2002 this past week, correct?

2    A.    Yes.

3    Q.    Is there anything that you saw in

4    Doctor Axe's report that you now believe is

5    medically inaccurate?

6                MR. KIMBALL:  Objection.

7                THE WITNESS:  No.

8    BY MS. D'ALCOMO:

9    Q.    Now, did you know in 2002 that Doctor

10    Newman had a role in providing information

11    concerning underwriting?

12                MR. KIMBALL:  Objection,

13            ambiguous, calls for speculation.

14                THE WITNESS:  No.

15    BY MS. D'ALCOMO:

16    Q.    Did you know in 2002 that it was the

17    position of Guardian that it would not issue

18    a disability policy to a medical professional

19    who had evidence of latex allergy?

20    A.    No.  That's the underwriting

21    department, I don't know what their

22    restrictions are.

23    Q.    So is the answer no?

24    A.    I said, "no."



Page 158

1      Q.      So in 2002 you didn't know that it was

2      the position of Guardian that it would not

3      issue an individual disability policy to a

4      medical professional who had a latex allergy,

5      correct?

6                      MR. KIMBALL:  Objection,

7              misstates facts in evidence, calls for

8              speculation, ambiguous.

9                      THE WITNESS:  I don't remember.

10     BY MS. D'ALCOMO:

11     Q.      You don't remember whether or not you

12     knew in 2002 that it was the position of

13     Guardian that it did not issue individual

14     disability policies to medical professionals

15     with latex allergy?

16     A.      I don't remember.

17     Q.      You don't remember whether or not you

18     knew --

19     A.      Yes.

20     Q.      Let me just finish my question,

21     though, for the record.  We create a

22     transcript, you must know that by now having

23     been at some depositions.  So there's

24     question, sometimes objection, and the



230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    answer.  And our poor stenographer if you

2    answer before I finish my question, it's

3    tough for her.

4                   So you don't remember whether

5    or not you knew in 2002 that it was the

6    position of Guardian that it would not issue

7    individual disability policies to medical

8    professionals with latex allergy, correct?

9    A.      Yes.

10   Q.      Do you recall learning at any point in

11   time that it was the position of Guardian

12   that it would not issue individual disability

13   policies to medical professionals with latex

14   allergy?

15   A.      Yes.

16   Q.      And how long have you known that?  .

17   A.      I don't know.

18   Q.      Do you know today that it's the

19   position of Guardian that it will not issue

20   individual disability policies to medical

21   professionals with latex allergy?

22                   MR. KIMBALL:  Objection, that

23           calls for speculation.

24                   THE WITNESS:  No, I don't know.



230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    BY MS. D'ALCOMO:

2    Q.    Did you know in 2002 that it was the

3    position of Berkshire that it would not issue

4    individual disability policies to medical

5    professionals with latex allergy?

6                    MR. KIMBALL:  Objection, calls

7              for speculation, states facts that are

8              not in evidence.

9                    THE WITNESS:  I don't know.

10   BY MS. D'ALCOMO:

11   Q.    Did you learn at some point that

12   it was the position of Berkshire that it

13   would not issue individual disability

14   policies to medical professionals with latex

15   allergy?

16                   MR. KIMBALL:  Same objection.

17                   THE WITNESS:  I don't know.

18   BY MS. D'ALCOMO:

19   Q.    Do you know today that it is the

20   policy of Berkshire not to issue individual

21   disability policies to medical professionals

22   with latex allergy?

23                   MR. KIMBALL:  Same objection.

24                   THE WITNESS:  No, I'm not aware



1    Carolyn Mirek's latex allergy related claim,

2    that Berkshire had taken the position that

3    latex allergy was so serious that it would

4    not insure medical professionals with any

5    sign of latex allergy?

6                   MR. KIMBALL:  Objection,

7              misstates facts not in evidence, calls

8              for speculation.

9                   THE WITNESS:  Yes.

10   BY MS. D'ALCOMO:

11   Q.     Would it have been significant to you

12   to know, while handling Carolyn Mirek's

13   claim, in 2002 that Guardian had made the

14   decision that latex allergy was so serious

15   that it would not issue individual disability

16   policies to medical professionals with latex

17   allergy?

18                   MR. KIMBALL:  Objection.

19                   THE WITNESS:  Yes.

20   BY MS. D'ALCOMO:

21   Q.     It's fair to say, Mr. Kvederas, as far

22   as you can recall you were never told in

23   2002, while handling Carolyn Mirek's claim,

24   that Berkshire considered latex allergy so



1    Axe's report you did so to help Carolyn Mirek

2    understand the basis for the denial of the

3    claim; is that right?

4                    MR. KIMBALL:  Objection,

5            misstates his testimony.

6                    THE WITNESS:  I believe so.

7    BY MS. D'ALCOMO:

8    Q.    And what about the reference to fresh

9    banana on August 7, 2002 that, in your view,

10   would help Carolyn Mirek understand the basis

11   for the denial of the claim on that occasion?

12                   MR. KIMBALL:  Objection, calls

13           for speculation.

14                   THE WITNESS:  I don't know.

15   BY MS. D'ALCOMO:

16   Q.    Now, in your letter of August 7, 2002

17   in the third to last paragraph on the last

18   page you wrote that in her visits to dental

19   offices she was exposed to latex on a daily

20   basis, do you see that?

21   A.    Yes.

22   Q.    And how much time did you understand

23   Carolyn Mirek spent on a weekly basis inside

24   dental offices?

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1    her calls?

2    A.    I don't remember specifically.

3    Q.    Did you know that dentist's offices

4    are typically divided into the operatory as

5    distinct from other areas in the dental

6    office?

7              MR. KIMBALL:  Objection, calls

8         for speculation, no basis for that

9         statement at all.

10             THE WITNESS:  I would say, no,

11        I'm not familiar with that.

12   BY MS. D'ALCOMO:

13   Q.    Have you heard the term, "operatory,"

14   as applied to dentists' offices?

15   A.    No.

16   Q.    Did you ever ask Carolyn Mirek to what

17   extent she spent time in the clinical areas

18   of a dentist office in the course of selling

19   her dental supplies?

20   A.    No.

21   Q.    Now, do you recall, and let me just

22   read on page 160, Carolyn Mirek telling you

23   that she had an asthma attack when going into

24   one dentist's office on January 16, 2002 that



ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1              MR. KIMBALL:  Objection, calls

2        for speculation.

3              THE WITNESS:  I don't know.

4    BY MS. D'ALCOMO:

5    Q.     You don't know one way or the other

6    whether the position of office manager --

7    A.     No, I don't.

8    Q.     Let me just finish my question.

9    A.     Okay.

10   Q.     You don't know one way or the other

11   whether the position of office manager varies

12   from one office to another, correct?

13   A.     Can't be certain.

14   Q.     You can't be certain whether the

15   position of office manager involves the

16   same responsibilities at all offices,

17   correct?

18   A.     No.

19   Q.     Do you know if the office manager at

20   the dentist's office where Carolyn Mirek

21   worked in 2001 had any supervisory

22   responsibility over Carolyn Mirek's work?

23   A.     No, I don't.

24   Q.     Can I just ask you to take a look at

ROYAL
COURT REPORTING

230 South 15th Street, 6th Floor, Philadelphia, Pennsylvania 19102
Phone: (215) 732-0655 Toll Free: (888) 595-7277 Fax: (215) 732-7655
www.royalcourtreporting.com

1     BY MS. D'ALCOMO:

2     Q.    So you wouldn't have wanted to know

3     the information about latex allergy that

4     caused other people at Berkshire to conclude

5     that the illness was so serious that medical

6     professionals with such an illness should not

7     be insured?

8               MR. KIMBALL:  Objection.

9               THE WITNESS:  It's not -- no,

10         it's not that I wouldn't want to know,

11         but it's not pertinent to the claim.

12    BY MS. D'ALCOMO:

13    Q.    Wouldn't knowledge about latex allergy

14    that caused your employer to believe that the

15    condition was so serious that people with

16    latex allergy, who were medical

17    professionals, should not be insured have

18    been of interest to you?

19              MR. KIMBALL:  Objection, calls

20         for speculation.

21              THE WITNESS:  No, because it's

22         an underwriting issue as opposed to a

23         claims issue.

24    BY MS. D'ALCOMO: